Exhibit K

Ex #32

# MEMORANDUM

TO: Benjamin Little, CEO
    HATG

FROM: Ursula Milde, Administrator 
      PCSR

RE: Response to your memo dated 3/24/00

DATE: March 25, 2000

## CCI CONTRACT:

According to the CT State Code for Licensed Homes we are required to provide recreational services to the residents: Public Health Code 19-13-D6 s(g) Homes for the Aged/Residential Care Homes: "Recreational activities shall be provided in Homes for the Aged". Because of the code requirement, such a position is an "allowable expense". Prior to our licensing and opening, therefore, I developed a job description for a recreation/activities coordinator, which, together with all other job descriptions I wrote was reviewed by Bill Swords. For various reasons (i.e. wanting to tie in the Parsonage Cottage residents to other events with other senior housing developments, having a vehicle available for shopping trips; and because of Lori Nuremberg, who was creating an excellent program for seniors through CCI) I decided to contract with CCI and Barbara Nolan and I developed a contract. However, during the past three years this arrangement has not worked out consistently to the best for Parsonage Cottage, as Barbara Nolan knows, (i.e. frequent staff turn-over, leaving us without a working program for months, lack of recreation experience/background on the part of some their staff, unavailability of CCI staff for holidays and weekends, not enough in-house time to develop programs for all residents, not only those who are able to go on trips, etc.). We did not renew the contract in 1999, and at this point it is very clear that we need an in-house recreation/activities therapist who has knowledge and interest in developing a therapeutic recreation and activity program for all the elderly residents at Parsonage Cottage, which addresses their needs. The coordinator would be on staff and would have to work some weekends and evening hours, as well as some holidays, like all our staff. Options which will be discussed between Barbara Nolan and myself upon her return:

1. Possibly continuing the weekly shopping trip.

2. Have Parsonage Cottage residents (i.e. those who are able and interested) participate in monthly trips arranged by CCI for HATG tenants.

When I discovered the [po]tentially serious structural probl[em], of which I notified you in a memo dated 2/11/00 I c[alle]d Todd Cozzolino to recommend a structural engineer from the firms on retainer with the HATG. He recommended Salamone Associates, whom I then contacted. Joseph Tenedine was sent by the firm on 2/17/00. He, Todd, and Felix looked at the rooms, and upon his second and third visit he and Todd asked that the carpenter, who had done the repairs on the bathroom doors come, to help in determining the extent and nature of the structural and building problems. Both expressed that this carpenter was not only knowledgeable and experienced, but also of valuable help to them. He also spent a fair amount of his time on this, without billing for it. On one of the days Mike and John Banks came as well, and it was reported to me that Mike did not want to bid on this job. **However, it is premature to make that determination,** (since we do not as yet have the report from Salamone Associates) and I have never said that the job, whatever it entails, should "automatically" be contracted out to the carpenter in question. I do, consider him a preferential candidate, because of his extensive experience and knowledge, as well as the proven quality, efficiency and reliability he has demonstrated in his work.

Please, let me remind you also that:

1. we have two rooms which cannot be occupied because of the problem, thus not generating revenue for a foreseeable time;
2. the state health department will conduct its bi-annual licensing exam this year, and we might have to report the matter to them in any case, once we are in receipt of the report;
3. we also have an obligation to the Limited Partners, if there are structural problems, and I have to look into whether we have reporting requirements to them, before they make their annual visit. For all these reasons it is imperative that this matter is treated with some urgency.

EXERCISE EQUIPMENT:

I have no "desire to give the equipment to Greenwich Close" or any other organization without the Parsonage Cottage Home for the Aged Board's agreement and sales agreement. However, I, as well as several other professionals (i.e. Physical Therapist from Greenwich Hospital who knows many of our residents and whom I have consulted, our Nurse Consultant who is a geriatric nurse practitioner, and another exercise trainer) who are all familiar with the Parsonage Cottage residents and their needs, are in agreement that only one or two of the admittedly excellent equipment is usable by our residents. I had suggested in my memo to you dated 9/20/99 that an exercise trainer designated by Ms. Ford make an assessment of the Parsonage Cottage population and what would be safe and usable for them. Since the entire set operates on a compressor it can, unfortunately, not be separated. I would like to see such a great set of wonderfully preserved equipment used, rather than sitting and collecting dust. That is why, when I heard that Greenwich Close would like to set up an exercise room, I suggested that we initiate a discussion with the involved parties.