*The Housing Authority of the Town of Greenwich*

## MEMORANDUM

**TO:**       Ursula Milde, Administrator

**FROM:**     Benjamin W. Little, Chief Executive Officer

**DATE:**     July 3, 2000

**SUBJECT:**  Follow-up to My Memorandum of May 30, 2000

Please submit to me a copy of the contract for Nancy R. Wisecup, R.N. I would like this on or before Thursday, July 6, 2000.

DEFENDANT'S
EXHIBIT
48  5/23/03
PENGAD 800-631-6989

JLSK 0081

249 Milbank Avenue, Greenwich, Connecticut 06830  •  Tel: 203-869-1138  •  Fax: 203-869-2037

EQUAL OPPORTUNITY AGENCY

# The Housing Authority of the Town of Greenwich

## MEMORANDUM

**TO:** Ursula Milde, Administrator

**FROM:** Benjamin W. Little, Chief Executive Officer

**DATE:** August 4, 2000

**SUBJECT:** Explanation/Justification of the Cost of Telephone Charges by Nurse Consultant

My memorandum of July 3, 2000, has not been carried out nor responded to by you, therefore, I am assuming that there is no contract for the Nurse Consultant. If there was, it would possibly answer the questions that I have.

I have noticed that the billing "Parsonage Cottage Senior Residence, Nancy R. Wisecup RN, BSN, MSN, Nurse Consultant CT #R28356, Time Sheet for Housing Authority of Greenwich, DBA Parsonage Cottage" has charges for telephone at a cost of $35 an hour. Please give explanation for the charges, and the reasons for them.



DEFENDANT'S
EXHIBIT
# 52 5/22/02

PENGAD 800-631-6989

JLSK 0090

249 Milbank Avenue, Greenwich, Connecticut 06830 • Tel: 203-869-1138 • Fax: 203-869-2037

**Exhibit BB**

## PARSONAGE COTTAGE SENIOR RESIDENCE

### MEMORANDUM

To:        Benjamin W. Litle, Chief Executive Officer

From:      Ursula Milde, Administrator  *Ursula Milde*

Date:      August 7, 2000

Subject:   Response to memorandum re: Nurse Consultant

This is in response to your memoranda of July 3 and August 4, 2000:

1. Your assumption is incorrect. Since, however, the contract with the
   Nurse Consultant is between her and Parsonage Cottage, (not with the
   Housing Authority), and with the Parsonage Cottage Home for the Aged
   funding the service, the Nurse Consultant did not authorize me to submit
   the contract to you. The Housing Authority has only been a conduit for
   issuing checks and a W2. The Board reimburses the Housing Authority
   for the expenses. The Nurse Consultant initially was brought in by the
   Greenwich Department of Health and funded by them. The Fund-
   Raising Board subsequently committed itself to continuing this vital
   service.

2. It is obvious that you have some questions about the Nurse Consultant
   service with a motivation on your part that seems unclear. I therefore
   propose that a meeting be held between you, the Nurse Consultant, the
   Parsonage Cottage Fund-Raising Board, Jennifer Johnson from the
   Greenwich Health Department, and myself, at a time that is mutually
   convenient to all. At that meeting all your concerns can be answered.

c.    Betsy Unger, President and Leroy Frantz, Finance Chairman
      Parsonage Cottage Home for the Aged Board

mille
DEFENDANT'S
EXHIBIT
#55  5/13/03
PENGAD 800-631-6989

JLSK 0093

Exhibit CC

ALL-STATE LEGAL (05-22-0810   EDO/718   RECYCLED

# PARSONAGE COTTAGE SENIOR RESIDENCE

DEFENDANT'S
EXHIBIT
49    TLF
5/23/05
PENGAD 800-631-6989

Mide

Ursula Milde

## MEMORANDUM

To:     Benjamin Little, CEO
        HATG
        Barbara Nolan, Executive Director
        CCI

From:  Ursula Milde, Administrator
        PCSR

Re:     CCI Contract with PCSR and Scheduling

Date:  July 6, 2000

In order to make the schedule meet at least the minimum needs of PCSR the following principles should be observed:

1. In view of the fact that CCI workers are not available on weekends or holidays, we must at least have one activity conducted by the Social or Program worker each weekday, to spread out over 5 days per week.

2. Groups should not last for more than 1 – 1 ½ hours in order to be effective and not tax the attention span of the residents.

