UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**ORIGINAL**

URSULA MILDE,                          :
              **Plaintiff**         :    **CIV NO. 3:00CV2423 (AVC)**
                         :
v.                                     :
                         :
THE TOWN OF GREENWICH;                 :
HOUSING AUTHORITY OF THE               :
TOWN OF GREENWICH;                     :
THE HOUSING AUTHORITY OF THE           :
TOWN OF GREENWICH BOARD OF             :
COMMISSIONERS; and                     :    **June 18, 2004**
BENJAMIN LITTLE, CEO,                  :
                         :
           **Defendants.**        :

**FILED 2004 JUN 18 P 3:50 U.S. DISTRICT COURT**

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Milde's motion for summary judgment confirms there is no dispute over the *material* facts in this case. There is a dispute, however, over the quality and quantum of evidence required to prove Plaintiff's claims as a matter of law.

Milde continues to focus on immaterial issues. Defendants have never disputed that Milde was qualified to perform her position as Administrator and, other than her refusal to follow Ben Little's directives, performed well as Administrator. Milde nevertheless presents 21 paragraphs of "facts" in support of her claim that she was "highly qualified". These "facts" are irrelevant because they do not dispute or undermine the underlying (and undisputed) reasons for Milde's termination.

Milde presents 87 paragraphs of purported "facts" in support of her claim that Ben Little performed poorly as CEO of the Housing Authority. Again, even assuming these

"facts" were true, they provide no probative value on the ultimate issues before the Court, whether Defendants discriminated or retaliated against Milde in violation of federal or state law. Even assuming Little acted unethically or even illegally in executing contracts with vendors or consultants, even assuming those actions violated his contractual and fiduciary obligations to the Housing Authority, even assuming they were terminable offenses, these "facts" do not constitute direct or indirect evidence of intentional discrimination or retaliation against Milde. They are completely collateral to this litigation. They have no probative value. They miss the mark completely.

During discovery, the Court gave Milde an additional opportunity to prove her case by exploring whether Little's employment was terminated because the Board became dissatisfied with his handling of Milde. Now, having confirmed that there exists no evidentiary support for such a "theory", Milde resorts to attacking Little's performance generally on issues wholly unrelated to Milde. This unconventional method of proving intentional employment discrimination and retaliation has no basis in our law; certainly Milde offers no such law to this Court. Instead, Milde cites cases relating to an employer's departure from policy and practices in its dealing with an employee. This is much different than the theory Milde advances.

Milde cites her own conclusory, unsupported "beliefs" and opinion that she was discriminated against in support of her motion. Her motion all but ignores that she was replaced by two females and that the first individual was older than her. Milde even cites testimony by Mary Ann Vlymen, her replacement, that she was not hired with the intent to replace her.

It would be one thing if Milde merely presented this "evidence" to oppose Defendants' motion for summary judgment (which she does, ironically, by claiming that all of the 386 facts she claims are *undisputed* for purposes of this motion, are "material facts that are *in dispute*" for purposes of opposing Defendants' motion for summary judgment). Milde's motion

is specious, especially given the fact that she was in receipt of Defendants' motion before her papers were filed. Milde has over-litigated this case from the beginning. The Court should deny Milde's motion, grant Defendants' Motion for Summary Judgment, and dismiss Milde's unsupported claims as a matter of law.

## ARGUMENT

Plaintiff fails to present evidence to defeat Defendants' Motion for Summary Judgment, much less require judgment in her favor. All of her claims fail, as a matter of law.

### POINT I

### THE COURT SHOULD REJECT ALL OF PLAINTIFF'S 386 ALLEGEDLY "UNDISPUTED" FACTS BECAUSE SHE CLAIMS THEY ARE "DISPUTED" IN HER SUBSEQUENT SUBMISSION TO THE COURT.

Plaintiff's Statement of Facts submitted in *opposition* to Defendants' motion for summary judgment asserts that the 386 facts set forth as *undisputed* in support of *her* motion for summary judgment are now, in fact, *disputed*. The Court should deny Plaintiff's motion, as a threshold matter, based on the inconsistent positions Plaintiff has taken before this Court. Given Plaintiff's inconsistent position concerning the facts, the Court also should adopt the facts presented by Defendants in this matter.

### POINT II

### PLAINTIFF FAILS TO PRESENT EVIDENCE OR LAW TO SUSTAIN HER BURDEN OF PROVING INTENTIONAL GENDER OR AGE DISCRIMINATION.

