UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| URSULA MILDE, | : | CIV NO. 3:00CV2423 (AVC) |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE TOWN OF GREENWICH; | : | |
| HOUSING AUTHORITY OF THE | : | |
| TOWN OF GREENWICH; | : | |
| THE HOUSING AUTHORITY OF THE | : | |
| TOWN OF GREENWICH BOARD OF | : | |
| COMMISSIONERS; and | : | July 24, 2006 |
| BENJAMIN LITTLE, CEO, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE RENEWED MOTION FOR SUMMARY JUDGMENT**

I.      INTRODUCTION

On May 30, 2006, the United States Supreme Court reversed the judgment of the Ninth Circuit in a "free speech" claim filed under 42 U.S.C.§ 1983. Garcetti v. Ceballos, ___ U.S. ___, 126 S. Ct. 1951 (2006). The Supreme Court found the Ninth Circuit conducted a First Amendment analysis under Pickering v. Board of Educ., 391 U.S. 563 (1968) and Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983), but it did not consider whether the speech was made in Ceballo's capacity as a citizen. After reviewing the undisputed facts, the Court found that Ceballo's speech was not protected by 42 U.S.C. § 1983 because the speech was made as part of his professional activities and, therefore, not in his capacity as a citizen.

Like the Ninth Circuit in Ceballos, in its decision denying Defendants summary judgment on Plaintiff's "Free Speech" claim, this Court did not consider whether Plaintiff's

speech was made in her capacity as a citizen. Rather, like the Ninth Circuit in <u>Ceballos</u>, the Court analyzed only whether the speech raised a matter of public concern and whether, under the Supreme Court's <u>Pickering</u> analysis, the speech was outweighed by the disruption it caused.

We respectfully request leave to renew Defendants' motion for summary judgment to show that, under the standard adopted by the Supreme Court in <u>Ceballos</u>, Plaintiff's remaining claim fails as a matter of law. Because this is a discrete and dispositive issue - - only one count remains in this case - - the evidence bearing upon the issue's resolution can be presented through Plaintiff's sworn deposition testimony and internal memos she authored. A trial date has not been selected. Granting Defendants leave to renew their motion for summary judgment on this discrete issue would be appropriate in these unique circumstances.

## II.    ARGUMENT

Renewing a previously denied motion for summary judgment is proper where new controlling case law establishes that plaintiffs cannot, as a matter of law, sustain their claims. *See* <u>Epstein v. Kalvin-Miller International, Inc.</u>, 100 F. Supp. 2d 222 (S.D.N.Y. 2000). *See also* <u>Remington Products, Inc. v. North American Philips, Corp.</u>, 755 F. Supp. 52 (D. Conn. 1991). In <u>Epstein</u>, a defendant renewed its motion for partial summary judgment in an employment discrimination case under the Americans with Disabilities Act (ADA). On October 15, 1998, the Court denied defendant's motion for summary judgment. On January 15, 1999, the parties submitted their pretrial order and the case was marked ready for trial. On June 29, 1999, defendant sought leave of Court to renew its motion for summary judgment in light of three decisions rendered by the U.S. Supreme Court while the case was awaiting trial. Over plaintiff's objection, the district court granted defendant leave to renew its motion for summary judgment

2

on plaintiff's ADA claim. The motion was fully submitted to the Court on October 19, 1999, and on June 21, 2000, the court granted in part and denied in part defendant's renewed motion.

As in Epstein, this matter is awaiting trial, however, a trial date has not been selected. As in Epstein, where the Supreme Court's rendering of the Sutton trilogy of ADA cases created new controlling law, the Supreme Court has created new contolling law in Ceballos. Like Epstein, this Court should grant Defendants leave to renew their motion for summary judgment so the issue can be fully submitted to and considered by the Court.

In Ceballos, the plaintiff was a calendar deputy in a district attorney's office. A defense attorney contacted Ceballos about a pending case claiming there were inaccuracies in an affidavit used to obtain a critical search warrant. Ceballos, __ U.S. __, 126 S. Ct. at 1955. Ceballos investigated the allegations, spoke to the warrant affiant, a deputy sheriff, but was not satisfied concerning the perceived inaccuracies in the warrant. *Id.* Ceballos relayed his concerns to his supervisors, and followed up by sending a memorandum recommending dismissal of the case. Ceballos, __ U.S. __, 126 S. Ct. at 1955-56. A meeting was later held with Ceballos' supervisors, the warrant affiant and other employees from the sheriff's department. Ceballos, __ U.S. __, 126 S. Ct. at 1956. The meeting allegedly became heated, with one lieutenant sharply criticizing Ceballos. *Id.* Despite Ceballos' concerns, the prosecution proceeded and defense counsel filed a motion to challenge the warrant. *Id.* At a hearing on the motion, defense counsel called Ceballos to testify, and Ceballos recounted his concerns about the warrant. *Id.* The trial court rejected the challenge to the warrant but following these events, Ceballos was reassigned from his calendar deputy position, transferred to another courthouse, and denied a promotion. *Id.* Ceballos claimed these actions were in retaliation for the aforementioned speech.

