UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URSULA MILDE, : | |
|                **Plaintiff** : | CIV NO. 3:00CV2423 (AVC) |
| : | |
| v. : | |
| : | |
| THE TOWN OF GREENWICH; : | |
| HOUSING AUTHORITY OF THE : | |
| TOWN OF GREENWICH; : | August 2, 2006 |
| THE HOUSING AUTHORITY OF THE : | |
| TOWN OF GREENWICH BOARD OF : | |
| COMMISSIONERS; and : | |
| BENJAMIN LITTLE, CEO, : | |
| : | |
|                **Defendants.** : | |

### DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56(a)(1), the Defendants Housing Authority of the Town of Greenwich, the Housing Authority of the Town of Greenwich Board of Commissioners, and Benjamin Little, CEO, hereby assert the following material facts that are not in dispute for purposes of their renewed motion for summary judgment on Plaintiff's remaining 42 U.S.C. § 1983 claim in her Revised Sixth Amended Complaint.

A.     **MILDE'S EMPLOYMENT HISTORY**

        1.     The Housing Authority hired Plaintiff Ursula Milde on September 30, 1996. (Tr. 8:18-19).[1]

        2.     The Housing Authority hired Milde as the Administrator of Parsonage Cottage Senior Residence ("PCSR"). (Tr. 8:20-22).

---

[1] These facts are assumed true for the purposes of the instant motion only. Throughout this Motion, "Tr. __" refers to pages of the transcript of Plaintiff's deposition. Copies of all relevant deposition transcript pages and exhibits cited herein are annexed to the Kantor Affirmation.

3. When hired, Milde believed she was in complete charge of the day-to-day operations of PCSR. (Tr. 18:21-25).

4. Milde believed she would report what she did to the Executive Director and the Deputy Director of the Housing Authority but she would make the decisions on everything that pertained to the operations of PCSR as long as they were within the guidelines of the law and PCSR's operating certificate. (Tr. 21:7-18).

### B. THE HOUSING AUTHORITY'S MANAGEMENT

5. In April 1999, Tom Crawford retired as Executive Director and Ben Little, the Deputy Director at the time, replaced Crawford. (Tr. 229:2-7).

6. Little later changed the title of his position to Chief Executive Officer. (Tr. 229:8-10).

### C. MILDE'S RELATIONSHIP WITH HATG MANAGEMENT AND HER "CONTROL" ISSUES.

7. Milde told Debra Littlejohn, an employee of PCSR, that the problem between Little and her was "who is in control." (Tr. 279:16-24).

8. Milde's six month battle with Little over the authority to control PCSR, however, was not the first one she waged. On November 30, 1997, Milde wrote a memo to Tom Crawford stating she was accountable and responsible for the PCSR under the PCSR's license. (Tr. 57:19-58:2, 64:8-13; Milde Dep. Ex. 4).

9. In the memo, Milde stated that: "[w]hen I was hired as the administrator of Parsonage Cottage Senior Residence, my understanding was that I would be responsible for all the aspects of operations at the residence." (Milde Dep. Ex. 4).

10. Milde further wrote that: "[s]ince my name is on the state license, I am, naturally accountable for the entire operation, a responsibility I do not avoid. However, there are

2

certain consequences which follow from this, which I think, need to be clearly understood by all." (Milde Dep. Ex. 4). Milde proceeded to "propose" a course of action in five areas: (1) Facility; (2) Budget; (3) Staffing; (4) Surveys and Audits; and (5) Communication. (Tr. 58:20-59:6) (Milde Dep. Ex. 4).

11. In a harbinger of the position she would adopt in 2000, Milde wrote: "[m]y 'modus operandi' generally is one of handling matters on my own . . . I work best if am given the authority . . . ." (Milde Dep. Ex. 4).

D. **THE INITIAL DISPUTE OVER HIRING AN IN-HOUSE RECREATION COORDINATOR**

12. Milde first raised the issue of hiring an in-house recreation coordinator for Parsonage Cottage at a senior staff meeting on February 3, 2000. (Tr. 94:8-23; 176:14-178:8).

13. When Milde raised the issue, Little did not say anything. (Tr. 178:4-5).

14. Milde understood that it was Little's "modus operandi" to listen to a staff member's report and not respond; and that sometimes Little did not respond until "much later". (Tr. 178:7-11).

15. According to Milde, sometimes Little would not respond at all; sometimes, when the person would take an action, if things went well, the matter was "done"; sometimes, if things did not go well, Little blamed the person. (Tr. 179:6-13).

