# EXHIBIT I

**HOUSING AUTHORITY OF**  **THE TOWN OF GREENWICH**

*Administrative Office*
Agnes Morley Heights
249 Milbank Avenue
Greenwich, Connecticut 06830

*Facsimile:*
Area Code 203 869-2037

*Mailing Address:*
P.O. Box 141
Greenwich, Connecticut 06836

*Telephone:*
Area Code 203 869-1138

## MEMORANDUM

DATE: December 4, 1997
TO: Ursula Milde, Administrator
   Parsonage Cottage
FROM: Thomas M. Crawford, Executive Director
RE: Memorandum dated 11/30/97

This memorandum will attempt to clarify items which were raised in your referenced memorandum. I want to preface my comments by noting that the organization structure that we are both operating under, i.e., a semi-independent operation under the larger organization, is somewhat new for both of us. I will go through each of your items and try to clarify my position. The primary objective is to maintain open communications and a good working relationship with the entire Parsonage Cottage staff.

1. <u>Facility</u>: *All issues, problems and repair and maintenance needs must be discussed and decided on by the Facility Manager, Felix Andreoni, and myself.*

    I fully expect the basic day-to-day issues pertaining to maintenance will be handled between you and your facility manager. However, it is important to recognize that, although Felix and his staff report to you directly on on-site, personnel issues concerning his performance and responsibilities must be coordinated with John Banks who is the Superintendent of Maintenance. As the on-site manager we do give you the discretion to direct his daily work, but I don't want to lose the consistency of the chain of command in the maintenance department. While this is a stand-alone facility in some aspects, I want to maintain the ability to float maintenance personnel in the event that I need to. Obviously, we will have to discuss this particular supervisory situation in more detail so that all parties will be clear.

    Maintenance items which could be considered as contractor issues need to be coordinated with Ed Civitello, especially those that are dealing with the "punch list" items.

1

Equal Opportunity Employer, M/F/H



JLSK 0716

2. <u>Budget</u>: All expenses posted to Parsonage Cottage must be reviewed and authorized by me, before the bills are paid.

I am in full agreement that all expenses allocated against your budget must be reviewed and authorized by you prior to being paid. Any items which were not entered in the budget must be reviewed by either me or Ben. Any contract agreement, whether new or renewals, should also be reviewed by us prior to execution. I believe we are already doing this. I think it is important to note that in the case of the budget confusion, projected shortfalls, the panic was started when Russ had reviewed his projections with the board prior to having a detailed review with me. This was an oversight on his part. However, it created panic in the Board and also raised concerns outside the Housing Authority Board as to the fiscal viability of the project. Had he reviewed it with me in advance, I would have met with you so that we could discuss it, as we did the other day.

3. <u>Staffing</u>: .. It is crucial that I have the authority to make decisions, within the parameters of HATG employment policies, and my budget, of hiring and dismissing, as well as disciplinary actions and job performance recognition, such as raises..on a timely basis.

It is my understanding that you have had the responsibility for hiring all the staff and also have performed the job evaluations. It will always be our responsibility to discuss with you any issues pertaining to discipline or the firing of any personnel. This is particularly important because these are employees of the Housing Authority and not employees of Parsonage Cottage. For the upcoming budget year we will work with you to arrive at an over-all percentage and dollar amount which you will then be able to use for your staff increases. Ben and I do reserve the right to a final review of all personnel evaluations. The reason for this is to insure a continuity in the way that evaluations are handled and ranked. This fiscal year of operations is a little more difficult, but I believe that this too will work itself out as we approach the July 1 fiscal year. (I understand that, technically, Parsonage Cottage's fiscal year for State purposes is October 1.)

4. <u>Surveys and Audits</u>: .. It is important .. that I be given the information and tools, if they are available through the HATG, whether it is in the form of records I must keep at PC or of reports or manuals .. so that I can be prepared.

I think you need to clarify your last sentence (I do appreciate the expert assistance of a consultant, and in some cases consultants are necessary, for certain annual requirements, but I personally do not see their work as an excuse not to do mine). Obviously, you are referring to a specific incident and I can't address it until you make it clear.

2

JLSK 0717

In the matter of books and records and manuals, there is no question that you need to have those available and we will do what is necessary to provide you with those. As far as the recent tax credit resident file audit, we had commenced the work to get the files organized and the findings were a failure on our part to finish the process and were not your responsibility.

5. <u>Communication:</u>  ..*Not seeking my input  .. in matters which pertain to PCSR, or not informing me .. will cause many problems.*

> This is the most critical item of all. There is no question there have been incidents where discussions were held concerning Parsonage Cottage that you should have been involved in or made aware of, and I believe likewise that the same has transpired from your end. Management needs to be aware in both directions of all major issues. I personally believe you have done an excellent job with the facility.

> I think you also fully understand that in this community Parsonage Cottage has been an extremely visible facility over the last several years. This has resulted in a number of community "eyes" watching our every step. Unfortunately, this puts a high burden on you and your staff, as well as me and Ben, and our Board of Commissioners. We must constantly keep ourselves aware of how the community views this operation. It is most important that none of us become too defensive when inquiries are made or suggestions offered that may seem somewhat out of place. The vast majority of these are made with good intentions. It should not be perceived as a question of competency on either your part or ours. If we move forward with that very simple understanding, the future will be much easier, the communications more open, and the success more enjoyable.