# EXHIBIT V



# PARSONAGE COTTAGE SENIOR RESIDENCE

## MEMORANDUM

To:       Benjamin W. Little, Chief Executive Officer

From:     Ursula Milde, Administrator   *Ursula Milde*

Date:     June 6, 2000

Subject:  Response to Disciplinary Action and 90-Day Opportunity to Improve

This is in response to your "Written Disciplinary Reprimand":

1.  **Deceptive Action: A and B:**
    The original plan for PCSR was to hire an in-house recreation coordinator. After I had developed the job description, you had it posted, together with the posting for all the PCSR job postings (see attachment 1: posting notice). If, as you say, it was not approved, why did you post this position with all the other PCSR positions?

    In response to this posting, I had only two applications (see attachments 2 and 3: letters from applicants. My notations on the letters explain the disposition).

    Following this, my plan which I discussed with you and Tom Crawford, was to split the secretarial and recreation coordinator positions and offer them to two individuals who had both held these combined positions in their, then current, jobs. This would also give us weekend coverage for these positions. At the time, I recall both you and Tom thought that this was an innovative and creative way to solve a problem. . Unfortunately, one of the candidates backed out.
    It was only then that I decided to pursue the possibility of a contract with CCI. I had met Lori Nuremberg several times and she and I discussed this idea. We then met with Barbara Nolan, to speak about a possible contract for recreation services at PCSR, to be conducted by CCI. I explained what our needs were, and Barbara and Lori brainstormed on how this idea could work for them. In subsequent meetings an actual contract (see attachment 4) was drawn up, which I presented to Tom Crawford. Tom agreed and ratified it by signing it.

    **Deceptive Action: C, D, E and F:**

    At the February 3, 2000 senior staff meeting (see attachment 5: my notes from the meeting) I stated that I wanted to pursue the hiring of an in-house recreation coordinator, since our contract with CCI had not worked out to the best of our needs (see attachment 6: chronology of the contractual arrangement during the first three years). During this period Barbara Nolan and I met, as well as spoke, frequently, and

MILDE0256

Barbara and I were in agreement that J.G.'s work was very satisfactory, but that we had several, rather lengthy periods without a coordinator, during which my staff and I had to "pick up the slack". There were also three months with two unsatisfactory coordinators. I mean in no way to diminish the excellent work done by two of the coordinators, L.N. and E.A., and throughout their tenure have communicated this to Barbara Nolan. During the periods without the coordinator, I was billed, and authorized payments for only the work of the CCI program worker, J. G. which continued uninterrupted..

In February 1998 the contract between CCI and PCSR/HATG was renewed for another year (see attachment 7), as per mutual agreement between B. Nolan and myself, and Tom again signed it. However, in February of 1999 it was not renewed. B. Nolan did not bring up the renewal of the contract, and I did not press for it, because of the fragmentary and inconsistent service of CCI during the first two years, which was acknowledged by B. Nolan several times. Nevertheless, despite the absence of an active contract, CCI supplied us, and we paid for, the work they performed during 1999and 2000. In the meantime, I had become more and more convinced that PCSR needed to have an in-house recreation coordinator (f/t or p/t) who would be available for some weekend and holiday coverage, which all our staff has to be, but which was not an option under the CCI contract.

In the end of 1999 several changes occurred or were to become imminent in 2000, which solidified my opinion against the advisability of continuing contractual services with CCI, or any other agency for recreational services at PCSR. First, E.A. the third CCI coordinator at the time left in mid-October. Then I learned that Alice Rapasky, the PC board member and extraordinary volunteer (who came to us at first through CCI) would move out of state in the summer of 2000. Alice has done a number of important projects at PCSR, including the creation of the Sundry Shop, which she runs with the assistance of residents, and which was originally subsidized by the fund raising board. In addition, I learned that J. G. the CCI program worker who was with us throughout the time, would be moving out of the area and leave CCI sometime in the year 2000.

The contract with CCI as noted above, had already lapsed in February of 1999 I spoke with B. Nolan about the fact, that in view of these upcoming changes and also for all the reasons noted in this and other memos, I was convinced that we needed to employ an in-house recreation coordinator, available on holidays and weekends with a background in recreation. I also expressed my dissatisfaction with the latest CCI coordinator's job performance, all of which she indicated that she understood. Since our contract with CCI had already lapsed, neither B. Nolan nor I spoke about the need for a written cancellation.
In our meeting we discussed continuing some form of collaboration, or limited contractual arrangement, such as the weekly shopping trips and the monthly trips with other HATG tenant groups, as well as continuing with J. G. until she left. This was all going to be formalized.

I then discussed the idea of an in-house recreation coordinator with my staff and debated how to find a suitable individual. I wanted to employ an individual with training in recreational therapy rather than social work (which B. Nolan insists she needs for her programs), since we already have a social worker at PCSR for those services, under contract with the Greenwich DDS. A person with a background and/or training in recreation is generally employed for this kind of position in facilities like ours. I therefore looked for colleges, which have degree programs in recreation/activities therapy. I contacted the recreation director at Nathaniel Witherell, since she was recruiting for a recreation aide. Through her, I learned about the CT Association of Therapeutic Recreation Directors, which has a job bank.

