**EXHIBIT CC-2**

informing her that he had determined to terminate her employment,
effective at the end of that business day.  Little also wrote:

> This action is based on inadequate and poor work
> performance and failure to comply with the policies,
> procedures, and regulations of [HATG].  These issues
> have been presented to you in writing and you have been
> given the opportunity to respond and comply with these
> policies, procedures and regulations.  You have failed
> to respond and actively resolve these issues and as a
> result of these actions have interfered with the
> efficient and effective operation of Parsonage.

Though Little made the decision, McClenchan supported this
decision and the way it was handled.  Though Milde admits that
she did not hear direct discriminatory comments, she believes
that her discharge, along with the written reprimands were
motivated by age and gender animus.  On September 11, 2000 Milde
sent Little a written request for reinstatement, which Little
later denied.  On November 8, 2000, Little again rejected Milde's
request for reinstatement.

## 8. After Milde's Discharge

During September 2000, one MaryAnn Vlymen became the
acting administrator of Parsonage.  At the time, Vlymen was 69
years old.  In November of 2000, Vlymen suggested to Little that
he should start looking for a permanent administrator because
Vlymen's husband was ill.  On April 9, 2001, Little hired one
Penny Lore as administrator of Parsonage.  Lore is a female who
was 35 years of age at the time.  In August, 2002, Little gave
Lore a positive performance review, and overall Little never

18

reprimanded Lore.  Little also never warned Lore that he would
reprimand her if she violated HATG's media policy.

On May 12, 2003, the Board provided Little with a
separation agreement, along with a $145,000 severance payment,
even though his employment contract did not mandate such a
payment.

## 9. Russell Kemp

Another manager employed by HATG at the time, one
Russell Kemp, who was 57 years of age at the time, had problems
with Little.  Kemp thought that Little promised him $40,000 in
severance pay and never paid it, and Little owed him compensation
time. Kemp thus thinks Little was a poor manager.  Kemp, 57 years
of age, also believes that the same private investigator who
helped in Milde's performance review investigated Kemp, which he
believes led to his suspension and termination from HATG.  He
also believes that Little replaced him with a younger employee.
When asked if these actions were due to animus against his age,
Kemp stated "I am not sure of this."

### STANDARD

Summary judgement is appropriately granted when the
evidentiary record shows that there are no genuine issue of
material fact, and that the moving party is entitled to judgment
as a matter of law. Fed.R.Civ.P. 56(c). In determining whether
the record presents genuine issues for trial, the court must view

all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) cert. denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there is not a genuine issue of material fact." Anderson, at 247-8, 106 S.Ct. 2505.

In opposing a motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of [its] pleading," but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; see D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(d). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to avoid the entry of summary judgment against the non-moving party]; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

## DISCUSSION

### I. Gender Discrimination

Milde first argues that HATG and the Board terminated her employment based on gender in violation of Title VII, 42 U.S.C. § 2000e.[1] The analysis for a gender discrimination claim is governed by the well known McDonnell Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff:

> has the initial burden of establishing a prima facie case of discrimination... If [she] establishes a prima facie case, the burden shifts to [the defendant] to articulate a legitimate, non-discriminatory reason for the adverse employment decision. If [the defendant] offers a legitimate, non-discriminatory reason for its actions, the burden reverts to [the plaintiff] to show [the] proffered reason was a pretext for discrimination.

Burlington v. United Airlines, Inc., 186 F.3d 1301, 1315 (10th Cir. 1999)(citations omitted).

### A.        The Plaintiff's Prima Facie Case

In order to defeat a motion for summary judgment, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. See e.g., Texas Dep't of Community

---

[1]Milde also argues that the defendants' actions violated FEPA Con Gen Stat § 46(a) "Claims of sex discrimination, age discrimination and retaliation in employment under FEPA are adjudicated using the same standards as are applied to cases arising under Title VII and the ADEA " Pascal v. Storage Technology Corp., 152 F Supp 2d 191 (D Conn 2001) (citing Miko v. CHRO, 220 Conn 192, 204, 596 A 2d 396 (1991) and Levy v. CHRO, 236 Conn 96, 107-8, 671 A 2d 349 (1996) Therefore the court's reasoning for the Title VII and ADEA claims apply equally to the FEPA claims

Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S.Ct. 1089, 1093-94 (1981). The nature of the plaintiff's burden of proof is <u>de minimus</u>. <u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1114 (2d Cir. 1988). To make out a prima facie case, the plaintiff must prove that: 1) she is a woman; 2) she was qualified for her position; 3) she was discharged; and 4) her firing occurred under circumstances giving rise to an inference of discrimination." <u>Shumway v. United Parcel Serv. Inc.</u>, 118 F.3d 60, 63 (2d Cir. 1997)(citation omitted).

