**EXHIBIT DD-4**

Service: Get by LEXSEE®
Citation: 2006 U.S. Dist. LEXIS 43631

2006 U.S. Dist. LEXIS 43631, *

BARBARA LOGAN, Plaintiff, vs. THE INDIANA DEPARTMENT OF CORRECTIONS, DEAN REIGER, ROSE VAISVILAS, JIM LADD, RON RICE, DOUG GEHRKE, PRISON HEALTH SERVICES OF INDIANA, LLC and CRAIG UNDERWOOD, Defendants.

1:04-cv-0797-SEB-JPG

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

2006 U.S. Dist. LEXIS 43631

June 26, 2006, Decided

**CORE TERMS:** summary judgment, public employee, personnel, duties, constitutional protection, matter of public concern, public policy, job duties, prison, recommending, accountable, supervisor, speaking, template, removal, nursing, inmates, nurse

**COUNSEL:** [*1] For BARBARA LOGAN, Plaintiff: David Robert Brimm, Richard A. Waples, WAPLES & HANGER, Indianapolis, IN.

For THE INDIANA DEPARTMENT OF CORRECTION, M.D. DEAN RIEGER, ROSE VASVILLIS, JIM LADD, RON RICE, DOUG GEHRKE, Defendants: Juliana B. Pierce, Kathryn Lynn Morgan, Richard M. Bramer, INDIANA STATE ATTORNEY GENERAL, Indianapolis, IN.

For PRISON HEALTH SERVICES OF INDIANA, LLC, CRAIG UNDERWOOD, Defendants: Roger K. Kanne, ZEIGLER COHEN & KOCH, Indianapolis, IN.

**JUDGES:** SARAH EVANS BARKER, United States District Judge.

**OPINIONBY:** SARAH EVANS BARKER

**OPINION: ENTRY ON DEFENDANTS' MOTION TO RECONSIDER n1**

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 For a detailed recitation of the facts of this matter, please refer to our order of November 8, 2005 (**Document # 64**).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On November 8, 2005, we entered an order granting partial summary judgment in favor of a number of Defendants in this matter. On January 23, 2006, on reconsideration, we reinstated Plaintiff's § 1983 claim against three of the Defendants who had previously been allowed to be dismissed [*2] from that particular claim. In both of those orders, we noted that the Supreme Court had taken a case which involved issues with respect to the First Amendment protections available to public employees, noting that the resolution of that case would likely impact issues before us. Following the issuance of those two orders, Plaintiff settled her claims against all the "state defendants," leaving only her § 1983 claim against her employer, Prison Health Services of Indiana (PHS), and her supervisor, Craig Underwood. Subsequently, as anticipated, the Supreme Court decided **Garcetti v. Ceballos, U.S. , 126 S.Ct. 1951, 164 L. Ed. 2d 689 (2006)**. In

addition, the Seventh Circuit recently applied *Garcetti* in affirming a summary judgment in favor of the City of Evansville in a § 1983 First Amendment case. Based on those decisions, the remaining Defendants again reassert their entitlement to summary judgment in this case. The effect of the holding in *Garcetti* is to add a new test in analyzing the employee's speech in determining whether it is protected under the First Amendment. In applying that test here, we find that Plaintiff's speech was not protected and summary [*3] judgment must be entered in favor of Defendants.

The *Connick/Pickering* test n2, which has traditionally been employed to guide constitutional interpretation of the protections accorded specific speech by a public employee n3 and which we applied in our earlier decisions, has not been abandoned by the Supreme Court in *Garcetti*. The initial *Connick/Pickering* inquiry as to whether the plaintiff employee was speaking out on a matter of public concern is still an appropriate question because, if the answer is no, no constitutional protection attaches to the speech. **Garcetti, 126 S.Ct. at 1958.** However, before asking that question, *Garcetti* requires that "the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job." Mills v. City of Evansville, Indiana, 2006 U.S. App. LEXIS 15082, *4, No.05-3207 (7th Cir. June 20, 2006). Stated otherwise, the court must ask, "Did the employee's expression arise from her employment duties?". **Garcetti, 126 S.Ct. At 1959-60**. If the speech giving rise to Defendant's punitive action against the speaker/employee occurred as part of the employee's job, then the government agency does not infringe [*4] any private liberties because the speech "owes its existence to a public employee's professional responsibilities." ***id. at 1960***.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The test used by federal courts in public employee free speech cases evolved from Connick v. Myers, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) and Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).

n3 Of course, Logan is not a "public employee", as that phrase is used in common parlance. However, as described in our earlier ruling, a § 1983 claim may be successfully pursued if plaintiff establishes sufficient state involvement in the employment decision to trigger constitutional protection. Stagman v. Ryan, 176 F.3d 986, 1003 (7th Cir. 1999). Here, if Logan can establish that her private employer, or its agents, jointly participated with the state in achieving an unconstitutional goal, they are deemed to have acted "under color of law" and could be held liable under § 1983. *Id.*

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

That [*5] said, we concede that the case before us does not permit a straightforward application of this analytical template. We are confronted with a hybrid situation, involving a private employee suing her private employer based on the claim that her supervisor conspired with the State of Indiana and its agents to violate her First Amendment rights. Logan's broad responsibilities included those owed not only to her private employer, but those which were required of her by her employer's client, the Indiana Department of Corrections (IDOC).

