**EXHIBIT DD-9**

Service: Get by LEXSEE®
Citation: 2006 U.S. Dist. LEXIS 47835

2006 U.S. Dist. LEXIS 47835, *

RICHARD HOLBROOK, Plaintiff, v. STATE OF NEVADA, ex rel., ITS DEPARTMENT OF CORRECTIONS, a governmental entity, JACKIE CRAWFORD, individually, GLEN WHORTON, individually and in his official capacity, DOES 1-10, individuals, Defendants.

View the Full Docket from LexisNexis CourtLink for 3:06cv215
03:06-CV-00215-LRH-VPC

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

2006 U.S. Dist. LEXIS 47835

July 13, 2006, Decided

**CORE TERMS:** preliminary injunction, hardship, injunction, inmates, matter of public concern, irreparable injury, status quo, mandatory, duty, prison, irreparable, retaliation, tips, injunctive relief, irreparable harm, balancing test, expressive, performing, monetary, hostile, succeed, likelihood of success, sick leave, interfere, losing, mandatory injunction, working environment, requested relief, public interest, regulations

**COUNSEL:** [*1] For Richard Holbrook, Plaintiff: Jeffrey A Dickerson, Jeffrey A. Dickerson, Reno, NV.

For Glen Whorton, Jackie Crawford, Defendant: Jill Carol Davis, Attorney General's Office, Las Vegas, NV, US; Robert W. Linder, Attorney General's Office, Las Vegas, NV.

For State of Nevada Department of Corrections, Defendant: Jill Carol Davis, Attorney General's Office, Las Vegas, NV, US.

**JUDGES:** LARRY R. HICKS, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** LARRY R. HICKS

**OPINION:** ORDER

Presently before the court is Plaintiff Richard Holbrook's ("Holbrook") Motion for Preliminary Injunction (# 9 n1 ). Defendant State of Nevada, ex rel., its Department of Corrections, and Glen Whorton ("Whorton") filed an opposition (# 11), and Holbrook replied (# 12).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Refers to the court's docket number.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

### I. Factual Background

Holbrook is currently employed as a Senior Correctional Officer for Nevada's Department of Corrections. During his employment, Holbrook "refused to engage in breach of procedure in counting inmates, perimeter [*2] checks and strip searches of inmates." (Compl. P6.) According to Plaintiff,

his refusal to breach prison procedures was "resented by those responsible for these derelictions." *Id.* P7. At some point during his employment, Holbrook expressed his concerns to Whorton, the Interim Director of the Department of Corrections. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 It is unclear to the court whether Holbrook spoke to Whorton before or after the May 15, 2005, incident.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On May 15, 2005, an "incident n3 " occurred at Nevada State Prison during a search for alcohol-based substance. According to Holbrook, he responded to this incident with "valor and courage." *Id.* P5. Nevertheless, Holbrook alleges that the Doe Defendants made false statements that "included the assertion or implication that during the incident Plaintiff was detached and unhelpful after backup officers arrived and entered the Unit and that Plaintiff never entered the wing and never assisted in controlling inmates . . . ." *Id.* at 8. Holbrook further alleges that the same defendants [*3] stated that he "behaved in a cowardly fashion." *Id.* According to Holbrook,

> such statements, when publicized in a secure law enforcement environment, naturally cause tension, create doubt, create lack of trust, and hamper an officer's ability to be able to depend upon his fellow officers for backup, deplete an officer's credibility with inmates in terms of control and respect, and cause management to question Plaintiff's capabilities.
>
> *Id.* P13.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Holbrook's points and authorities refer to the "incident" as a riot. (Mot. for Preliminary Injunction (# 9) at 10.)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As a result of these statements, Holbrook alleges that his career path has been harmed and that he has "suffered harm to his reputation and good will, emotional distress, mental anguish, humiliation, embarrassment, grief, ostracism, frustration and anxiety." *Id.* PP 12-13. Holbrook further alleges that the institutional and departmental administrators failed to take reasonable steps to stop the dissemination of false statements [*4] and restore Holbrook's credibility in the eyes of both law enforcement and the inmates.

Holbrook is currently on leave pursuant to the Family and Medical Leave Act and available sick leave. However, Holbrook is due to return to work within a few weeks. Holbrook is currently assigned to Transportation, where he is "exposed to fellow correctional officers and inmates who are aware of [his] situation." (Mot. for Preliminary Injunction (# 9), Decl. of P1. at 1.)

As a result of these events, Holbrook is seeking a preliminary injunction to avoid returning to work "in a life threatening job" or risk losing his job. (Mot. for Preliminary Injunction (# 9) at 11.) Specifically, Holbrook is seeking either to be placed on administrative leave with pay or to be reassigned to an administrative position.

## II. Legal Standard

The Ninth Circuit uses two alternative tests to determine whether a preliminary injunction should issue. According to the "traditional test" the equitable criteria for granting preliminary injunctive relief are: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a [*5] balance of hardships favoring the plaintiffs; and (4) advancement of the public interest. *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir.2001) (citing *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir.1980)). In the alternative, the Ninth Circuit uses a "sliding scale" or balancing test where preliminary injunctive relief is available to a party who demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.2001) (citing *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir.2000)).

