UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **URSULA MILDE,** | : |
| Plaintiff, | |
| | : |
| v. | CIV.NO. 3:00CV2423(AVC) |
| | : |
| **THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH;** | : |
| **THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH BOARD OF COMISSIONERS; BENJAMIN LITTLE, CEO.** | : AUGUST 21, 2006 |
| | : |
| Defendants. | : |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS RENEWED MOTION FOR SUMMARY JUDGEMENT**

Plaintiff, Ursula Milde (hereinafter "Plaintiff" and "Milde") hereby files the instant Memorandum of Law in Opposition to the Renewed Motion for Summary Judgment filed by The Housing Authority for the Town of Greenwich, Inc.("Defendants" and "Housing Authority"), the Housing Authority of the Town of Greenwich Board of Commissioners ("Defendants" and "Board", and Benjamin Little, CEO, ("Defendants" and "Little") pursuant to Fed.R.Civ.P. 56 and Local Civil Rule 56.  Also filed herewith is Plaintiff's Fed.R.Civ.P. 56(c) and Local Civil Rule 56(a)(2) Statement in Opposition to Defendants Renewed Motion for Summary Judgment. (See Plaintiff's ¶¶ 1-90) [1]  Plaintiff also incorporates by reference her previously filed Local Civil Rule 56(a)(2) Statement of Material Facts in Dispute, dated June 14, 2004 [Doc.# 136]. Plaintiff also incorporates by reference her previously filed Memorandum in Opposition to Defendants Motion for Summary Judgment, dated June 14, 2004 [Doc.#134].

---

[1] Plaintiff will refer to her Statement of Facts in the following manner "Plaintiff ¶ ___".

**Carey & Associates, P.C.**

**I.     ARGUMENT**

    **A.     SUMMARY JUDGMENT STANDARD**

In the context of a motion for summary judgment, the burden is on the moving party to establish that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any show that there is no genuine issues as to any material fact." Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir.1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248, but omitting internal quotation marks), cert. denied, 506 U.S. 965 (1992). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

    **B.     DEFENDANTS CANNOT OVERCOME DISPUTED MATERIAL FACTS**

The Defendants Renewed Motion for Summary Judgment should be denied because Defendants cannot overcome the significant dispute of material facts. Simply stated, the Defendants disciplined and prohibited Milde for engaging in any activities related to the recreation coordinator issue. (See, Plaintiff's ¶¶ 1-90). By doing so, the Defendants removed any and all functions related to the recreation coordinator issue from

Milde's "expected" job duties.  As the evidence indicates, Milde was **not expected** to do the following job duties:

- "You are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]." (Plaintiff ¶¶ 3, 11, 26, 37);

- "You did not have the authority to terminate this contract [CCI] nor were you authorized by the Housing Authority to do so." (Plaintiff ¶¶ 16, 21);

- "You will communicate with me [Little] regarding the services provided by this company [CCI]. Since I am the person who has contracted with CCI, I will be the individual who will convey any concerns you have." (Plaintiff ¶¶ 4, 13);

- "I must emphasize that you do not have the authority to enter or terminate any contract(s) relating to Parsonage." (Plaintiff ¶ 5);

- "All press releases are reviewed by me [Little] and issued through the Housing Authority of the Town of Greenwich." (Plaintiff ¶¶ 6, 78);

- "The posting and selecting a candidate for the position of Recreational Coordinator was not authorized or approved." (Plaintiff ¶ 10);

- "You changed the qualifications for the position of Recreational Coordinator without the permission, authorization, or approval of the Board of Commissioners and Benjamin Little, CEO." (Plaintiff ¶ 12);

- "You disregarded the Board of Commissioners' decision not to hear your grievance." Which meant Milde was not required to make public protests before the Board. (Plaintiff ¶¶ 15, 75, 82). Milde was prohibited from policing the activities of the Defendants;

- Milde was prohibited from participated in Board of Commissioners meetings and subcommittees. (Plaintiff ¶¶ 31, 32, 35, 53, 55, 56, 57, 85);

- Defendants denied that Milde, under the state licensing requirements for a facility for the aged, she had the direct responsibility of ensuring complete compliance with all state and federal regulations; (Plaintiff ¶ 63);

On August 12, 2005, the United States District Court, District of Connecticut (Covello, J.), denied both parties' cross motions for summary judgment on Milde's Freedom of Speech retaliation claim, 42 U.S.C. § 1983, when she spoke out about a

