# EXHIBIT AA

1   Q.  Did she -- she did in fact notify you of
2   the posting of the recreation coordinator position for
3   which you eventually later disciplined her for?
4            MR. ALVAREZ:  Objection.
5       A.  She did inform me after the action was
6   taking place, you're right, yes.
7       Q.  Last paragraph.  It's not even a number.
8   It says, "Let me assure you."  You see where I'm going
9   at, "Let me assure you"?  You follow?
10      A.  Yeah.
11      Q.  "Let me assure you I have proceeded with
12  this not because I want to usurp your authority, but
13  because I know you are very busy and it's my
14  responsibility to do what needs to be done and what is
15  best for the residents at PCSR and the total
16  operation."  Do you see that, sir?
17      A.  Yes.
18      Q.  What was your reaction to reading that
19  statement?
20      A.  I appreciated her knowing how busy I am
21  and I took it in a positive way.
22      Q.  Was she acting to protect the best
23  interests of the residents of the Parsonage Cottage
24  by writing that?
25      A.  That could be her opinion.

1   Q.  I show you what's been marked as Exhibit
2   number 20 already and it's dated an April 24 letter to
3   you from Ms. Milde.  Do you see that?
4   A.  Yes.
5   Q.  Did she present that letter to you on
6   April 24 to the best of your recollection?
7   A.  To the best of my recollection it could be
8   the 24th or later.
9   Q.  And was she, to the best of your
10  recollection, filing a grievance regarding the, your
11  denial to her to allow her to raise her grievance
12  regarding the recreation coordinator position to the
13  Board of Commissioners?
14  A.  No.
15  Q.  What was she filing a grievance for,
16  Mr. Little?
17  A.  As stated in her request of April 24, Ms.
18  Milde says since the director prevents me from
19  presenting the case to the personnel committee as I
20  requested.
21  Q.  In fact, it actually says the following.
22  "This is a formal request to present a grievance to
23  the commissioners of the HATG.  Attached please find
24  corresponding memoranda and other documentation
25  explaining the case.  Since the executive director

1  prevented me from presenting the case to the personnel
2  committee, as I had requested, I have no other choice
3  but to ask for a formal hearing." Do you see that,
4  sir?
5      A.  Yes.
6      Q.  Is that correct?
7      A.  That's correct.
8      Q.  And you have a cc to the various board
9  members?
10     A.  Yes.
11     Q.  In your opinion did you view this April 24
12 letter from Ms. Milde as an engagement in a protected
13 activity for, to protect her free speech?
14         MR. ALVAREZ: Objection.
15     A.  No.
16         (Plaintiff's Exhibit 37, marked for
17              identification.)
18     Q.  I'll show you a document marked Exhibit
19 number 37. It's captioned Parsonage Cottage Senior
20 Residence letterhead rational for hiring an in-house
21 recreation coordinator signed by Ms. Milde on May 15,
22 2000. Do you see that, sir?
23     A.  Yes.
24     Q.  Did you have receive this document?
25     A.  It was included in the package of

1      information from Ms. Milde I believe anyhow.
2           Q.   Regarding her grievance?
3           A.   Regarding her case to hire an in-house
4      recreation coordinator.
5           Q.   That she wanted to present to the Board of
6      Commissioners; is that right?
7           A.   I think it was presented to the Board of
8      Commissioners.
9           Q.   And isn't it in fact true that the --
10     reading paragraph number one entitled number one,
11     "Parsonage Cottage, as mandated by the Health
12     Department of the State of Connecticut, under the code
13     for licensed residential care homes is to provide a
14     recreational program therefore the position is an
15     allowable expense."
16          A.   It's stated, yes.
17          Q.   Is that a true and accurate statement?
18               MR. ALVAREZ:   Objection.
19          A.   It's stated on here, yes.
20          Q.   Number two, "Residents receive little or
21     no recreation, cultural, mental and physical
22     stimulation unless provided.  Not providing this is a
23     form of abuse and neglect."  Is that a true and
24     accurate statement?
25               MR. ALVAREZ:   Objection.

| | | |
|---|---|---|
| 1 | A. | What's stated on this memorandum, yes. |
| 2 | Q. | Do you agree with that statement? |
| 3 | A. | I have agreed with the statement, yes. |
| 4 | Q. | Isn't this in fact the abuse and neglect to which you testified earlier that you didn't, you were unable to identify what abuse and neglect at Parsonage you were thinking about? |
| 8 | | MR. ALVAREZ: Objection. |
| 9 | A. | That's not what I said. |
| 10 | Q. | Okay. Remember the question I asked you before about the abuse and neglect? |
| 12 | A. | Yes. |
| 13 | Q. | Can you now tell me the abuse and neglect you were referring to? |
| 15 | A. | I was referring to this statement that's made right here -- |
| 17 | Q. | Okay. So it's a true -- |
| 18 | A. | -- or the statements made earlier. That's why I said I wasn't sure what I was referring to. I was referring to a previous statement, a statement by Ms. Milde. |
| 22 | Q. | Number four being the position -- is it a true and accurate statement that, "The position was approved prior to the Parsonage Cottage opening and a job description was developed. I offered the position |

