**EXHIBIT DD**

Not Reported in F.Supp.2d
(Cite as: 2005 WL 1949781, *10 (D.Conn.))

Page 8

Milde has established a prima facie case of gender discrimination, in that she is a female, she was qualified for her position, and she was discharged. Further, the court will assume that the plaintiff has established an inference of gender discrimination by offering evidence that she was discharged from her employment as the only female manager in a group of otherwise male managers. *see Padob v. Entex Info. Servs.*, 960 F.Supp. 806, 812 (S.D.N.Y.1997)(where the court assumed that a prima facie case of gender discrimination had been established based on the fact that the plaintiff was the only female manager in her department). The assumption is further supported in that: 1) she was never invited to participate in committee meetings or executive sessions held by the Board, unlike other male managers; 2) she was never provided with a performance review until June 2, 2000, while other male managers were provided with written performance reviews; 3) Little hired a private investigator to investigate Milde's performance, while not doing the same for other male managers; and 4) Little denied her compensation time Milde had earned while awarding it to other male managers.

B. *The Defendants' Non-Discriminatory Reason*

*11 To rebut an inference of discrimination established by the plaintiff's prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Texas Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The defendant must state a "clear and specific" reason. *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985). Here, the defendants state that they took the action condemned because she usurped Little's authority and failed to follow Little's directions.

The defendants maintain that the documentary evidence demonstrates that Milde usurped Little's authority by 1) terminating the contract with C.C.I.; 2) attempting to hire a recreation coordinator at Parsonage without communicating with Little or getting his approval; and 3) changing the degree required to be a recreation coordinator in the job description. The defendants further claim that the documentary evidence demonstrates that Milde failed to follow the 90- day opportunity to improve that Little gave her on June 6, 2000, in that Milde: 1) communicating directly with C.C.I. regarding contract issues; 2) refused to turn over an employment contract that Little asked for; 3) continuing in her efforts to hire an in-house recreation coordinator even though Little told her not to; 4) refused to attend a meeting at the time directed by Little; and 5) refused to apologize to the Board for her actions at their May 22, 2000 meeting. With this articulation, the court concludes that the defendants have sufficiently rebutted the inference of discrimination raised by Milde's prima facie case.

C. *Pretext/Discrimination*

Finally, the plaintiff must show that the reason given by the defendant for the adverse action was false, and that the real reason for the action was illegal discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507- 08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff my satisfy this burden by persuading the court that ... the employer's proffered reason is unworthy of credence." *McDaniel v. Temple Inep. School Dist.*, 770 F.2d 1340 (5th Cir.1985).

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of a prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will permit [but does not compel] the trier of fact to infer the ultimate fact of intentional discrimination ... [and] no additional proof of discrimination is required.

*St. Mary's Honor Center*, 509 U.S. at 511, 113 S.Ct. 2742, 125 L.Ed.2d 407.

1. *Usurpation of Authority*

Milde asserts that contrary to the defendants' assertions, she did not usurp Little's authority. Specifically, she argues that: 1) she did not "terminate the contract" but instead simply failed to "renew the contract"; 2) that she did report her efforts to hire an in-house recreation coordinator as Little accused her of not doing; and 3) she did not rewrite the job description for the in-house coordinator as Little accused her of doing.

*12 Milde's arguments are without basis. The record reflects a series of memoranda, many written by Milde, which show that Milde disregarded Little's authority. In particular, documents reveal that Milde posted a job opening for an in-house recreation coordinator and then interviewed and found a person to hire. That person did not have a degree as required in the original job description which the Board approved in 1996. None of these memoranda reflect that she communicated these steps to Little or asked for his permission until after she had already done them.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2005 WL 1949781, *12 (D.Conn.))

Page 9

Further, Milde's assertion that she did have the authority to hire an in-house recreation coordinator and terminate the contract with C.C.I. are also without merit. There is no dispute that Little was Milde's boss and that the ultimate authority over Parsonage is the Board, which sided with Little in his decision not to hire an in-house recreation coordinator and to maintain the contract with C.C.I., as witnessed by McClenachan's testimony that she supported Little's actions dealing with Milde.

