## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

| | |
|---|---|
| URSULA MILDE, | : |
|        **Plaintiff,** | |
| | : |
| v. |     **CIV.NO. 3:00CV2423(AVC)** |
| | : |
| | |
| THE HOUSING AUTHORITY OF THE | : |
| TOWN OF GREENWICH; | |
| THE HOUSING AUTHORITY OF THE | :     **AUGUST 21, 2006** |
| TOWN OF GREENWICH BOARD OF | |
| COMISSIONERS; BENJAMIN LITTLE, | : |
| CEO. | |
|        **Defendants.** | : |

_____

### PLAINTIFF'S FED.R.CIV.P. 56(c) AND LOCAL CIVIL RULE 56(a)(2) "ADMIT/DENY" STATEMENT IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT and PLAINTIFF'S FED.R.CIV.P. 56(c) AND LOCAL CIVIL RULE 56(a)(2) DISPUTED ISSUES OF MATERIAL FACTS

      Pursuant to Fed.R.Civ.P. 56(c) and Local Civil Rule 56(a)(2), the Plaintiff Ursula

Milde ("Ms. Milde") hereby denies/admitts statement of material facts not in dispute

contained in Defendants Fed.R.Civ.P. 56(c) and Local Civil Rule 56(a)(1) Statement.

| "FACTS" | RESPONSE |
|---|---|
| 1. The Housing Authority hired Plaintiff Ursula Milde on September 30, 1996.(Tr.8:18-19)[1] | 1. Admit. |
| 2. The Housing Authority hired Milde as the Administrator of Parsonage Cottage Senior Residence ("PCSR"). (Tr.8:20-22) | 2. Admit |
| 3. When hired, Milde believed she was in complete charge of the day-to-day operations of PCSR. (Tr.18:21-25) | 3. Admit/Deny. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |
| 4. Milde believed she would report what she did to the Executive Director and the | 4. Cannot admit or deny, document page 21 of Milde deposition not provided. |

_____

[1] Defendants refer to pages in Milde's deposition as "Tr.___".

| | |
|---|---|
| Deputy Director of the Housing Authority but she would make the decision on everything that pertained to the operations of PCSR as long as they were within the guidelines of the law and PCSR's operating certificate. (Tr.21:7-18). | |
| 5. In April 1999, Tom Crawford retired as Executive Director and Ben Little, the Deputy Director at the time, replaced Crawford. (Tr.229:2-7). | 5. Admit |
| 6. Little later changed the title of his position to Chief Executive Officer. (Tr.229:8-10). | 6. Admit |
| 7. Milde told Debra Littlejohn, an employee of PCSR, that the problem between Little and her was "who is in control." (Tr.279:16-24) | 7. Deny, misstates the testimony. Milde stated "I think I may have said that because I had the feeling that Ben had generated that kind of a dynamics between us through his discriminatory actions." (Milde Dep. 279:19-22) |
| 8. Milde's six month battle with Little over the authority to control PCSR, however, was not the first one she waged. On November 30, 1997, Milde wrote a memo to Tom Crawford stating she was accountable and responsible for the PCSR under the PCSR's license. (Tr.57:19-58), 64:8-13; Midle Dep. Ex. 4). | 8. Deny. Misstates the testimony. Milde stated "I was complaining about given responsibility to run the residence and being accountable to the State under the license for the safety and well being of the residents and then not given the authority to carry out the responsibility." (Milde Dep. 64:8-13);(Milde Dep.Ex.33, p.2);(Defendants Answer to Amended Complaint at ¶ 10)(denied Milde had direct responsibility for ensuring complete compliance with all state and federal regulations). |
| 9. In the memo, Milde stated that: "[w]hen I was hired as the administrator of Parsonage Cottage Senior Residence, my understanding was that I would be responsible for all aspects of the operations at the residence." (Milde Dep.Ex. 4). | 9. Admit/Deny. (Milde Dep.Ex.33, p.2);(Defendants Answer to Amended Complaint at ¶ 10)(denied Milde had direct responsibility for ensuring complete compliance with all state and federal regulations). |
| 10. Milde further wrote that: "[s]ince my name is on the state license, I am naturally accountable for the entire operation, a responsibility I do not avoid. However, there are certain consequences which follow from this, which I think, need to be clearly understood by all." (Milde Dep. | 10. Admit/Deny. (Milde Dep.Ex.33, p.2);(Defendants Answer to Amended Complaint at ¶ 10)(denied Milde had direct responsibility for ensuring complete compliance with all state and federal regulations). |

| | |
|---|---|
| Ex. 4). Milde proceeded to "propose" a course of action in five areas: (1) Facility; (2) Budget; (3) Staffing; (4) Surveys and Audits; and (5) Communication. Tr.58:20-59:6)(Milde Dep.Ex.4). | |
| 11. In a harbinger of the position she would adopt in 2000, Milde wrote: "[m]y 'modus operandi' generally is one of handling matters on my own…I work best if am given the authority…" (Milde Dep. Ex. 4). | 11. Deny. Argumentative, "harbinger of the proposition she would adopt". Misstates testimony, Milde stated "my 'modus operandi' generally is one of handling matters on my own and with the assistance or feedback from my staff, if indicated. I will seek advice from my superiors, or colleagues, when needed, but generally will come prepared with a suggestion of how I plan to solve the problem. I work best if I am given the authority, but also the necessary information and if things are communicated to me in a timely fashion." Milde Dep.Ex. 4). |
| 12. Milde first raised the issue of hiring an in-house recreation coordinator for Parsonage Cottage at a senior staff meeting on February 3, 2000. (Tr.94:8-23; 176:14-178:8). | 12. Admit. Milde stated, "I told him that I wanted to go back to the original plan of hiring an in-house recreation coordinator." (Milde Dep. 94:10-18). |
| 13. When Milde raised the issue, Little did not say anything. (Tr.178:4-5) | 13. Admit |
| 14. Milde understood that it was Little's "modus operandi" to listen to a staff member's report and not respond; and that sometimes Little did not respond until "much later." (Tr. 178:7-11). | 14. Admit |
| 15. According to Milde, sometimes Little would not respond at all; sometimes, when the person would take an action, if things went well, the matter was "done"; sometimes, if things did not go well, Little blamed the person. (Tr.179:6-13). | 15. Deny. Mistates testimony. Milde stated, "That's his MO. Sometimes when you kept insisting on it, sometimes he didn't respond at all. And then the person would take an action and then he would either—if the action went well, then he would say, you, he wouldn't necessarily say something, but it seemed like all was good and it was done. If it didn't go well, then the person was being blamed." (Milde Dep.179:6-13). |
| 16. On March 24, 2000, Little wrote Milde a memo referencing a number of concerns Little had about Milde's | 16. Admit |

| | |
|---|---|
| conversation about the recreation coordinator. (Tr.92:17-93:17)(Milde Dep.Ex.6). | |
| 17. Of the concerns listed by Little were: (1) how the individual would be paid; (2) the development of a proper job description for the position; and (3) if the position was allowable under the State. (Milde Dep. Ex. 6). | 17. Admit |
| 18. On March 25, 2000, Milde responded to Little's March 24th memo. (Tr.95:25-96:25)(Milde Dep.Ex.7). | 18. Admit |
| 19. In her March 25, 2000 memo, Milde cited Connecticut State Code regulations and an earlier job description she previously developed for the recreation coordinator position. (Tr.95:25-96:25)(Milde Dep. Ex. 7). | 19. Admit/Deny. The testimony cited does not mentioned Connecticut State Code regulations and earlier job description, the exhibit only mentions it. (Milde Dep. 95-95)(Milde Dep.Ex.7). |
| 20. Milde dep March 25, 2000 memo to Little from: "Ursula Milde, Administrator, PCSR." (Milde Dep.Ex. 7). | 20. Admit/Deny. Her title does not demonstrate her expected job duties. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |
| 21. On April 13, 2000, Milde wrote Little again concerning the Recreation Coordinator Position. (Tr.97:3-21)(Milde Dep. Ex. 8). | 21. Admit. |
| 22. In the April 13, 2000 memo, Milde claimed to have found a "suitable candidate" for the recreation coordinator position. (Tr.97:3-21)(Milde Dep.Ex.8). | 22. Admit. |
| 23. The April 13, 2000 memo to Little was addressed from "Ursula Milde, Administrator, PCSR." (Milde Dep.Ex. 8). | 23. Admit/Deny. Her title does not demonstrate her expected job duties. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |
| 24. On April 17, 2000, Little responded to Milde's April 13th memo stating that: "[t]he procedure that you have followed in hiring a Recreational Coordinator causes a | 24. Admit/Deny. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of |