3. Residents' meal times and subsequent medication times, as ordered by their physicians must be respected. Therefore, groups should only be conducted between the hours of:

   9:30 – 12 Noon    1:30 – 4:30 PM    6:30 – 8:30 PM

4. The CCI Social Worker, while not available on holidays must at least be willing to assist in the planning of holiday activities with residents and PCSR staff, which will be carried out by the PCSR staff.

JLSK 0084

5. The CCI Social Worker furthermore should bring in outside groups and entertainment and schedule and supervise volunteers to augment the limited schedule as much as possible. These responsibilities should be noted in the contract.

6. Several other changes need to be made to the contract in order to meet the requirements PCSR has under its license:

   A. Since CCI transports PCSR clients, PCSR has to be named as an additionally insured under CCI's liability policy.

   B. Since PCSR has its own revenue stream separate from the HATG and according to the requirements of the CT State DDS reimbursement guidelines the sentence: "The Housing Authority of the Town of Greenwich agrees to pay CCI a $1,625.00 montly fee to cover the cost of services" must be changed. It was noted at the last field audit that the identification and posting of expenses to the PCSR budget must be clearly separated from other HATG operations, in order to be recognized as reimbursable and allowable expenses.

c: Sam Romeo
CT State Ombudsman

JLSK 0085

*The Housing Authority of the Town of Greenwich*



DEFENDANT'S
EXHIBIT
#50 5/23/03

**MEMORANDUM**

TO:

FROM:     Ursula Milde, Administrator

          Benjamin W. Little, Chief Executive Officer

DATE:     July 6, 2000

SUBJECT:  Memorandum dated July 6, 2000
          Re: CCI Contract and Scheduling

As I stated in the meeting between Barbara Nolan, Andee Cantavero, and yourself, your memorandum was inappropriate and very unprofessional.

First, the memorandum should have been presented to Barbara Nolan, Executive Director of CCI and me days before the meeting.

Second, an internal memorandum being forwarded or carbon copied to the State Ombudsman is totally inappropriate. I would like to know how many internal memorandums have been forwarded to the State Ombudsman in the past? I cannot understand your thinking and what you expect the State Ombudsman to do concerning your memorandum.

Effective immediately, you will cease to carbon copy any internal memorandums outside this organization.

JLSK 0086

249 Milbank Avenue, Greenwich, Connecticut 06830 • Tel: 203-869-1138 • Fax: 203-869-2037

ALL-STATE LEGAL 800-222-0510   PRINTED   RECYCLED



DEFENDANT'S EXHIBIT #51 5/23/03

PENGAD 800-631-6989

# Parsonage Cottage Senior Residence

## MEMORANDUM

TO:     Benjamin W. Little, CEO – HATG
FROM:   Ursula Milde, Administrator – PCSR  *U. Milde*
RE:     Response to Memorandum dated July 6, 2000
DATE:   July 7, 2000

1.  The memorandum I brought with me to the meeting could not have been presented to you or Barbara Nolan " days before the meeting ", since the notice about the meeting was only faxed to PCSR on Monday (7/3/00) late afternoon. I was also out sick that day. The next day was a holiday, at which neither you nor B. Nolan were available. Since I carried out recreational programs on the Fourth of July at PCSR, I had only one day to prepare for this meeting, together with all my other responsibilities. I therefore did not even have time to finish the memo, until the morning of the meeting. However I felt it necessary to make you and Barbara Nolan aware of some of the important issues which must be taken into consideration when developing a schedule of recreational activities for PCSR, as well as to point out what must be changed in the contract, to meet the requirements we have through our license. If you had consulted me when developing the contract, and if CCI and you had accepted my previous verbal explanations why the proposed schedule did not work for us, none of this would have been necessary. Therefore, I hoped that outlining it in writing would help focus us, as indeed it did.

2.  As for the second issue, you must know that Mr. Romeo is the state appointed ombudsman for PCSR. That means the functions as an advocate for residents, ensuring that their rights are upheld. He has attended a number of community meetings, has participated in a care plan meeting on the invitation of a resident, (in the absence of available family), has spent time with residents individually, and has been a dedicated and caring advocate for the residents at PCSR, fulfilling his role as ombudsman very ably.