Plaintiff's assortment of conclusory, argumentative and unsupported "factual" statements in her 386 paragraph Local Rule 56(a)1 Statement completely fail to establish judgment for Plaintiff as a matter of law and should be disregarded by the Court. "[A]llegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule

3

56.1 Statement." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73-74 (2d Cir. 2001).[1]  A Local Rule 56.1 Statement is not a vehicle for making factual assertions that are not otherwise supported by the record. Id. "[W]here the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." Id. (internal citations omitted). Statements in a Rule 56(a)1 Statement are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting evidence. See Epstein v. Kemper Insurance Companies, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002).  "Rather than scrutinizing each line and discussing whether they contain conclusory allegations, legal arguments, or hearsay, the [C]ourt [should] only consider evidence that is admissible. Id. (quoting Northrop Grumman Corp., 37 F. Supp. 2d 556, 569 (E.D.N.Y. 1999)).  Here, the purported "evidence" presented by Plaintiff is unsupportable and fails to establish judgment for Plaintiff as a matter of law.

A.    **Milde Fails To Establish Even a Prima Facie Case of Gender or Age Discrimination.**

Milde does not set forth evidence sufficient to establish the fourth element of her prima facie case. (See Pl.'s Mem. at 10) Instead, Milde relies upon alleged evidence that Defendants' asserted legitimate, nondiscriminatory reason for reprimanding and terminating Milde is a "pretext". (See Pl.'s Mem. at 10) However, Milde cites no law to suggest it is permissible to "merge" this analysis to establish a prima facie case of intentional discrimination. In fact, Defendants' burden of production, of articulating a legitimate, nondiscriminatory reason for its action, is triggered only *after* Milde establishes a prima facie case.  Milde misapplies Reeves v. Sanderson Plumbing, 530 U.S. 133, 141 (2000) on pages 10-11 of her Brief.  Reeves permits a plaintiff to rely upon the evidence presented in support of a prima facie case to prove

---

[1]     The requirements of District of Connecticut Local Rule 56(a)1 are identical to those contained in Local Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York.

"pretext"; it does not hold that a prima facie case can be made by anticipating and rebutting an employer's legitimate, nondiscriminatory explanation with alleged evidence of "pretext".

Milde glosses over the fact that her replacements were both female and that Vlyman was even older than Milde.   On page 19 of her Brief, Milde suggests that Vlyman was hired "in order to build a defense to this litigation." (Pl.'s Mem. at 19.)   Milde offers no admissible evidence in support of this theory.  Plaintiff's Facts No. 151 and No. 154 cited in support, merely assert that Vlyman had previously been retired before she was hired by the Housing Authority.  Plaintiff also cites the fact that four months later, the position was filled by Penny Lore, on April 9, 2000. (Pl.'s Mem. at 19).  As a threshold matter, it is undisputed that Vlyman took over as Administrator at the end of September 2000. (Vlyman Tr. 20:16-22).  Lore did not assume the Administrator position until more than six months later.  Moreover, Plaintiff offers no evidence to challenge Vlyman's testimony that she voluntarily informed the HATG that she would not continue on as Administrator due to her husband's illness. (Vlyman Tr. 26:3-10)

### B.    Even if Milde Could Establish a Prima Facie Case, Her Evidence of Pretext Does Not Withstand Legal or Factual Scrutiny.

The heart of Milde's brief is her presentation of alleged evidence of "pretext".  As illustrated below, the "evidence" she presents is either: a) not evidence at all but rather, unsupported conclusory opinions or statements by herself and other former employees who are unable to "bind" Defendants by their testimony; b) not probative because it does not support a reasonable inference of pretext; or c) not supported by the record because the transcripts dispute Milde's characterization of the record.

5

1.    **Milde's subjective feelings of discrimination and disagreement with Little's review and disciplinary reprimand are not sufficient to carry her burden.**

Milde presents this Court with no case law where an employee has been granted summary judgment on a claim of intentional discrimination or retaliation. Such cases are exceedingly rare, especially in a case such as this, where the employee seeks to prove intentional discrimination and retaliation through indirect evidence and the decision maker has expressly denied during his deposition that his actions were motivated by any of the protected classifications included in Plaintiff's claim. Specifically, during his deposition, Little denied: a) considering Milde's gender when making any adverse decisions concerning her employment (Little Tr. 281:4-6); b) considering Milde's age when making any adverse decisions concerning her employment (Little Tr. 281:7-10); c) considering Milde's right or entitlement to protected free speech when making any adverse decisions concerning her employment (Little Tr. 281:15-18); and d) considering Milde's participation in any protected activity, including but not limited to protests about protected free speech, when making any adverse decisions concerning her employment (Little Tr. 281:23-282:3). Little also denied being intimidated or threatened by older, more competent females. (Little Tr. 283:2-7).