Even though the Ninth Circuit found that Ceballos speech was a matter of public concern and the Pickering balancing test could not be resolved on a motion for summary judgment, the Supreme Court found the Ninth Circuit did not address the critical issue. The controlling factor was that Ceballos' expressions were made pursuant to his duties as a prosecutor. Ceballos, __ U.S. __, 126 S. Ct. at 1959-60. "That consideration – the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case – distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline." Ceballos, __ U.S. __, 126 S. Ct. at 1960. Even if the subject matter of the speech related to a matter of public concern, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Ceballos, __ U.S. __, 126 S. Ct. at 1960.

While this Court considered: 1) whether the speech raised a matter of public concern (deciding that it did); and 2) whether under the Pickering balancing test, the public interest served by Plaintiff's speech was outweighed by the disruption caused by her speech (deciding that a triable issue existed on this point as well), the Court did not consider whether Milde spoke as Administrator of Parsonage Cottage Senior Residence (PCSR) when she engaged in her allegedly protected speech. Milde v. Housing Authority of the Town of Greenwich, 3:00-cv-2423 (AVC) at pp. 37-39.

Defendants request an opportunity to present a full record showing Milde spoke solely as the Administrator of PCSR. Among other things, Milde testified she considered the decision to hire the recreation coordinator her responsibility because the operating license for Parsonage Cottage identified her as the "person in charge" and, as the "person in charge", it was

her responsibility, not Little's, to determine whether adequate recreational services were being provided. (Milde Tr. 637:6-638:1; 638:10-639:3).

In an April 26, 2000 memo to Defendant Benjamin Little, on which she copied the Defendant Board of Commissioners, Milde wrote the memo to explain to Little why the recreation issue was so vital. (Milde Tr. 324:7-19)  Milde wrote, "it is my responsibility both legally and ethically as administrator of this licensed home to safeguard the rights and well-being of the residents who entrust themselves to our care.  This is expressed in the Code for Licensed Homes, Section C, Administration." (Milde Tr. 324:15-19, Def.'s Ex. 20).  Milde's memo quoted portions of the Code concerning the provision of recreation services.  Milde quoted the Code to "remind [Little] that we had to follow a code under our license." (Milde Tr. 327:17-18)  Milde's memo also addressed her concern about the Board's failure to communicate its decision not to hire an in-house recreation coordinator, instead leaving her to learn about it through a newspaper article.  In her memo, Milde wrote, "I can only conclude that the way in which you and the board proceeded regarding this matter and the way the decision was 'uncommunicated' to me (I learned it first through the newspaper) showed a high disregard for me and for my staff, but more importantly it demonstrated a lack of concern for the needs of the residents whom we have, after all, pledged to serve." (Milde Tr. 334:16-24, Def's Ex. 20).  When asked by her counsel, "Are you protesting about this recreation issue to Mr. Little in this letter?", Milde responded, "Yeah." (Milde Tr. 336:3-6).

Milde testified, "I really felt that somebody has to speak for the residents. Throughout that whole time I always felt that there has to be somebody who has to stand up for the residents and say, 'This is the right thing to do.'  And I really felt that I was the person because I was the administrator and the residents couldn't do that on their own." (Milde Tr.

336:16-22)  Milde later testified, "I believed that I – that there was a problem, and I believed it was my responsibility to come up with a solution for this problem." (Milde 639:10-12)  Milde explained Little indicated to her that the decision to hire an in-house recreation coordinator "wasn't his decision, it was the board's decision.  And he prevented me to explain it to the board …. And I felt very strongly that I had the responsibility to advocate for these residents.  And I wanted to make the case for that and for explaining why and why I had come to that decision, and I was not allowed to do that."  (Milde Tr. 639:14-23).

Milde went to the Board on May 22, 2000 because she was frustrated about her inability to exercise her authority as Administrator of PSCR and to be heard by the Board on the issue and also because, under her license, she had to show that she attended all the open Board meetings as the Administrator of PCSR:

> On May 22, I went to an open board meeting, so I get this memo that the grievance hearing is cancelled. So I realize that the board and/or Mr. Little or both, whatever, that do not want to hear me on this matter.  And I was very upset about that because it was advocating for the residents at the cottage.  And it not only was my responsibility, but I felt it was very, very important that we hire an in-house coordinator for all the reasons that I outlined in all the previous memos, and the fact that I wasn't even being heard by the body who was supposed to make the decision about that was upsetting to me.  Because it indicated to me a lack of caring for the residents.  So I went to the open board meeting, and our nurse consultant was there and also Tammy, my assistant, the resident services coordinator, and at the end of the open part of the board meeting, I brought up that I wanted to be heard … and I was shouted down and … then the commissioner said that it had to be taken in up in executive session … I was at all the open meetings of the commissioners because under my license I had to actually produce evidence that I was there as the Administrator of Parsonage Cottage … so I was at all the open board meetings.