16. On March 24, 2000, Little wrote Milde a memo referencing a number of concerns Little had about Milde's conversation about the recreation coordinator. (Tr. 92:17-93:17) (Milde Dep. Ex. 6).

17. Of the concerns listed by Little were: (1) how the individual would be paid; (2) the development of a proper job description for the position; and (3) if the position was allowable under the State. (Milde Dep. Ex. 6).

3

18. On March 25, 2000, Milde responded to Little's March 24th memo. (Tr. 95:25-96:25) (Milde Dep. Ex. 7).

19. In her March 25, 2000 memo, Milde cited Connecticut State Code regulations and an earlier job description she previously developed for the recreation coordinator position. (Tr. 95:25-96:25) (Milde Dep. Ex. 7).

20. Milde her March 25, 2000 memo to Little from: "Ursula Milde, Administrator, PCSR." (Milde Dep. Ex. 7).

21. On April 13, 2000, Milde wrote Little again concerning the Recreation Coordinator position. (Tr. 97:3-21) (Milde Dep. Ex. 8).

22. In the April 13, 2000 memo, Milde claimed to have found a "suitable candidate" for the recreation coordinator position. (Tr. 97:3-21) (Milde Dep. Ex. 8).

23. The April 13, 2000 memo to Little was addressed from: "Ursula Milde, Administrator, PCSR." (Milde Dep. Ex. 8).

24. On April 17, 2000, Little responded to Milde's April 13th memo stating that: "[t]he procedure that you have followed in hiring a Recreational Coordinator causes a few problems" and proceeded to list five specific concerns. (Tr. 97:22-98:10) (Milde Dep. Ex. 9).

25. The following day, Little presented the Board's Personnel Committee with a memo outlining his concerns about the hiring of full-time Recreation Coordinator. (Milde Dep. Ex. 11).

26. Of the concerns listed by Little included the fact that hiring someone for that position would cause an additional $24,593.82 annually to PCSR's budget. (Milde Dep. Ex. 11).

27. On April 24, Milde responded to Little's April 17th memo. (Milde Dep. Ex. 12).

28. In her April 24, 2000 memo, Milde explained how she had already developed a job description for a recreation coordinator, posted the position, and interviewed a candidate for the position. (Milde Dep. Ex. 12).

29. Milde wrote the April 24, 2000 memo to Little from: "Ursula Milde, Administrator, PCSR." (Milde Dep. Ex. 12).

30. Milde ended the memo by writing: "[l]et me assure you that I have proceeded with this not because I want to usurp your authority but because I know you are very busy and it is my responsibility to do what needs to be done and what is best for the residents at PCSR and the total operation." (Milde Dep. Ex. 12).

E. **MILDE'S ATTEMPTS TO PRESENT HER CASE TO THE BOARD**

31. On April 24th, after her request to present her issue regarding the in-house recreation coordinator position to the Board's personnel committee was denied, Milde wrote a memo to Little in which she requested a grievance hearing with the Board. (Tr. 82:13-18) (Milde Dep. Ex. 13).

32. In that memo, Milde wrote: "[s]ince the Executive Director prevented me from presenting the case to the Personnel Committee as I had requested, I have no other choice but to ask for a formal hearing." (Milde Dep. Ex. 13).

33. The substance of Milde's grievance was that she was not allowed to present the reason or the rationale for her plan to hire an in-house recreation coordinator even though she was told that the committee was the body that made that decision. (Tr. 82:18-23).

5

34.	Milde does not know who made the decision to deny her request to appear at the personnel committee meeting but the decision was communicated by Little. (Tr. 81:18-19).

35.	On April 26, 2000, Milde wrote another memo to Little regarding the hiring of the recreation coordinator and copied all the members of the Board. (Milde Dep. Ex. 20).

36.	In that memo, Milde wrote:

> It is my responsibility both legally and ethically as administrator of this licensed home to safeguard the rights and well being of the residents who entrust themselves to our care. This is expressed in the code for licensed homes: "Section (C) Administration (1)" . . . . "The proprietor or licensee of the institution shall be responsible for operation of the institution in compliance with these regulations." . . .
>
> Parsonage Cottage Senior Residence has been so successful in these first three years, and is so well regarded by residents' families, the professional community, as well as our licensor (i.e. the CT State Health Department), because I have taken this responsibility seriously and have found trained staff who are like minded and dedicated to the same principles. . . .The decision to hire an in-house recreation coordinator . . . was arrived at through careful deliberation and observation by our staff and myself, because we realize how much it would benefit the residents and meet their needs. . . . I can only conclude that the way in which you and the Board proceeded regarding this matter, and the way the decision was "un-communicated" to me (I learned it first through the newspaper) showed a high disregard for me and my staff. But, more importantly, it demonstrated a lack of concern for the needs of the residents whom we have, after all, pledged to serve. I like (sic) to remind you, therefore, that what matters is not your, or my, authority nor, "who is in charge here" but what best serves the residents of Parsonage Cottage Senior Residence. All of us, including you as the CEO of the managing agent, as well the Board of Commissioners, the Parsonage Cottage staff, and I, must always be cognizant of this responsibility.