After I had stated, at the senior staff meeting on February 3, 2000 (see attachment 5 above) that I wanted to go back to the original plan of hiring an in-house recreation coordinator for PCSR there was no objection noted from you. I, therefore, having successfully recruited and hired all the staff at PCSR (without any objection from either you or Tom Crawford) went ahead and contacted Norwalk Community College, which is the nearest school with a recreation degree program, as well as the CT Association of Therapeutic Recreation Director, and also Nathanial Witherell which was at the time recruiting for an activities aide. I faxed a posting notice to the aforementioned organizations on February 27, 2000 (see attachment 8: posting notice and fax sheet to C.H. at Norwalk Community College).

On March 2, 2000 I received a letter, dated 2/29/00, with a resume from Agata Wilinski (see attachment 9), in response to my posting the position at Norwalk Community College. I also received a call from another individual who had applied for the position of recreation aide at Nathanial Witherell (see attachment 10). Tamara Smith and I met with and interviewed her, but determined that she was not a good candidate for our position, since she had no background or training in this field. We then met with Agata Wilinski, whom we knew from her volunteer work at PCSR in the previous year and who in the meantime had started a degree program at Norwalk Community College in recreation therapy. We were pleased about this and thought that we were fortunate to find a very good candidate.
I, therefore, proceeded with background and reference checks on her, which all came back highly positive. Around mid-April I spoke with A.W. about a time frame for hiring, i.e. most likely in May, when she would be finished with her semester. She began to make plans to that effect.

On March 24, 2000 I received your first memo regarding this issue. I responded to that and all the subsequent memos and questions from you. When you informed me that the position had to be posted, I faxed you, on 4/17/00 a notice about where we had posted it, together with the posting notice. I assumed that you would post it in the places which you knew it had to be posted and which I had omitted but which you indicated would be done by you. Nevertheless, I also posted the position at that point at the Greenwich Town Hall, (which was one of the places you mentioned), to make it easier for you.

MILDE0258

Deceptive Action: G and H

You stated that I altered the job description to fit the qualifications of A. W. Please note that the posting notice with the modified qualifications was developed before A. W. applied and was sent to all the posting places at the same time. I modified it, because of the difficulty of finding, and paying for, a candidate with a degree in the field. I also felt entirely justified in doing this, since none of the CCI employees under contract with us had a background or degree in recreation therapy.

When I contacted B. Nolan with the suggestion, for her consideration, of employing A. W., it was merely meant as helpful, since the issue appeared to be that you and the Board of Commissioners wanted PCSR to continue with a contractual arrangement with CCI. This would save her from having to search for a candidate, in an already tight job market. B. Nolan appeared to interpret my suggestion in the same manner, because she asked me to fax her A.W.'s resume. Later that same day, she informed me that her board did not approve of hiring an individual who had no social work degree. I, therefore, did not pursue it further. I fail to see, even with a great stretch of the imagination, how my action could be interpreted as "coercion".

Deceptive Action: 1

As I stated in our meeting on 5/2/00, several of the newspaper representations are misleading or incorrect. For example, I never referred to PCSR as being a senior citizen housing complex that provides some level of nursing. My remark in regard to state mandates is also not quoted correctly. Many other statements in this, as well as the article on 4/25/00 which states that the "Greenwich Housing Authority voted to hire a new recreation director, part time, with a salary as yet to be determined", are incorrect, according to your subsequent memo to me (dated 4/25/00). I have not accused you of deceptive actions for this.

In summary, none of the above described and documented actions, can in all fairness and reasonableness be described as deceitful.

2. Acts of Insubordination:

In all of the sections you mentioned under these acts, to which I have already responded above, and in previous memos, there seems to me to be one continuing theme:
You appear to interpret my carrying out my responsibilities, as delineated in my job description, with the independence and competence I have shown in the past three years and eight months as insubordination and lack of communication.

I believe that I have carried out my responsibilities within my job description conscientiously and competently. I would not have had the positive responses from residents, their families and the CT State Health Department, our licensing body, if I had not performed my job well.

In regard to my communicating with you, I can only say that I have always made myself available for any meeting you scheduled even when it was difficult for me to arrange. I have sent you memos and informed you verbally of many issues pertaining to PCSR. I have asked you to attend PC staff meeting. I have invited you to come to PCSR for various events or just to get to know the operation better.

Providing a quality service to our residents has been my primary aim in the plan to hire an in-house recreation coordinator. "To plan, develop, and implement expansion and innovation in program services", after all, is asked of me, according to my job description (see attachment 11).