For purposes of discussion, the court assumes that Milde has established a prima facie case of gender discrimination, in that she is a female, she was qualified for her position, and she was discharged. Further, the court will assume that the plaintiff has established an inference of gender discrimination by offering evidence that she was discharged from her employment as the only female manager in a group of otherwise male managers. <u>see</u> <u>Padob v. Entex Info. Servs.</u>, 960 F.Supp. 806, 812 (S.D.N.Y. 1997)(where the court assumed that a prima facie case of gender discrimination had been established based on the fact that the plaintiff was the only female manager in her department). The assumption is further supported in that: 1) she was never invited to participate in committee meetings or executive sessions held by the Board, unlike other male managers; 2)she was never provided with a performance review until June 2,

22

2000, while other male managers were provided with written
performance reviews; 3)Little hired a private investigator to
investigate Milde's performance, while not doing the same for
other male managers; and 4) Little denied her compensation time
Milde had earned while awarding it to other male managers.

B. The Defendants' Non-Discriminatory Reason

        To rebut an inference of discrimination established by
the plaintiff's prima facie case, the defendant must articulate a
legitimate, non-discriminatory reason for the adverse employment
action.  Texas Dept. of Comty. Affairs v. Burdine, 450 U.S. 248,
255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  The defendant must
state a "clear and specific" reason.  Meiri v. Dacon, 759 F.2d
989, 997 (2d Cir. 1985).  Here, the defendants state that they
took the action condemned because she usurped Little's authority
and failed to follow Little's directions.

        The defendants maintain that the documentary evidence
demonstrates that Milde usurped Little's authority by 1)
terminating the contract with C.C.I.; 2) attempting to hire a
recreation coordinator at Parsonage without communicating with
Little or getting his approval; and 3) changing the degree
required to be a recreation coordinator in the job description.
The defendants further claim that the documentary evidence
demonstrates that Milde failed to follow the 90-day opportunity
to improve that Little gave her on June 6, 2000, in that Milde:

23

1) communicating directly with C.C.I. regarding contract issues;

2) refused to turn over an employment contract that Little asked

for; 3) continuing in her efforts to hire an in-house recreation

coordinator even though Little told her not to; 4) refused to

attend a meeting at the time directed by Little; and 5) refused

to apologize to the Board for her actions at their May 22, 2000

meeting.  With this articulation, the court concludes that the

defendants have sufficiently rebutted the inference of

discrimination raised by Milde's prima facie case.

C.        Pretext/Discrimination

            Finally, the plaintiff must show that the reason given

by the defendant for the adverse action was false, and that the

real reason for the action was illegal discrimination.  St.

Mary's Honor Center v. Hicks, 509 U.S. 502, 507-08, 113 S.Ct.

2742, 125 L.Ed.2d 407 (1993). The plaintiff my satisfy this

burden by persuading the court that... the employer's proffered

reason is unworthy of credence." McDaniel v. Temple Inep. School

Dist., 770 F.2d 1340 (5th Cir. 1985).

> The factfinder's disbelief of the reasons put forward
> by the defendant (particularly if disbelief is
> accompanied by a suspicion of mendacity) may, together
> with the elements of a prima facie case, suffice to
> show intentional discrimination. Thus, rejection of the
> defendant's proffered reasons, will permit [but does
> not compel] the trier of fact to infer the ultimate
> fact of intentional discrimination... [and] no
> additional proof of discrimination is required.

St. Mary's Honor Center, 509 U.S. at 511, 113 S.Ct. 2742.

1.    Usurpation of Authority

Milde asserts that contrary to the defendants'
assertions, she did not usurp Little's authority. Specifically,
she argues that: 1) she did not "terminate the contract" but
instead simply failed to "renew the contract"; 2) that she did
report her efforts to hire an in-house recreation coordinator as
Little accused her of not doing; and 3) she did not rewrite the
job description for the in-house coordinator as Little accused
her of doing.