In our previous ruling, we noted that as Healthcare Administrator at the New Castle correctional facility, Logan had no direct responsibility for the state's nursing personnel decisions. After *Garcetti*, Plaintiff has latched on to this finding, claiming that it establishes that her comments to IDOC officials regarding the need for removing the Director of Nursing at New Castle did not arise out of her job responsibilities. We are not persuaded by that argument, however, because as the lead healthcare administrator at the facility, Logan's broad responsibilities included acting "as liaison between correctional personnel, public agencies and Prison Health [*6] Services." Moreover, three of the essential duties listed in her job description included: (1) reviewing the status of inmates with serious health problems and assuring that intervention and treatment was completed; (2) evaluating the provision of all medical services to prevent inappropriate use or duplication; and (3) meeting with designated client personnel on a regular basis to discuss and evaluate the program. Even

though her speech in recommending the removal of the head nurse at the prison may have addressed a matter of public concern, Plaintiff's statements to IDOC officials regarding the persistent serious problems with nursing care for the inmates and her recommendation that the Nursing Director be replaced were clearly statements made "pursuant to" her official duties. *Mills,* 2006 U.S. App. LEXIS 15082, *1. About this, there simply is no longer any basis for "reasonable debate." **Garcetti, 126 S.Ct. at 1961**. Whether or not it was reasonable, as IDOC and PHSI assert, for IDOC to conclude that the relationship between its own facility Nursing Director and Logan, as the contract Healthcare Administrator, was irreparable creating a need to separate them in terms of their **[*7]** daily interactions, Logan's speech which generated IDOC's request that PHS transfer her to another facility clearly arose out of the performance of Logan's employment responsibilities.

In *Mills*, after determining that the plaintiff employee's speech occurred pursuant to her job duties and thus was not protected under the First Amendment, Judge Easterbrook, writing for a unanimous panel, explicated the public policy underpinnings in a public employer's retention of power to transfer employees (as opposed to firing them) in response to circumstances which suggest that the employee is unlikely to offer her full support for implementation of the decisions of agency leaders. *Mills,* 2006 U.S. App. LEXIS 15082, [slip op.] at 3-4.

> Public employers must be able to change assignments in response to events (including statements) that reveal whether employees will be faithful agents of the decisions made by the politically accountable managers. It promotes rather than undermines first amendment values when those who make decisions, and are held accountable at the polls, can ensure their implementation within the bureaucracy.

*Mills,* 2006 U.S. App. LEXIS 15082 at *5-6. Logan was fired in the case at bar only after she **[*8]** also had refused a transfer to another nearby facility because, as she explains, the transfer would have added another 25 to 30 minutes to her commute and kept her during the workdays at a greater distance from her ill husband. This dicta in *Mills* regarding the necessity of a public employer's retaining the power to assign or to transfer employees in order to ensure effective implementation of public policy decisions underscores the correctness of our decision that Logan's speech, criticizing the prison's head nurse and recommending her removal from that position was not constitutionally protected.

### Conclusion

*Garcetti* and *Mills* have changed the analysis in § 1983 First Amendment speech cases, requiring a new question to be asked and answered as a part of the *Connick/Pickering* test. In applying this newly-formulated template here, it becomes plain that Plaintiff made her statements pursuant to her job duties and thus they fall outside the scope of First Amendment protection. Accordingly, the First Motion to Reconsider Defendant's Motion for Summary Judgment **(Document # 74)** is GRANTED in favor of Defendants PHS and Craig Underwood on the only remaining **[*9]** claims in this case. Defendants' Motion to Continue Jury Trial **(Document # 76)** is DENIED as moot.

**IT IS SO ORDERED June 26, 2006**

SARAH EVANS BARKER, JUDGE

United States District Court

Southern District of Indiana

### JUDGMENT

The court, having granted the First Motion to Reconsider Defendant's Motion for Summary Judgment **(Document # 74)** in a concurrent ruling, now enters summary judgment in favor of Defendants PHS and Underwood on the entirety of Plaintiff's Complaint. Each party shall bear its own cost.

**IT IS SO ORDERED** June 26, 2006

SARAH EVANS BARKER, JUDGE

United States District Court

Southern District of Indiana

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 43631**
View: Full
Date/Time: Wednesday, July 26, 2006 - 2:59 PM EDT

 About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.