Courts should be extremely cautious about issuing a preliminary injunction in cases where a party is seeking mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994). Whereas a prohibitory injunction preserves the status [*6] quo, a mandatory injunction is particularly disfavored because it goes well beyond the status quo. *Id.* at 1320. *Id.* (citations omitted). "When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* (citations and internal quotations omitted).

## III. Discussion

In seeking an injunction, Holbrook argues that he has a reasonable chance of success on the merits, that the harm he is suffering is irreparable, and that the balance of hardships tips in favor of granting the requested relief. In opposition, Defendants argue that the only damage that Holbrook could suffer are monetary and not irreparable, that Holbrook will not succeed on the merits, and that the balancing of hardships favors the defendants. In order to determine whether the requested injunction should issue, the court must first determine whether the injunction sought is prohibitory or mandatory. *See Stanley*, 13 F.3d at 1320. Second, the court must consider the factors outlined in part II above.

### A. The Nature of the Requested Injunction

As previously mentioned, Holbrook [*7] is seeking an injunction that places him on administrative leave with pay or reassigns him to an administrative position. Holbrook is a Senior Correctional Officer who is assigned to Transportation. However, Holbrook is currently on either sick leave or FMLA leave that is due to end relatively soon. Thus, the relief sought by Holbrook in this motion is not designed to maintain the status quo. Holbrook does not currently work in an administrative position. Therefore, any injunction ordering that Holbrook be placed in an administrative position is clearly a mandatory injunction that would order the Department of Corrections to place Holbrook in a different position. Similarly, by Holbrook's admission, he is not currently on administrative leave with pay and his sick leave is about to expire. Therefore, any injunction that would order Holbrook to be placed on administrative leave with pay would alter the status quo by forcing the Department of Corrections to alter Holbrook's status. It is undisputed that Holbrook's current leave status is different then the status he is requesting. In light of the mandatory nature of the relief sought by Holbrook, this court must deny his motion unless [*8] the facts and law clearly favor Holbrook. *Stanley*, 13 F.3d at 1320.

### B. Likelihood of Success on the Merits

In the case sub judice, Holbrook is seeking relief based upon alleged retaliation for engaging in speech that is protected by the First Amendment to the United States Constitution. To succeed on a First Amendment retaliation claim, Holbrook has the "initial burden to demonstrate that (1) he was subjected to an adverse employment action, such as being denied a benefit or privilege . . . , (2) he engaged in speech that was constitutionally protected because it touched on a matter of public concern and (3) the protected expression was a substantial motivating factor for the adverse

action." *Ulrich v. City & County of S.F.*, 308 F.3d 968, 976 (9th Cir. 2002) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000)).

The court will first address the issue of whether Holbrook engaged in speech that touched on a matter of public concern. Two inquiries help guide the court in determining the constitutional protections accorded to public employee speech. **Garcetti v. Ceballos, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006).** [*9] First, an employee does not have a First Amendment cause of action unless he speaks as a citizen on a matter of public concern. *Id.* (citations omitted). If the employee does speak as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* Although employees in some cases may receive First Amendment protection for expressions made at work, see *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979), "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Similarly, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." **Garcetti, 126 S. Ct. at 1960.**

In the case [*10] at bar, the court finds that Holbrook has failed to clearly show that he engaged in speech that was protected by the First Amendment. Reading Holbrook's complaint liberally, it appears that he is arguing that he engaged in speech with respect to two separate occurrences. First, Holbrook appears to argue that his refusal to engage in a breach of prison procedure constitutes expressive conduct and is protected by the First Amendment. See (Compl. P6.) The court, however, disagrees. By Holbrook's admission, "[d]epartmental regulations, institutional procedures and post orders dictate the manner in which these [prison procedures] shall be done in order to ensure the safety of the institution, of the officers, of other inmates and of the surrounding community and its citizens." *Id.* Therefore, Holbrook's alleged expressive conduct consisted of his performing his duties as required by departmental regulations and institutional procedures. For this reason, it does not appear to the court as though Holbrook spoke as a citizen on a matter of public concern as he was performing his official duties as a Senior Correctional Officer. See **Garcetti, 126 S. Ct. at 1960.** [*11]

In addition to Holbrook's alleged expressive conduct, Holbrook alleges that he orally brought his concerns to Whorton. However, according to Holbrook, these concerns were expressed to Whorton "in the context of seeking an accommodation for his predicament." (Compl. P7.) Therefore, it appears to the court that Holbrook was not speaking as a citizen on a matter of public concern. Rather, it appears that Holbrook brought this matter to Whorton's attention in the context of an individual personnel dispute. See *Coszalter*, 320 F.3d at 973. For these reasons, the court finds that the facts and law in regard to this case do not clearly show Holbrook engaged in speech protected by the First Amendment.