3

matter of public concern. Ursula Milde v. The Housing Authority of the Town of Greenwich et.al., 2005 WL 1949781 (D.Conn.,2005)(J.Covello)(**Exhibit DD herein**). The Court held that Milde met her burden of proving that the Defendants were state actors. Milde, 2005 WL 1949781 at *16. She also was successful in proving her complaints in public forums, regarding insufficient recreation services, involved a matter of public concern, as required under Connecticut law, and were not "merely internal personnel matters". Milde, 2005 WL 1949781 at *17. The Court held she was successful in proving a causal nexus between her protected activity and the adverse employment actions she experienced. Milde, 2005 WL 1949781 at *18. As a result of the decision, Milde was entitled to a jury trial on her First Amendment retaliation claim. Specifically, this Court held there were issues of material facts in dispute regarding whether Milde's speech was disruptive, whether she was fired for engaging in protected speech and whether Defendant Little was entitled to qualified immunity. The Defendants filed an interlocutory appeal to the Second Circuit Court of Appeals on the qualified immunity defense.

On April 26, 2006, the Second Circuit issued a Summary Order dismissing Defendants Appeal, holding: "There being no dispositive question that is purely one of law, and the district court having found that there is a genuine issue of fact to be tried as to the immunity defense, we lack jurisdiction to review the challenged denial of summary judgment." Milde v. The Housing Authority of the Town of Greenwich, et.al., No.05-4950-cv (2nd Cir.April 26, 2006)(J.Wallace)(**Exhibit EE herein**).

On May 30, 2006, the United States Supreme Court issued Garcetti v. Ceballos, --U.S.--, 126 S.Ct. 1951, (May 30, 2006). The Garcetti case presents two questions of law to be decided by this Court. First, whether Milde's allegedly protected speech with regard

4

to the recreation services issue was made pursuant to her employment. Second, was her allegedly protected speech disruptive. If she satisfies this two-pronged analysis, her speech will be protected under the First Amendment. As to the second prong, this Court has already held there is a material dispute of fact whether Milde's actions caused a disruption to the Defendants operation of the Greenwich Housing Authority. <u>Milde v. Housing Authority</u>, 2005 WL 1949781 at *19.

This memorandum, and the Defendants' Motion, focuses on the first <u>Garcetti</u> prong, whether Milde's speech was made pursuant to an "expected job duty". Milde asserts that her speech was not made pursuant to an expected job duty, but were actions of a citizen protesting about a matter of public concern, which this Court has held, "these incidents involve issues of public concern to the community and as a matter of law are <u>not merely internal personnel matters</u>." (emphasis added) <u>Milde v. Housing Authority</u>, 2005 WL 1949781 *17 (D.Conn.). This Court's initial decision has already satisfied the first prong of the <u>Garcetti</u> analysis. The Court should deny Defendants Motion based on the current law of this case.

The following argument examines the illogical defense now being asserted by the Defendants. The Defendants initially disciplined and later terminated Milde for allegedly performing prohibited job duties associated with the recreation services at the Parsonage Cottage. Today, Defendants claim her actions and speech regarding the recreation services of the Parsonage Cottage were pursuant to the scope of her job duties. The evidence (See Plaintiff's ¶¶ 1-90) in this case reveals a serious dispute of material facts on this issue.

The following argument also examines how Milde transitioned from a paid employee performing her expected job duties on, May 22, 2000, to a citizen who

criticized the Defendants regarding a matter of public concern. (See, Plaintiff's ¶¶ 1-90). It is this transformation of identity that must cause the Court to protect her First Amendment right to freedom of speech.  Milde also asserts that her protected speech activities occurred much earlier that May 22, 2000, possibly as far back as March 2000. (See, Plaintiff's ¶¶ 1-90). This is based on the Defendants admissions that Milde was prohibited from raising the recreation coordinator issue internally when Defendants gave her a written reprimand on May 30, 2000. Any of Milde's actions in this regard were not expected job duties.

The Defendants Renewed Motion for Summary Judgment should be denied because there are significant material issues of fact in dispute regarding whether Milde's speech is protected.

> C. THIS COURT HAS PREVIOUSLY DETERMINED THAT MILDE'S SPEECH FELL OUTSIDE THE SCOPE OF HER EMPLOYMENT AND HER SPEECH WAS MADE AS A CITIZEN ABOUT A MATTER OF PUBLIC CONCERN

The Supreme Court has stated that "a citizen who works for the government is nonetheless a citizen. The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." Garcettie, 126 U.S. at 1958.

The Supreme Court has also held that "[n]either the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public. We decline to adopt such a view of the First Amendment." Givhan v. Western Line Consolidated School District, 439 U.S. 410, 415-416 (1979).