1      A.   She is providing me information of what
2  she felt was wrong with CCI.  What you're asking is
3  correct.
4      Q.   Is it a true and accurate statement on
5  4/24/2000 that you denied Ms. Milde attendance at a
6  finance meeting of the Board of Commissioners?
7      A.   That's possible, yes.
8      Q.   And on 4/24 Ms. Milde gave you a written
9  grievance which is now Exhibit number?
10     A.   20?
11     Q.   20 dated April 24, 2000.  It's a truthful
12 and accurate statement she provided a written
13 grievance on 4/24/2000?
14     A.   Yes.
15     Q.   It's a truthful and accurate statement
16 that Ms. Milde went to the regular meeting of the
17 board and handed the grievance to you and other board
18 members without saying anything?
19          MR. ALVAREZ:  Objection.
20     Q.   On 4/24/2000.
21     A.   I don't recall that.
22     Q.   Do you remember giving notice to Ms. Milde
23 about a grievance hearing on May 10, 2000, notice of a
24 grievance hearing?
25     A.   Yes, but I don't know the date.

 Q. The grievance -- is it true the grievance hearing date was set for May 18?

 A. Possible. The dates I don't, can't verify.

 (Plaintiff's Exhibit 38, marked for identification.)

 Q. I'll show you what's been marked Exhibit 38, a letter from you to Ms. Milde May 10, 2000 captioned formal grievance hearing. Do you see that, sir?

 A. Yes.

 Q. And it says a formal grievance hearing has been scheduled for May 18. Do you see that, sir?

 A. Yes.

 Q. May 18, 2000, correct?

 A. Yes.

 (Plaintiff's Exhibit 39, marked for identification.)

 Q. Show you what's marked Exhibit 39. It's a letter from Mr. Barry Nova, Vice Chairman of the Board of Commissioners to Ms. Milde May 19, 2000. Do you see that, sir?

 A. Yes.

 Q. And can you identify that Mr. Nova stated the first paragraph, "The Commissioners of The Housing

```
 1   Authority of the Town of Greenwich have decided that
 2   your request for a grievance before us, a grievance
 3   hearing before us is denied at this time."  Do you see
 4   that?
 5        A.   Yes.
 6        Q.   And you're aware that he made that
 7   statement?
 8        A.   Yes.
 9              (Plaintiff's Exhibit 40, marked for
10                  identification.)
11        Q.   Show you what's been marked as Plaintiff's
12   Exhibit number 40.
13        A.   Yes.
14        Q.   This is the personnel policy manual
15   section having to do with grievances.  Do you
16   recognize this policy having to do with grievances,
17   sir?
18        A.   Yes.
19        Q.   And the fourth paragraph down it state,
20   "Any employee who feels aggrieved by the decision of
21   the executive director may individually or with his
22   designated representative request the opportunity to
23   present his case before the commissioners of The
24   Housing Authority.  Such request should be submitted
25   in a letter setting forth the specific grievance and
```

```
 1   clock.  We have six -- we have nine minutes left.
 2              MR. ALVAREZ:  Do you want to take a
 3   break right now?
 4              MR. CAREY:  Yeah.
 5              (Whereupon, there was a recess from
 6              1:54 to 1:53.)
 7              MR. CAREY:  Let's all agree it's now
 8   1:57.
 9              MR. ALVAREZ:  You're waiting till we
10   go to 1:58?
11       Q.  Right, so we accurately know what nine
12   minutes looks like.  Okay.  It's 1:58.  We'll go for
13   nine minutes.  Okay.  Mr. Little, you gave Ms. Milde a
14   written disciplinary reprimand and 90-day opportunity
15   to improve, correct?
16       A.  Correct.
17       Q.  That was dated May 30, 2000?
18       A.  Approximately, yes.
19       Q.  I'll show you what's marked as Exhibit
20   number 42.
21              (Plaintiff's Exhibit 42, marked for
22              identification.)
23       Q.  It's six pages long.  It's a memorandum
24   that you had written to her; is that correct?
25       A.  Correct.
```