2. *Failure to follow 90-Day Opportunity to Improve*

Milde also argues that, contrary to the defendants' assertions, she did follow the 90 day opportunity to improve. However, the record discloses Milde took actions that show she did not follow that 90-day opportunity, in that 1) Milde communicated directly with C.C.I. about contract issues instead of working through Little as instructed, as shown with the July 6, 2000 memorandum she wrote to C .C.I.; 2) Milde failed to turn over the employment contract of Nancy Wisecup that Little asked for; 3) Milde continued to go around Little in trying to hire an in-house recreation coordinator as shown with her carbon copying an internal memorandum to the state ombudsman; 4) Milde refused to attend a meeting at the time directed by Little as shown in Milde's August 7, 2000 memorandum; and 5) Milde admittedly refused to apologize to the Board for her actions at their May 22, 2000 meeting.

In sum, Milde has failed to produce any evidence beyond her own conclusory statements that the defendants' articulated reason for terminating her employment is unworthy of belief. In light of the substantial evidence produced to support the defendants' articulated reason, the court concludes that an issue of fact does not exist with respect to the claim of pretext, and accordingly, the defendants are entitled to judgment as a matter of law. *See e.g., Getschmann v. James River Paper Co., Inc.*, 822 F.Supp. 75, 78 (D.Conn.1993) (favorable prior work performance and two discriminatory statements by a supervisor were "too slender a reed to carry the weight of the charge" at summary judgment where there was overwhelming evidence of legitimate business reason). [FN2] For the same reasons, Milde's motion for summary judgment on her Title VII claim is denied.

FN2. Other factors in this case strongly rule out a finding of illegal discrimination. Firstly, it was Little who made the original decision to hire the plaintiff. See *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir.2000) ("Some factors strongly suggest that invidious discrimination was unlikely. For example where the person who made the decision to fire was the same person who made the decision to hire.") Further, after Milde's discharge, the defendants replaced her with another woman. See *Montana v. First Fed. Sav. & Loan Assoc. of Rochester*, 869 F.2d 100, 107 (2d Cir.1989) (where the court observes that, where the plaintiff's responsibilities were given to a woman after her termination, the plaintiff could not even establish a prima facie case of gender discrimination).

II. *Age Discrimination*

Milde next argues that HATG and the Board subjected her to adverse employment actions due to her age, in violation of the ADEA. The ADEA states in relevant part, "[i]t shall be unlawful for an employer to ... discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms conditions or privileges of his employment because of such individual's age." 29 U.S.C. § 623(a)(1). "The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). "[W]e analyze ADEA claims under the same framework as claims brought pursuant to Title VII" *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000). Therefore, the court first turns to Milde's prima facie case.

1. *The Plaintiff's Prima Facie Case*

*13 "[A] plaintiff establishes a prima facie case of discrimination by showing that: (i) at the relevant time the plaintiff was a member of the protective class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger.'" *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001) (quoting *O'Connor v. Consol. Coin Carriers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433, ----, 134 L.Ed. 433 (1996)); *see Schnabel*, 232 F.3d at 87 (holding "the fact that [the plaintiff] was replaced by a 31 year old is sufficient to give rise to the inference that [the plaintiff] was the victim of discrimination" in establishing a prima facie case).

For the purposes of discussion, the court will assume that Milde has established a prima facie case of age discrimination, in that she was 60 years old when she

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2005 WL 1949781, *13 (D.Conn.))

Page 10

was terminated, she is a member of a protected class, she was qualified for her position, and she suffered and adverse employment action through her job termination. Further, the court will assume that she has established an inference of age discrimination in that she was replaced by Penny Lore, a 35 year old female.

2. *The Defendants' Non-Discriminatory Reason*

The defendants articulate the same non-discriminatory reason for Milde's discharge they furnished with respect to the gender discrimination claim. Accordingly, the court concludes that the defendants have sufficiently rebutted the inference of age discrimination raised by Milde's prima facie case.

3. *Pretext/Discrimination*

As with Title VII claims, when looking at whether there is sufficient evidence of pretext, "courts must refrain from second guessing the decision-making process, but must allow the employees to show that the employer acted in an illegitimate or arbitrary manner." *Montana v. First Fed. Sav. & Loan Assoc. of Rochester*, 869 F.2d 100, 106 (2d Cir.1989)(quoting *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.1985); see *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 718 (2d Cir.1994) (where the plaintiff's first adverse performance review was shortly before being fired, the court held "[d]ismissals are often preceded by adverse performance reviews. Were we to view this pattern as suspect, without more, many employees would be able to appeal their personnel evaluations to a jury"; see also *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir.2001) ("our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employer's business judgments") (quoting *Sims v. Oklahoma ex. rel. Dept. of Mental Health and Substance Abuse*, 165 F.3d 1321, 1330 (10th Cir.1999))). In assessing the final phase of the ADEA framework, "the plaintiff need not prove that age was the only or even the principal factor ... but only that age was at least one of the motivating factors." *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 135 (2d Cir.2000).