| | |
|---|---|
| few problems" and proceeded to list five specific concerns. (Tr.97:22-98:10)(Milde Dep. Ex. 9). | the everyday operation of Parsonage are to be authorized by me [Little]) |
| 25. The following day, Little presented the Board's Personnel Committee with a memo outlining his concerns about the hiring of full-time Recreation Coordinator. (Milde Dep.Ex.11). | 25. Deny. Lack of information and belief to admit the statement. |
| 26. Of the concerns listed by Little included the fact that hiring someone for that position would cause an additional $24,593.82 annually to PCSR's budget. (Milde Dep.Ex.11). | 26. Deny. Lack of information and belief to admit the statement. |
| 27. On April 24, Milde responded to Little's April 17th memo. (Milde Dep.Ex. 12). | 27. Admit |
| 28. In her April 24, 2000 memo, Milde explained how she had already developed a job description for a recreation coordinator, posted the position, and interviewed a candidate for the position. (Milde Dep. Ex.12). | 28. Admit, the document speaks for itself. Deny, Milde was not authorized to perform functions. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |
| 29. Milde wrote the April 24, 2000 memo to Little from: "Ursula Milde, Administrator, PCSR." (Milde Dep.Ex.12) | 29. Admit/Deny. Her title does not demonstrate her expected job duties. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |
| 30. Milde ended the memo by writing: "[l]et me assure you that I have proceeded with this not because I want to usurp your authority but because I know you are very busy and it is my responsibility to do what needs to be done and what is best for the residents at PCSR and the total operation." (Milde Dep.Ex.12). | 30. Admit/Deny. Milde was not authorized to perform functions. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |
| 31. On April 24th, after her request to present her issue regarding the in-house recreation coordinator position to the Board's personnel committee was denied, Milde wrote a memo to Little in which she requested a grievance hearing with the | 31. Admit/Deny. Misstates testimony. Milde stated, "Following this denial of attending the personnel committee, I submitted a grievance. And I submitted that in writing to the commissioners that very same evening because the personnel |

| | |
|---|---|
| Board. (Tr.82:13-18)(Milde Dep.Ex.13). | committee was three house before the general commissioners' meeting. And my grievance, the substance of my grievance was that I was not allowed to present the reasons or the rationale for my plan even though I was told that that body was supposed to make the decision for that. So I presented my grievance." (Milde Dep. 82:13-23). |
| 32. In that memo, Milde wrote: "[s]ince the Executive Director prevented me from presenting the case to the Personnel Committee as I had requested, I have no other choice but to ask for a formal hearing." (Milde Dep.Ex.13). | 32. Admit |
| 33. The substance of Milde's grievance was that she was not allowed to present the reason or the rationale for her plan to hire an in-house recreation coordinator even though she was told that the committee was the body that made that decision. (Tr.82:18-23). | 33. Admit/Deny. Misstates testimony. Milde stated, "Following this denial of attending the personnel committee, I submitted a grievance. And I submitted that in writing to the commissioners that very same evening because the personnel committee was three house before the general commissioners' meeting. And my grievance, the substance of my grievance was that I was not allowed to present the reasons or the rationale for my plan even though I was told that that body was supposed to make the decision for that. So I presented my grievance." (Milde Dep. 82:13-23). |
| 34. Milde does not know who made the decision to deny her request to appear at the personnel committee meeting but the decision was communicated by Little. (Tr.81:18-19). | 34. Admit/Deny. Page 81 of transcript not provided. |
| 35. On April 26, 2000, Milde wrote another memo to Little regarding the hiring of the recreation coordinator and copied all the members of the Board. (Milde Dep.Ex.20). | 35. Admit |
| 36. In that memo, Milde wrote:<br><br>It is my responsibility both legally and ethically as administrator of this licensed home to safeguard the rights and well being of the residents who entrust | 36. Admit/Deny. Milde was not authorized to perform functions. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday |

| | |
|---|---|
| themselves to our care. This is expressed in the code for licensed homes: "Section (C) Administration (1)"… "The proprietor or licensee of the institution shall be responsible for operation of the institution in compliance with these regulations."…<br><br>Parsonage Cottage Senior Residence has been so successful in these first three years, and is so well regarded by residents' families, the professional community, as well as our licensor (i.e. the CT State Health Department), because I have taken this responsibility seriously and have found trained staff who are like minded and dedicated to the same principles…The decision to hire an in-house recreation coordinator was arrived at through careful deliberation and observation by our staff and myself, because we realize how much it would benefit the residents and meet their needs…I can only conclude that the way in which you and the Board proceeded regarding this matter, and the way the decision was "un-communicated" to me (I learned it first through the newspaper) showed a high disregard for me and my staff. But, more importantly, it demonstrated a lack of concern for the needs of the residents whom we have, after all, pledged to serve. I like (sic) to remind you, therefore, that what matters is not your, or my, authority nor, "who is in charge here" but what best serves the residents of Parsonage Cottage Senior Residence. All of us, including you as the CEO of the managing agent, as well the Board of Commissioners, the Parsonage Cottage staff, and I, must always be cognizant of this responsibility. (Milde Dep. Ex.20). | operation of Parsonage are to be authorized by me [Little]) |
| 37. About 15 days later, Milde received a memo stating that there would be a grievance hearing on May 15, 2000. (Tr.82:23-83:3). | 37. Deny, it was schedule for May 18, 2000. (Milde Dep. 83:3). |

| | |
|---|---|
| 38. Shortly before the hearing, Milde received a fax from Mr. Little stating that the grievance hearing was cancelled but no explanation for the cancellation was provided. (Tr.83:4-10). | 38. Admit |
| 39. When Milde arrived at the Board meeting on May 22, 2000, she was given a letter dated May 19, 2000 and signed by Barry Nova, the Board's Vice Chair, stating that her grievance had been denied and she was not going to have a hearing. (Tr.83:10-12; 84:20-85:11). | 39. Admit. |
| 40. The Board's letter, in part, stated:<br><br>The subject of your request, i.e., the hiring of a Recreation Director at Parsonage Cottage, we believe, is an operations matter that should be discussed and resolved between you and the CEO of the Housing Authority of the Town of Greenwich to whom you report. The Board of Commissioners should not, and will not, become the arbiter in "turf wars" among Managers; nor will it usurp the responsibilities and accountabilities of Benjamin Little. (Milde Dep.Ex.30). | 40. Admit, letter speaks for itself. |
| 41. In response to the Board's denial of Milde's grievance, on May 23, 2000, Milde wrote a memo to the Board. (Tr.159:19-21). | 41. Admit |
| 42. That memo, in part, read:<br><br>My grievance is a grievance against the CEO, who prevented me from presenting the reasons for my desire to hire an in-house Recreation Coordinator to the Personnel Committee, after he had informed me via a memo dated 4/17/00 that it was up the Personnel Committee of the Board of Commissioners to make the decision. (Tr.159:23-160:15 Milde Dep.Ex.31). | 42. Admit. |
| 43. The HATG board meetings follow Robert's Rule of Parliamentary Procedure. (Tr. 163:10-12). | 43. Deny. Lack information and belief to admit. |
| 44. If someone wanted to speak during the | 44. Deny. It was an open public meeting. |