3.  More recently Mr. Romeo has been concerned about the availability of recreational services at PCSR based on his observations, his conversations with residents, and the newspaper articles. As you know, he attended last week's community meeting and he had asked me about the outcome of the decision whether to hire a recreation coordinator, or contract for these services. I introduced him to Andee Cantavero, but the schedule did not show any new programs. He told me that he has not yet opened a case file on this matter, but he indicated that if progress is not made, he would be forced to take it to the next level, in order to ensure that the recreational needs of the residents at PCSR are served. Under our mandate, as you know, recreational programming constitutes a basic right for residents in licensed homes, since it impacts the quality of their lives and influences their mental and emotional well being.

**You certainly understand that the state appointed ombudsman has a right to request any pieces of documentation concerning residents' rights, and I, as the administrator, have an obligation to submit those. However, with the exception of the latest memorandum, which I copied to him, to show some progress in the matter, he has not yet seen other documentation.**

4.  As the administrator of PCSR I have demonstrated throughout my tenure that the welfare of residents and the operation are of primary concern to me. I have nothing to hide in the way I carried out my responsibilities or in what I have documented. Neither should you. As I stated before, PCSR is well regarded by residents, their families, professionals in the community, the CT State Ombudsman's office, the Department of Social Services, as well as the Health Department, which licenses us. I think we should keep it that way.

JLSK 0088

*The Housing Authority of the Town of Greenwich*

DEFENDANT'S EXHIBIT
# 53 5/23/03
PENGAD 800-631-6989

## MEMORANDUM

TO:        Ursula Milde, Administrator

FROM:      Benjamin W. Little, Chief Executive Officer

DATE:      August 4, 2000

SUBJECT:   Meeting with the Department of Social Services –
           Parsonage Cottage Social Work Contract Renewal

Based on the letter I received from the Department of Social Services Commissioner
Carol Femia dated July 26, 2000, a meeting is scheduled for Wednesday, August 9 at
11:30 a.m. in the Chief Executive Officer's office.

From Carol Femia's letter, it appears that much discussion has taken place between
Carol Femia, Carol Cherry, and yourself, as to continuing the social work services
to Parsonage Cottage.

Please provide me a written assessment addressing the following:

- **Justification for the dollar per hour increase for Jacqueline Braunthal**
  services.
- **Justification for dropping from 15 hours to 12 hours.**
- **Justification for Carol Cherry's 2 hours social work at $30 per hour.**
- **Please note that with the 12 hours of Jacqueline Braunthal and 2 hours of
  Carol Cherry overall I am losing one hour. Is there a reason for this?**
- **I am assuming that there are stats available on the various programs or
  activities conducted by Social Services, therefore, please submit the number
  of residents who participate in Jacqueline Braunthal's program, and the
  number of residents in Carol Cherry's**

I expect this information will be supplied to me on or before August 8, 2000.

JLSK 0091

249 Milbank Avenue, Greenwich, Connecticut 06830  •  Tel: 203-869-1138  •  Fax: 203-869-2037

ALL-STATE LEGAL  800-222-0510    EB39118    RECYCLED

PARSONAGE COTTAGE SENIOR RESIDENCE

JLSK 0100

DEFENDANT'S
EXHIBIT
# 56 JF
PENGAD 800-631-6989

## MEMORANDUM

To:     Benjamin Little, CEO, HATG

From:   Ursula Milde, Administrator, PCSR   *Ursula Milde*

Date:   August 7, 2000

Re:     Meeting with the Department of Social Services-
        Parsonage Cottage Social Work Contract Renewal

This is in answer to your memorandum dated 8/4/00. Please note that the letter from the Department of Social Services Commissioner Carol Femia to you, dated July 26, 2000 explains the reasons for the changes (see her sentence "This Spring we found it necessary to return the assigned Social Worker, Carol Cherry, to the Homemaker Service office."). Both the fact that Carol Cherry is needed in the office and the pay rates for the employees of the Department of Social Services are determined by that Department and not by PCSR. Carol Femia informed me earlier this year that this change needed to be made, but the final proposal, of course, had to be reviewed by you – hence the letter from Carol Femia to you, with a copy to me.

The responsibilities of the Social Worker at PCSR are outlined in the initial contract, the renewal of which you yourself signed in 1999. The Social Worker furthermore maintains a record of whom she sees and also keeps process recordings, which are confidential. I hope this answers your question.