By contrast, because she bears the burden of persuasion, Milde's subjective feelings of discrimination and disagreement with the review are not enough, as a matter of law, to support judgment in her favor. In Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998), the Second Circuit affirmed judgment as a matter of law for an employer following a defense verdict on a claim of intentional age discrimination under the ADEA. In doing so, the Court clarified that an employee's subjective feelings have little, if any, value to such a claim:

> And even if the jury could find that the explanation offered by Sam's Club was absurd, it is hard to see how this would add much of significance to Norton's case.... At the same time, it is easy to see how a reasonable person could conclude from the facts of this

6

> case that it was *wrong* for Sam's Club to fire Norton.... But the
> ADEA does not make employers liable for doing stupid or even
> wicked things; it makes them liable for *discriminating*, for firing
> people on account of their age.

145 F.3d at 119 (emphasis in original).

As in <u>Norton</u>, Milde's entire claim centers on her subjective disagreement with Little concerning the appropriateness of her actions regarding the hiring of a recreation coordinator. As in <u>Norton</u>, Milde's claims fail as a matter of law.

### 2. Milde's "facts," even assuming they are true, do not support an inference of intentional discrimination or pretext.

Milde argues pretext exists because Little falsely accused Milde of lying when she stated in her April 24, 2000 memo that the recreation coordinator was previously approved by the Board. (<u>See</u> Pl.'s Mem. at 11-12) The undisputed facts clearly establish that Parsonage Cottage has never hired an in house recreation coordinator, and Little understood Milde's memo as suggesting that the Board had approved a decision to stop using the service of CCI. Even if Milde did not intend her statement to be read that way and she was truly referring to the Board's approval in 1996 of a job description, the overwhelming evidence is that Little interpreted her memo differently. Milde's argument that the Board's initial approval of a "job description" for an in-house recreation coordinator gave Milde open ended approval to stop using an outside vendor and hire an in-house recreation coordinator whenever she chose is not only unpersuasive, it is irrelevant because Little did not interpret it that way. This is especially significant given the fact that the requirements for the in-house position Milde posted were admittedly *different* than those that appeared on the "job description" initially approved by the Board, and Milde did *not* engage in further discussion with the Board or Little about such changes. This "evidence" does not establish that Little falsely accused Milde of anything.

7

In support of her "merged" prima facie and pretext arguments, Milde claims that "[r]emember, it takes two people to hold a conversation and an argument." (Pl.'s Mem. 13). Even accepting this as true, it is not affirmative evidence of intentional discrimination, retaliation, whether it be part of a prima facie case or a pretext case. If anything, it is an unabashed acknowledgment of the communication difficulties Milde had with Little.

Milde cites Little's purported concession about an unemployment compensation finding that Milde was not "willfully insubordinate" as an admission that Milde was not willfully insubordinate. (Pl.'s Mem. at 13.) Defendants disagree with Milde's view of the probative value of such testimony for the point being made.

Milde's Brief focuses heavily on "Defendant Little's own departures from the Defendant's policies and procedures." (Pl.'s Mem. at 13.) Plaintiff readily quotes cases allegedly in support of this theory but the quotes concern departures by employers *from their usual employment practices and procedures "in dealing with that particular employee."* (See Pl.'s Mem. at 13-14, quoting Norville v. Staten Island University Hosp., 196 F.3d 89, 97 (2d Cir. 1999)).

All of the alleged "facts" Milde presents on pages 14 to 16 of her Brief deal with alleged departures by Little of practices that have nothing to do with Milde. Milde accuses Little of unethical conduct and misuse of federal and state monies, breach of fiduciary duty of care and loyalty with regard to contracts with a vendor. (Pl.'s Mem. 14.) Milde accuses Little of breaching the terms of his employment agreement by these actions. (Pl.'s Mem. at 14.) Milde accuses Little of improperly creating new Security Officer position. (Pl.'s Mem. at 15.) None of these accusations have any probative value concerning the issue of whether Little's explanation

for his reprimand and termination of Milde is pretexual. Plaintiff has not cited any law for this position.[2]

Concerning Lore, Plaintiff claims pretext based on the absence of any disciplinary or adverse action by Little toward Lore. (Pl.'s Mem. at 19-20). This is not probative of intentional discrimination or retaliation. Plaintiff offers no evidence to support a claim that Lore disregarded Little's directives or failed to communicate with Little to his satisfaction. As Plaintiff concedes, Lore admitted she had absolutely no problems communicating with Defendant Little about her position. (Pl.'s Mem. at 20 citing Pl.'s Fact No. 171). Moreover, since Penny Lore is a woman, her alleged "more favorable treatment" further defeats Plaintiff's claim of pretext for gender discrimination.