(Milde Tr. 83:10-84:20).

At the Board meeting, Milde said "something to the effect that, you know, when you hire a person to do - - to be an administrator and to run something and then you don't allow that person - - you give the person a responsibility but don't allow the person the authority, then what's the use of having that person? … I said, you know, what's the use of having a person who has the responsibility and not the authority or something like that." (Milde Tr. 278:18-279:5).

This and other evidence provides a strong argument that, under <u>Ceballos</u>, Milde was not speaking as a *citizen* when she spoke at the May 22, 2000 public board meeting but was making statements *pursuant to her official duties*. Similarly, Milde was interviewed by the Greenwich Time in her capacity as the Administrator of Parsonage Cottage Senior Residence -- that is what made the story noteworthy. The newspaper article quotes Milde as the Administrator and even contains the headline, "Official decries lack of recreation planner". (*See* Milde Tr. 261; Def.'s Ex. 66).

The Supreme Court noted in <u>Ceballos</u>, that "[e]mployers have heightened interests in controlling speech made by an employee in his or her professional capacity." __ U.S. __, 126 S. Ct. at 1960-61. The rationale being:

> Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission. Ceballos' memo is illustrative. It demanded the attention of his supervisors and led to a heated meeting with employees from the sheriff's department. If Ceballos' superiors thought his memo was inflammatory or misguided, they had the authority to take proper corrective action.

__ U.S. __, 126 S. Ct. at 1960-61.

In denying summary judgment in this case, the District Court also found that a trial issue existed concerning the causal connection between Milde's allegedly protected speech

and termination. Even if the Court, based on <u>Ceballos</u>, reversed its ruling on only some of Milde's statements, it might eliminate and thereby impact evidence on the issue of causation. For example, the Court previously held that Board Chairperson Sue McClenachan's testimony that Milde's grievance was "perhaps one of the reasons for her termination" was evidence creating a genuine issue for trial. If Milde's statements to the Board were not legally protected speech because they were made in her capacity as Administrator, the Court should revisit the sufficiency of the remaining proof on causation.

Defendants also ought to have the opportunity to show that Plaintiff acted in her official capacity when speaking at the Board meeting on May 22nd and giving interviews to a reporter on two occasions immediately following the May 22nd Board meeting.

## III.    CONCLUSION

<u>Garcetti v. Ceballos</u> significantly changes the standard courts must use to evaluate whether speech of public officials is protected under 42 U.S.C. § 1983. This Court did not apply the <u>Ceballos</u> standard. Before trying a case under the <u>Ceballos</u> standard, it would be appropriate to determine whether there is genuine issue of material fact for trial. Defendants suggest there is not and respectfully request the opportunity to present this narrow issue to the Court before the Court and parties devote substantial resources to trying this case.

Respectfully submitted,

DEFENDANT HOUSING AUTHORITY OF THE
TOWN OF GREENWICH; THE HOUSING
AUTHORITY OF THE TOWN OF GREENWICH
BOARD OF COMMISSIONERS; AND BENJAMIN
LITTLE, CEO

By: _____
Francis P. Alvarez (CT 10350)
alvarezf@jacksonlewis.com
JACKSON LEWIS LLP
One North Broadway
White Plains, NY 10601
Phone: (914) 514-6149
Fax:  (914) 328-1882
Their Attorneys

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| URSULA MILDE, : | **CIV NO. 3:00CV2423 (AVC)** |
| : | |
| **Plaintiff** : | |
| : | |
| **v.** : | |
| : | |
| THE TOWN OF GREENWICH; : | |
| HOUSING AUTHORITY OF THE : | |
| TOWN OF GREENWICH; : | |
| THE HOUSING AUTHORITY OF THE : | |
| TOWN OF GREENWICH BOARD OF : | |
| COMMISSIONERS; and : | |
| BENJAMIN LITTLE, CEO, : | |
| : | |
| **Defendants.** : | |
| : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Defendants'
Memorandum of Law In Support of their Motion for Leave to File a Renewed Motion For
Summary Judgment was served via facsimile and Federal Express, this 24th day of July 2006, on
counsel for Plaintiff at the address listed below:

> Mark P. Carey, Esq.
> Carey & Associates P.C.
> 71 Old Post Rd.
> Southport, CT 06490
> Fax No. (203) 255-0380

Susanne Kantor