(Milde Dep. Ex. 20).

37. About 15 days later, Milde received a memo stating that there would be a grievance hearing on May 15, 2000. (Tr. 82:23-83:3).

38. Shortly before the hearing, Milde received a fax from Mr. Little stating that the grievance hearing was cancelled but no explanation for the cancellation was provided. (Tr. 83:4-10).

39. When Milde arrived at the Board meeting on May 22, 2000, she was given a letter dated May 19, 2000 and signed by Barry Nova, the Board's Vice Chair, stating that her grievance had been denied and she was not going to have a hearing. (Tr. 83:10-12; 84:20-85:11).

40. The Board's letter, in part, stated:

> The subject of your request, i.e., the hiring of a Recreation Director at Parsonage Cottage, we believe, is an operations matter that should be discussed and resolved between you and the CEO of the Housing Authority of the Town of Greenwich to whom you report. The Board of Commissioners should not, and will not, become the arbiter in "turf wars" among Managers; nor will it usurp the responsibilities and accountabilities of Benjamin Little.

(Milde Dep. Ex. 30).

41. In response to the Board's denial of Milde's grievance, on May 23, 2000, Milde wrote a memo to the Board. (Tr. 159:19-21).

42. That memo, in part, read:

> **My grievance is a grievance against the CEO, who prevented me from presenting the reasons for my desire to hire an in-house Recreation Coordinator to the Personnel Committee, after he had informed me via a memo dated 4/17/00 that it was up to the Personnel Committee of the Board of Commissioners to make the decision.**

(Tr. 159:23-160:15; Milde Dep. Ex. 31) (emphasis in original).

7

F.  **THE MAY 22, 2000 BOARD MEETING**

43. The HATG board meetings follow Robert's Rule of Parliamentary Procedure. (tr. 163:10-12).

44. If someone wanted to speak during the meeting, the Chairperson had to recognize them. (Tr. 163:13-16).

45. Under the license for PCSR, Milde was required to attend all open Board meetings. (Tr.84:12-20).

46. When Milde began to speak at the Board meeting on May 22, 2000, Sue McClenachan, the Board Chairperson, told Milde more than once that she was "out of order". (Tr. 161:16-22).

47. Milde did not stop speaking but insisted that she wanted to be heard. (Tr. 161:23-25).

48. McClenachan then told Milde the matter should be dealt with in Executive Session. (Tr. 164:4-9).

49. Milde continued to speak and insisted she be permitted to come to an Executive Session. (Tr. 164:10-13).

50. The Board then permitted Milde to speak in Executive Session. (Tr. 164:14-16).

51. Milde also told the Board during Executive Session that she had opened the PCSR, had a track record with this, and was treated very unprofessionally throughout the whole process." (Tr. 165:5-9).

52. The day after the meeting, Milde sent a letter on PCSR letterhead to Barry Nova, the Board's Vice Chair, from "Ursula Milde, Administrator." (Milde Dep. Ex. 31).

8

53.     In her May 23, 2000 letter to Mr. Nova, Milde wrote:

> In response to your letter dated May 19, 2000, which you handed me last night, I want to clear up some inaccuracies. **My grievance is a grievance against the CEO, who prevented me from presenting the reason for my desire to hire an in-house Recreation Coordinator to the Personnel Committee, after he had informed me via a memo dated 4/17/00 that it was up to the Personnel Committee of the Board of Commissioners to make the decision.** . . . Through out my tenure as the administrator of PCSR, I have provided strong and consistent leadership and have made decisions which have benefited the residence, the individuals, and ultimately the HATG. I have a proven track record and have been trusted by the CT State Health Department which licenses us, by residents, their families and my staff and colleagues. It is therefore important that my and the PCSR staff's input is sought regarding decisions which affect PCSR. On another note, I do want to thank you personally, for listening to me at last night's executive session."