I believe the "Written Disciplinary Reprimand and 90-Day Opportunity to Improve" to be:

1. A violation of my contractual agreement as delineated in my job description;
2. An unsubstantiated questions of my competence and dedication, which I have shown throughout my employment with the HATG;
3. An attempt to undermine my authority as the administrator, who is responsible to the CT State Health Department, under out license, for all the operations at PCSR;
4. An attempt to divert my energies from my primary responsibilities of overseeing the provision of quality services to the residents entrusted to our care;
5. In direct conflict with the past messages of the HATG to me that my work was, not only, acceptable, but also considered "very good", as expressed to me verbally by you, T. Crawford, several commissioners as well as by the fact that I have received regular increases in my compensation;
6. Indication of difficult working relationships between us.

To resolve this, I would like to suggest that an independent, mutually agreeable mediator be obtained to assist us in the resolution of these problems.

HOUSING AUTHORITY OF THE TOWN OF GREENWICH
ANNOUNCES
OPEN COMPETITIVE APPLICATION
FOR THE POSITION OF
## RECREATION AND ACTIVITIES COORDINATOR
AT PARSONAGE COTTAGE SENIOR RESIDENCE

CLOSING DATE FOR FINAL APPLICATIONS: October 25, 1996

POSITION DEFINITION:
Under the general direction of the Administrator, the position has the responsibility for developing and promoting a variety of activities that include internal and external opportunities for socialization across the religious and ethnic backgrounds of the residents

GENERAL DUTIES:
- Develops, implements and coordinates resident-centered activity program, including community and intergeneration programs.
- Coordinates volunteer program, beauty shop, resident shopping, and outings
- Controls costs and manages the activities program budget.
- Manages the procurement, care and maintenance of all activity supplies and equipment.
- Promotes positive public relations through contacting media about special events and generating sympathy, holiday, and thank-you communications.

ADDITIONAL DUTIES:
- Assists in developing and implementing facility's marketing plan.
- Assists in mealtime activities, including escorting residents to the dining room.
- Assists in escorting residents on field trips.
- Performs other assignments as required.

REQUIRED QUALIFICATIONS (Minimum):
- College degree in therapeutic recreation.
- Previous recreation/activities experience of at least three years, preferably with the elderly.

LICENSE OR CERTIFICATE: Must possess a valid driver's license

SALARY RANGE: Negotiable

APPLICATION FORMS AVAILABLE:

HOUSING AUTHORITY OF THE TOWN OF GREENWICH
249 Milbank Avenue
Greenwich, Connecticut 06830
Phone:  (203) 869-1138


AN AFFIRMATIVE ACTION PLAN EMPLOYER M/F/H

MILDE0261

*11/12/96*
*I called him — he is*
*only looking for a*
*F/T position*

October 15, 1996

Ms. Ursula Milde
Administrator
Parsonage Cottage Senior Residence
℅ Housing Authority Town of Greenwich
P.O. Box 141
Greenwich, CT  06836

Dear Ms. Milde:

I am responding to the Recreation Coordinator position that was advertised in The Sunday Stamford Advocate on Sunday, October 13, 1996.

I feel with my experience and knowledge I can become a valuable asset to your organization. As you can see from my resume I have been involved with the health care industry in various roles. My responsibilities have ranged from organizing recreational activities to intervention procedures for addictions. Along with these responsibilities I have become familiar with different areas of the health care system in its residential status. At the present time I am seeking an opportunity that will give me knowledge in which I can give something to the facility and its residents.

I would like to discuss with you my experience and how I can become a member of your organization. Please feel free to contact me at (203) 637-8666.

Thank you in advance,

John Benvenuto

MILDE0262

1185 East Putnam Avenue
Greenwich, CT  06870
(203) 637-8666



## Professional Experience

**GTE Service Corporation**                                          2/89-Present
Stamford, CT

### Administrative Services/Mail Clerk

- Responsibilities include processing all outgoing mail, including mail via the Post Office.
- Keeping the office supply room stocked, ordering supplies when needed.
- Updating the International mailing and overnight packages via Post Office, UPS, Federal Express, and other overnight couriers.
- Deliver all mail to respected mail stops and to different areas of the building as directed.

**US Tobacco**                                                       4/82-5/89
Greenwich, CT

### Mail Clerk

- Sorted all incoming and outgoing mail on a timely basis.
- Delivered all incoming mail and packages to their respected mail stops.
- Ordered all office supplies when prompted and kept inventory on them.
- Processed all outgoing mail and outgoing overnight packages for Federal Express, Airbourne, UPS, as well as the Post Office.
- Delivered all legal files to the law department.

**Laurel Woods Health Care Center**                                  10/94-5/95
East Haven, CT

### Director of Recreation Department

- Coordinated therapeutic activities for two hundred residents over the weekend shift.
- Provided a one on one program treatment plan with the nursing staff and social services department on a timely basis.
- Implemented family social group activities with family and residents.
- Prepared quarterly status reports on residents to Administrative Director and Social Services Director.