Milde's arguments are without basis.  The record
reflects a series of memoranda, many written by Milde, which show
that Milde disregarded Little's authority.  In particular,
documents reveal that Milde posted a job opening for an in-house
recreation coordinator and then interviewed and found a person to
hire.  That person did not have a degree as required in the
original job description which the Board approved in 1996. None
of these memoranda reflect that she communicated these steps to
Little or asked for his permission until after she had already
done them.

Further, Milde's assertion that she did have the
authority to hire an in-house recreation coordinator and
terminate the contract with C.C.I. are also without merit.  There
is no dispute that Little was Milde's boss and that the ultimate
authority over Parsonage is the Board, which sided with Little in

his decision not to hire an in-house recreation coordinator and
to maintain the contract with C.C.I., as witnessed by
McClenachan's testimony that she supported Little's actions
dealing with Milde.

2. <u>Failure to follow 90-Day Opportunity to Improve</u>

Milde also argues that, contrary to the defendants'
assertions, she did follow the 90 day opportunity to improve.
However, the record discloses Milde took actions that show she
did not follow that 90-day opportunity, in that 1) Milde
communicated directly with C.C.I. about contract issues instead
of working through Little as instructed, as shown with the July
6, 2000 memorandum she wrote to C.C.I.; 2) Milde failed to turn
over the employment contract of Nancy Wisecup that Little asked
for; 3) Milde continued to go around Little in trying to hire an
in-house recreation coordinator as shown with her carbon copying
an internal memorandum to the state ombudsman; 4) Milde refused
to attend a meeting at the time directed by Little as shown in
Milde's August 7, 2000 memorandum; and 5) Milde admittedly
refused to apologize to the Board for her actions at their May
22, 2000 meeting.

In sum, Milde has failed to produce any evidence beyond
her own conclusory statements that the defendants' articulated
reason for terminating her employment is unworthy of belief.  In
light of the substantial evidence produced to support the

26

defendants' articulated reason, the court concludes that an issue
of fact does not exist with respect to the claim of pretext, and
accordingly, the defendants are entitled to judgment as a matter
of law. See e.g., Getschmann v. James River Paper Co., Inc., 822
F. Supp. 75, 78 (D. Conn. 1993) (favorable prior work performance
and two discriminatory statements by a supervisor were "too
slender a reed to carry the weight of the charge" at summary
judgment where there was overwhelming evidence of legitimate
business reason).[2]  For the same reasons, Milde's motion for
summary judgment on her Title VII claim is denied.

## II. Age Discrimination

Milde next argues that HATG and the Board subjected her
to adverse employment actions due to her age, in violation of the
ADEA. The ADEA states in relevant part, "[i]t shall be unlawful
for an employer to... discharge any individual or otherwise
discriminate against any individual with respect to his
compensation, terms conditions or privileges of his employment

---

[2]  Other factors in this case strongly rule out a finding of illegal
discrimination. Firstly, it was Little who made the original decision to hire
the plaintiff. See Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) ("Some
factors strongly suggest that invidious discrimination was unlikely. For
example where the person who made the decision to fire was the same person who
made the decision to hire.") Further, after Milde's discharge, the defendants
replaced her with another woman. See Montana v. First Fed. Sav. & Loan Assoc.
of Rochester, 869 F.2d 100, 107 (2d Cir. 1989) (where the court observes that,
where the plaintiff's responsibilities were given to a woman after her
termination, the plaintiff could not even establish a prima facie case of
gender discrimination).

because of such individual's age." 29 U.S.C. § 623(a)(1). "The
prohibitions in this chapter shall be limited to individuals who
are at least 40 years of age." 29 U.S.C. § 631(a). "[W]e analyze
ADEA claims under the same framework as claims brought pursuant
to Title VII" Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir.
2000).  Therefore, the court first turns to Milde's prima facie
case.