Moreover, even if Holbrook's speech was protected by the First Amendment, there is no indication that his speech was a substantial motivating factor in his alleged adverse employment action. According to Holbrook, his hostile working environment resulted from false statements that were made by unknown Doe Defendants. (Compl. P8.) However, there is no indication that Holbrook's employer, the Department of Corrections, or Whorton played any role in creating the alleged hostile [*12] working environment. At this stage in the proceedings, Holbrook has not identified which individual or individuals were responsible for the alleged First Amendment retaliation. Therefore, it does not appear as though Holbrook's employer retaliated against him for any alleged speech. For the foregoing reasons, the court finds that Holbrook has failed to show a likelihood of success on the merits of his claim for First Amendment retaliation.

### C. Immediate and Irreparable Injury

Holbrook argues that irreparable harm will result "in the sense that Plaintiff will be declared insubordinate for not returning to duty in the hostile work environment and may be declared absent without leave once his leave bank runs out." (Reply P. & A. (# 12) at 1.) Defendants, on the other

hand, assert that the only injury Holbrook may suffer is monetary and not irreparable.

The court has carefully examined the parties' points and authorities along with the relevant law and fails to see how Holbrook's alleged injury is irreparable. Rather, it appears that any injury suffered by Holbrook would be in terms of monetary benefits associated with his position within the Nevada Department of Corrections. As **[*13]** Defendants correctly point out, economic damages, such as lost revenues, are ordinarily not considered to be an irreparable injury when determining whether a preliminary injunction should issue. L.A. Mem'l Coliseum Comm'n v. NFL, 634 F.2d 1197, 1202 (9th Cir. 1980). For this reason, the court finds that Holbrook has failed to demonstrated a possibility of irreparable injury.

### D. Balancing the Hardships

In seeking a preliminary injunction, Holbrook argues that the balance of hardships tips in favor of granting the injunction because he is faced with the choice of returning to work in a life threatening environment or risk losing his job. Defendants, on the other hand, argue that "[i]nterpersonal relationships among the correctional officers could not exist if Plaintiff were forced to return to work at the same prison where the alleged incident of the complaint occurred, which is Nevada State Prison." (Opp'n to Preliminary Injunction (# 11) at 10.) Defendants further argue that forcing the Nevada Department of Corrections to place Holbrook in an administrative position would interfere with their ability to effectively and efficiently **[*14]** manage the prison and could interfere with other employee's rights if Holbrook was not capable of handling the new position. Finally, Defendants argue that administrative leave would cause the Department of Corrections to face hardship because the taxpayers would be forced to pay the salary of a Senior Correctional Officer who is not performing his duties.

In examining the facts of this case in relation to the requested preliminary injunction, the court finds that the balance of hardships does not favor either party. It is clear that each party would face some degree of hardship as result of the court's decision to either issue or not issue the injunction. Holbrook would be forced to return to an environment that he perceives to be hostile and unsafe or risk losing his job. Defendants, on the other hand, are charged with managing an effective and efficient prison system. Any decision by the court to place Holbrook in a different position would interfere with Defendants' decisions as to the most effective way to operate Nevada State Prison. Similarly, administrative leave with pay would force the Nevada Department of Corrections to expend resources without any corresponding benefit. **[*15]** For these reasons, the court finds that this factor is neutral to the analysis.

### III. Conclusion

In determining whether to issue an injunction, the court has considered the likelihood of success on the merits, the possibility of irreparable injury, and has looked at the hardships that would be suffered by each party. In looking at these factors, the court has found that Holbrook is not likely to succeed on the merits and has not shown that he will suffer from an irreparable injury. Furthermore, Holbrook has not shown that the balance of hardships clearly favors him under the facts of this case. In light of the mandatory nature of the requested relief, Holbrook was required to show that the facts and law clearly favor his position. Stanley, 13 F.3d at 1320. In analyzing the three factors listed above, the court finds that Holbrook has failed to establish the necessary criteria to issue a preliminary injunction pursuant to either the "tradition test" or the "balancing test." An injunction cannot issue pursuant to the "traditional test" because Holbrook has failed to establish three of the four traditional factors. n4 See Textile Unlimited, Inc., 240 F.3d at 786. **[*16]** Similarly, an injunction cannot issue pursuant to the "balancing test" because Holbrook has not demonstrated either a combination of probable success on the merits and the possibility of irreparable harm, or that serious questions are raised and the balance of hardships tips in his favor. See A & M Records, Inc., 239 F.3d at 1013.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The court did not address the public interest prong of traditional test.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

IT IS THEREFORE ORDERED that Holbrook's Motion for Preliminary Injunction (# 9) is hereby DENIED.

IT IS FURTHER ORDERED that Holbrook's Request for Emergency Evidentiary Hearing and Oral Argument (# 9) is DENIED.

IT IS SO ORDERED.

DATED this 13th day of July, 2006.

LARRY R. HICKS

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 47835**
View: Full
Date/Time: Wednesday, July 26, 2006 - 3:07 PM EDT

 About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.