In <u>Garcetti v. Ceballos</u>, -- U.S.--, 126 S.Ct. 1951, (May 30, 2006), the Supreme Court has identified two inquiries that must be made in order to delineate a public employee's right to freedom of speech:

> The first [inquiry] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. The consideration reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations. Id at. 1958.

The <u>Garcetti</u> court also held that,

> **[w]e thus have no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate**. We reject, however, the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions. (internal citation omitted) **The proper inquiry is a practical one**. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

Id. at 1961-1962. (emphasis in original). "As the preceding passage makes clear, an employer's articulation of a 'duty', without more, does not eliminate any obligation to comply with the First Amendment. <u>Rather, a court must determine whether an employee is 'actually expected to perform' the potentially protected act</u>." (emphasis added) <u>Batt v. City of Oakland et.al.</u>, 2006 WL 1980401*4(N.D.Cal. July 13, 2006)(a police officer complained about police corruption, however, the court could not rule on whether speech was made as a duty of his employment, "fact issues remain as to whether plaintiff's speech was protected under the First Amendment."). After a practical inquiry in this case,

7

as discussed herein, Milde was not expected to perform job duties enumerated in the May 30, 2000 disciplinary reprimand. (Plaintiff ¶¶ 1-18).

In <u>Fuerst v. Clarke</u>, 2006 WL 2074818 (7th Cir.2006), Judge Posner held that a Deputy Sheriff's public criticism as a union president regarding the Sheriff's political proposal to hire a civilian to perform a traditionally civil service position were not made pursuant to his job duties. In distinguishing the <u>Garcetti</u> decision, Judge Posner held:

> Because Fuerst's comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff—his duties as deputy sheriff did not include commenting on the sheriff's decision to hire a public-relations officer—the Supreme Court's recent decision in <u>Garcetti v. Ceballos</u>, -- U.S.--, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), is inapposite.

Id. at *3. Likewise, Milde's job duties did not include her public criticism regarding Little's decision to continue a lapsed and inefficient contract for recreation services with CCI. (Plaintiff ¶¶ 1-18) Rather, she was speaking as a citizen on a matter of public concern. (Plaintiff ¶ 60)[2]. It would be illogical to think that Little actually expected Milde to publicly criticize his actions on the recreation services issue. In fact, we know this was not her job expectation or duty because Little disciplined her for protesting about lack of recreation services on May 22, 2000 during an open board meeting (Plaintiff ¶¶ 1-18), and on May 22 and 26, 2000 when she commented in two newspaper articles. (Plaintiff ¶¶ 1-18).

This Court's August 12, 2005, decision denying Defendants first Motion for Summary Judgment rejected Defendants argument that Milde's complaints dealt solely with internal personnel matters:

---

[2] "Defendant Little admitted with regard to Ms. Milde's exercise of free speech, 'the free speech word wasn't in there. If she was exercising her right to talk, grievance, bring a grievance in front of the Board of Commissioners then the answer is yes." (Plaintiff ¶ 60).

8

> In this case Milde did express complaints that dealt with matters of public concern. It is undisputed that Parsonage was required by statute to provide for recreation for its residents. Under state law, '[r]ecreational activities shall be provided in [h]omes for the [a]ged.' Conn.Agencies Regs. § 19-13-D6 S(g). This law is a strong indication that the public has a genuine concern that the elderly in their community, who are often more vulnerable than younger people, receive adequate recreation. The record indicates that two incidents of Milde's speech in which she alleges led to adverse employment actions dealt with inadequate recreation services. On May 22, 2000, Milde tried to speak at a Board meeting about her grievance. The subject of the speech involved the inadequacy of the recreation services at Parsonage. On May 22 and May 26, 2000, Milde spoke about the adverse effects of not having an adequate recreation coordinator to the Greenwich Times. These incidents involve issues of public concern to the community and as matter of law are not merely internal personnel matters.

Milde v. Housing Authority et.al., 2005 WL 1949781 *17 (D.Conn.Aug.12, 2005)

If the "incidents" in question were not personnel matters, then Milde's speech during each of the three incidents was not taken pursuant to her expected job duties. The Defendants argument to the contrary should be rejected.

    **D.    MILDE'S EMPLOYMENT DUTIES ARE DETERMINED AS THE DEFENDANTS SEE FIT**

In an attempt to chase after and obtain a ruling in the wake of Garcetti, the Defendants do a flip flop. First, Defendants have previously argued that Milde could not perform any activity related to the Recreation Services by disciplining and terminating her. (Plaintiff ¶¶ 1-18, 85)(Exhibits A-D herein) Now, in order to demonstrate her actions were within the scope of her employment, i.e. authorized and expected, Defendants argue in their brief she was responsible for recreation services and to protest to the Board of Commissioners on May 22, 2000 and to the newspaper on May 22 and May 23, 2000. The argument is nonsensical and should be rejected.