1  Q. Do you, in your condition, consider this
2  to be an adverse employment action to give her a
3  written disciplinary reprimand and 90-day opportunity
4  to improve, in your opinion?
5           MR. ALVAREZ: Objection.
6  A. I don't believe that it's -- did you say
7  adverse?
8  Q. Adverse, A-D-V-E-R-S-E.
9  A. I believe that -- it's giving guidelines
10 to give counseling or whatever, an opportunity to do
11 better.
12 Q. But yet you -- number one is deceptive
13 actions, correct?
14 A. Right.
15 Q. Number two is act of insubordination?
16 A. Yes.
17 Q. Number three is failure to follow the
18 policies and procedures of The Housing Authority of
19 the Town of Greenwich. Do you see that, sir?
20 A. Yes.
21 Q. Failure to communicate issues and problems
22 related to the Parsonage Cottage Senior Residence in a
23 timely manner to the CEO, Benjamin W. Little; is that
24 correct, sir?
25 A. Yes.

```
 1         Q.   Failure to follow the recognized and
 2   mandated hiring procedures of HATG; is that correct,
 3   sir?
 4         A.   That's correct.
 5         Q.   Short circuiting the administrative chain
 6   of authority; is that correct, sir?
 7         A.   Yes.
 8         Q.   Improper influence of the hiring
 9   procedure.  Possible coercive activities and
10   alteration of public documents?
11         A.   Yes.
12         Q.   And those are guidelines to improve, sir,
13   in your opinion?
14         A.   The -- the question -- what I understood
15   your question was this is a process of adverse
16   document and I said from my opinion it gives --
17   it's -- it leads into explaining what the, why I'm
18   making these kind of statements why disciplinary
19   action was taken, yes.
20         Q.   I'll ask the question again.  These things
21   that I just enumerated for you are guidelines to
22   improve her performance, in your opinion?
23         A.   I didn't say that.  I said what it leads
24   to is why I reprimand her and offering the 90 days to
25   improve.
```

1  withdrawn.  Why did you demand that she apologize to
2  the Board of Commissioners?
3       A.  Because what her actions was not
4  appropriate and she was already requested by the
5  chairperson, what I understood, to cease.
6       Q.  Isn't it true that Ms. Milde had the right
7  to contact the ombudsman regarding any issues of the
8  Parsonage Cottage?
9            MR. ALVAREZ:  Objection.
10      A.  If you are referring to a memorandum going
11 to the ombudsman about a meeting or scheduling of the
12 recreation coordinator, it was not appropriate.
13      Q.  Did you discipline her for doing that,
14 sir?
15      A.  Not that I recall.  It might have been
16 mentioned, but I don't recall.
17      Q.  Do you remember receiving a facsimile --
18 withdrawn.
19           (Plaintiff's Exhibit 44, marked for
20              identification.)
21      Q.  I'll show you what's been marked as
22 Exhibit 44, September 8, 2000 notice from Ms. Milde,
23 I'm sorry, to Ms. Milde from you.  Do you see that?
24      A.  Yes.
25      Q.  This is the final notice of termination

1  that you sent to her; is that correct?
2              MR. ALVAREZ:  Okay.
3       A.   It appears, yes.
4       Q.   And actually it states, "After careful
5  review of the record as well as materials submitted by
6  you and your attorney at the hearing held September 6,
7  2000 I have determined to terminate your employment as
8  administrator of the Parsonage Cottage effective at
9  the close of Friday, September 8, 2000."  You see
10 that, sir?
11      A.   Yes.
12      Q.   Is that still a truthful and accurate
13 statement today?
14             MR. ALVAREZ:  Objection.
15      A.   Yes.
16      Q.   And it also reads on, "I hereby direct
17 you, direct that you remove all personal belongings
18 from your office immediately and under supervision of
19 D.D. Saccente, Compliance Officer."  Do you see that,
20 sir?
21      A.   Yes.
22      Q.   Is that correct?
23      A.   Yes.
24             MR. ALVAREZ:  Objection.
25      Q.   And do you see the next paragraph it

1  states, "This action is based on inadequate and poor
2  work performance and failure to comply with policies,
3  procedures and regulations of The Housing Authority of
4  the Town of Greenwich."  Do you see that, sir?
5      A.  Yes.
6      Q.  Is that a truthful and accurate statement?
7          MR. ALVAREZ:  Objection.
8      A.  It looks like this was underlined and
9  crossed out, but it's an accurate statement, yes.
10     Q.  The next sentence, "These issues have been
11 --" withdrawn.  Is it a truthful and accurate
12 statement that "These issues have been presented to
13 you in writing and you have been given the opportunity
14 to respond and comply with these policies procedures
15 and regulations.  You have failed to respond and
16 actively resolve these issues and as a result of these
17 actions have interfered with the efficient and
18 effective operation of the Parsonage Cottage."  Is
19 that a truthful and accurate statement?
20         MR. ALVAREZ:  Objection.
21     A.  Yes.
22     Q.  Last Exhibit.
23         (Plaintiff's Exhibit 45, marked for
24         identification.)
25     Q.  I'm showing you what's been marked Exhibit