*14 Both Milde and the defendants repeat the same arguments here that they made when discussing the gender discrimination claim. Milde argues that along with the evidence presenting a prima facie case of discrimination, that the defendants' explanation of a legitimate reason for its action is false. The defendants argue that there is no evidence that the their reason is false, and that there is also no evidence that age was the real reason for Milde's discharge.

As with Milde's claim of gender discrimination, even if a reasonable jury could find an inference of age discrimination, the defendants' legitimate reasons for Milde's discharge are overwhelming and there is no evidence that the reasons are false. [FN3] Therefore, the evidence put forward by Milde of age discrimination, as with the evidence put forward of gender discrimination, is once again too slender of reed to carry the weight of the charge in light of the overwhelming evidence of a legitimate reason for discharging Milde.

> FN3. As mentioned footnote 2, there are factors in this case that strongly rule out a finding of gender discrimination. Likewise, there are factors that strongly rule out a finding of age discrimination, in that Little was the same age as Milde, 60, when he made the decision to terminate her, Little helped to make the decision to hire Milde in 1996 and had an admittedly good relationship with Milde until March, 2000, and hence this evidence indicates that he did not express any discriminatory animus towards Milde when she was ages 56 through 59.

Therefore, the court concludes that an issue of fact does not exist with respect to the claim of pretext, and accordingly, the defendants are entitled to judgment as a matter of law. For the same reasons stated, Milde's motion for summary judgment on her ADEA and FEPA age discrimination claims are denied.

III. *Title VII, ADEA and FEPA Retaliation Claims*

Milde next argues that the defendants retaliated against her in violation of Title VII and ADEA on account of a complaint she filed with the EEOC. Title VII and the ADEA makes it unlawful for an employer to discriminate against an employee for opposing any unlawful employment practice or for charging, testifying, assisting, or participating in a investigation proceeding or hearing authorized under Title VII or the ADEA. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623. "We analyze a claim of retaliatory discharge under the familiar three-part burden shifting analysis that was set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Slattery v. Swiss Reins. N. Am.*, 248 F.3d 87, 94 (2d Cir.2001).

1. *The Plaintiff's Prima Facie Case*

"In order to make out a prima facie case of retaliation,

Not Reported in F.Supp.2d  
(Cite as: 2005 WL 1949781, *14 (D.Conn.))

Page 11

a plaintiff must show by a preponderance of the evidence '1) participation in a protected activity known to the defendant; 2) an employment action disadvantaging the plaintiff; 3) a causal connection between the protected activity and the adverse employment action." ' *Slattery*, 248 F.3d at 94(quoting *Holt v. KMI-Cont'l Inc.*, 95 F.3d 123, 130 (2d Cir.1996)). "[T]he burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minim[i]s." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994)(alterations in original)(internal quotation marks omitted). While proof of causal connection can be established by showing that the protected activity was followed closely by discriminatory treatment, *Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir.1986), "when timing is the only basis for a claim of retaliation, and gradual, adverse job actions began well before the plaintiff had ever engaged in a protected activity, an inference of retaliation does not arise." *Slattery*, 248 F.3d at 95.

A. *Participation in Protected Activity/Known to Management/Adverse Employment Action*

*15 The court assumes that Milde has established the first three parts of the prima facie case. Milde engaged in a protected activity by filing her complaint of discrimination with the EEOC. Second, Little knew about Milde's participation in a protected activity through a July 26, 2000 letter from Milde's attorney to Little. Finally, Milde suffered an adverse employment action when she was discharged.

B. *Causal Nexus*

In arguing that a causal nexus exists between the filing of her complaint and her termination, Milde points to the fact that she engaged in protected activity on July 26, 2000 when she filed her complaint with the EEOC. Shortly thereafter, on August 21, 2000, Little sent Milde a letter informing her that she would be subject to a disciplinary hearing. The hearing went forward on September 6, 2000, and HATG discharged Milde on September 8, 2000. Hence, Milde has provided evidence of temporal proximity.