| | |
|---|---|
| meeting, the Chairperson had to recognize them. (Tr.163:13-16). | (McClenachan Dep. 142, 474). |
| 45. Under the license for PCSR, Milde was required to attend all open Board meetings. (Tr.84:12-20). | 45. Admit/Deny. (McClenachan Dep.141, 143-145). |
| 46. When Milde began to speak at the Board meeting on May 22, 2000, Sue McClenachan, the Board Chairperson, told Milde more than once that she was "out of order". (Tr.161:16-22). | 46. Deny, Misstates testimony, Milde stated, "she didn't tell me. She shouted me that I was out of order." (Milde Dep.161:18-19). |
| 47. Milde did not stop speaking but insisted that she wanted to be heard. (Tr.161:23-25). | 47. Admit. |
| 48. McClenachan then told Milde the matter should be dealt with in Executive Session. (Tr.164:4-9). | 48. Admit. |
| 49. Milde continued to speak and insisted she be permitted to come to an Executive Session. (Tr.164:10-13). | 49. Admit. |
| 50. The Board then permitted Milde to speak in Executive Session. (Tr.164:14-16). | 50. Admit/Deny, executive session is not open to the public, which could not discover what Milde's issue was. |
| 51. Milde also told the Board during Executive Session that she had opened the PCSR, had a track record with this, and was treated very unprofessionally throughout the whole process." Tr. 165:5-9). | 51. Admit. |
| 52. The day after the meeting, Milde sent a letter on PCSR letterhead to Barry Nova, the Board's Vice Chair, from "Ursula Milde, Administrator." (Milde Dep.Ex.31). | 52. Admit/Deny. Her title does not demonstrate her expected job duties. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |
| 53. In her May 23, 2000 letter to Mr. Nova, Milde wrote:<br><br>In response to your letter dated May 19, 2000, which you handed me last night, I want to clear up some inaccuracies. My grievance is a grievance against the CEO, who prevented me from presenting the reason for my desire to hire an in-house Recreation Coordinator to the Personnel | 53. Admit/Deny. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |

| | |
|---|---|
| Committee, after he had informed me via a memo dated 4/17/00 that it was up to the Personnel Committee of the Board of Commissioners to make the decision…Through out my tenure as the administrator of PCSR, I have provided strong and consistent leadership and have made decisions which have benefited the residence, the individuals, and ultimately the HATG. I have a proven track record and have been trusted by the CT State Health Department which licenses us, by residents, their families and my staff and colleagues. It is therefore important that my and the PCSR staff's input is sought regarding decisions which affect PCSR. On another note, I do want to thank you personally, for listening to me at last night's executive session." (Milde Dep.Ex.31). | |
| 54. On June 2, 2000, Little provided Milde with a performance evaluation and two memos entitled, "Corrective Directives" and "Disciplinary Reprimand and 90 Day Opportunity to Improve". (Tr.414:17-415:11;166:2-15; 168:9-23)(Pl's Dep.Ex.16; Milde Dep.Exs.33 and 34). | 54. Admit/Deny. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |
| 55. On the review, Little provided Milde with an overall rating of 3.81 out of 7 on her performance review. (Tr.419:9-22) | 55. Admit. |
| 56. In the Corrective Directives memo, Little wrote:<br><br>Your actions regarding the issue of Recreational Coordinator are serious. You have failed to keep lines of communications open between you and me and therefore I have been unaware of your activities. You have evidenced a willful and intentional position of not recognizing that I am your supervisor. You have acted without the authority of myself or the Board of Commissioners. These, combined with your reluctance not to change, have caused me to consider | 56. Admit/Deny. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |

| | |
|---|---|
| disciplinary actions ranging from a written reprimand to possible termination. However, because of your dedication to the elderly residing at Parsonage, I have decided to only give you a written reprimand which will be placed in your personnel file. In addition, I have decided to give you 90 days to take the following corrective actions… (Milde Dep.Ex. 33, p.2). | |
| 57. Milde understood that if she did not do as directed by Little in the memo, she would be subject to further disciplinary action. (Tr.168:4-8). | 57. Admit. |
| 58. In the Disciplinary Reprimand, Little listed seven reasons for the reprimand, including insubordination. (Tr.169:10-14). | 58. Admit |
| 59. Milde disagreed with Little's assessment of those seven items. (Tr.169:15-17). | 59. Admit. |
| 60. On page three of the Reprimand, Little stated that Milde gave the impression in her March 25th memo that the position of "recreational activities therapist" was in the planning stages. (Milde Dep.Ex.34, p.3). | 60. Lack information and belief to admit or deny. |
| 61. In her March 25th memo, Milde did not tell Little she had already posted for the position (Tr. 604:3-10) and had not told that to Little prior to the March 25th memo. (Tr.604:15-20). | 61. Admit |
| 62. In her March 25th memo, Milde did not mention that she had interviewed Agata Wilinski (Tr.604:21-25) and had not mentioned this to Little prior to the March 25th memo. (Tr.605:2-5). | 62. Admit. |
| 63. Milde also unilaterally changed the degree requirement on the job posting from "associate degree required" to one where a degree was "not necessary but advisable." (Tr.606:5-22). | 63. Argumentative, cannot admit or deny. |
| 64. Milde made this change without discussing it with Little. (Tr.605:25-607:2). | 64. Argumentative, cannot admit or deny. |
| 65. Milde responded to the Disciplinary Reprimand with a five page memo that | 65. Admit. |

| | |
|---|---|
| included eleven attachments. (Tr.171:12-172:14)(Milde Dep.Ex.35). Milde's response to Little's reprimand stated, in part:<br><br>You appear to interpret my carrying out my responsibilities, as delineated in my job description, with the independence and competence I have shown in the past three years and eight months as insubordination and lack of communication. I believe that I have carried out my responsibilities within my job description conscientiously and competently. (Milde Dep. Ex.35). | |
| 66. On the final page of this memo, among other things, Milde stated that she believed the Disciplinary Reprimand to be: (1) A violation of her contractual agreement as delineated in her job description…; (3) An attempt to undermine her authority as the administrator, who is responsible to the CT State Health Department, under out license, for all the operations at PCSR…; (5) In direct conflict with past messages of the Housing Authority and verbal statements by Little that Milde's work was very good; and (6) Indication of a difficult working relationship between Milde and Little. (Tr.173:2-15)(Milde Dep.Ex.35, p.5). | 66. Admit/Deny. Milde Depo. Ex. 33, p.2 ("you are hereby advised that actions regarding employment, outside contracting or other activities outside of the everyday operation of Parsonage are to be authorized by me [Little]) |
| 67. In her response, Milde also stated that Little had previously described her work as "very good". (Milde Dep.Ex.35, p.5). | 67. Admit |
| 68. At the time she wrote her response to the Disciplinary Reprimand, Milde's relationship with Little was so poor that she suggested they use a mediator to work through their problems. (Tr.174:12-25)(Milde Dep.Ex.35, p.5). | 68. Argumentative, cannot admit or deny. |
| 69. Milde felt the only way she and Little could get anywhere was to have a third party that would be more objective, and believed a mediator was necessary to facilitate communication between her and | 69. Argumentative, cannot admit or deny. |

| | |
|---|---|
| Little. (Tr.174:23-175:5). | |
| 70. After she received the Disciplinary Reprimand, Milde did not have open communications with Little. (Tr.352:21-25). | 70. Cannot admit or deny, transcript page not provided. |
| 71. On June 7, 2000, Little issued a memo to Milde directing her to prepare a written apology to the Board for her actions at the May 22, 2000 Board meeting. (Tr.180:18-24)(Milde Dep.Ex.38). | 71. Admit |
| 72. On June 21, 2000, Little issued a second memo to Milde directing her to submit a written apology to the Board. (Tr.191:9-192:11). | 72. Admit |
| 73. Milde never apologized to the Board. (Tr.181:14-17). | 73. Admit |
| 74. On June 26, 2000, Milde submitted a memo to Sue McClenachan, the other members of the Board, and Little, responding to Little's request that Milde apologize. (Tr.193:24-194:17)(Milde Dep.Ex.45). | 74.Admit |
| 75. In the memo, Milde provided six reasons why she could not "follow these directives". (Milde Dep.Ex.45). | 75. Admit, document speaks for itself. |
| 76. Milde's June 26, 2000 memo stated:<br><br>It is hard for me to understand for what I am being directed to apologize since I have not committed any act or engaged in any behavior which warrants an apology. I have neither used abusive language nor even raised my voice when I brought up a matter of vital concern for PCSR, which is my responsibility as the administrator. (Milde Dep.Ex.45).<br><br>In addition, Milde's June 26, 2000 memo stated that she could not<br><br>In good conscience, remain silent, nor will be forced to apologize for performing my responsibilities as the administrator of PCSR to the best of my abilities and knowledge, as charged to me under our license. (Milde Dep. Ex. 45). | 76. Admit, document speaks for itself. |