In regard to the proposed meeting between Carol Femia, yourself and myself, I consider it unprofessional to be notified at such short notice about this meeting. I should have been consulted whether this date and time would be available for me, since you expect me to be present. I currently have another commitment on behalf of Parsonage Cottage which conflicts with the meeting you set up which I now have to change.

ALL-STATE LEGAL  800-222-0510     E09311B     RECYCLED

**Exhibit HH**

*The Housing Authority of the Town of Greenwich*



DEFENDANT'S EXHIBIT
#54 5/23/03
PENGAD 800-631-6989

## MEMORANDUM

**TO:**         Ursula Milde, Administrator

**FROM:**       Benjamin W. Little, Chief Executive Officer

**DATE:**       August 4, 2000

**SUBJECT:**    Public Relations for Parsonage Cottage

On Saturday, August 5, 2000, Kermit Thompson and a photographer will be on site to take pictures. I would appreciate that all staff cooperate with them.

JLSK 0092

**Exhibit II**

PARSONAGE COTTAGE SENIOR RESIDENCE



DEFENDANT'S
EXHIBIT
#57 5/23/03

## MEMORANDUM

To:      Benjamin Little, CEO, HATG

From:    Ursula Milde, Administrator, PCSR

Date:    August 8, 2000

Re:      Your memorandum, dated 8/4/00 regarding Public Relations at Parsonage Cottage

Yesterday, (Monday 8/7/00) your memorandum was picked up from the PCSR mailbox at the HATG office. Since you knew on Friday (8/4/00) that Kermit Thompson was going to come with a photographer to the PCSR site on Saturday (8/5/00) it would have made sense to fax this memo to us and/or alert us with a telephone call about this matter, rather than leaving the memo in the box. In that way I could have informed our weekend secretary that a photographer and Mr. Thompson were going to be here and that this was approved by you.

As it turned out, we did not know ahead of time, and when I spoke to the photographer and then Mr. Thompson on the telephone, on Saturday, he informed me that he had cleared it with you and you had told him you would notify me.

I would appreciate the courtesy of **timely** communication, since the PCSR staff and I would always be happy to cooperate in these matters.

JLSK 0101

ALL-STATE LEGAL  NO 22A-5010  ER8891B  RECYCLED

*The Housing Authority of the Town of Greenwich*

August 21, 2000

Ms. Ursula Milde
Administrator
Parsonage Cottage
80 Parsonage Road
Greenwich, CT 06830

Dear Ms. Milde:

Despite repeated attempts to assist you in improving your work performance, I find no attempts have been made by you to comply with my Corrective Directives Memorandum of May 30, 2000 (copy attached). Since that time additional unsatisfactory performance issues have arisen. These are major infractions that cannot be ignored. Copies of some of these additional issues from May 30, 2000, to date are enclosed for your information.

You are directed to attend a disciplinary hearing, to be held in my office, on Wednesday, August 23, 2000, at 4:30 p.m. At this hearing you will be given an opportunity to answer the charges brought against you. As a result of this hearing, disciplinary action, up to and including termination, may result.

Cordially,

Benjamin W. Little
Chief Executive Officer

BWL:mlm
Enclosures

PENGAD 800-631-6989

DEFENDANT'S
EXHIBIT
#58

JLSK 0102

RECYCLED

MARK P. CAREY & ASSOCIA
ATTORNEYS AT LAW
205 MAIN STREET
WESTPORT, CONNECTICUT 06880

TEL. & TDD: 203-222-8670
FAX: 203-222-8736
EMAIL: MCAREYESQ@AOL.COM
ATTY.JHEVEL@AOL.COM

MARK P. CAREY†
JEFFREY R. HEVEL
ASSOCIATE

JOSEPH P. CAREY, P.C.**
OF COUNSEL

** ONLY ADMITTED IN NEW YORK &
DISTRICT OF CONNECTICUT FEDERAL COURT

BY FACSIMILE
BY FIRST CLASS MAIL

August 21, 2000

Benjamin W. Little, CEO
Housing Authority of the
Town of Greenwich
249 Milbank Ave.
Greenwich, CT 06830

Re:    Ursula Milde v. Housing Authority of the Town of Greenwich
       EEOC No.
       CHRO No.