### 3.    Milde's characterization of "facts" are inconsistent with the record.

Many of the "facts" Milde presents in her summary judgment papers are not supported. For example, Milde does not present evidence of performance reviews received by other managers, much less that Milde was treated differently than male managers. (See Pl.'s Mem. at 9 and Pl.'s Fact No. 189). Milde was not the only female manager. (Compare Pl.'s Mem. at 9 and Pl.'s Fact No. 185 (citing Little Tr. 275) with Little Tr. 276:22-25).

Milde asserts that a private investigator wrote the disciplinary reprimand. (See Pl.'s Mem. at 9-10; Pl. Fact Nos. 190, 67) Little specifically denied this. (Little Tr. 222:14-21). The cite Milde offers refers to testimony by Little about a report, not a review, prepared by Saccente. (Little Tr. 223:1-9). Little actually testified that the report addressed the "evaluation of the connection between CCI and what was said about the recreation coordinator." Milde

---

[2]    While Milde purports to support these "facts" with testimony by McClenachan, a review of the record reveals that McClenachan's testimony was in response to hypothetical questions and that defense counsel continually interposed objections to those hypothetical questions. The objections have not been ruled on from the record and, therefore, Milde has not supported her motion with admissible evidence. Defendants deny that McClenachan's testimony stands for the propositions Milde presents to this Court.

asserts that the disciplinary reprimand and 90 day notice to improve was false. (See Pl. Mem. at 11). She claims it was false because Saccente wrote it. (Id.)  Again, the testimony Milde cites does *not* support this assertion. (See Pl.'s Facts No. 343 and No. 351 which cite pages 223 and 232 of Little's transcript.)

Milde argues pretext exists because Little criticized her for attempting to hire the recreation coordinator without Board authority, claiming she had the authority to hire employees. (See Pl.'s Mem. at 12 and Pl.'s Facts No. 329 and No. 332).  The facts cited do not support Milde's contention.  Milde continues to miss the distinction between hiring employees whose positions already exist and hiring an employee for a newly created position.  Milde cites no evidence to support a claim that she had the authority to create a new position on her own.  In fact, her lack of authority to do so is evidenced by her admission that she sought permission to hire the recreation coordinator from Little.

Milde further argues that pretext exists because Little purportedly "falsely" accused her of not reporting her efforts to hire a recreation coordinator.  Milde claims Little admitted she kept him "well informed of the actions she took with regard to the recreation coordinator position." (See Pl.'s Mem. p. 12)  None of the citations Milde provides supports this assertion.  The testimony Milde cites refers to discussions or memos *after Milde already had taken steps to fill the position*.  Little's criticism of Milde on this issue always has been and remains that Milde posted and interviewed for the recreation coordinator position and had discussions with CCI about no longer using their services *without getting his approval*.  In Little's view, after-the-fact discussions in memos did not amount to keeping him "well-informed".

Milde attempts to present this Court with an alleged "admission" by Little based on Little's testimony concerning a document that never existed. (See Pl.'s Mem. at 12 citing Pl.'s

Fact No. 232.)   As memorialized on pages 316:24-318:4 of Little's deposition transcript, Plaintiff's counsel presented Little with a two page document (i.e., Little Deposition Exhibit No. 30) and represented that the document was a two page memo by Milde to Little dated February 11, 2000. The second page of the document contained an express reference to the need to hire an in-house recreation coordinator. While Little testified he did not recall being told by Milde on February 11th of the need to hire a recreation coordinator, Plaintiff's counsel attempted to impeach Little by showing him this document. In response, Little merely acknowledged what the document stated on its face. (Id.).

However, as Milde conceded during her testimony, Little Deposition Exhibit No. 30 never existed in the form it was presented to Little during his deposition. (Milde Tr. 137:12-142:4.) Milde conceded that the second page of Little Deposition Exhibit No. 30 was *not* part of the one page memo dated February 11, 2000. Rather, the second page was part of a "status report" Milde submitted to Little on or after March 31, 2000. (Compare Little Tr. 316:24-318:4 with Milde Tr. 137:12-142:4). It is one thing for counsel to make an honest mistake during lengthy depositions. On the basis of this record, however, it is unimaginable that Milde would persist in presenting Fact No. 232 to this Court in support of a motion for summary judgment in her favor.

Further incidents of Plaintiff's mischaracterization of the record evidence abound. Milde claims Sue McClenachan "admitted" Milde did not write a new job description. (Pl.'s Mem. at 13, Pl.'s Fact No. 347.)   McClenachan's answer was, in fact, "not that I know of." (McClenachan Dep. 438:15-18.)