(Milde Dep. Ex. 31) (emphasis in original).

## G. LITTLE'S MAY 30, 2000 DISCIPLINARY REPRIMAND AND CORRECTIVE DIRECTIVES TO MILDE

54.     On June 2, 2000, Little provided Milde with a performance evaluation and two memos entitled, "Corrective Directives" and "Disciplinary Reprimand and 90 Day Opportunity to Improve". (Tr. 414:17-415:11; 166:2-15; 168:9-23) (Pl's Dep. Ex. 16; Milde Dep Exs. 33 and 34).

55.     On the review, Little provided Milde with an overall rating of 3.81 out of 7 on her performance review. (Tr. 419:9-22).

56.     In the Corrective Directives memo, Little wrote:

> Your actions regarding the issue of Recreational Coordinator are serious. You have failed to keep lines of communications open between you and me and therefore I have been unaware of your activities. You have evidenced a willful and intentional position of not recognizing that I

9

> am your supervisor. You have acted without the authority of myself or the Board of Commissioners. These, combined with your reluctance not to change, have caused me to consider disciplinary actions ranging from a written reprimand to possible termination. However, because of your dedication to the elderly residing at Parsonage, I have decided to only give a written reprimand which will be placed in your personnel file. In addition, I have decided to give you 90 days to take the following corrective actions . .

(Milde Dep. Ex. 33, p. 2).

57. Milde understood that if she did not do as directed by Little in the memo, she would be subject to further disciplinary action. (Tr. 168:4-8).

58. In the Disciplinary Reprimand, Little listed seven reasons for the reprimand, including insubordination. (Tr. 169:10-14).

59. Milde disagreed with Little's assessment of those seven items. (Tr. 169:15-17).

60. On page three of the Reprimand, Little stated that Milde gave the impression in her March 25th memo that the position of "recreational activities therapist" was in the planning stages. (Milde Dep. Ex. 34, p. 3).

61. In her March 25th memo, Milde did not tell Little she had already posted for the position (Tr. 604:3-10) and had not told that to Little prior to the March 25th memo. (Tr. 604:15-20).

62. In her March 25th memo, Milde did not mention that she had interviewed Agata Wilinski (Tr. 604:21-25) and had not mentioned this to Little prior to the March 25th memo. (Tr. 605:2-5).

63. Milde also unilaterally changed the degree requirement on the job posting from "associate degree required" to one where a degree was "not necessary but advisable." (Tr. 606:5-22).

64. Milde made this change without discussing it with Little. (Tr. 605:25-607:2).

## H.   MILDE'S RESPONSE TO LITTLE'S MAY 30, 2000 DISCIPLINARY REPRIMAND AND CORRECTIVE DIRECTIVES

65. Milde responded to the Disciplinary Reprimand with a five page memo that included eleven attachments. (Tr. 171:12-172:14) (Milde Dep. Ex. 35). Milde's response to Little's reprimand stated, in part:

> **You appear to interpret my carrying out my responsibilities, as delineated in my job description, with the independence and competence I have shown in the past three years and eight months as insubordination and lack of comunication. I believe that I have carried out my responsibilities within my job description conscientiously and competently.**

(Milde Dep. Ex. 35).

66. On the final page of this memo, among other things, Milde stated that she believed the Disciplinary Reprimand to be: (1) A violation of her contractual agreement as delineated in her job description . . .; (3) An attempt to undermine her authority as the administrator, who is responsible to the CT State Health Department, under our license, for all the operations at PCSR . . .; (5) In direct conflict with past messages of the Housing Authority and verbal statements by Little that Milde's work was very good; and (6) Indication of a difficult working relationship between Milde and Little. (Tr. 173:2-15) (Milde Dep. Ex. 35, p. 5).

11

67.  In her response, Milde also stated that Little had previously described her work as "very good". (Milde Dep. Ex. 35, p. 5).

68.  At the time she wrote her response to the Disciplinary Reprimand, Milde's relationship with Little was so poor that she suggested they use a mediator to work through their problems. (Tr. 174:12-25) (Milde Dep. Ex. 35, p. 5).

69.  Milde felt the only way she and Little could get anywhere was to have a third party that would be more objective, and believed a mediator was necessary to facilitate communication between her and Little. (Tr. 174:23-175:5).

70.  After she received the Disciplinary Reprimand, Milde did not have open communications with Little. (Tr. 352:21-25).

I.  **LITTLE'S DIRECTIVE THAT MILDE APOLOGIZE TO THE BOARD**

71.  On June 7, 2000, Little issued a memo to Milde directing her to prepare a written apology to the Board for her actions at the May 22, 2000 Board meeting. (Tr. 180:18-24) (Milde Dep. Ex. 38).