MILDE0263

John Benvenuto                                                    (203) 637-8666

**Silver Hill Foundation**
New Canaan, CT                                                    12/92-2/93

Psychiatric Nursing Assistant

- Assisted in the admission process of patients including belongings search, unit orientation, and applicable documents.
- Actively participated in implementing nursing care for each patients.
- Developed a care plan for patients that focused on relapse prevention and health awareness.
- Provided documented reports to the charge nurse of any changes in patients behavior.
- Developed a family intervention program for the patients and families upon discharge.

**Yale New Haven Hospital**
New Haven, CT                                                    1/93-8/93

Substance Abuse and Mental Health Intern

- Developed a program to treat patients with dual addiction and mental illness using cognitive functioning.
- Assisted the family social worker with family therapy groups in such ways as finding home placement, job placement.
- Helped patients develop strong communication skills with families and others in the patients life.
- Worked with patients to develop long term and short term goals prior to discharge.

## Certifications and Other Experiences

Connecticut State Certified Therapeutic Recreation Director

United Way, (Volunteer Position)

Director, Lower Fairfield County Summer Youth and Employment Program

## Education

Iona College, BS, Health Counseling, New Rochelle, NY
Presently Attending, C.A.C. (New York State Certification Eligible)

Norwalk Community Technical College, AS, Human Services, Norwalk, CT
1995  GPA 2.8

Greenwich High School, Greenwich CT
1982  GPA 3.0

MILDE0264

Marymount College
P.O. Box 1449
Tarrytown, N.Y. 10591
Phone #914-631-8509

*[handwritten notes, illegible]*

November 21, 1996

Dear Ursula Milde,

    I am a Religious of the Sacred Heart of Mary interested in obtaining a position as an Arts and Crafts hands - on instructor. I believe it is most important to offer our Senior Citizens the opportunity to keep their minds, hearts, hands and spirits very much alive. This can be done by encouraging them to take an active part in a wide variety of craft activities. Weaving and pottery, particularly, provide them with a great sense of satisfaction, accomplishment and enhances their dexterity.

    Enclosed please find a copy of my personal resume. I believe that my gifts and skills are transferable and can be fully utilized in ministering to them needs.

    I look forward to your reply and an opportunity to meet with you.

Sincerly,

*Mary Alter RSHM*

Mary Alter RSHM,

MILDE0265

# MARY ALTER, RSHM

*Marymount College - Box 1449*
*Tarrytown, New York 10591*
**(914) 631-8509**

### ABILITIES/ STRENGTHS:

WORK EFFECTIVELY WITH PEOPLE FROM VARIOUS WALKS OF LIFE INDEPENDENTLY AND AS A TEAM MEMBER; RELATE VERY WELL TO YOUNG ADULTS, THE AGED AND HANDICAPPED; DEPENDABLE, HARD WORKER; ENJOY CHALLENGE; POSSESS COUNSELING, BUSINESS, ADMINISTRATIVE, MANAGERIAL, SUPERVISORY, AND TEACHING SKILLS AND EXPERIENCE; CREATIVE; PROFESSIONAL HAND WEAVER; SKILLED IN FIBER ARTS AND POTTERY

### EXPERIENCE:

**1995-1996**  JOHN E. ANDRUS SENIOR RESIDENCE & HEALTH CENTER
Crafts Person

**1988 - 1995**  CORMARIA RETREAT HOUSE                    Sag Harbor, New York
Staff Member and Director of In-Door and Out-Door Plant Management of Center and Property - Taught the Art of Hand Weaving; Assisted in the Pottery Program; Managed and Operated Retreat Center Gift Shop; Purchased and Sold products; Comparative shopped for Retreat House and Gift Shop

**1986 - 1988**  NEW ROCHELLE MEDICAL CENTER                  New Rochelle, New York
Recreational Specialist and Assistant Director
Provided Recreational Patient Therapy ... 1986: Certified by Aging in America - Trained to work with the Aged and Handicapped.
                                        Bronx, New York

**1984 - 1986**  MARYMOUNT CONVENT BUSINESS OFFICE
Business Office Manager's Assistant                  Tarrytown, New York
Processed and Paid maintenance and Convent bills; Handled Insurance Payments: Blue Cross; Blue Shield and Medicare

**1968-1984**  MARYMOUNT COLLEGE                           Tarrytown, New York
Effectively Handled Administrative/Managerial Assignments at Marymount College; Provided Academic/Personal Student Counseling; Initiated Parental Involvement and Offered Advocacy Assistance Services when necessary; Supervised Student Aides; Coordinated Schedules; Conducted Weaving Workshops; Taught Ceramics, etc.:

Art Shop Manager - 1970-1985: Dealt with Salespersons and Catalogues for Product Analysis and Cost Comparison; Ordered, Stocked, Priced, and Sold all Art Supplies; Office Manager- 1980-1982: Marymount Weekend College; Staff Registrar's Office -1978-1980: Responsible for Registration and Scheduling Course Room Assignments and Administration of Examinations; 1973-1974: Served the needs of an Adult Population of Students in the Continuing Education Office, and Worked as an Art Teacher: Taught Ceramics at Marymount College; ( During this period of time, also Taught Art Instruction Classes in various other Elementary School Districts on Long Island and in Westchester County and New York City); College Resident Hall Director - 1968-1972: Created an environment conducive to learning: Developed relevant Activity Programs, and Successfully Engaged Student Interest and Participation