## 1. The Plaintiff's Prima Facie Case

"[A] plaintiff establishes a prima facie case of
discrimination by showing that: (i) at the relevant time the
plaintiff was a member of the protective class; (ii) the
plaintiff was qualified for the job; (iii) the plaintiff suffered
an adverse employment action; (iv) the adverse employment action
occurred under circumstances giving rise to an inference of
discrimination, such as the fact that the plaintiff was replaced
by someone 'substantially younger.'" Roge v. NYP Holdings, Inc.,
257 F.3d 164, 168 (2d Cir. 2001)(quoting O'Connor v. Consol. Coin
Carriers Corp., 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed. 433
(1996)); see Schnabel, 232 F.3d at 87 (holding "the fact that
[the plaintiff] was replaced by a 31 year old is sufficient to
give rise to the inference that [the plaintiff] was the victim of
discrimination" in establishing a prima facie case).

For the purposes of discussion, the court will assume
that Milde has established a prima facie case of age

28

discrimination, in that she was 60 years old when she was terminated, she is a member of a protected class, she was qualified for her position, and she suffered and adverse employment action through her job termination. Further, the court will assume that she has established an inference of age discrimination in that she was replaced by Penny Lore, a 35 year old female.

### 2. The Defendants' Non-Discriminatory Reason

The defendants articulate the same non-discriminatory reason for Milde's discharge they furnished with respect to the gender discrimination claim.  Accordingly, the court concludes that the defendants have sufficiently rebutted the inference of age  discrimination raised by Milde's prima facie case.

### 3. Pretext/Discrimination

As with Title VII claims, when looking at whether there is sufficient evidence of pretext, "courts must refrain from second guessing the decision-making process, but must allow the employees to show that the employer acted in an illegitimate or arbitrary manner."  Montana v. First Fed. Sav. & Loan Assoc. of Rochester, 869 F.2d 100, 106 (2d Cir. 1989)(quoting Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985); see Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 718 (2d Cir. 1994) (where the plaintiff's first adverse performance review was shortly before being fired, the court held "[d]ismissals are often preceded by

29

adverse performance reviews. Were we to view this pattern as
suspect, without more, many employees would be able to appeal
their personnel evaluations to a jury"; see also Byrnie v. Town
of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) ("our
role is to prevent unlawful hiring practices, not to act as a
'super personnel department' that second guesses employer's
business judgments") (quoting Sims v. Oklahoma ex. rel. Dept. of
Mental Health and Substance Abuse, 165 F.3d 1321, 1330 (10th Cir.
1999))).  In assessing the final phase of the ADEA framework,
"the plaintiff need not prove that age was the only or even the
principal factor... but only that age was at least one of the
motivating factors."  Carlton v. Mystic Transp. Inc., 202 F.3d
129, 135 (2d Cir. 2000).

        Both Milde and the defendants repeat the same arguments
here that they made when discussing the gender discrimination
claim.  Milde argues that along with the evidence presenting a
prima facie case of discrimination, that the defendants'
explanation of a legitimate reason for its action is false.  The
defendants argue that there is no evidence that the their reason
is false, and that there is also no evidence that age was the
real reason for Milde's discharge.

        As with Milde's claim of gender discrimination, even if
a reasonable jury could find an inference of age discrimination,
the defendants' legitimate reasons for Milde's discharge are

overwhelming and there is no evidence that the reasons are false.[3]  Therefore, the evidence put forward by Milde of age discrimination, as with the evidence put forward of gender discrimination, is once again too slender of reed to carry the weight of the charge in light of the overwhelming evidence of a legitimate reason for discharging Milde.

Therefore, the court concludes that an issue of fact does not exist with respect to the claim of pretext, and accordingly, the defendants are entitled to judgment as a matter of law.  For the same reasons stated, Milde's motion for summary judgment on her ADEA and FEPA age discrimination claims are denied.

## III. <u>Title VII, ADEA and FEPA Retaliation Claims</u>

Milde next argues that the defendants retaliated against her in violation of Title VII and ADEA on account of a complaint she filed with the EEOC.  Title VII and the ADEA makes it unlawful for an employer to discriminate against an employee for opposing any unlawful employment practice or for charging, testifying, assisting, or participating in a investigation

---

[3]As mentioned footnote 2, there are factors in this case that strongly rule out a finding of gender discrimination. Likewise, there are factors that strongly rule out a finding of age discrimination, in that Little was the same age as Milde, 60, when he made the decision to terminate her, Little helped to make the decision to hire Milde in 1996 and had an admittedly good relationship with Milde until March, 2000, and hence this evidence indicates that he did not express any discriminatory animus towards Milde when she was ages 56 through 59.

proceeding or hearing authorized under Title VII or the ADEA.  42

U.S.C. § 2000e-3(a); 29 U.S.C. § 623.  "We analyze a claim of

retaliatory discharge under the familiar three-part burden

shifting analysis that was set forth in McDonnell Douglas v.

Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."

Slattery v. Swiss Reins. N. Am., 248 F.3d 87, 94 (2d Cir. 2001).

## 1. The Plaintiff's Prima Facie Case

          "In order to make out a prima facie case of

retaliation, a plaintiff must show by a preponderance of the

evidence '1) participation in a protected activity known to the

defendant; 2) an employment action disadvantaging the plaintiff;

3) a causal connection between the protected activity and the

adverse employment action.'"  Slattery, 248 F.3d at 94(quoting

Holt v. KMI-Cont'l Inc., 95 F.3d 123, 130 (2d Cir. 1996)).

"[T]he burden that must be met by an employment discrimination

plaintiff to survive a summary judgment motion at the prima facie

stage is de minim[i]s."  Chambers v. TRM Copy Centers Corp., 43

F.3d 29, 37 (2d Cir. 1994)(alterations in original)(internal

quotation marks omitted).  While proof of causal connection can

be established by showing that the protected activity was

followed closely by discriminatory treatment, Davis v. State

University of New York, 802 F.2d 638, 642 (2d Cir. 1986), "when

timing is the only basis for a claim of retaliation, and gradual,

adverse job actions began well before the plaintiff had ever

engaged in a protected activity, an inference of retaliation does not arise." Slattery, 248 F.3d at 95.

A. Participation in Protected Activity/Known to Management/Adverse Employment Action

The court assumes that Milde has established the first three parts of the prima facie case. Milde engaged in a protected activity by filing her complaint of discrimination with the EEOC. Second, Little knew about Milde's participation in a protected activity through a July 26, 2000 letter from Milde's attorney to Little. Finally, Milde suffered an adverse employment action when she was discharged.

B. Causal Nexus

In arguing that a causal nexus exists between the filing of her complaint and her termination, Milde points to the fact that she engaged in protected activity on July 26, 2000 when she filed her complaint with the EEOC. Shortly thereafter, on August 21, 2000, Little sent Milde a letter informing her that she would be subject to a disciplinary hearing. The hearing went forward on September 6, 2000, and HATG discharged Milde on September 8, 2000. Hence, Milde has provided evidence of temporal proximity.

However, Little subjected Milde to a series of reprimands months before she filed her complaint with the EEOC. Beginning with a memorandum Little wrote on March 24, 2000, Little increasingly expressed his disapproval of hiring an in-

33

house recreation coordinator and the way Milde was handling the
situation. These concerns led to the "Corrective Directives" and
"Disciplinary Reprimand" that Little sent to Milde on June 2,
2000, far in advance of Milde's EEOC charge.  Furthermore,
Little's basic complaints in his June 2, 2000 letters to Milde
are consistent with the reasons that the defendants articulated
to discharge Milde.

        Accordingly, although there temporal proximity between
the filing of Milde's EEOC complaint and her discharge this
evidence does not create a causal connection because there were a
series of gradual reprimands before the plaintiff engaged in a
protected activity.  Milde has therefore failed to establish a
prima facie case of retaliation.  For the same reasons stated,
Milde's motion for summary judgment on these claims is denied.

IV.  **Claim Pursuant to 42 U.S.C. § 1983**

        Milde next argues that the defendants terminated her
employment in retaliation for her exercise of speech as protected
by the First Amendment to the United States Constitution.  The
defendants seek judgment as a matter of law on the claim, arguing
that Milde has failed to raise a genuine issue of material fact
that any state action is involved and that, even if there is
state action, Milde has failed to establish a prima facie case of
retaliation.

34

### 1.    State Action/Color of State Law

The defendants argue that there is no evidence that
they were acting under color of state law and, hence, they are
entitled to judgment as a matter of law.  Further, the defendants
point out that, while the they receive state funding,
that alone is insufficient to establish that personnel decisions
of the institution are state actions.