In Garcetti, Ceballos "did not act as a citizen when he went about conducting his daily professional activities…When he went to work and performed tasks he was paid to perform, Ceballos acted as a government employee." Garcetti, 126 S.Ct. at 1960. In

9

contrast, Milde could not possibly have been acting pursuant to her duties as the Parsonage Cottage Administrator when, after she was denied a grievance by Little and the Board, she attempted in her individual/citizenry capacity to raise the recreation services issue before the Defendant Board during an open meeting on May 22, 2000. The denial of the grievance was the explicit ruling and directive that she was not allowed to present any discussion, an alleged job duty, on the issue before the Defendants. The denial of the grievance meant Milde's status immediately changed to that of a citizen speaking and criticizing the Defendants about a matter of public concern, not a personnel matter. This Court has already ruled the same when it held, "these incidents involve issues of public concern to the community and as a matter of law are not merely internal personnel matters". Milde v. Housing, 2005 WL 1949781 *17. In so ruling, the Court did not analyze Milde's statements in the various exchanges of documents on which the Defendants so heavily rely. The Court relied upon three instances that occurred outside the scope of Milde's paid employment. In fact, the Defendants admit that Milde's actions at the Board Meeting on May 22, 2000 and comments in the newspaper interviews fell outside of her paid job duties – because they disciplined her for taking such actions. (Plaintiff ¶¶ 1-18). They even admit they fired her for the same reason. (Plaintiff ¶ 85).

With this stated, the Supreme Court reminds us of the theoretical underpinnings of their decisions, "[e]mployee who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government. The same goes for writing a letter to a local newspaper, see Pickering, 391 U.S. 563, 88 S.Ct. 1731, or discussing politics with a co-worker, see Rankin, 483 U.S. 378, 107 S.Ct. 2891." Garcetti, 126 S.Ct. at 1961.

10

In Smolicz v. Borough/Town of Naugatuck, 2006 WL 2085291(D.Conn. July 25, 2006)(WWE), a plaintiff police officer, who was also a union steward, claimed retaliation because his newsletter addressed issues such as the Police Chief's abuse of power and department wide corruption. In comparing the plaintiff's unique job duties to that of the school teacher in Pickering, Judge Eginton ruled, "here, plaintiff, as a police officer, is similarly privy to special insight as to the Police Department's claimed machinations and may recognize the public's need to be aware of the same. Accordingly, plaintiff satisifies the first prong of the prima facie case." Id. at *3.

In this case, Milde was also privy to special insight about the Housing Authority and its contractor for recreation services. She discovered abuse and neglect, which Little acknowledged and agreed (Plaintiff ¶ 64) and the public had a right to know about it. Judge Eginton did not address the Garcetti job duties analysis, but implicit in his decision was the common act of "policing" corruption and abuse by an employer, which falls outside an individual's expected job duties. It is this aspect of "policing" the employer that separates this case and others like it, from Garcetti. At some point, the employee transforms back into a citizen. Whether the method of the speech is through a newsletter, comments in the newspaper or comments at an open public meeting, that citizen is entitled to protection for her speech. Like Officer Smolicz, Milde was not required to "police" abuse and neglect caused by Defendants outside contractor. Defendants admit that was Little's job. (Plaintiff ¶¶ 1-18) In the May 30, 2000 Corrective Directives, Little states, "[y]ou are hereby advised that actions regarding employment, outside contracting or other activities outside of your every day operation of Parsonage are to be authorized by me." (Plaintiff ¶¶ 1-18).

11

In other recent decisions, the Courts have held employees are not required to police the employer's activities as an expected job duty. In <u>Day v. Borough of Carlisle</u>, 2006 WL 1892711 (M.D.Pa.July 10, 2006), the Plaintiff was a Corporal in the defendant's police department. He was fired from his employment because he spoke out about the misconduct of fellow police officers. The Court held,

> the factual background of Plaintiff's initial complaint regarding misconduct by fellow officers does not support a finding that Plaintiff acted within the course of his official duties in making his complaint. The February 2003 outburst in the communications room was made during an argument Plaintiff had with his superior. The April 2003 statements were made by Plaintiff in order to secure financial assistance from fellow union members in defending a disciplinary action. Viewing the record in a light most favorable to non-moving Plaintiff, the Court does not find, as a matter of law, that the statements were made pursuant to Plaintiff's duties as Corporal.