However, Little subjected Milde to a series of reprimands months before she filed her complaint with the EEOC. Beginning with a memorandum Little wrote on March 24, 2000, Little increasingly expressed his disapproval of hiring an in-house recreation coordinator and the way Milde was handling the situation. These concerns led to the "Corrective Directives" and "Disciplinary Reprimand" that Little sent to Milde on June 2, 2000, far in advance of Milde's EEOC charge. Furthermore, Little's basic complaints in his June 2, 2000 letters to Milde are consistent with the reasons that the defendants articulated to discharge Milde.

Accordingly, although there temporal proximity between the filing of Milde's EEOC complaint and her discharge this evidence does not create a causal connection because there were a series of gradual reprimands before the plaintiff engaged in a protected activity. Milde has therefore failed to establish a prima facie case of retaliation. For the same reasons stated, Milde's motion for summary judgment on these claims is denied.

IV. *Claim Pursuant to 42 U.S.C. § 1983*

Milde next argues that the defendants terminated her employment in retaliation for her exercise of speech as protected by the First Amendment to the United States Constitution. The defendants seek judgment as a matter of law on the claim, arguing that Milde has failed to raise a genuine issue of material fact that any state action is involved and that, even if there is state action, Milde has failed to establish a prima facie case of retaliation.

1. *State Action/Color of State Law*

The defendants argue that there is no evidence that they were acting under color of state law and, hence, they are entitled to judgment as a matter of law. Further, the defendants point out that, while the they receive state funding, that alone is insufficient to establish that personnel decisions of the institution are state actions.

In response, Milde argues that, to the contrary, the activity of HATG is infused with state action because it is performing a function that is public and governmental in nature and that, moreover, it was established under legislation that was approved by the state of Connecticut with the Board appointed by the town of Greenwich board of selectmen with the defendants receiving local, state and federal funding. Further, Milde maintains that each defendant is clothed with the authority of state law because they operate the only housing authority in Greenwich.

*16 "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Adkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citation omitted). For an entity to be liable as a state actor, "the State need not have coerced or even encouraged events at issue ... if 'the relevant facts show pervasive entwinement to the point of largely overlapping identity' between the State and the entity that the plaintiff contends is a state actor." *Horvath v. Westport Library Ass'n,* 362 F.3d 147, 154 (2d Cir.2004)(quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 303, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)); *see id.* (where the court held that a library was a state actor because the town appointed half of the board, the library was created by statute, and it served a governmental function). In *Lebron v. Nat'l R.R. Passenger Corp.,* 513 U.S. 374, 400, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995), the Court stated that, "where the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the government for purposes of the First Amendment." *Id.* Further, an individual who conducts himself as a supervisor for a public employer is, as a matter of law, acting under color of state law. *Annis v. County of Westchester,* 36 F.3d 251, 254 (2d cir.1994). "The question of state involvement is always a factual inquiry." *Ginsburg,* 189 F.3d 268, 271 (2d Cir.1999) (quoting *Dahlberg v. Beck,* 748 F.2d 85, 92 (2d Cir.1984)).

In this case there is enough evidence for a fact-finder to conclude that each of the defendants, i.e., HATG, the Board and Little, were acting under color of state law as state actors. As with *Lebron,* the state created HATG by statute in order to perform a public function--in this case to provide public housing. With respect to the Board, the board of selectmen of the town of Greenwich appointed the members of the Board, and gave the Board authority from which it could decide how to provide recreational services to the residents at Parsonage. Further, Little, as a supervisor of a public employer, is a state actor as a matter of law. Viewing all facts in light most favorable to the plaintiff, the court concludes that this case does not fail for want of state action.

2. *Retaliation*

A. Matters of Public Concern

The defendants next argues that they are entitled to judgment as a matter of law because the speech at issue does not touch on a matter of public concern. Specifically, they assert that the speech at issue, Milde's complaints, dealt solely with internal operational matters, i.e., her day-to-day employment situation resulting from her dissatisfaction with Little.

*17 In response, Milde argues that her complaints to Little and the Board centered around what she thought was C.C.I.'s inadequate recreation services. She argues that the absence of such services would have a negative impact on the residences, and do not involve merely internal personnel matters.

To establish a claim of retaliation in violation of the First Amendment, the plaintiff must initially demonstrate that: "(1) the speech at issue was made as a citizen on matters of public concern; (2) he or she suffered an adverse employment action; [and] (3) the speech was at least a substantial motivating factor in the [adverse employment action]" *Johnson v. Ganim,* 342 F.3d 105 (2d Cir.2003)(internal citations and quotations omitted).