| | |
|---|---|
| 77. On June 30, 2000, Little wrote to Milde stating that he was "deeply disappointed" that she had not followed his prior directives to apologize to the Board. (Tr. 197:3-12)(Milde Dep.Ex.47). | 77. Lack information and belief to admit or deny. |
| 78. In a letter to Milde dated August 21, 2000, Little stated he found Milde had made no attempt to comply with his Corrective Directives Memorandum of May 30, 2000, and since that time additional unsatisfactory performance issues had arisen. (Milde Dep.Ex.58). | 78. Lack information and belief to admit or deny. |
| 79. Little directed Milde to attend a disciplinary hearing in his office on August 23, 2000. (Milde Dep.Ex.58). | 79. Admit |
| 80. Little advised Milde that, as a result of this meeting, disciplinary action, up to and including termination, might result. (Milde Dep. Ex. 58). | 80. Admit |
| 81. The disciplinary meeting was rescheduled to September 6, 2000. (Tr.207-08). | 81. Admit |
| 82. Attorney Carey attended the meeting with Milde. (Tr.207-08). | 82. Admit |
| 83. On September 8, 2000, Little wrote Milde informing her that her employment was being terminated effective that same day. (Milde Dep. Ex.62). | 83. Admit |
| 84. Little wrote: "This action is based on inadequate and poor work performance and failure to comply with the policies, procedures, and regulations of the Housing Authority of the Town of Greenwich. These issues have been presented to you in writing and you have been given the opportunity to respond and comply with these policies, procedures, and regulations. You have failed to respond and actively resolve these issues and as a result of these actions have interfered with the efficient and effective operation of Parsonage Cottage." (Milde Dep.Ex.62). | 84. Lack information and belief to admit or deny. |

**PLAINTIFF'S FED.R.CIV.P. 56(c) AND LOCAL CIVIL RULE 56(a)(2)
DISPUTED ISSUES OF MATERIAL FACTS**

Pursuant to Fed.R.Civ.P. 56(c) and Local Civil Rule 56(a)(2), the Plaintiff Ursula

Milde ("Ms. Milde") hereby asserts the following material facts that are in dispute:

1.      Defendant Little admitted that the May 30, 2000 "Corrective Directives" were
actually disciplinary in nature, contained no positive statements and the accompanying
reprimand and notice to improve was an "adverse action".  (Little Depo. at pp. 302, 309,
343-344- **Exhibit AA herein**); (Milde Depo.Exhibit No.'s 33 & 34- **Exhibits Q & R
herein**).

2.      On May 30, 2000, Defendant Little admitted he gave Ms. Milde the disciplinary
corrective action and a ninety day notice to improve, and further threatened her with
termination.  (Little Depo. at p. 308, 342-344- **Exhibit AA herein**); (Milde Depo.Exhibit
33-**Exhibit Q herein**); (Milde Depo. Exhibit 34-**Exhibit R herein**); (Revised Sixth
Amended Complaint ¶ 14-**Exhibit A herein**).

3.      In the May 30, 2000 Corrective Directives, Little states, "**you are hereby advised
that actions regarding employment, outside contracting or other activities outside of
the everyday operation of Parsonage are to be authorized by me**." (Milde Depo.Ex.
33, p.2- **Exhibit Q herein**)(emphasis in original). This meant that all personnel actions,
contracts with outside vendors and activities other than the everyday operation of the
facility were not expected job duties of Milde's employment. Milde responded on June 6,
2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

4.      In the May 30, 2000 Corrective Directives, Little states, "I expect you to fully
cooperate with CCI staff. **You will communicate with me regarding the services
provided by this company. Since I am the person who has contracted with CCI, I
will be the individual who will convey any concerns you have**." (Milde Depo. Ex.33,
p.2- **Exhibit Q herein**)(emphasis in original). This meant that any interaction with CCI
was not an expected job duty. Milde responded on June 6, 2000. (Milde Depo.Exhibit
No.35-**Exhibit S herein**).

5.      In the May 30, 2000 Corrective Directives, Little states, "**I must emphasize that
you do not have the authority to enter or terminate any contract(s) relating to
Parsonage**." (Milde Depo.Ex.33, p.2- **Exhibit Q herein**)(emphasis in original). This
meant that entering into and termination of vendor contracts was not an expected job
duty. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

6.      In the May 30, 2000 Corrective Directives, Little states, **"[a]ll press releases are
reviewed by me and issued through the Housing Authority of the Town of
Greenwich**." (Milde Depo.Ex.33, p.3- **Exhibit Q herein**)(emphasis in original)(Revised
Sixth Amended Complaint ¶ 41). This meant that all forms of communication with the

press were not an expected job duty. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

7.      In the May 30, 2000 Corrective Directives, Little states, "…I share your concerns regarding any abuse or neglect relating to any of the services provided to the residents of Parsonage." (Milde Dep.Ex.33, p.3- **Exhibit Q herein**). Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

8.      In the May 30, 2000 Corrective Directives, Little states, "I remind you that the grievance procedure requires that you address your concerns with your immediate supervisor, who is the CEO of the Housing Authority, before going to the Board of Commissioners. If we can't remedy the problems, you have the right to request a grievance hearing." (Milde Depo. Ex.33, p.4- **Exhibit Q herein**). Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

9.      In the May 30, 2000 Corrective Directives, Little concludes with the following statement, "If you fail to adhere to the above directives, I will have no alternative but to take a more serious disciplinary action." (Milde Depo.Ex.33, p.4- **Exhibit Q herein**). Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

10.     In the May 30, 2000 Written Disciplinary Reprimand and 90-day Opportunity to Improve, Little states under Section 2 "Acts of Insubordination": "…**The posting and selecting a candidate for the position of Recreational Coordinator was not authorized or approved.**" (Milde Depo.Ex.34, p.5 **Exhibit R herein**)(emphasis in original). This meant that posting job positions and hiring staff were not an expected duty of her employment. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

11.      In the May 30, 2000 Written Disciplinary Reprimand and 90-day Opportunity to Improve, Little states under Section 2 "Acts of Insubordination": "…You terminated the contract with CCI without the authority, approval and/or permission of the Board of Commissioners and Benjamin Little, CEO." (Milde Depo.Ex.34., p.5- **Exhibit R herein**). This meant that termination of contracts with vendors was not an expected duty of her employment. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

12.     In the May 30, 2000 Written Disciplinary Reprimand and 90-day Opportunity to Improve, Little states under Section 2 "Acts of Insubordination": "…You changed the qualifications for the position of Recreational Coordinator without the permission, authorization, or approval of the Board of Commissioners and Benjamin Little, CEO." (Milde Depo.Ex.34, p.5- **Exhibit R herein**). This meant that modifying or changing job descriptions was not an expected duty of her employment. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

13.      In the May 30, 2000 Written Disciplinary Reprimand and 90-day Opportunity to Improve, Little states under Section 2 "Acts of Insubordination": "…You were advised by Benjamin Little, CEO, not to take any further action regarding the filling of the

position of Recreational Coordinator. However, you willfully and intentionally disregarded this directive and contacted Barbara Nolan and tried to coerce her into hiring Agata Wilinski." (Milde Depo.Ex. 34, p.5- **Exhibit R herein**). This meant recruiting and hiring for the Recreational Coordinator position was not an expected duty of her employment. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