Mr. Little:

This office currently represents Ms. Ursula Milde in her employment discrimination case against the Housing Authority of the Town of Greenwich. You were notified of the charge of discrimination filed with the Equal Employment Opportunity Commission, Boston Area Office on July 26, 2000, via facsimile and overnight delivery. I indicated in my letter to you on July 26, 2000, to have your attorney contact my office. You failed to provide any such information concerning an attorney who represents your company. Therefore, you left me alternative to continue to make contact with your office.

I am in receipt of your letter to my client dated August 21, 2000. In light of her pending civil litigation against your company, my client will not be attending the disciplinary meeting scheduled for August 23, 2000. However, my client will attend a disciplinary meeting, in your office, in the immediate future. My client will be represented at such meeting by this office. Please have your attorney contact this office to schedule a convenient time to meet. As per the scheduling of such meeting, I will be unavailable from August 23, 2000 through August 28, 2000. In summary, my client will attend such disciplinary meeting, but only with her attorney present.

In no way shall the Housing Authority of the Town of Greenwich use my client's non-attendance to the disciplinary meeting, to be held on August 23, 2000, be deemed grounds for insubordination. My client has a legal right to be represented by counsel, in connection with any disciplinary meeting initiated by your office.

If you have any questions concerning this letter, please have your attorney contact this office.

Sincerely Yours,

Mark P. Carey
Attorney At Law

JLSK 0103

File: Milde

cc:    Ursula Milde

PRACTICE LIMITED TO LABOR, EMPLOYMENT AND ENVIRONMENTAL LAW
†MEMBER OF THE PRESIDENT'S COMMITTEE ON EMPLOYMENT OF PEOPLE WITH DISABILITIES

DEFENDANT'S
EXHIBIT
#60    JLF  5/23/07
PENGAD 800-631-6989

PENGAD 800-631-6989

DEFENDANT'S
EXHIBIT
61  5/26/03

Ursula Milde Disciplinary Hearing Notes
September 6, 2000
11:30 a.m. – 12:50 p.m.

Present:    Benjamin W. Little, Chief Executive Officer, HATG          BWL
            Louis Pittocco, Legal Counsel for HATG                     LP
            Sim Bernstein, Consultant for Human Resources             SB
            Maria L. Morris, Administrative Secretary                 MLM

            Ursula Milde, Administrator, Parsonage Cottage            UM
            Mark Carey, Attorney for Ursula Milde                     MC

            Parsonage Cottage                                         PC
            Housing Authority of the Town of Greenwich                HATG
            Community Centers, Inc.                                   CCI
            Board of Commissioners                                    BOC

- BWL opened the hearing by reading the letter to Ursula Milde dated August 21, 2000, and continued reading the June 2, 2000 memo of Corrective Directives.

- BWL referred to the following memos and read them aloud, June 7, 2000 memo directing Ursula Milde to write an apology; June 21, 2000 memo regarding CCI Work Schedule; June 6, 2000 regarding CCI contract and meeting; memo dated August 4, 2000 regarding justification costs for the nurse consultant.

- MC stated my client responded to all memos explaining what she feels are true factual. The purpose of her being here is to answer any other questions you have. She will not say anything, I will speak for my client. Are you unsatisfied with her responses? Is there a specific issue?

- BWL stated that she did not respond and/or comply to all – memos, i.e. letter of apology to the BOC was not done.

- MC stated that she was making a complaint to the BOC and was spoken down to.

- UM stated I am responsible for the operations of the running of Parsonage Cottage and my first responsibility is to provide whatever is needed for the residents and to the State.

- BWL – By not following directives nor responding to the memos, that is insubordination.

- LP to MC– We're on issue #1.

- BWL – Ursula Milde did respond to #2 memo any problems with CCI should be directed and discussed with me first. Ursula Milde made contact with CCI without my knowledge.

- MC – You have no lack of performance issues here today. She is providing the most for Parsonage Cottage.

- UM – CCI's schedule was not workable. Scheduling is my responsibility. I know when the residents have lunch and meds. In respect to that I know the operation better than BWL. I have always carried the best interests for Parsonage Cottage.

- BWL referred to memo of June 21. I received a phone call about a problem of CCI scheduling after other issues were resolved.