Citing Fact No. 346, Milde claims it is undisputed she followed the posting policy. (See Pl.'s Mem. at 13) Even a cursory review of the testimony cited, however, reveals that it does not support Milde's assertion. (See McClenachan Tr. At 439-440).

Based on this "evidence", Milde claims she has "successfully demonstrated that the May 30, 2000 reprimand is bogus and ridden with error." (See Pl. Mem. at 13). Defendants disagree and contend that her showing fails to even establish a prima facie case of discrimination, let alone require judgment for Plaintiff as a matter of law.

Plaintiff claims Russ Kemp testified that Defendants maintained a "policy of replacing older managerial workers who were previously disciplined with younger ones." (See Pl.'s Mem. at 20 citing Pl.'s Fact No. 149). A review of the testimony cited by Plaintiff however, reveals that Kemp did not so testify. The following is the exchange cited by Plaintiff in support of her claim that Defendants "admission":

Q:    Do you feel that, in your opinion, younger persons were given preferential treatment over you?

A:    I'm not sure of this, but I was replaced with a younger person.

Q:    How younger?

A:    I don't know. I never met the gentlemen. I never had a discussion with him.

The above analysis of Milde's gender and age discrimination claims confirms that the evidence does not require judgment in Milde's favor and, given the absence of evidence, summary judgment should be granted for Defendants.

## POINT III

### PLAINTIFF FAILS TO PRESENT EVIDENCE OR LAW TO SUSTAIN HER BURDEN OF PROVING RETALIATION FOR FILING GENDER AND AGE DISCRIMINATION CHARGES.

In support of her claim that judgment must be granted to her as a matter of law, Plaintiff claims she need only have a good faith belief that she was engaging in a protected activity "in order to be successful on a claim for retaliation." (See Pl.'s Mem. at 22 citing Reed

12

v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996)). Reed does not stand for this proposition but rather, holds that a plaintiff need not establish that the conduct complained of actually violated Title VII or the ADEA but must have a good faith belief that it does. See Reed, 95 F.3d at 1178.

Assuming such a good faith belief existed, and assuming she can make out a prima facie case of retaliation, Plaintiff must still carry her burden of proving that her filing of charges were a motivating factor in the HATG's decision to terminate her employment. See Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999) cert. denied, 530 U.S. 1242 (2000); Wanamaker v. Columbian Rope Co., 108 F.3d 462, 467 (2d Cir. 1997). Plaintiff cites the purported falsity of Little's explanation for the May 30, 2000 Disciplinary Reprimand as support for such an inference. Plaintiff's belated theory makes no sense because the Reprimand in question was issued *two months before* Milde filed her charges. As Milde concedes in her Brief, "[t]he asserted justification [for termination] was the same as that contained in the May 30, 2000 letter of reprimand." (See Pl. Mem. at 5). Plaintiff offers no evidence of a causal connection between the filing of charges and the termination.

The absence of any such evidence is perhaps best illustrated by Plaintiff's statement in her Brief that, "on information and belief", the termination occurred as a direct result of her filing her original dual charge of discrimination. (See Pl.'s Mem. at 6). Based on this alleged "evidence", Plaintiff claims that "[t]his Court must conclude that reasonable minds cannot differ whether the Defendants unlawfully discriminated against Ms. Milde on account of her protected activity." (See Pl.'s Mem. at 25). Again, Plaintiff attempts to completely eviscerate the quality and quantum of proof required to obtain summary judgment. Defendants contend that Plaintiff's showing cannot even defeat HATG's motion for summary judgment, let alone establish judgment in her favor.

## POINT IV

## PLAINTIFF FAILS TO PRESENT EVIDENCE OR LAW TO SUSTAIN HER BURDEN OF PROVING RETALIATION IN VIOLATION OF 42 U.S.C. §1983.

Plaintiff baldly claims she is entitled to summary judgment on this claim if she merely raises a genuine issue of material fact. (See Pl.'s Mem. at 26). She cites two cases, neither of which stand for this proposition. As demonstrated below, Plaintiff also fails to meet her burden on each of the elements of this claim.

A.    **Plaintiff Fails To Sustain Her Burden of Establishing That Defendants Acted Under Color of State Law.**

Milde cites 7 paragraphs of alleged factual assertions in support of her claim that Defendants acted under color of state law. (See Pl. Mem. at 27-28 citing Pl. Fact Nos. 194-200). The facts cited are insufficient to establish that the federal or state monies received by the Housing Authority were used to operate Parsonage Cottage.