72.  On June 21, 2000, Little issued a second memo to Milde directing her to submit a written apology to the Board. (Tr. 191:9-192:11).

73.  Milde never apologized to the Board. (Tr. 181:14-17).

74.  On June 26, 2000, Milde submitted a memo to Sue McClenachan, the other members of the Board, and Little, responding to Little's request that Milde apologize. (Tr. 193:24-194:17) (Milde Dep. Ex. 45).

75.  In the memo, Milde provided six reasons why she could not "follow these directives". (Milde Dep. Ex. 45).

76.  Milde's June 26, 2000 memo stated:

12

> It is hard for me to understand for what I am being directed to apologize since I have not committed any act or engaged in any behavior which warrants an apology. I have neither used abusive language nor even raised my voice when I brought up a matter of vital concern for PCSR, which is my responsibility as the administrator.

(Milde Dep. Ex. 45).

In addition, Milde's June 26, 2000 memo stated that she could not

> **in good conscience, remain silent, nor will I be forced to apologize for performing my responsibilities as the administrator of PCSR to the best of my abilities and knowledge, as charged to me under our license.**

(Milde Dep. Ex. 45) (emphasis in original).

77. On June 30, 2000, Little wrote to Milde stating that he was "deeply disappointed" that she had not followed his prior directives to apologize to the Board. (Tr. 197:3-12) (Milde Dep. Ex. 47).

## J. LITTLE'S REQUEST THAT MILDE PARTICIPATE IN A DISCIPLINARY HEARING

78. In a letter to Milde dated August 21, 2000, Little stated he found Milde had made no attempt to comply with his Corrective Directives Memorandum of May 30, 2000, and since that time additional unsatisfactory performance issues had arisen. (Milde Dep. Ex. 58).

79. Little directed Milde to attend a disciplinary hearing in his office on August 23, 2000. (Milde Dep. Ex. 58).

80. Little advised Milde that, as a result of this meeting, disciplinary action, up to and including termination, might result. (Milde Dep. Ex. 58).

81. The disciplinary meeting was rescheduled to September 6, 2000. (Tr. 207-08).

13

82. Attorney Carey attended the meeting with Milde. (Tr. 207-08).

### K. LITTLE'S TERMINATION OF MILDE'S EMPLOYMENT

83. On September 8, 2000, Little wrote Milde informing her that her employment was being terminated effective that same day. (Milde Dep. Ex. 62).

84. Little wrote: "This action is based on inadequate and poor work performance and failure to comply with the policies, procedures, and regulations of the Housing Authority of the Town of Greenwich. These issues have been presented to you in writing and you have been given the opportunity to respond and comply with these policies, procedures, and regulations. You have failed to respond and actively resolve these issues and as a result of these actions have interfered with the efficient and effective operation of Parsonage Cottage." (Milde Dep. Ex. 62).

Respectfully submitted,

DEFENDANTS HOUSING AUTHORITY OF THE TOWN OF GREENWICH; THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH BOARD OF COMMISSIONERS; AND BENJAMIN LITTLE, CEO

By: _____
Francis P. Alvarez (CT 10350)
alvarezf@jacksonlewis.com

Susanne Kantor (CT 19556)
kantors@jacksonlewis.com

JACKSON LEWIS LLP
One North Broadway
White Plains, NY 10601
Phone: (914) 514-6149
Fax: (914) 328-1882
Their Attorneys

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URSULA MILDE, :<br>  :<br>    Plaintiff :<br>  :<br>v. :<br>  :<br>THE TOWN OF GREENWICH; :<br>HOUSING AUTHORITY OF THE :<br>TOWN OF GREENWICH; :<br>THE HOUSING AUTHORITY OF THE :<br>TOWN OF GREENWICH BOARD OF :<br>COMMISSIONERS; and :<br>BENJAMIN LITTLE, CEO, :<br>  :<br>    Defendants. :<br>  : | CIV NO. 3:00CV2423 (AVC) |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Defendants' Local Rule 56(a)(1) Statement In Support Of Renewed Motion For Summary Judgment was served via Federal Express, this 2nd ay of August 2006, on counsel for Plaintiff at the address listed below:

Mark P. Carey, Esq.
Carey & Associates P.C.
71 Old Post Rd.
Southport, CT 06490

_____
Susanne Kantor