### EDUCATION:

New York State Provisional Certificate in Education    1969
Bachelor of Arts' Degree (B.A.) - Marymount College   1968

### REFERENCES AVAILABLE UPON REQUEST



community
centers, inc.
A WAY TO BELONG

Member Agency of
The United Way
of Greenwich, Connecticut

OFFICERS

Charles W Peterse Esq
President

Douglas G Brown
Vice President

Marianne E Moraw
Treasurer

Donna C Buckins
Secretary

BOARD OF DIRECTORS

John B Broadhurst
Douglas G. Brown
Delmaka C Christiansen
Kim Peters Christiansen
Daniel Daniels Esq
Theresa Davidson
Pamela M Ecos Esq
Ernest B Fieserman Ed D
Ronald Hadley
Denis Heegan
John T Kelly
Linda Kirse,
Linda LaFazia
Judith Lindsay
Charles R Mason Jr
Eddie Meyers
Marrine A Moraw
Louisa Peterse Esq
Frank T Paine
Connie H Robinson
Will B Shea
Will Zemsky

AC SOPP BOARD

John R Bruton
David A Castell Esq
Constance M Christiansen Esq
Michael R Jette M D
Paul Fisser
Paul Howard
Lee Harry M D
Margaret Flynn L Negro
Alice Sargeant
John B Shea
Pauline Vernon

EXECUTIVE DIRECTOR

David A Mason

## LETTER OF AGREEMENT
### between
## COMMUNITY CENTERS, INC. (CCI)
### and
## PARSONAGE COTTAGE SENIOR RESIDENCE
## LIMITED PARTNERSHIP
## THERAPEUTIC SOCIAL AND RECREATIONAL PROGRAMS
## FOR PARSONAGE COTTAGE

This letter will serve as a formal agreement for Community Centers, Inc. to provide therapeutic social and recreational services to Parsonage Cottage Senior Residence Limited Partnership for a period beginning February 10, 1997 and ending February 10, 1998. At it's termination both parties would evaluate the program. If all is satisfactory at that time, the terms and duration of a new contract can be negotiated. CCI will provide part-time services performed by a clinical social worker and a staff program worker fifteen (15) hours a week. CCI will provide ongoing supervision and in-service training as appropriate.

The duties and responsibilities of the part-time clinical social worker and program worker will include the following:

1)      The clinical social worker will oversee and supervise all CCI programs and services.

2)      The clinical social worker will work seven (7) hours a week for Parsonage Cottage Senior Residence Limited Partnership to be divided up to include five (5) hours of direct service, to include at least one (1) and possibly two (2) group(s) a week of a supportive, "therapeutic" nature. The group focus can be determined by the two social workers and the Director and can evolve as clients needs evolve. A possible second group can be social/recreational or determined by client need.

3)      The clinical social worker will provide on-site availability for individual support services.

4)      The clinical social worker will work directly with the Director of Parsonage Cottage and be available for regular meetings, the frequency to be determined.

5)      The clinical social worker and program worker will coordinate a cadre of volunteers who will provide special activities and assist on outings or field trips.

6)    The program worker will be available for eight (8) hours a week, six (6) of which will be direct service. The program worker will coordinate one (1) morning, one (1) afternoon and one (1) evening group per week for social/recreational activities including shopping trips as needed.

7)    The program worker will coordinate in-house services and programs as needed (e.g. library, beauty shop).

8)    Special outings/field trips will be determined by client need and physical capacity.  The clinical social worker will make her existing monthly day trips available to those residents who would like to and are able to attend.

The total cost of services to Parsonage Cottage Senior Residence during the contract year will be $15,600. This figure includes part-time professionals $20.00 per hour x 15 hours x 52 weeks = $15,600.

Parsonage Cottage Senior Residence Limited Partnership agrees to pay CCI a $1,300 monthly fee to cover the cost of services.  Payment shall be made to CCI within thirty (30) days of the billing date. NOTE  The Director of Parsonage Cottage will work within the structure of the clinical social worker's and program worker's existing schedules.  Also, a copy of CCI's Personnel Policies and Practices will be given to the Director of Parsonage Cottage to clarify vacation and holiday schedules.  It is agreed that the above benefits are included in the cost to Parsonage Cottage Senior Residence Limited Partnership.

Parsonage Cottage Senior Residence Limited Partnership, Inc. shall secure and maintain at its expense Public Liability and Property Damage Insurance. The following policies shall name CCI as an additional insured:

1)    For liability for bodily injury and accidental death, other than that caused by the operator of motor vehicles,  $1,000,000.  (one  million  dollars)  per occurance.