In response, Milde argues that, to the contrary, the
activity of HATG is infused with state action because it is
performing a function that is public and governmental in nature
and that, moreover, it was established under legislation that was
approved by the state of Connecticut with the Board appointed by
the town of Greenwich board of selectmen with the defendants
receiving local, state and federal funding.  Further, Milde
maintains that each defendant is clothed with the authority of
state law because they operate the only housing authority in
Greenwich.

"To state a claim under § 1983, a plaintiff must allege
the violation of a right secured by the Constitution and laws of
the United States, and must show that the alleged deprivation was
committed by a person acting under color of state law."  West v.
Adkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40
(1988)(citation omitted).  For an entity to be liable as a state
actor, "the State need not have coerced or even encouraged events

35

at issue. . . if 'the relevant facts show pervasive entwinement

to the point of largely overlapping identity' between the State

and the entity that the plaintiff contends is a state actor."

Horvath v. Westport Library Ass'n, 362 F.3d 147, 154 (2d Cir.

2004)(quoting Brentwood Academy v. Tennessee Secondary School

Athletic Ass'n, 531 U.S. 288, 303, 121 S.Ct. 924, 148 L.Ed.2d 807

(2001)); see id. (where the court held that a library was a state

actor because the town appointed half of the board, the library

was created by statute, and it served a governmental function).

In Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374, 400, 115

S.Ct. 961, 130 L.Ed.2d 902 (1995), the Court stated that, "where

the Government creates a corporation by special law, for the

furtherance of governmental objectives, and retains for itself

permanent authority to appoint a majority of the directors of

that corporation, the corporation is part of the government for

purposes of the First Amendment." Id. Further, an individual

who conducts himself as a supervisor for a public employer is, as

a matter of law, acting under color of state law. Annis v.

County of Westchester, 36 F.3d 251, 254 (2d cir. 1994). "The

question of state involvement is always a factual inquiry."

Ginsburg, 189 F.3d 268, 271 (2d Cir. 1999)(quoting Dahlberg v.

Beck, 748 F.2d 85, 92 (2d Cir. 1984)).

    In this case there is enough evidence for a fact-finder

to conclude that each of the defendants, i.e., HATG, the Board

36

and Little, were acting under color of state law as state actors.
As with Lebron, the state created HATG by statute in order to
perform a public function - in this case to provide public
housing.  With respect to the Board, the board of selectmen of
the town of Greenwich appointed the members of the Board, and
gave the Board authority from which it could decide how to
provide recreational services to the residents at Parsonage.
Further, Little, as a supervisor of a public employer, is a state
actor as a matter of law.  Viewing all facts in light most
favorable to the plaintiff, the court concludes that this case
does not fail for want of state action.

  2.   Retaliation

  A.   Matters of Public Concern

  The defendants next argues that they are entitled to
judgment as a matter of law because the speech at issue does not
touch on a matter of public concern.  Specifically, they assert
that the speech at issue, Milde's complaints, dealt solely with
internal operational matters, i.e., her day-to-day employment
situation resulting from her dissatisfaction with Little.

  In response, Milde argues that her complaints to Little
and the Board centered around what she thought was C.C.I.'s
inadequate recreation services.  She argues that the absence of
such services would have a negative impact on the residences, and
do not involve merely internal personnel matters.

To establish a claim of retaliation in violation of the First Amendment, the plaintiff must initially demonstrate that: "(1) the speech at issue was made as a citizen on matters of public concern; (2) he or she suffered an adverse employment action; [and] (3) the speech was at least a substantial motivating factor in the [adverse employment action]" Johnson v. Ganim, 342 F.3d 105 (2d Cir. 2003)(internal citations and quotations omitted).

"Whether speech involves a public concern is a question of law to be determined on the basis of the 'content, form, and context of a given statement, as revealed by the whole record.'" Sheppard v. Beerman, 18 F.3d 147, 151 (2d Cir. 1994)(quoting Connick v. Myers, 461 U.S. 138, 147-8 & n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). First Amendment protection applies not only when the view is expressed publicly, but also "when a public employee arranges to communicate privately with his employer rather than to express his views publicly." Connick, 461 U.S. at 146, 103 S.Ct. 1684. See White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1058 (2d Cir. 1993)(where the court gives examples of speech that are "less likely" to be matter of public concern, such as "speech that merely proposes commercial transactions... desire for a particular assignment... medical resident's complaints regarding her treatment in residency program." (internal citations omitted)).