Id. *6.

In <u>Hare v. Zitek</u>, 414 F.Supp.2d 834 (N.D.Ill, December 15, 2005), the Court denied Defendants Motion for Summary Judgment because Plaintiff's testimony to a grand jury regarding police corruption was constitutionally protected. In a follow up decision on various motions in limine, the same Court ruled post <u>Garcetti</u> as follows,

> In its summary judgment ruling, the Court determined that Mr. Hare spoke, not as an employee of the police department, but as a citizen. <u>Garcetti</u> and <u>Mills</u> do nothing to change that. Unlike the plaintiffs in those cases, Mr. Hare did not 'speak' as part of his professional responsibilities; he wasn't simply doing his job.

<u>Hare v. Zitek</u>, 2006 WL 2088427 * 3 (N.D. Ill., July 24, 2006)(internal citations omitted).

There is a more difficult question presented in this case. Did Milde act as a citizen and not as an employee prior to May 22, 2000? The Court should answer this in the affirmative, using the same logical argument discussed above. The Defendants clearly and definitively instructed Milde not perform the job duties set forth in the May 30, 2000 disciplinary reprimand and 90-day performance improvement plan. The bulleted material facts in dispute at the start of this argument were not expected job duties. When

12

Milde began to internally discuss these issues during the February to May 21, 2000 time period, she was not performing expected job duties.  Thus, she was acting as a citizen protesting about a matter of public concern, not merely a personnel matter.

      E.      **AN INTERNAL GRIEVANCE PROCEDURE WAS MADE AVAILABLE BUT DEFENDANTS DENIED MILDE THE ABILITY TO USE IT.**

The Garcetti Court also ruled that if a government employer is concerned about public criticism by employees,

> it has the means at hand to avoid it. A public employer that wishes to encourage its employees to voice concerns privately retains the option of instituting internal policies and procedures that are receptive to employee criticism. Giving employees an internal forum for their speech will discourage them from concluding that the safest avenue of expression is to state their views in public.

Garcetti, 126 S.Ct. 1961.

In the instant case, Milde attempted to comply with the Defendants' grievance procedure.  However, as we know, the Defendants prohibited Milde from utilizing this "safest avenue of expression."  (Plaintiff ¶¶ 68-72, 75-76).

      F.      **THERE IS AN ISSUE OF FACT IN DISPUTE WHETHER MILDE'S SPEECH WAS DISRUPTIVE TO THE DEFENDANTS AS THE COURT PREVIOUSLY HAS HELD**

The Court has previously ruled:

> Because there are unresolved factual disputes that must be resolved before the court can properly apply the Pickering balancing test, neither party is entitled to judgment as a matter of law. Specifically, there is conflicting testimony as to whether Milde caused a disruption at the May 22, 2000 board meeting. Milde and Wisecup both testified that McClenchan shouted Milde down while Milde was being polite. McClenachan however characterized Milde's speech as more disruptive. The record is also unclear as to why McClenachan testified that Milde was out of order at the meeting, when she also admitted that is was a public meeting and anybody could speak.  In addition, it is also not clear whether or not Milde's statement to the Greenwich Times could reasonably be seen to cause a disruption. Finally, there is evidence on the record, mostly from Milde's

testimony and memoranda that there were deficiencies in the recreational services at Parsonage, which could weigh against any potential disruption.

Milde v. Housing Authority, 2005 WL 1949781 at *19.  The second prong of the Garcetti decision has not been established by the Court.

## II.    CONCLUSION

Based on the foregoing arguments, Milde respectfully requests that the Court deny Defendants' Renewed Motion for Summary Judgment and grant her day for trial.

Dated: August 23, 2006
Southport, CT

                                         **PLAINTIFF,**
                                         **URSULA MILDE**


                                         By: /S/ Mark P. Carey

                                         Mark P. Carey (CT17828)
                                         Carey & Associates, P.C.
                                         71 Old Post Road, Suite One
                                         Southport, CT 06890
                                         (203) 255-4150 tel.
                                         (203) 255-0380 fax
                                         Mcarey@capclaw.com
                                         Her Attorney

## CERTIFICATION OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was delivered electronically and by UPS Second Day service, fee prepaid, on this the 23rd day of August, 2006 to:

Francis P. Alvarez
JACKSON LEWIS
One North Broadway
White Plains, NY 10601
Attorneys for Defendant

                                         By: /S/ Mark P. Carey