"Whether speech involves a public concern is a question of law to be determined on the basis of the 'content, form, and context of a given statement, as revealed by the whole record." ' *Sheppard v. Beerman,* 18 F.3d 147, 151 (2d Cir.1994)(quoting *Connick v. Myers,* 461 U.S. 138, 147-8 & n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). First Amendment protection applies not only when the view is expressed publicly, but also "when a public employee arranges to communicate privately with his employer rather than to express his views publicly." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684, 75 L.Ed.2d 708. *See White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.1993)(where the court gives examples of speech that are "less likely" to be matter of public concern, such as "speech that merely proposes commercial transactions ... desire for a particular assignment ... medical resident's complaints regarding her treatment in residency program." (internal citations omitted)).

In this case Milde did express complaints that dealt with matters of public concern. It is undisputed that Parsonage was required by statute to provide for recreation for its residents. Under state law, "[r]ecreational activities shall be provided in [h]omes for the [a]ged." Conn. Agencies Regs. § 19-13-D6 S(g). This law is a strong indication that the public has a genuine concern that the elderly in their community, who are often more vulnerable than younger people,

Not Reported in F.Supp.2d                                                                                      Page 13
(Cite as: 2005 WL 1949781, *17 (D.Conn.))

receive adequate recreation.

The record indicates that two incidents of Milde's speech in which she alleges led to adverse employment actions dealt with inadequate recreation services. On May 22, 2000, Milde tried to speak at a Board meeting about her grievance. The subject of the speech involved the inadequacy of the recreation services at Parsonage. On May 22 and May 26, 2000, Milde spoke about the adverse effects of not having an adequate recreation coordinator to the Greenwich Times. These incidents involve issues of public concern to the community and as a matter of law are not merely internal personnel matters.

B. *Casual Nexus*

The defendants argue that there is no evidence of a causal nexus between Milde's protected speech and her job termination. Specifically, they argue that Little decided to terminate Milde's ewmployment because of an internal power struggle with Milde, not because of any protected speech.

*18 Milde argues that she can establish a causal nexus between her speech and the adverse employment actions. Specifically, Milde points to the short period of time that elapsed between her speaking out about recreation services at Parsonage and her discharge. In addition, Milde points to McClenchan's testimony that Milde's grievance regarding the recreation coordinator "was perhaps one of the reasons for her termination. It was not the only reason."

"Once the employee establishes that he has spoken as a citizen on a matter of public concern, he must also establish that the speech was at least a 'substantial' or 'motivating' factor in the discharge." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058-59 (quoting *Mt. Healthy City City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). "The motive behind [the plaintiff's] firing in his retaliation claim is clearly one of fact." *Sheppard*, 18 F.3d at 151.

In this case there is evidence from which a jury could find that Milde's protected speech, i.e., her speech at the Board meeting and her comments to the Greenwich Times, was a substantial or motivating factor behind her discharge. Along with McClenachan's testimony that Milde's actions at the May 22, 2000 Board meeting was perhaps one of the reasons for Milde's job termination, Little himself told Milde in the May 30, 2000 "Written Disciplinary Reprimand" that once of the reasons for reprimanding her was her statements to the Greenwich Times about the failure of C.C.I. to provide adequate recreational services. While there is evidence that Little discharged Milde based on conflict over internal procedural matters, there is enough evidence that Milde's protected speech was at least a substantial or motivating factor in her discharge.

C. *Pickering Balancing Test*

The defendants next argue that Milde's outburst at the May 22, 2000 meeting was disruptive to the operations of the Board and hence, they are entitled to judgment as a matter of law under *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Milde responds that her First Amendment claim is not foreclosed by *Pickering* because the public interest of adequate recreation services for the residents at Parsonage outweighs the potential disruption caused by her speech. Specifically, Milde argues that poor recreation services for the elderly can have serious consequences, including stunted life spans. In addition, Milde argues that as opposed to disrupting the functioning of HATG, her speech could have helped the administration of Parsonage, so it could run more efficiently and better serve the residents. Milde also argues that the meeting was open to the public and there was no reason for the Board to refuse to recognized her. Finally, Milde points out that the testimony of nurse Wisecup, that Milde's speech at Board meeting on May 22, 2000 was not disruptive, supports her claim.