14.    In the May 30, 2000 Written Disciplinary Reprimand and 90-day Opportunity to Improve, Little states under Section 2 "Acts of Insubordination": "[y]ou failed to recognize the chain of authority and follow the policies and procedures of the Housing Authority." (Milde Depo.Ex. 34, p.5- **Exhibit R herein**). Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

15.    In the May 30, 2000 Written Disciplinary Reprimand and 90-day Opportunity to Improve, Little states under Section 2 "Acts of Insubordination": **"[y]ou disregarded the Board of Commissioners' decision not to hear your grievance**." (Milde Depo.Ex.34, p.5- **Exhibit R herein**)(emphasis in original). This meant that making public protests before the Board of Commissioners was not an expected job duty. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

16.    In the May 30, 2000 Written Disciplinary Reprimand and 90-day Opportunity to Improve, Little states under Section 1 "Deceptive Actions": "…The interview with Barbara Nolan revealed that she was under the impression that the Housing Authority had authorized you to terminate this contract. **You did not have the authority to terminate this contract nor were you authorized by the Housing Authority to do so**." (Milde Depo.Ex.34, p.2- **Exhibit R herein**)(emphasis in original). This meant that terminating vendor contracts was not an expected job duty. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

17.    In the May 30, 2000 Written Disciplinary Reprimand and 90-day Opportunity to Improve, Little states under Section 1 "Deceptive Actions": "[y]ou give the impression that the position of 'recreational activities therapist' was in the planning stages. Yet in a subsequent fax dated April 17, 2000, you state that you posted and interviewed two candidates in 'early march.' **You did not report to Benjamin Little, CEO, that you had already posted for this position and offered it to a candidate (Agata Wilinski)**. (Milde Depo.Ex.34, p.3- **Exhibit R herein**)(emphasis in original). This meant that posting job positions and hiring staff were not an expected duty of her employment. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

18.    In the May 30, 2000 Written Disciplinary Reprimand and 90-day Opportunity to Improve, Little states under Section 1 "Deceptive Actions": **"…[n]o review or approval was given to alter the Recreation Coordinator job description**." (Milde Depo.Ex.34, p.4- **Exhibit R herein**)(emphasis in original). This meant that modify or changing job descriptions was not an expected job duty. Milde responded on June 6, 2000. (Milde Depo.Exhibit No.35-**Exhibit S herein**).

19.    As a result of the Defendants Media and Public Relations policy, one of the methods the public would learn about the inadequacy of recreation services at the Parsonage Cottage would be through the local newspaper. (McClenachan Depo. at pp. 251-253-**Exhibit Z herein**).

20.    As a result of the Defendants Media and Public Relations policy, one of the methods the public would learn about the inadequacy of recreation services at the Parsonage Cottage would be through the public meetings of the Defendant Board of Commissioners. (McClenachan Depo. at pp. 251-253- **Exhibit Z herein**).

21.    Sue McClenachan admitted that Ms. Milde's April 24, 2000 grievance was discussed by the Defendant Board of Commissioners in executive session and stated, ". . .**she did not have the right to do that because that was a decision that should have been made by the CEO. She could not do that on her own** [hire recreation coordinator]. . . we felt as a board that we would not hear her case, that we upheld the decision of Mr. Little, the CEO." (McClenachan Depo. at 219-**Exhibit Z herein**)(emphasis in original).

22.    Defendant Little admitted that on April 24, 2000 he denied Ms. Milde attendance at a personnel meeting of the Board of Commissioners to present her grievance regarding the recreation coordinator issue. (Little Depo. at p. 335- **Exhibit AA herein**). That meant she was not required to attend Board meetings as an expected job duty.

23.    Ms. Milde admitted she wrote a letter to Defendant Little on April 26, 2000, in which she stated that what management's perspective should be regarding protecting the best interests of the residents, "I like to remind you, therefore, that what matters is not your, or my, authority nor, 'who is in charge here' but what best serves the residents of Parsonage Cottage Senior Residence. All of us, including you as the CEO of the managing agent, as well as the Board of Commissioners, the Parsonage Cottage Staff and I, must always be cognizant of this responsibility." (Milde Depo. at p. 338- **Exhibit BB herein**); (Milde Depo. Exhibit No.20- **Exhibit N herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**).

24.    Ms. Milde admitted with regard to her free speech efforts concerning the recreation coordinator issue, "I was trying to do something for the residents. **I wasn't asking for a raise, I wasn't asking for anything for myself, I was doing something to the best interests of the residents at Parsonage Cottage, whom I knew very well. . .** What I was doing and the way I was responded to when I was trying something for these residents was outrageous in my mind. That's why, and I went to the Nth degree. I spoke up at a board meeting on the 22nd because I was very concerned and I knew I was risking my position. I knew that there was deliberate attempt to find something to discriminate against me. I knew that, and I did it because I believe that was the right thing to do and to this very day, I believe that, and to this very day I stand on this principle that – and I am in – excuse me. I'm involved in this lawsuit and it's a very stressful thing to me. But you have to do what's right, and I believe that to the core of my being and that's what I was

18

doing." (Milde Depo. at p. 154- **Exhibit BB herein**)(emphasis in original); (Revised Sixth Amended Complaint ¶ 38-**Exhibit A herein**).

25.    Defendants admitted "the Board of Commissioners sets policy and is responsible for the overall operation of the authority." (McClenachan Depo. at p. 94, 179-**Exhibit Z herein**)

26.    Sue McClenachan admitted that Defendant Little's primary job duties include entering into contracts with vendors, "I guess it's one of the most important parts of his job." (McClenachan Depo. at p. 385-386-**Exhibit Z herein**). That meant Milde was not required to enter into contracts with vendors, if that is Defendant Little's primary job duty.

27.    Defendant Little admitted that he did not make false and misleading statements regarding Ms. Milde's performance to the Board of Commissioners.  (Little Depo. at p. 186- **Exhibit AA herein**).

28.    Defendant Little admitted that his style of management as the Chief Executive Officer of the Housing Authority was militaristic in nature.  (Little Depo. at p. 315-**Exhibit AA herein**)

29.    Sue McClenachan admitted that Defendant Little may have told her that Ms. Milde had terminated the recreation services contract with CCI, "he maybe told me and I said, well, **how can she do that if she isn't the one that has the contract with CCI**." (McClenachan Depo. at p. 266-**Exhibit Z herein**)(emphasis in original). This meant that terminating contracts with vendors was not an expected job duty.

30.    Sue McClenachan admitted Ms. Milde could not have terminated the CCI contract that was not renewed, "I guess she couldn't. I guess she couldn't terminate a contract if it wasn't in existence, if the time had run out."  (McClenachan Depo. at p. 418, 267-**Exhibit Z herein**).

31.    Defendants admit that Ms. Milde was not allowed to participate in committee meetings of the Defendant Board of Commissioners, but other male managers were allowed to participate. (McClenachan Depo. at p. 141, 143,144-145-**Exhibit Z herein**); (Revised Sixth Amended Complaint ¶ 18-**Exhibit A herein**). That meant she was not required to participate in Board meetings as an expected job duty.

32.    Ms. Milde admitted she was discriminatorily denied permission to attend the April 24, 2000 personnel committee meeting, "I attempted to explain why I was planning to go back to hire an in-house recreation coordinator, which was the first plan, and I wanted to explain the history and the rationale for that, and the reason why I requested to be at the at committee meeting was because I was told by the CEO that it was up to the committee and the commissioners to decide that. And I wanted to give them an opportunity to explain so they had some basis for decision or recommendation or whatever they do at the committee," . . . "he (Defendant Little) called me up and said . .

19

.you are not permitted to come. You are not welcome there." (Milde Depo. at pp. 80-81, 116- **Exhibit BB herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**). That meant she was not required to participate in Board meetings as an expected job duty.

33.    Sue McClenachan admitted with respect to Ms. Milde, "I don't like the woman." (McClenachan Depo. at p. 444- **Exhibit Z herein**).