JLSK 0107

- MC – Why do you feel she is insubordinate? On the issue of CCI? How many times have you called CCI?
- BWL – 3 or 4 times. CCI and HATG has over a 10 year working relationship.
- MC – Wouldn't it be more effective that you allow her the flexibility to run the place? She did start Parsonage Cottage or start to run it since it opened?
- BWL – That's correct.
- MC – What reason do you have to remove duties? The CCI organization problem was caused by CCI.
- BWL – Ursula Milde had no authority to terminate the contract. The contract is between HATG and CCI.
- MC – They were not fulfilling their contract. CCI was having a problem. What was the problem?
- BWL – They were not always there.
- LP – She should have consulted with the CEO.
- MC – Why are you telling her she is not doing her job? I don't see any problems.
- BWL – I have the authority to sign the contract. HATG is responsible and is liable for Parsonage Cottage.
- MC – Her performance was not other than excellent. No basis to complain. This is the first time you are not satisfied. You are pointing the finger at Ursula Milde. You are angry there is a problem.
- BWL – That's right, there is a problem.
- MC – You will not find fault other than Ursula Milde. She did not follow the directives. What action is the HATG going to take? Charges is a negative term for someone to use. Is there anything else that she has responded to in writing that you would like to know about?
- BWL – referred to the last memo of July 3, 2000 and August 4, 2000 (read aloud). Response on August 7, 2000 (read aloud).
- UM – The nurse consultant did not authorize me to provide a copy of the contract. The not-for-profit board pays for her. The State does not reimburse us for nursing services. The Health Department said it would be good to have a nurse and they paid for the first year. The not-for-profit board pays for this. We, Ursula Milde, and the RN had proposed to have a meeting to discuss the issues with the nurse consultant.
- MC – Was she being insubordinate by not providing the contract?
- BWL – The fact that the fund raising board reimburses HATG for the nurse consultant costs the liability still rests with HATG. The nurse consultant is paid through HATG, in which I sign the checks.
- MC – Who does she receive the check from?
- UM – The State subsidizes expenses that are allowable and some are not. The nurse consultant does not get reimbursed. The Finance Director said that we are providing additional services. It shows up as an expense reimbursed by the not-for-profit board.
- MC – Why did the nurse not want to hand over her contract?
- UM – She felt that this was a way of attacking her and she wanted to be there for any questions.
- MC – Was there an issue with something?
- BWL – Yes, why am I paying $35 per hour for phone calls by the nurse consultant.
- MC – Is this part of the contract?

JLSK 0108

2

- LP – If the contract is there, why did she consult with the nurse consultant and not just give the contract to the CEO.
- MC – I don't see why you need to have the contract? You fault her for it, like you already know what you are going to do.
- BWL – No response.
- MC – Items 2, 3, 4 were responded to by memos. Has she not responded to these with the exception of no. 1?
- BWL – On June 21, 2000 Item #2 responded re: the new schedule. On July 6, 2000 the memo was never responded to. There was a cc: sent to the ombudsman.
- MC – She has always provided the best services possible. May be she was not getting the feedback she needed.
- UM – It was typed on my computer and had it delivered by Felix or Debby on the 8th. (Ursula Milde left the room to make a copy of the memo)
- LP – Do you have any other questions, Ben?
- BWL – There are other memos that I did not include with the August 21, 2000, letter and I don't know how much these would have added to the hearing.
- LP – Are there any questions?
- BWL – I do know Sam Romeo, I also met him at a community meeting at Parsonage Cottage. I did not know that he had any interests in the Recreational Coordinator issue. I do not see where he would have had any interest. The issue of the Recreational Coordinator was resolved and the schedule was submitted by CCI then changed by Ursula Milde.
- LP – If Ursula Milde did not have time, in her first paragraph, states she did not have time to do it was not sent on that meeting. Why didn't she consult with BWL but she did have time to cc: Sam Romeo?
- MC – Is she allowed to let the ombudsman know what is going on?
- BWL – She should not be cc: the ombudsman on an issue that has been resolved. The issue was on scheduling and not the Recreational Coordinator. The internal memos are not sent to outside agencies.
- MC – If HATG was breaking the law are you saying that HATG employees cannot inform outside agencies?
- BWL – First off, we are not talking about any laws being broken by employers. We are talking about normal business practices and internal memos do not go to outside agencies.
- LP – You are clouding the issue.
- MC – The cc: to the ombudsman, she had no alternative. Is there anything else to discuss?
- UM – Am I correct in assuming that you want to terminate me because of the EEOC charges I have brought against you?
- BWL – No, this has nothing to do with the EEOC complaint.
- MC – When will you make a decision?
- BWL – In 24 hours.