Even assuming that the HATG acts under color of state law when it functions as a provider of public housing, Plaintiff cites no factual or legal support for her claim that the actions of the HATG concerning Parsonage Cottage's activities or, even more specifically, that personnel decisions concerning individuals working for Parsonage Cottage, are anything but private in nature. In Defendants May 13, 2004 Memorandum of Law filed in support of their Motion for Summary Judgment, they cited Johnson v. City of New York, 99 Civ. 0165, 2000 U.S. Dist. LEXIS 4698 (S.D.N.Y. April 12, 2000) for this proposition. (See Defs.' Brief in Support of Their Motion for Summary Judgment, at 32-33). Plaintiff's opposition papers filed on June 14th do not challenge the holding in Johnson. (See Pl.'s Opp. Brief at 33-35). In the face of Johnson, Plaintiff has not met her burden of proving that Defendants acted under color of state law in making the personnel decisions upon which Plaintiff is now suing.

**B.**    **Plaintiff Fails To Present Any Persuasive Factual Or Legal Arguments That She Engaged In Speech Protected By 42 U.S.C. §1983.**[3]

Plaintiff provides little factual or legal support for her claim that, as a matter of law, this Court must find that she engaged in protected speech. She ignores the undisputed fact that she herself characterized the dispute as a grievance against the CEO, Little. (Tr. 159:19-21; Milde Dep. Ex. 31). She also ignores the fact that the Board characterized the dispute as an "operational matter" and a "turf war". (Milde Dep. Ex. 30). Because this issue is unquestionably an issue of law to be determined by the Court, Milde's citation to Little's and McClenachan's testimony (again over Counsel's objection) concerning the requirements of Connecticut law, as well as her own opinion testimony and the opinion testimony of non-parties Crawford and Wisecup, are all irrelevant to the issues in this case. (See Pl.'s Mem. at 36).

As Defendants have noted in their principal moving brief, courts in this Circuit have rejected claims such as Milde's where the speech in question relates to day-to-day internal operations. See Cahill, 75 F. Supp. At 271. Plaintiff's claim that *any* complaint about internal operating procedure, including, for example, the complaints she made in her November 1997 memo to Tom Crawford, constitute protected speech, run counter to existing case law in this Circuit.

Plaintiff attempts to persuade the Court that failure to provide more than 15 hours of recreation services raises an important matter of public concern. She does this, notwithstanding her admission that Connecticut law does not require any particular number of hours of recreation services. She argues that "[i]t would be reasonable to presume that 37 hours per week is standard in the industry." (See Pl.'s Mem. at 31). Plaintiff's sole support for such an assertion is that Agata Wilinski (the individual Milde attempted to hire as recreation coordinator) testified that she worked at another allegedly "identical" facility where they provide 37 hours per

---

[3]    Plaintiff addresses this issue on pages 28 to 29 of her Brief.

week. (See Pl.'s Mem. at 31). As with her other causes of action, Plaintiff's sole reliance on

opinion testimony cannot support her claim for judgment in her favor as a matter law.

C.    **Plaintiff Fails To Present A Persuasive Factual Argument That She Was Subjected to an Adverse Employment Action In Retaliation for Engaging In Speech Protected by 42 U.S.C. §1983.**

Milde appears to claim that the adverse action she allegedly suffered in retaliation

for her exercise of free speech was the denial of an opportunity to present her "speech" to the

Board both before and during the May 22, 2000 Board meeting. (See Pl.'s Mem. at 29-32). As a

matter of logic, Plaintiff's theory makes little sense because one cannot be retaliated against for

engaging in protected speech if they have not even been afforded the right to engage in free

speech. Plaintiff has not presented this Court with evidence of any adverse actions resulting

from any alleged exercise of protected speech.

D.    **Plaintiff Fails To Meet Her Burden of Proving A Nexus Between Her Alleged Protected Speech and Any Alleged Adverse Employment Actions.**

Because Milde does not identify the adverse actions resulting from her alleged

exercise of protected speech, there is no need to even examine this element of Milde's claim.

However, Milde's citation to testimony by Sue McClenachan in an attempt to establish her claim

does little to help her cause. (See Pl.'s Mem. at 33) Specifically, the sole evidence presented by

Plaintiff in support of a "causal connection" is Plaintiff's Fact No. 372. This "fact" refers to

testimony by McClenachan recorded on page 207 of her deposition transcript. Plaintiff

characterizes that testimony as "McClenachan admitted [Plaintiff] was fired for her April 24,

2000 grievance, and *presumably for her protests on May 22, 2000.*" (See Pl.'s Mem. at 33)

(emphasis added). The following is McClenachan's actual testimony beginning on page 206 of

the transcript:

    Q:    But in fact how many grievances did Ms. Milde submit to
          the CEO.