2)    For liability for property damage  other than that caused by the operation of motor vehicles $100,000. (one hundred thousand dollars) in the aggregate.

CCI shall have no liability to Parsonage Cottage Senior Residence Limited Partnership or any of its patients or clientele for acts or omissions of the clinical social worker or the program worker or for any other cause whatever other than the gross negligence of CCI in the

MILDE0268

selection or assignment of the clinical social worker or the program worker to provide the services called for by this agreement.

Any of the parties may at any time terminate this agreement by delivering by hand or mailing by certified mail to the other party, written notice of its decision to terminate this agreement as of a particular date. The termination date selected shall be at least thirty (30) days after the date of the delivery of the notice.


COMMUNITY CENTERS, INC.
    Authorized signature
                                title_____date 2/3/97

PARSONAGE COTTAGE SENIOR
RESIDENCE LIMITED PARTNERSHIP
    Authorized signature
                                title_____/date 2-3-97

HATG Senior Management
Mtg. 2/3/00

1. Cost control — Supplies at HA
   Office; beeper system
2. Union mtg. last Friday,
   next mtg. 2/22/00, financial in
3. Develop training schedule
4. HUD report being analyzed
5. Staff Mtg. 2/14 — 2/15 7:30
6. PC to hire in-house recr a
   update on facility issues

MILDE0270



## Chronology of CCI work at PCSR

### March 31, 1997 – March 31, 2000

The contract with CCI was signed on February 3, 1997, and renewed on February 13, 1998. It was not renewed after February 1999

**March 1997**

The first Coordinator was Lori Nurenberg. She left in June 1998.

**July, August, September & October 1998 – no coordinator**

Joy Walburg started in **November 1998** and stayed through **December 1998**
She was definitely not suitable as per Barbara Nolan's admission, and was terminated by her.

**January & February 1999 -- no coordinator**

Emily Aber started in **March 1999**. She left in mid **October 1999**

**Partial October, November, December 1999 and January 2000 – no coordinator**

Devon Dirkson started in **February 2000**
Her work was unacceptable. I asked to have her discontinued at PCSR as of March 2000.

For the period of 36 months:

The contract was fulfilled for only 22 ½ months. There was no coordinator in place for 10 ½ months. For 3 months the coordinators assigned were by Barbara Nolan's own admission not acceptable.

Throughout the 36 months, Jo Gonzalez, the employee who was assigned to PCSR under CCI contract, continued her assignment conscientiously and consistently. Residents liked and respected her. During her vacation, the coordinator (if there was one) filled in. At other times, the shopping trip was always covered, but not always her other groups.

June 5, 2000

MILDE0271

*Attach ment* 

**Parsonage Cottage** Senior Residence

88 Parsonage Road · Greenwich, Connecticut 06830 · Telephone: (203)869-6226

February 12, 1998

Upon evaluation of the program and by mutual consent between both parties the Letter Of Agreement between

Community Centers, Inc. (CCI)
and
Parsonage Cottage Senior Residence
Limited Partnership
Therapeutic Social And Recreational Programs
For Parsonage Cottage

is hereby extended without change for the period from February 10, 1998 to February 10, 1999 as authorized by the signatures below.

Community Centers, Inc.
    Authorized signature _____

    Title _____ Date _____

Parsonage Cottage Senior Residence,
Limited Partnership
    Authorized signature _____

    Title _____ Date _2-13-98_

Licensed Residence

Parsonage Cottage

PHONE (203)869-6226

FAX (203)625-9367

88 Parsonage Road
Greenwich, Connecticut 06830

*Attach men*

**Date:** 2/23/00

**Attention:** Carol Harker   Norwalk Commi(

**From:** Ursula Milde

**Number of pages (including this cover):** 2

**Comment(s):**

As per our conversation.

Thanks alot _

U

Reply requested: ☐ Yes  ☐ No

HOUSING AUTHORITY OF THE TOWN OF GREENWICH
ANNOUNCES
OPEN COMPETITIVE APPLICATION
FOR THE POSITION OF
<u>RECREATION COORDINATOR</u>
AT PARSONAGE COTTAGE SENIOR RESIDENCE

PARSONAGE COTTAGE SENIOR RESIDENCE

<u>POSITION DEFINITION:</u>

Under the general direction of the Administrator, the coordinator has the responsibility for developing and implementing a therapeutic recreational program, within the 40 bed Licensed Residential Care Home.

<u>GENERAL DUTIES:</u>

- Develops, implements and coordinates resident-centered therapeutic recreation and activity program, including community and intergeneration programs.
- Coordinates volunteer program, resident shopping, and outings.
- Controls cost and manages the activities program budget.
- Manages the procurement, care and maintenance of all activity supplies and equipment.
- Promotes positive public relations through contacting media about special events and generating sympathy, holiday, and thank-you communications.

<u>ADDITIONAL DUTIES:</u>

- Assists in escorting residents on field trips.
- Performs other assignments as required.