38

In this case Milde did express complaints that dealt with matters of public concern.  It is undisputed that Parsonage was required by statute to provide for recreation for its residents. Under state law, "[r]ecreational activities shall be provided in [h]omes for the [a]ged." Conn. Agencies Regs. § 19-13-D6 S(g). This law is a strong indication that the public has a genuine concern that the elderly in their community, who are often more vulnerable than younger people, receive adequate recreation.

The record indicates that two incidents of Milde's speech in which she alleges led to adverse employment actions dealt with inadequate recreation services. On May 22, 2000, Milde tried to speak at a Board meeting about her grievance.  The subject of the speech involved the inadequacy of the recreation services at Parsonage.  On May 22 and May 26, 2000, Milde spoke about the adverse effects of not having an adequate recreation coordinator to the Greenwich Times.  These incidents involve issues of public concern to the community and as a matter of law are not merely internal personnel matters.

B.    Casual Nexus

The defendants argue that there is no evidence of a causal nexus between Milde's protected speech and her job termination.  Specifically, they argue that Little decided to terminate Milde's ewmployment because of an internal power

39

struggle with Milde, not because of any protected speech.

Milde argues that she can establish a causal nexus between her speech and the adverse employment actions. Specifically, Milde points to the short period of time that elapsed between her speaking out about recreation services at Parsonage and her discharge.  In addition, Milde points to McClenchan's testimony that Milde's grievance regarding the recreation coordinator "was perhaps one of the reasons for her termination. It was not the only reason."

"Once the employee establishes that he has spoken as a citizen on a matter of public concern, he must also establish that the speech was at least a 'substantial' or 'motivating' factor in the discharge." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1058-59 (quoting Mt. Healthy City City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). "The motive behind [the plaintiff's] firing in his retaliation claim is clearly one of fact." Sheppard, 18 F.3d at 151.

In this case there is evidence from which a jury could find that Milde's protected speech, i.e., her speech at the Board meeting and her comments to the Greenwich Times, was a substantial or motivating factor behind her discharge.  Along with McClenachan's testimony that Milde's actions at the May 22, 2000 Board meeting was perhaps one of the reasons for Milde's job

40

termination, Little himself told Milde in the May 30, 2000
"Written Disciplinary Reprimand" that once of the reasons for
reprimanding her was her statements to the Greenwich Times about
the failure of C.C.I. to provide adequate recreational services.
While there is evidence that Little discharged Milde based on
conflict over internal procedural matters, there is enough
evidence that Milde's protected speech was at least a substantial
or motivating factor in her discharge.

        C. Pickering Balancing Test

        The defendants next argue that Milde's outburst at the
May 22, 2000 meeting was disruptive to the operations of the
Board and hence, they are entitled to judgment as a matter of law
under Pickering v. Bd. of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20
L.Ed.2d 811 (1968).  Milde responds that her First Amendment
claim is not foreclosed by Pickering because the public interest
of adequate recreation services for the residents at Parsonage
outweighs the potential disruption caused by her speech.
Specifically, Milde argues that poor recreation services for the
elderly can have serious consequences, including stunted life
spans.  In addition, Milde argues that as opposed to disrupting
the functioning of HATG, her speech could have helped the
administration of Parsonage, so it could run more efficiently and
better serve the residents.  Milde also argues that the meeting
was open to the public and there was no reason for the Board to

                            41

refuse to recognized her.  Finally, Milde points out that the
testimony of nurse Wisecup, that Milde's speech at Board meeting
on May 22, 2000 was not disruptive, supports her claim.

Under Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88
S.Ct. 1731, 20 L.Ed.2d 811 (1968), the court must balance "the
interests of the [plaintiff], as a citizen, to comment upon
matters of public concern and the interest of the [state actor],
as an employer, in promoting the efficiency of the public
services it performs through its employees."  Id.  In Johnson v.
Ganim, 342 F.3d 105, 114 (2d Cir. 2003), the Second Circuit
stated:

> While as a general rule the [Pickering] test is a
> matter of law for the district court to apply, where
> there are questions of fact relevant to that
> application, this court has made known that 'we can
> envision cases in which the question of the degree to
> which the employee's speech could reasonably have been
> deemed to impede the employer's efficient operation
> would properly be regarded as a question of fact, to be
> answered by the jury prior the [district] court's
> application of the Pickering balancing test.'