*19 Under *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the court must balance "the interests of the [plaintiff], as a citizen, to comment upon matters of public concern and the interest of the [state actor], as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* In Johnson v. Ganim, 342 F.3d 105, 114 (2d Cir.2003), the Second Circuit stated:
> While as a general rule the [*Pickering*] test is a matter of law for the district court to apply, where there are questions of fact relevant to that application, this court has made known that 'we can envision cases in which the question of the degree to which the employee's speech could reasonably have been deemed to impede the employer's efficient operation would properly be regarded as a question of fact, to be answered by the jury prior the [district] court's application of the *Pickering* balancing test.'

*Johnson v. Ganim*, 342 F.3d 105, 114 (2d Cir.2003)

Not Reported in F.Supp.2d  
(Cite as: 2005 WL 1949781, *19 (D.Conn.))

(quoting *Gorman-Bako v. Cornell Coop. Extension,* 252 F.3d 545, 557 (2d Cir.2001)).

Because there are unresolved factual disputes that must be resolved before the court can properly apply the *Pickering* balancing test, neither party is entitled to judgment as a matter of law. Specifically, there is conflicting testimony as to whether Milde caused a disruption at the May 22, 2000 board meeting. Milde and Wisecup both testified that McClenchan shouted Milde down while Milde was being polite. McClenachan however characterized Milde's speech as more disruptive. The record is also unclear as to why McClenachan testified that Milde was out of order at the meeting, when she also admitted that it was a public meeting and anybody could speak. In addition, it is also not clear whether or not Milde's statement to the Greenwich Times could reasonably be seen to cause a disruption. Finally, there is evidence on the record, mostly from Milde's testimony and memoranda that there were deficiencies in the recreational services at Parsonage, which could weigh against any potential disruption. Without the resolution of these issues, the court can not apply the *Pickering* balancing test.

5. *Qualified Immunity*

Little next seeks judgment as a matter of law on the First Amendment claim, arguing that the doctrine of qualified immunity shields him from liability. Milde responds that Little is not protected by the doctrine of qualified immunity. Specifically, Milde argues that the right not to be discharged for exercising First Amendment rights are clearly established so that Little knew or should have known he violated Milde's rights.

"A government official is protected by qualified immunity insofar as the official's conduct does not violate clearly established Constitutional or statutory rights." "Our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The "relevant inquiry is not whether the defendant's should have known that there was a federal right, in the abstract, 'to freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech." *Lewis v. Cowen.* 165 F.3d 154, 166 (2d Cir.1999). "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citation omitted).

*20 Under the circumstances presented here, the court concludes that there is a genuine issue of material fact as to whether Little is entitled to qualified immunity. If Little is not entitled to relief under *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and there is a finding that he terminated Milde's employment on account of her statements either at the May 22, 2000 Board meeting or on account of her report to the Greenwich Times, the court would be hardpressed to conclude that Little believed that his actions were lawful and not in violation of Milde's First Amendment rights. Accordingly, Little is not entitled to qualified immunity at this juncture.

V. *Unconstitutional Prior Restraint Claim*

The defendants next seek judgment as a matter of law on Milde's claim that their media and public relations policy constituted an unconstitutional prior restraint. In response, Milde argues that these policies do constitute unconstitutional prior restraints because their purpose was to prevent negative press while mandating that all issues were to be discussed with the Board or Little.

An unconstitutional prior restrain may be found where "the government imposes a requirement of advance approval or seeks to enjoin speech." *Dial Info. Servs. Corp. v. Thornburgh,* 938 F.2d 1535, 1543 (2d Cir.1991). *See Morris v. Lindau,* 196 F.3d 102, 112-113 (2d Cir.1999)(where the court held that "because the policy clearly states that it simply requires notification of the subject matter of the speech, it is not a prior restraint and does not violate the First Amendment").

In this case, the media policy does not seek to enjoin speech or require advance approval. Rather, it simply requires notification before an employee speaks to the press. In this regard, the policy states "before any contact is made with the media on information, data and/or HATG policies that affect the above strategies, there must be communication with [c]ommissioners and appropriate [s]taff." Therefore, as written it is not a prior restraint. The defendants motion for summary judgment on the prior restraint claim is granted. For the same reasons stated, Milde's motion for summary judgment on her prior restraint claim is denied.

CONCLUSION

For the foregoing reasons, the defendants' motion for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2005 WL 1949781, *20 (D.Conn.))

Page 15

summary judgment (document no. 128) is GRANTED IN PART AND DENIED IN PART, and Milde's motion for summary judgment (document no. 132) is DENIED.

It is so ordered.

Motions, Pleadings and Filings (Back to top)

. 3:00cv02423 (Docket) (Dec. 20, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.