34.    Sue McClenachan admitted she has a bias and animosity toward Ms. Milde, "I do today." (McClenachan Depo. at p. 225- **Exhibit Z herein**).

35.    Ms. Milde admitted the following actions were discriminatory, "I was the only female senior staff and I was not—I was never invited to committee meetings to discuss my area of operation. I was never invited at a board meeting to discuss or to record initially verbally about my area of operation. I wasn't' at any board meeting about my area of operation. When there was a question about Parsonage and was the finances or maintenance or whatever, it was always asked of the other senior staff, so finance might be Russell Kemp or maintenance might be John Banks. . ." (Milde Depo. at pp.78-79- **Exhibit BB herein**); (Revised Sixth Amended Complaint ¶ 18-**Exhibit A herein**). That meant she was not required to participate in Board meetings as an expected job duty.

36.    Ms. Milde was never provided a performance review until June 2, 2000, "I believe other managers received performance reviews." (Milde Depo. at p. 87, 415- **Exhibit BB herein**); (Revised Sixth Amended Complaint ¶ 18-**Exhibit A herein**).

37.    Defendants admitted that Ms. Milde never participated during executive session regarding personnel issues, like other male managers. (McClenachan Depo. at p. 34-35- **Exhibit Z herein**); (Revised Sixth Amended Complaint ¶ 18-**Exhibit A herein**). That meant she was not required to participate in Board meetings as an expected job duty.

38.    Defendant Little admitted that the Housing Authority approved a job description for the recreation coordinator position in October 1986. (Little Depo. at p. 176- **Exhibit AA herein**); (Revised Sixth Amended Complaint ¶ 10-**Exhibit A herein**).

39.    Ms. Milde admitted she believed the CCI services were failing starting in December 1999 and throughout May, 2000. (Milde Depo. at pp. 126-127- **Exhibit BB herein**); (Revised Sixth Amended Complaint ¶ 11-**Exhibit A herein**).

40.    Ms. Milde admitted regarding the CCI contract services, "the problem was that they were not fulfilling the contract. They didn't –The contract called for two people, and for 10 and a half months they only had one person. So it wasn't just that they were not always there; they didn't fulfill the terms of the contract they had." (Milde Depo. at p. 290- **Exhibit BB herein**).

41.    Defendant Little admitted that Ms. Milde told him her staff was stepping in to provide recreation services to the residents in the absence of CCI workers. (Little Depo.

at p. 299- **Exhibit AA herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**).

42.    Defendant Little admitted he never called CCI, the recreation services contractor, about whether Ms. Milde's staff was providing recreation services in the absence of CCI. (Little Depo. at p. 298-299- **Exhibit AA herein**).

43.    Ms. Milde admitted the following with regard to the unsatisfactory performance of the CCI contractor, "so there was always an approved position, and my understanding was that if I saw that the contractual arrangement was not satisfactory because the contract's quality control was poor and the residents weren't getting what there was supposed to get, and believe me it was bad, it really was, that it's my responsibility as a manager to evaluate that and then come up with a solution, and since I was reverting back to the original solution to the original plan, and I was letting Mr. Little know that, I didn't understand why there was an objection to that." (Milde Depo. at p. 112-114- **Exhibit BB herein**); (Revised Sixth Amended Complaint ¶¶ 11, 37-**Exhibit A herein**).

44.    Defendant Little admitted that he was notified by Ms. Milde for the first time on February 3, 2000 about the recreation coordinator issue at Parsonage Cottage.  (Little Depo. at p. 318- **Exhibit AA herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**).

45.    Defendant Little admitted he received a letter from Ms. Milde dated March 25, 2000, wherein Ms. Milde stated, "we did not renew the contract in 1999, and at this point it is very clear that we need an in-house recreation/activities therapist who has knowledge and interest in developing a therapeutic recreation and activity program for all the elderly residents at Parsonage Cottage, which addresses their needs."  (Little Depo. at p. 320- **Exhibit AA herein**); (Milde Depo.Exhibit No. 7- **Exhibit H herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**).

46.    Defendant Little admitted that Ms. Milde notified him of the posting of the recreation coordinator position for which he later disciplined her for, "she did inform me after the action was taking place, you're right, yes." (Little Depo. at 327- **Exhibit AA herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**).

47.    Ms. Milde admitted she experienced discrimination based on her freedom of speech after April 24, 2000,

> Following this denial of attending the personnel committee, I submitted a grievance. And I submitted that in writing to the commissioners that very same evening because the personnel committee was three hours before the general commissioners' meeting. And my grievance, the substance of my grievance was that I was not allowed to present the reason or the rationale for my plan even though I was told that that body was supposed to make the decision for that. So I presented the grievance. I didn't hear anything about it. I just presented it in writing. I didn't hear anything about the grievance, any response until 15 days or

so later when I got a memo saying that there was going to be a grievance hearing on the 18th of May. So I prepared some material for this grievance hearing. And then shortly before the grievance hearing, I received—I either received a fax from Mr. Little or from a phone call. It was a fax. Saying that the hearing was cancelled. And nothing, you know, why it was cancelled. It was just cancelled. That was May 18. On May 22, I went to an open board meeting, so I get this memo that the grievance hearing is cancelled. So I realize that the board and/or Mr. Little or both, whatever, that do not want to hear me on this matter. And I was very upset about that because it was advocating for the residents at the cottage. And it not only was my responsibility, but I felt it was very, very important that we hire an in-house coordinator for all the reasons that I outlined in all the previous memos, and the fact that I wasn't even being heard by the body who was supposed to make the decision about that was upsetting to me. Because it indicated to me a lack of caring for the residents. So I went to the open board meeting . . .at the end of the open part of the board meeting, I brought up that I wanted to be heard and I brought it up in the voice like I'm speaking today. I'm not accustomed to raising my voice, and I was shouted down and I was literally shouted down. And I brought it up again and I was shouted down. And then the commissioner said that it had to be taken up in executive session. . .When I came into the room where the board was held, I was handed a letter by Mr. Nova, who is the vice chair, which was dated May 19, and there was a copy of the letter which he stated was mailed to me, but I hadn't gotten it yet. I was handed a copy of the letter saying that my grievance was denied. That I wasn't going to have a hearing again. I wasn't going to have a hearing period. . .so the discrimination was that I couldn't even—my grievance wasn't even heard."

(Milde Depo. at pp.82-85, 117, 161- **Exhibit BB herein**); (Milde Depo. Exhibit No. 13 (Grievance)-**Exhibit M herein**); (Milde Depo. at p. 158-159-**Exhibit BB herein**); (Milde Depo. Exhibit No. 30 (denial of grievance hearing)-**Exhibit O herein**); (Revised Sixth Amended Complaint ¶¶ 37, 43- **Exhibit A herein**).

48.    Ms. Milde wrote a letter to Defendant Little on April 24, 2000, in which she stated that the recreation coordinator position is an allowable expense, "the position is allowable since we have a mandate for recreational services." (Milde Depo. at p. 333-**Exhibit BB herein**); (Milde Depo. Exhibit No. 12-**Exhibit L herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**).

49.    Defendant Little admitted receiving Ms. Milde's May 15, 2000 Rationale for Hiring an In-House Recreation Coordinator, "Parsonage Cottage is mandated by the Health Department of the State of Connecticut, under the code for licensed residential care homes is to provide a recreation program therefore the position is an allowable expense."  (Little Depo. at p. 332- **Exhibit AA herein**).

50.    Defendant Little admitted and agreed with Ms. Milde's May 15, 2000 Rationale for Hiring an In-House Recreation Coordinator, "Residents receive little or no recreation,

cultural, mental and physical stimulation unless provided. Not providing this is a form of abuse and neglect."  (Little Depo. at p. 332-333- **Exhibit AA herein**).

51.    Ms. Milde admitted she requested permission to speak at the open board meeting on May 22, 2000, was not required to register on the agenda, and Defendants admit she was allowed to participate in open board meetings. (Milde Depo. at p. 163-**Exhibit BB herein**); (McClenachan Depo. at pp. 142, 474- **Exhibit Z herein**).