3

JLSK 0109

W Ex #44

# The Housing Authority of the Town of Greenwich



DEFENDANT'S EXHIBIT
62  5/23/02
PENGAD 800-631-6989

September 8, 2000

Ms. Ursula Milde
Parsonage Cottage
88 Parsonage Road
Greenwich, CT 06830

Dear Ms. Milde:

After careful review of the record, as well as material submitted by you and your attorney at the hearing held September 6, 2000, I have determined to terminate your employment as Administrator of Parsonage Cottage effective, at the close of business, Friday, September 8, 2000. I hereby direct that you remove all personal belongings from your office immediately and under supervision by D. D. Saccente, Compliance Officer.

This action is based on inadequate and poor work performance and failure to comply with the policies, procedures, and regulations of the Housing Authority of the Town of Greenwich. These issues have been presented to you in writing and you have been given the opportunity to respond and comply with these policies, procedures, and regulations. You have failed to respond and actively resolve these issues and as a result of these actions have interfered with the efficient and effective operation of Parsonage Cottage.

You will receive all benefits in accordance with the policies of the Housing Authority of the Town of Greenwich. Any questions concerning your benefits should be directed to me in writing.

We wish you success in whatever future endeavors you choose

Cordially,

Benjamin W. Little
Chief Executive Officer

BWL:mlm
cc: Board of Commissioners of HATG

249 Milbank Avenue, Greenwich, Connecticut 06830  •  Tel: 203-869-1138  •  Fax: 203-869-2163

EQUAL OPPORTUNITY AGENCY

MI DEO045

Exhibit NN

C 符Ex #16

# HOUSING AUTHORITY OF THE TOWN OF GREENWICH
## Regular Meeting of May 22, 2000
### **Minutes***

Minutes of a Regular Meeting of the Board of Commissioners of the Housing Authority of the Town of Greenwich held on May 22, 2000, at Wilbur Peck Court, located at Davis Avenue, Greenwich, Connecticut.

*The Chairperson, Sue McClenachan, called the meeting to order at 5:40 P.M.  Upon roll call, those present and absent were as follows:*

**Present**
Sue McClenachan
Barry Nova
Darlene Gerald
Allan Bernard
Tom Barr

**Absent**

**Also Present**
Benjamin W. Little, CEO
Todd Cozolino, Contract Specialist
Terry Mardula, Director of Housing
Russell Kemp, Director of Finance
Pat Kelly, Director of Program Operations
Ursula Milde, Administrator
Louis Pittocco, Legal Counsel
Maria Morris, Administrative Secretary

**Guests**
Kurt Gottchalk, *Greenwich Time*

*Sue McClenachan declared a quorum present.*

REGULAR AGENDA

C-1    CONSENT AGENDA

The Minutes of the Regular Meeting of the Board of Commissioners on April 24, 2000, were approved on a motion by Darlene Gerald and seconded by Allan Bernard with all Commissioners voting affirmatively.

The Minutes of the Public Hearing of the Board of Commissioners on April 11, 2000, were approved on a motion by Darlene Gerald and seconded by Allan Bernard with all Commissioners voting affirmatively (Sue McClenachan and Tom Barr abstained because they were absent).

1

**Site Development:**
- No Comment.

A motion was made by Allan Bernard and seconded by Tom Barr with all Commissioners present voting affirmatively to accept the Standing Committee Reports, excluding Personnel.

**Vouchers:**
- Allan Bernard asked, "What is the Medical Arts Pharmacy for $329.00.
- Ursula Milde responded that it's the pharmacy where the medications are ordered for Parsonage Cottage.

A motion was made by Tom Barr and seconded by Darlene Gerald with all Commissioners present voting affirmatively to approve the April Vouchers.

**OLD/NEW BUSINESS:**
- Sue McClenachan asked if Terry Mardula and Darlene will be going to the scholarship awards on June 14, 2000, at the high school.
- Terry Mardula stated that if he could not make it someone from his department would represent him.
- Sue McClenachan asked when McKinney Terrace was having their cookout and if there are any other summer events.
- Benjamin Little stated that he did not know the date.
- Sue McClenachan stated that she would like the Commissioners to attend these events.
- Sue McClenachan stated that there are some personnel and contract issues that need to be discussed in Executive Session.