A:      One, I guess.  That's the only one I heard of.

Q:      What was the grievance about?

A:      Tell me what you - - go ahead.

Q:      Wasn't the grievance about an issue that actually ended Ms. Milde's employment?

                    Objection.

A:      That - - no, that was not the reason she was, her employment was ended.

Q:      Isn't it in fact true that the grievance was, Exhibit number 12, was in regard to the recreation coordinator issue?  Is that not correct?

A:      The grievance was in regard to the recreation coordinator, yes.

Q:      And that was in no way connected to her termination?

                    Objection.

A:      It was perhaps one of the reasons for her termination.  It was not the only reason.

(See McClenachan Tr. 206-207).  This testimony is insufficient to defeat Defendants' motion for summary judgment on Plaintiff's Section 1983 claim, much less establish judgment as a matter of law in Plaintiff's favor.

**E.      Plaintiff Fails To Show That Her Speech Should Be Protected Under the Pickering Balancing Test.**

Milde offers nothing but argument about the alleged negative consequences of the purportedly poor recreation services about which Milde complained.  Milde goes so far as to suggest that "[p]resumptively, the Housing Authority as a whole and the recreation services provided to Parsonage Cottage residents are much improved today, due to the impact of this case."  (See Pl.'s Mem. at 34)  What makes this argument so curious, and confirms that an

17

application of a balancing test would justify the action Little took, is that: 1) the outside recreation vendor, CCI, has continued to provide the recreation services for PCSR (Lore Tr. 88:1-3); 2) CCI continues to provide 15 hours of recreation services per week, as it did when Milde was Administrator (Lore Tr. 88:25-89:2); 3) Mary Ann Vlymen did not make any recommendations regarding the "recreation coordinator issue" when she arrived because she felt that "recreation was okay" and 15 hours of services by CCI was sufficient (Vlyman Tr. 33:19-25); 4) Lore believes that is a sufficient level of services (Lore Tr. 89:3-5); and 5) Lore has had existing staff provide recreation services when CCI staff are not present, including on weekends. (Lore Tr. 89:6-90:12).

Given these undisputed facts, Defendants submit that, even assuming Milde satisfied the other elements of her claim, its actions were justified under the <u>Pickering</u> balancing test.

**F.      <u>Plaintiff Fails To Present Evidence of an Unlawful "Prior Restraint".</u>**[4]

As a threshold matter, Plaintiff does not present any evidence to suggest that the HATG applied the Media and Public Relations Policy to Milde, much less that they applied it differently for male managers.  (<u>See</u> Pl.'s Brief at 9 and Pl.'s Fact Nos. 184, 352, 353, 354) None of the citations to the record supports such a claim.  Plaintiff cites Kemp's testimony, specifically pages 207-210 of his deposition transcript.  Even assuming that Kemp's testimony could bind Defendants, he did not testify as Plaintiff alleges.  Judgment cannot be entered in Milde's favor based solely on her unsupported claims.  Milde's claim, as evidenced by her deposition testimony, is that her speech rights were violated by the *mere existence* of the policy. (Milde Tr. 254:24-255:2). Even assuming that the policy applied in this situation and, on its face restricted the speech Milde engaged in, and such speech was "protected speech" under §1983,

---

[4]      Plaintiff addresses this on pages 36 to 40 of her Brief.

Milde cannot recover under a "prior restraint" theory without showing that the policy *actually* restricted her speech.

There also is no claim that the policy, as written, even applies to Milde's comments to the Board at the Board meeting. Therefore, Plaintiff's arguments on pages 37-38 of her Brief regarding Little's alleged refusal to allow her to speak with the Board and/or retaliation for speaking to the Board, are wholly unrelated to a claim of "prior restraint."

It also is undisputed that Plaintiff spoke to the press on more than one occasion and Defendants issued no discipline that stated they were reprimanding Milde for speaking to the press. This is far different than the situation in Harmon v. City of New York, 140 F.3d 111 (2d Cir. 1998) cited by Plaintiff on page 37 of her Brief. In Harmon, the plaintiff was suspended expressly for violating a policy prohibiting communications with the media. In support of her claim, Plaintiff cites Fact No. 370 which merely references Little's September 8, 2000 termination letter. Nothing in that letter states that Milde was warned not to speak with the press. Moreover, nothing in the May 30, 2000 reprimand warns Milde not to speak with press, and neither document even reference the Media Relations Policy that Plaintiff claims imposed on her an unlawful prior restraint. In fact, the May 30th reprimand identifies one policy that Plaintiff failed to follow, which was the policy and procedure governing the filling of employment positions. (Milde Dep. Ex. 33). Similarly, the May 30th Corrective Directives memo only states that "press releases" should be submitted to Little. (Milde Dep. Ex. 33, p.3). There simply is no support for Plaintiff's claim that she was disciplined or terminated for violating the Media Relations Policy or that the policy imposed an unlawful prior restraint on her protected free speech.