<u>REQUIRED QUALIFICATIONS (Minimum):</u>

- Previous recreation/activities or similar experience, preferably with the elderly.
- Educational background in recreation (degree not necessary, but desirable)

<u>SALARY RANGE:</u> Negotiable

<u>APPLICATIONS AVAILABLE:</u>

Parsonage Cottage Senior Residence
88 Parsonage Road
Greenwich, CT 06830
(203) 869-6226
(203) 625-9367 (FAX)

<u>AN AFFIRMATIVE ACTION PLAN EMPLOYER, M/F/H</u>

MILDE0274

West Henry Street    Stamford, CT 06902    203.316.0237

**Attach ment
9**

February 29, 2000

Ursula Milde, Administrator
Parsonage Cottage Senior Residence
88 Parsonage Road
Greenwich, CT 06 830

This letter is in response to possible employment in Parsonage Cottage Residence. As my resume' states, I have experience in work with elderly people, based on volunteers job in our Residence, Geri Care Agency and as a member of dancing team which provide exercise activities with music for aging people. My experience has helped me to advance my communication and learning skills to a point that is beneficial to anyone.

I am a candidate that can work independently, with a cheerful personality, juggle multiple priorities, and be a highly motivated team player handling any emergency situations.   I am also a quick learner.

I would very much like to meet with you to discuss how my skills can be of great benefit to the clients of Parsonage Cottage Senior Residence .In the event you view me as a strong candidate for your available position, as the Recreation Coordinator, do not hesitate to call me.  I am positive that an interview will prove that my comments are sincere.

Sincerely,


Agata Wilinski

*Agata Wilinski*

Attachment

# For Employment

*might be cook
for recr. cook*

We consider applicants for all positions without regard to race, color, religion, creed, gender, national origin, age, disability, marital or veteran status, sexual orientation, or any other legally protected status.

**Attachment 10**

## (PLEASE PRINT)

| | |
|---|---|
| Position(s) Applied For: Recreation aid | Date of Application: 2/19/00 |

**How Did You Learn About Us?**
- [ ] Advertisement
- [x] Friend
- [ ] Walk-In
- [ ] Employment Agency
- [ ] Relative
- [ ] Other

| Last Name | First Name | Middle Name |
|---|---|---|
| Michel | Marie | Marteine |

| Address Number | Street | City | State | Zip Code |
|---|---|---|---|---|
| 38 | Fairfield Ave | Stamford | CT | 06902 |

| Telephone Number(s) | Social Security Number |
|---|---|
| (203) 327 2182 | 049 90 5892 |

If you are under 18 years of age, can you provide required proof of your eligibility to work?
- [ ] Yes [ ] No

Have you ever filed an application with us before?
- [ ] Yes [x] No

If Yes, give date _____

Have you ever been employed with us before?
- [ ] Yes [x] No

If Yes, give date _____

Are you currently employed?
- [x] Yes [ ] No

May we contact your present employer?
- [x] Yes [ ] No

Are you prevented from lawfully becoming employed in this country because of Visa or Immigration Status?
*Proof of citizenship or immigration status will be required upon employment.*
- [ ] Yes [x] No

On what date would you be available for work? _2 weeks_

Are you available to work: [x] Full Time [x] Part Time [ ] Shift Work [ ] Temporary

Are you currently on "lay-off" status and subject to recall?
- [ ] Yes [x] No

Can you travel if a job requires it?
- [x] Yes [ ] No

Have you been convicted of a felony within the last 7 years?
*Conviction will not necessarily disqualify an applicant from employment.*
- [ ] Yes [x] No

If Yes, please explain _____

38 Fairfield Avenue
Stamford, CT 06902
(203) 327-2182

*Attachment 10*

**OBJECTIVE:**     To work in a field where my academic and practical
on hand experience skills be an asset to the current work environment,
where there is growth, self-motivation and room for advancement.

**EDUCATION:**
10/1975 – 06/1981    SACRED HEARTS
75 Carrefour, Port-au-Prince, Haiti
High School Diploma, 1981

09/1991 – 12/1992    NORWALK COMMUNITY TECHNICAL COLLEGE
188 Richards Avenue
Norwalk, CT 06854
Major: Data Processing

02/1994 – 06/1994    J.M. WRIGHT TECHNICAL SCHOOL
P.O. Box 1416
Stamford, CT 06902

CERTIFIED NURSING ASSISTANT
Communication and interpersonal skills, infection control safety,
emergency procedure, promoting residence independence,
respecting residence rights, taking and recording vital signs,
measuring and recording height and weight, caring for the resident,
environment caring for the resident, death in immanent, recognize the
abnormal sign, symptom of common diseases, bathing, grooming,
dressing, toileting, proper feeding techniques, skin care, transfers
positioning, communication with cognitive impaired residents,
methods of reducing the effects of cognitive impair.