Johnson v. Ganim, 342 F.3d 105, 114 (2d Cir. 2003) (quoting
Gorman-Bako v. Cornell Coop. Extension, 252 F.3d 545, 557 (2d
Cir. 2001)).

Because there are unresolved factual disputes that must
be resolved before the court can properly apply the Pickering
balancing test, neither party is entitled to judgment as a matter
of law.  Specifically, there is conflicting testimony as to
whether Milde caused a disruption at the May 22, 2000 board

meeting.  Milde and Wisecup both testified that McClenchan

shouted Milde down while Milde was being polite.  McClenachan

however characterized Milde's speech as more disruptive.  The

record is also unclear as to why McClenachan testified that Milde

was out of order at the meeting, when she also admitted that it

was a public meeting and anybody could speak.  In addition, it is

also not clear whether or not Milde's statement to the Greenwich

Times could reasonably be seen to cause a disruption.  Finally,

there is evidence on the record, mostly from Milde's testimony

and memoranda that there were deficiencies in the recreational

services at Parsonage, which could weigh against any potential

disruption.  Without the resolution of these issues, the court

can not apply the Pickering balancing test.

### 5. Qualified Immunity

Little next seeks judgment as a matter of law on the

First Amendment claim, arguing that the doctrine of qualified

immunity shields him from liability.  Milde responds that Little

is not protected by the doctrine of qualified immunity.

Specifically, Milde argues that the right not to be discharged

for exercising First Amendment rights are clearly established so

that Little knew or should have known he violated Milde's rights.

"A government official is protected by qualified

immunity insofar as the official's conduct does not violate

clearly established Constitutional or statutory rights."  "Our

43

cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The "relevant inquiry is not whether the defendant's should have known that there was a federal right, in the abstract, 'to freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech." Lewis v. Cowen. 165 F.3d 154, 166 (2d Cir. 1999). "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995)(citation omitted).

Under the circumstances presented here, the court concludes that there is a genuine issue of material fact as to whether Little is entitled to qualified immunity. If Little is not entitled to relief under Pickering v. Bd. of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and there is a finding that he terminated Milde's employment on account of her statements either at the May 22, 2000 Board meeting or on account of her report to the Greenwich Times, the court would be hardpressed to conclude that Little believed that his actions

44

were lawful and not in violation of Milde's First Amendment rights.  Accordingly, Little is not entitled to qualified immunity at this juncture.

## V. Unconstitutional Prior Restraint Claim

        The defendants next seek judgment as a matter of law on Milde's claim that their media and public relations policy constituted an unconstitutional prior restraint.  In response, Milde argues that these policies do constitute unconstitutional prior restraints because their purpose was to prevent negative press while mandating that all issues were to be discussed with the Board or Little.

        An unconstitutional prior restrain may be found where "the government imposes a requirement of advance approval or seeks to enjoin speech."  Dial Info. Servs. Corp. v. Thornburgh, 938 F.2d 1535, 1543 (2d Cir. 1991).  See Morris v. Lindau, 196 F.3d 102, 112-113 (2d Cir. 1999)(where the court held that "because the policy clearly states that it simply requires notification of the subject matter of the speech, it is not a prior restraint and does not violate the First Amendment").

        In this case, the media policy does not seek to enjoin speech or require advance approval.  Rather, it simply requires notification before an employee speaks to the press.  In this regard, the policy states "before any contact is made with the media on information, data and/or HATG policies that affect the

45

above strategies, there must be communication with

[c]ommissioners and appropriate [s]taff." Therefore, as written

it is not a prior restraint. The defendants motion for summary

judgment on the prior restraint claim is granted. For the same

reasons stated, Milde's motion for summary judgment on her prior

restraint claim is denied.

CONCLUSION

For the foregoing reasons, the defendants' motion for

summary judgment (document no. 128) is GRANTED IN PART AND DENIED

IN PART, and Milde's motion for summary judgment (document no.

132) is DENIED.

It is so ordered, this ____ day of August, 2005, at

Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge

46