52.    Sue McClenachan, Chairwoman of the Defendant Board of Commissioners, admitted that Ursula Milde attempted to bring her complaint of lack of recreation services to the Defendant Board during an open public session on May 22, 2000, and did not feel challenged by her. (McClenachan Depo. at p. 317, 469, 232- **Exhibit Z herein**); (Revised Sixth Amended Complaint ¶¶ 12, 38- **Exhibit A herein**).

53.    Sue McClenachan admitted that with regard to Ms. Milde's attempt to speak at the May 22, 2000 open session of the Defendant Board of Commissioners' Meeting, "she came in at the beginning of the meeting and started, stood up and started talking about the need for a recreation supervisor at Parsonage Cottage, and I told her she was not being recognized, this was not on the agenda at this time, and to please sit down." (McClenachan Depo. at p. 475, 253, 473- **Exhibit Z herein**); (May 22, 2000 Board Meeting Minutes- **Exhibit Y herein**).

54.    Sue McClenachan admitted that on May 22, 2000 when Ms. Milde raised her concerns about adequacy of recreation services being provided at the Parsonage Cottage, she was raising health, safety and welfare issues of the residents, "**she personally was deeply concerned about the issue**." (McClenachan Depo. at p. 236, 249-250- **Exhibit Z herein**)(emphasis in original).

55.    Sue McClenachan admitted that during the open public comment period of the Defendant Board of Commissioners meeting on May 22, 2000, Ms. Milde "was out of order. She had not been recognized and she was not on the agenda."  (McClenachan Depo. at p. 472-473, 475, 233- **Exhibit Z herein**); (Milde Depo. at p. 162-**Exhibit BB herein** (meetings don't have . . .a printed agenda ahead of time")); (May 22, 2000 Board Meeting Minutes- **Exhibit Y herein**).

56.    Nancy Wisecup, former nurse consultant to the Parsonage Cottage, was present on May 22, 2000 at the open Board of Commissioners meeting where Ms. Milde voiced her concerns about the recreation coordinator issue, "Ms. Milde tried to speak at an open meeting of the Housing Authority and . . .but was basically told to shut up and put up." (Wisecup Depo. at p. 68- **Exhibit CC herein**); (Revised Sixth Amended Complaint ¶ 38- **Exhibit A herein**)); (May 22, 2000 Board Meeting Minutes- **Exhibit Y herein**).

57.    Nancy Wisecup, who attended the May 22, 2000 open meeting of the Board of Commissioners stated regarding Ms. Milde, "she rose and tried to speak about the resident—I mean about the recreation coordinator, and Sue McClenachan screamed at her that she had no right to speak and to sit down and be quiet." (Wisecup Depo. at p. 70-

**Exhibit CC herein**); (Revised Sixth Amended Complaint ¶ 38- **Exhibit A herein**); (May 22, 2000 Board Meeting Minutes- **Exhibit Y herein**).

58.     Nancy Wisecup, who attended the May 22, 2000 open meeting of the Board of Commissioners stated that Ms. Milde told her "my responsibility and my freedom to speak out and on behalf of the residents has been cut off, it's been denied to me,"  and that was the reason she was terminated.  (Wisecup Depo. at p. 69- **Exhibit CC herein**); (Revised Sixth Amended Complaint ¶ 38-**Exhibit A herein**).

59.     On May 22, 2000 at the open board meeting of the Board of Commissioners, Ms. Milde was exercising her right to free speech about the recreation services at Parsonage Cottage.  (Revised Amended Complaint ¶ 38 -**Exhibit A herein).**

60.     Defendant Little admitted with regard to Ms. Milde's exercise of free speech, "the free speech word wasn't in there. If she was exercising her right to talk, grievance, bring a grievance in front of the Board of Commissioners then the answer is yes. (Little Depo. at p. 282-**Exhibit AA herein**); (Revised Sixth Amended Complaint ¶ 38-**Exhibit A herein**).

61.     Ms. Milde admitted with regard to her statements in the May 23 and 26, 2000 Greenwich Time Articles about the potential for a violation resulting from inadequate recreation services at Parsonage Cottage, "if you have a violation, then that could lead to the revocation of your license. . .So whenever CCI didn't do what they were supposed to do in the contract, however minimal it was, I would try to have the staff fill in. . . it put a burden on my staff and myself to do things that had to be done to avoid a violation. . .we strained resources when we did it in order to avoid a violation."  (Milde Depo. at pp. 318-319-**Exhibit BB herein**); (Milde Depo. Exhibit No's. 37 & 66- **Exhibits E & F herein**); (Revised Sixth Amended Complaint ¶¶ 13, 39-**Exhibit A herein**).

62.     Ms. Milde admitted with regard to the possibility of a violation caused by the substandard recreation services provided by CCI, "Recreation services are necessary for the mental health and the emotional health of the residents. And if the services were substandard in my judgment and as the administrator of Parsonage, then it's my responsibility to make sure that they would be brought up to standard."  (Milde Depo. at p. 322- **Exhibit BB herein**); (Revised Sixth Amended Complaint ¶ 11- **Exhibit A herein**).

63.     Defendants denied the following allegation in the Amended Complaint, "Under the state licensing requirements for a facility for the aged, Milde had the direct responsibility of ensuring complete compliance with all state and federal regulations." (Defendants Answers at ¶ 10)(**See Exhibits B,C,D**). This meant that Milde was not expected to have direct responsibility of ensuring regulatory compliance as an expected job duty.

64.    Defendant Little admitted that in a letter to Ms. Milde on May 30, 2000, "I share your concerns regarding any abuse or neglect regarding any of the services provided to the residents of Parsonage."  (Little Depo. at p. 300- **Exhibit AA herein**).

65.    Ms. Milde admitted, through tear filled testimony, the document campaign waged against her by Defendant Little and the Defendant Board of Commissioners was discriminatory harassment,

> My claim is that in the period from February on, things changed, and I was trying to do things exactly the way I had been doing before, and I was trying to do something for the residents at Parsonage Cottage that in my professional opinion and based on my background of knowledge and what was going on there was in the best interest of those residents, and I was trying very hard to get that across to Mr. Little, to the commissioners and Mr. Little stonewalled. He kept saying it is a decision of the commissioners. When I tried to explain to the commissioners why I wanted to go this route, I was prevented to do that. I received a great deal of documents that I had to respond to in addition to running a residence. Now, I know people haven't done this job that I done, don't really know what that means, and I was – I felt that this documentation back and forth without somebody actually sitting down with me and saying, Ursula, not more than sitting down, coming over to Parsonage Cottage, seeking what was going on, meeting with the residents and the staff and the people who were working there, and talking with them, including, you, the consultants too, and trying to understand why I was embarked on this course of action, instead of that I got documents that I had to respond that were getting more and more harassing in nature and I felt—I really felt being harassed and discriminated. . . And I was trying to do that to the best of my ability, and all I got were these pieces of paper, and I responded to every one of them, and the pieces of paper got more and more abusive in nature, and nobody on the part of management, not Mr. Little, not any of the commissioners, said to me why do you want to do this, sat down with me. Even listen to me."

(Milde Depo. at p. 152-154, 183- **Exhibit BB herein**); (Revised Sixth Amended Complaint ¶ 43- **Exhibit A herein**); (Milde Depo. Exhibit No.45- **Exhibit U herein**)

66.    Sue McClenachan admitted that it was Defendant Little's own initiative to order Ms. Milde to provide an apology to the Defendant Board of Commissioners on June 7 and June 21, 2000, as a result of her actions at the May 22, 2000 public Board Meeting. (McClenachan Depo. at p. 239- **Exhibit Z herein**); (Revised Sixth Amended Complaint ¶¶ 15, 40- **Exhibit A herein**); (Milde Depo. Exhibit No.38- **Exhibit T herein**).

67.    Sue McClenachan admitted that Ms. Milde's June 26, 2000 letter to the Defendants was an example of her continued protest about the recreation services issue, "I guess she is continuing to protest, yes."  (McClenachan Depo. at p. 264- **Exhibit Z herein**); (Milde Depo. Exhibit No. 45-**Exhibit U herein**); (Revised Sixth Amended Complaint ¶ 16- **Exhibit A herein**).