A motion made to enter into Executive Session at 5:00 PM by Allan Bernard and seconded by Darlene Gerald.

Motion to come out of Executive Session at 6:35 PM by Barry Nova and seconded by Allan Bernard.

Motion to receive and file personnel and site development by Tom Barr and seconded by Barry Nova with all Commissioners present voting affirmatively.

The next board meeting will be Monday, June 26, 2000, at Armstrong Court.

Motion to adjourn at 6:37 PM by Barry Nova and seconded by Darlene Gerald with all Commissioners present voting affirmatively.

The Minutes of a Special Meeting of the Board of Commissioners on April 11, 2000, were approved on a motion by Barry Nova and seconded by Darlene Gerald with all Commissioners voting affirmatively (Sue McClenachan and Tom Barr abstained because they were absent).

The Minutes of a Special Meeting of the Board of Commissioners on May 16, 2000, were approved on a motion by Darlene Gerald and seconded by Allan Bernard with all Commissioners voting affirmatively (Tom Barr abstained because he was absent).

## STAFF REPORTS

R-1

### Summary Leasing Report:

- Terry Mardula stated that the vacancies look good. Had some problems with rents because May is a re-certification month and there is a lot of late information coming in for income. Greenwich Close is good.

### Work Orders & Overtime Work Orders Report:

- No Comment.

### Reports of the Resident Council Meeting:

- Sue McClenachan stated that the Town Hall Annex wants to set up a Resident's Council.
- Ursula Milde stated that she wanted to discuss the Recreational Coordinator position.
- Sue McClenachan stated, "that is not appropriate right now and it will be discussed in Executive Session."
- Ursula Milde was very vocal, loud and insisting, to the point that Sue McClenachan, Chairperson, had to repeatedly tell her she was out of order.
- Sue McClenachan stated that the status report for the Block Grant application has gone in.

### Communications:

- No Comment.

A motion was made by Barry Nova and seconded by Tom Barr with all Commissioners present voting affirmatively to receive and file the Statistical & Status Reports (Work Orders & Overtime Work Orders Report, Report of Resident Councils & Assn. Meetings with Staff and Communications).

Greenwich 0035 Housing

R-2    STANDING COMMITTEE REPORTS

Finance

- Allan Bernard reported low income public housing is behind because of the re-certifications and we will catch up.   State moderate rent, Section 8, McKinney Terrace, Greenwich Close, including low income public housing is running at a positive cash flow.  Quarry Knoll II, Town Hall Annex and Parsonage Cottage are slightly behind.
- Russ Kemp stated that we have to submit our re-calculations of our operating subsidies for next year, which begins July 1, 2000.  It starts out with a figure which represents our expenses for 1977 factored up and then take our total allowable expenses plus utilities and reduce it by and estimate of what we will charge our residents in rent and essentially the balance with a few adjustments represents what our operating subsidy will be for next year.  In general we are forecasting a 7 ½ % increase mostly as a result of HUD tells us that they are going to fund 96 ½ % of our computed operating subsidy.  They were only funding 92 ½%.

Motion to approve the performance funding calculation of the operating subsidy by Allan Bernard and seconded by Darlene Gerald with all Commissioners present voting affirmatively.

Public Relations:

- Sue McClenachan stated that she, Benjamin Little, and Darlene Gerald are going to the NAHRO Conference in Salt Lake City, UT.  If any one else is interested in going to Salt Lake City, UT or the conference in the fall in Phoenix, AZ, please let Maria Morris know.

Personnel:   Executive Session

Maintenance:

- Todd Cozolino referred to his maintenance report and stated that the main contracts right now are Quarry Knoll I of Painting & Woodwork, Quarry Knoll I bathroom mock ups are scheduled for tomorrow.  Wilbur Peck Sprinklers are still in the Town approval process.
- Sue McClenachan asked if there was a new architect for Agnes Morley Heights parking.
- Todd Cozolino we did an initial look at it previously and we walked the property.
- Allan Bernard asked if he had any sense of the time parameter when these projects will all be done.
- Todd Cozoliono stated that it was hard to say.  The current projects have a 180  day window once executed.  Basically once the bidding its 240 days from starting to completion.  Some are part of the 5 year projection.

Tenant Selection:

- Terry Mardula stated that he would like to set up a meeting for next month.
- Sue McClenachan asked Maria Morris to set up the meeting.

Greenwich 0036  Housing