G.    **Plaintiff Fails To Show That Defendants Are Not Entitled To Qualified Immunity.**[5]

Plaintiff claims that Defendants are not entitled to qualified immunity because "Milde's free speech rights were firmly established before and after the May 22, 2000 open meeting of the Defendant Board ... prior to her termination on September 8, 2000." (See Pl.'s Mem. at 35)  Plaintiff cites Fact Nos. 254-261, 263, 264, and 279 in support of this proposition. All of the testimony cited in these alleged "facts" merely confirms Defendants knowledge that Milde was complaining about not being able to hire a recreation care coordinator.  This is insufficient to establish that Defendants were on notice that Milde was engaged in protected speech.  This was clearly a dispute about internal operations of the PCSR and not a "matter of public concern."

Plaintiff further claims that "Defendant Little admitted that he understood Ms. Milde was engaging in protected speech regard [sic] her protests about the recreation coordinator issues at Parsonage Cottage."  A review of the record citation to Little's deposition testimony, however, does not support Plaintiff's contentions:

> Q:    Did you ever take Ms. Milde's participation in any protected activity, i.e., protests about free speech, etc., when rendering any adverse decision about her employment?
>
> Objection.
>
> A:    No.
>
> Q:    Were you aware that Ms. Milde engaged in protected activity regarding her free speech?
>
> Objection.
>
> A:    No.

---

[5]    Plaintiff addresses this issue on pages 34 to 36 of her Brief.

Q:    Did she in fact tell you she was informing you about her right to talk to the Board of Commissioners about the CCI contract and the recreation coordinator position?

A:    Say that again?

Q:    Did she in fact tell you that she was asserting her rights to free speech regarding the recreation coordinator position to the Board of Commissioners?

A.    The free speech word wasn't there. If she was exercising her right to talk, grievance, bring a grievance in front of the Board of commissioners, then the answer is yes.

(Little Tr. 281-282). Little's testimony hardly supports Plaintiff's claim that he was on notice of any purported protected speech by Milde, and clearly confirms his knowledge that Milde was complaining about their internal dispute over whether to hire an in-house recreation coordinator. This is insufficient to establish that Plaintiff's rights were "clearly established" or that Little is not entitled to qualified immunity as a matter of law.

## CONCLUSION

Nothing contained in the 386 paragraphs of Plaintiff's Local Rule 56(a)1 Statement changes the determinative issues on the parties' respective motions in this case. Plaintiff was not discriminated against on the basis of age or gender, was not retaliated against in any way, and did not engage in constitutionally protected speech. Given the complete lack of admissible evidence presented by Plaintiff - - regardless of the theory of liability alleged - - Defendants respectfully request this Court to deny Plaintiff's motion for summary judgment, grant Defendants' motion for summary judgment, and dismiss this action as a matter of law.

Respectfully submitted,

DEFENDANT HOUSING AUTHORITY OF THE
TOWN OF GREENWICH; THE HOUSING
AUTHORITY OF THE TOWN OF GREENWICH
BOARD OF COMMISSIONERS; AND BENJAMIN
LITTLE, CEO

By: _____

    Francis P. Alvarez (CT 10350)
    alvarezf@jacksonlewis.com
    JACKSON LEWIS LLP
    One North Broadway
    White Plains, NY 10601
    Phone: (914) 514-6149
    Fax:  (914) 328-1882
    Their Attorneys

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| URSULA MILDE,<br><br>          **Plaintiff**<br><br>v.<br><br>THE TOWN OF GREENWICH;<br>HOUSING AUTHORITY OF THE<br>TOWN OF GREENWICH;<br>THE HOUSING AUTHORITY OF THE<br>TOWN OF GREENWICH BOARD OF<br>COMMISSIONERS; and<br>BENJAMIN LITTLE, CEO,<br><br>          **Defendants.** | CIV NO. 3:00CV2423 (AVC) |

## CERTIFICATE OF SERVICE

A copy of the foregoing Defendants' Memorandum Of Law In Opposition To Plaintiff's Motion For Summary Judgment was served via Federal Express, this 18th day of June 2004, on counsel for Plaintiff at the address listed below:

Mark P. Carey, Esq.
Carey & Associates P.C.
71 Old Post Rd.
Southport, CT 06490

Francis P. Alvarez (CT 10350)