**EMPLOYMENT**
05/1985 – 06/1987    BHRAGS HOME CARE
444 Hopkins Avenue, Brooklyn, NY 11212

HOME ATTENDANT
*DUTIES*:  Providing home health care duties.
08/1987 – 02/1989    YMCA
East Putnam Avenue, Greenwich, CT 06830

DESK CLERK
*DUTIES*:  Meeting all YMCA members and selling athletic equipment.

07/1994 – Present    OLSTEN HEALTH SERVICES
*DUTIES*:  Providing Home and Nursing Room health care duties
(For adult and infant)

**REFERENCE:**     *AVAILABLE UPON REQUEST*

Housing Authority of the Town of Greenwich

Parsonage Cottage Senior Residence

TITLE     ADMINISTRATOR

OBJECTIVE

Under the general direction of the Deputy Director, responsible for the administration of program and financial operations.   Plans, develops, implements, evaluates and improves program services; manages the staff, and delivers high quality services as determined by the residents and their families.  Ensures operation of a program that is consistent with a philosophy of a board and care home in the State of Connecticut and licensed as a Home for the Aged under the reimbursement program of Aid to the Aged, Blind and Disabled.  On call 24 hours.

ESSENTIAL FUNCTIONS

Assures the provision of high quality services needed and/or desired by residents and the State Departments of Health and Social Services.

Attains and/or maintains ongoing compliance with Town, State and Federal standards, including the Town's Department of Health requirement and Fire Code, the State of Connecticut Department of Health and Department of Social Services for regulatory compliance in operations and requirements for financial reimbursement; the Connecticut Housing Finance Authority's requirements as to number of income qualified occupants; ensures that the program is prepared for inspection by regulatory agencies through regular auditing and updating of program policies and procedures, medical records documentation, environmental standards, etc.

Attains and/or maintains the targeted occupancy level.

Strives to attain excellence in consumer satisfaction through ongoing solicitation and measurement of consumer feed-back, implementation of consumer suggestions, interactive evaluation and quality assurance effort.

Provides measurable improvements in overall coordination of all aspects of program's consumer services.

600

Prepares and administers the annual budget; monitors and maintains cost control, with major reimbursement for the AABD program and optimizes budget to remain within the approved reimbursable categories.

Promotes and implements constructive problem solving.

Provides ongoing support, direction, supervision, and feed-back regarding job performance of all program staff, including contracted staff and volunteers; documents evaluation of job performance at least annually; actively promotes staff participation and involvement in the day-to-day operations and decision making; promotes team building through participation and/or leadership at regular staff meetings, and uses cross-training as a tool for overall job and resident satisfaction.

Ensures that a safe and sanitary environment is provided for staff and residents; reduces safety hazards, accidents, and injuries.

Supports and participates in the resident centered activity program.

Plans, develops, and implements expansion and innovation in program services.

Develops and implements the program's marketing plan.

Contributes towards improving community relations, increasing positive public regard and overall awareness of the Parsonage Cottage program.

Monitors, on a routine and ongoing basis, key measurable indicators of the daily operations; maintains appropriate levels of confidentiality.

Demonstrates an appreciation of the heritage, values and wisdom of the resident and an understanding of the aging process.

Expands his/her knowledge through attending educational seminars and trade organizations residential home programs as deemed appropriate.

Performs other related duties as assigned and required.

REQUIRED KNOWLEDGE. SKILLS AND ABILITIES

Thorough knowledge of the principles and practices of a board and care home operations (assisted living facilities).

MIL DE0279

*ATTACHMENT //*

600

Thorough knowledge of the State regulations for licensed Homes for the Aged under the reimbursement program of Aid to the Aged, Blind and Disabled.

Considerable knowledge of the financial management of a residential board and care institution including Medicare/Medicaid cost reporting.

Considerable knowledge of the personal problems of aged persons and the ability to assist them; ability to plan and implement an assisted living program, anticipate problems, predict outcome and plan for the future.

Ability in oral and written communications.

Ability to administer the activities of a forty (40) bed board and care home and to supervise the work of others requiring considerable initiative, judgment and leadership skills.

Ability to develop short and long term development and operations plans and programs.

Ability to make difficult decisions within deadlines in an environment of explicit regulations, limited resources, and competing claims.

Ability to establish and maintain effective working relationships with superiors, subordinates, officials of other agencies, community groups, and the general public.

REQUIRED EQUIPMENT OPERATION

Operates standard office equipment and drives a motor vehicle.

REQUIRED PHYSICAL EFFORT

Must be able to sit at a desk of stand or move about throughout the facility as necessary and work continuously for extended periods of time, and be able to communicate clearly for extended periods.

Must possess sight and hearing senses or use prosthetics that will enable these senses to function adequately so that the requirements of the position can be fully met.

Exposed to body fluids, infection, odors and behavior of residents.

REQUIRED QUALIFICATIONS (Minimum)

Graduation from college with a BS degree in Human Services, Social services, Health or allied field plus 3-4 years of experience in institutional or health care field, including 1-2 years of supervisory responsibility, or equivalents.

Must possess a valid driver's license.

October, 1996

MILDE0001