68.     Defendants admitted that on May 19, 2000 the Defendant Board of Commissioners denied Ms. Milde a grievance hearing on her complaint regarding the recreation services at Parsonage Cottage. (McClenachan Depo. at p. 35- **Exhibit Z herein**); (Milde Depo. Exhibit No.30- **Exhibit O herein**).

69.     Defendant Little admitted Ms. Milde filed a request for a hearing on her grievance on April 24, 2000.  (Little Depo. at p. 183- **Exhibit AA herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**); (Milde Depo. Exhibit No. 13- **Exhibit M herein**).

70.     Defendants admit that Ms. Milde sent a written grievance regarding the recreation coordinator issue to Defendant Little on April 24, 2000 and also provided it to the Defendant Board of Commissioners on the same date. (McClenachan Depo. at p. 205-206- **Exhibit Z herein**); (Milde Depo. Exhibit No. 13- **Exhibit M herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**).

71.     Defendant Little admitted Ms. Milde sent him a letter dated April 24, 2000 regarding her request for a grievance over the recreation coordinator position, wherein she stated, "Since the Executive Director prevented me from presenting the case to the Personnel Committee as I had requested, **I have no other choice but to ask for a formal grievance**."  (Little Depo. at pp. 330-331, 335-**Exhibit AA herein**)(emphasis in original); (Milde Depo. Exhibit No. 13- **Exhibit M herein**); (Revised Sixth Amended Complaint ¶ 37-**Exhibit A herein**).

72.     Defendants admit that Ms. Milde was never provided a grievance hearing by the Defendant Board of Commissioners.  (McClenachan Depo. at p. 207, 233- **Exhibit Z herein**).

73.     Defendant Little admitted that on April 24, 2000 he denied Ms. Milde attendance at a [personnel] meeting of the Board of Commissioners to present her grievance regarding the recreation coordinator issue. (Little Depo. at p. 335-**Exhibit AA herein**).

74.     Defendant Little admitted he sent Ms. Milde a letter that scheduled her formal grievance hearing before the Board of Commissioners for May 18, 2000.  (Little Depo. at p. 336- **Exhibit AA herein**); (Little Depo. Exhibit No. 38); (Milde Depo. at p. 157- **Exhibit BB herein**).

75.     Defendant Little admitted the Board of Commissioners sent a memo to Ms. Milde dated May 19, 2000, which denied her request for a formal hearing on her grievance. (Little Depo. at p. 336-337- **Exhibit AA herein**); (Milde Depo. Exhibit No. 30- **Exhibit O herein**).

76.     The Defendants admit that when the Defendant Board of Commissioners handed the May 19, 2000 denial of a grievance hearing to Ms. Milde on May 22, 2000 befoe the start of the Board Meeting, it violated the Defendants Grievance Policy. (McClenachan

Depo. at p.230- **Exhibit Z herein**); (Milde Depo. at p. 159-**Exhibit BB herein**); (Revised Sixth Amended Complaint ¶ 43-**Exhibit A herein**).

77.     Sue McClenachan admitted that when Ms. Milde raised her concerns about the adequacy of the recreation services at Parsonage Cottage on May 22, 2000, her April 24, 2000 grievance was already denied. (McClenachan Depo. at p. 253-**Exhibit Z herein**).

78.     Defendants admitted that "if there's a problem at the Parsonage Cottage that the administrator is aware of, that that should be discussed with the CEO prior to going public with it." (McClenachan Depo. at p. 78-**Exhibit Z herein**); (Revised Sixth Amended Complaint ¶ 42-**Exhibit A herein**). This mean that Milde could not speak directly to the press as an expected job duty.

79.     Ms. Milde admitted that she was reprimanded on May 30, 2000 (Corrective Directives) by Defendant Little for violating the Housing Authority's Media and Public Relations policy.  (Milde Depo. at p. 248-249- **Exhibit BB herein**); Milde Depo. Exhibit No. 33- **Exhibit Q herein**).

80.     As a result of the Defendants Media and Public Relations policy, one of the methods the public would learn about the inadequacy of recreation services at the Parsonage Cottage would be through the local newspaper. (McClenachan Depo. at pp. 251-253- **Exhibit Z herein**).

81.     As a result of the Defendants Media and Public Relations policy, one of the methods the public would learn about the inadequacy of recreation services at the Parsonage Cottage would be through the public meetings of the Defendant Board of Commissioners. (McClenachan Depo. at pp. 251-253-**Exhibit Z herein**).

82.     Sue McClenachan admitted she knew only one basis for Ms. Milde's poor job performance, "**I thought her poor performance when we told her we would not hear her grievance to the board and she came to the board and stated speaking out of turn, and would not respect the board, would not respect my asking her to please sit down, that she was not part of the meeting and she was not to be recognized**." (McClenachan Depo. at p. 445- **Exhibit Z herein**)(emphasis in original). Milde was not required to speak before the Board during meetings as an expected duty of her employment.

83.     Defendant Little admitted Ms. Milde was terminated on September 8, 2000, for "inadequate and poor work performance and failure to comply with the policies, procedures, and regulations of the Housing Authority of the Town of Greenwich".  (Little Depo. at p. 261, 346-348- **Exhibit AA herein**); (Milde Depo. Exhibit No.62- **Exhibit X herein**); (Milde Depo. at p. 287-**Exhibit BB herein**); (Revised Sixth Amended Complaint ¶¶ 19, 28-**Exhibit A herein**); (Milde Depo.Exhibit No. 58- **Exhibit W herein**); (Milde Depo.Exhibit No. 47- **Exhibit V herein**)

84.     Defendant Little admitted he sent Ms. Milde a notice of termination on September 8, 2000, wherein he stated "after careful review of the record as well as materials submitted by you and your attorney at the hearing held September 6, 2000 I have determined to terminate your employment as administrator on the Parsonage Cottage effective at the close of business, Friday, September 8, 2000."  (Little Depo. pp. 346-347- **Exhibit AA herein**); (Milde Depo. Exhibit No.62- **Exhibit X herein).**

85.     Defendants admit that Ms. Milde's April 24, 2000 grievance regarding the recreation coordinator issue at Parsonage Cottage "was perhaps one of the reasons for her termination."  (McClenachan Depo. at p. 207-**Exhibit Z herein**).

86.     On March 24, 2000, Defendant Little wrote a letter to Ms. Milde regarding the hiring of a recreational coordinator. (Milde Depo.Exhibit No.6- **Exhibit G herein**).

87.     Ms. Milde responded to Defendant Little's March 24, 2000 in a letter dated March 25, 2000. (Milde Depo. Exhibit No. 7- **Exhibit H herein**).

88.     On April 13, 2000, Ms. Milde sent another letter to Defendant Little as a follow up to her letter dated March 25, 2000. (Milde Depo.Exhibit No.8- **Exhibit I herein**).

89.     On April 17, 2000, Defendant Little sent a letter to Ms. Milde in response to her April 13, 2000 letter. (Milde Depo.Exhibit No.9-**Exhibit J herein**).

90.     On April 18, 2000, Defendant Little sent a letter to the Personnel Committee regarding Ms. Milde's request for a recreation coordinator. (Milde Depo.Exhibit No. 11-**Exhibit K herein**).


Dated: August 23, 2006
Southport, CT

PLAINTIFF,
URSULA MILDE


By: /S/ Mark P. Carey

Mark P. Carey (CT17828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel.
(203) 255-0380 fax
mcarey@capclaw.com
Her Attorney

## <u>CERTIFICATION OF SERVICE</u>

THIS IS TO CERTIFY that a copy of the foregoing was delivered electronically through PACER and by UPS Second Day Service, fee prepaid, on this the 23rd day of August, 2006 to:

Francis P. Alvarez
Jackson Lewis
One North Broadway
White Plains, NY 10601

Attorneys for Defendants

By: /S/ Mark P. Carey