UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **URSULA MILDE,** : | **CIV NO. 3:00CV2423 (AVC)** |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **THE TOWN OF GREENWICH;** : | |
| **HOUSING AUTHORITY OF THE** : | |
| **TOWN OF GREENWICH;** : | |
| **THE HOUSING AUTHORITY OF THE** : | |
| **TOWN OF GREENWICH BOARD OF** : | |
| **COMMISSIONERS; and** : | **August 30, 2006** |
| **BENJAMIN LITTLE, CEO,** : | |
| : | |
| Defendants. : | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR RENEWED MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Although Plaintiff claims factual disputes prevent summary judgment from being granted for Defendants, Plaintiff's brief does not argue that, as a purely factual matter, she advocated for an in-house recreation coordinator in her capacity as a citizen. Defendants' brief cited to at least eight exhibits and five instances of deposition testimony confirming Plaintiff was speaking as the Administrator of PCSR when she advocated for the hiring of an in-house recreation coordinator. (See Def. Mem. Supp. Renewed Summ. J. at 18-20). Plaintiff's opposition brief addresses none of these items. To the contrary, Plaintiff's Local Civil Rule 56(a)(2) statement fully admits she was "carrying out [her] responsibilities;" and "performing [her] responsibilities as administrator," when she was speaking on this issue. (See e.g., Pl. Local Rule 56(a)(2) Statement at paragraphs 65 and 76).

To defeat Defendants' renewed motion, Plaintiff couches a purely legal argument -- that her "status immediately changed to that of a citizen" because Defendants rejected her hiring request – as a factual dispute. Plaintiff's "legal" argument also has no merit. Plaintiff cites no case supporting her theory that public officials are "transformed" into speaking as citizens if and when their superiors reject their views and nothing in Garcetti or the cases applying Garcetti support it. Plaintiff does not address any of the eight cases Defendants cited granting employers summary judgment in situations similar to this case. Instead, Plaintiff cites five post-Garcetti cases, all of which are distinguishable. Three of the five cases dealt with statements and/or comments made by plaintiffs in their capacity as *union representatives* - - not in their capacity as employees. A fourth case involved a factual dispute which does not exist here because Defendants have moved upon Plaintiff's own testimony and memos. A fifth case involved testimony in which a police officer spoke to a State's Attorney Office and the Court found that defendants advanced an "absurd" argument that the officer was speaking as an employee of the State's Attorney's Office.

Simply put, Plaintiff's opposition brief does not respond meaningfully to Defendants' Garcetti challenge. The undisputed facts and post-Garcetti case law overwhelming illustrate that, at all relevant times, Milde was speaking for the purpose of fulfilling her job duties as Administrator and her Section 1983 free speech claim fails as a matter of law. Based on Garcetti, Defendants respectfully request that the trial scheduled for September 12, 2006 be adjourned and summary judgment be granted for all Defendants on the sole remaining count in this case.

## ARGUMENT

### A. Despite Plaintiff's Claim, There Are No Undisputed Facts Relevant To Resolving Defendants' *Garcetti* Challenge.

Plaintiff equates argument with disputed facts. There are no disputed facts relevant to the analysis directed by Garcetti. Defendants' motion is based entirely on Plaintiff's sworn testimony and the memos she wrote. Plaintiff obviously accepts this testimony and her memos. She merely disputes their legal significance.

Plaintiff claims factual disputes exist because Little denied her the right to terminate contracts with CCI or to hire the in-house recreation coordinator. (Pl.'s Mem. Opp. at 2-3). There is no dispute that Little expected Plaintiff to accept his authority concerning hiring and termination of contracts – that was the point of his Corrective Directives memo. Under Garcetti, however, the issue is whether Plaintiff disputed Little's authority <u>in her capacity as Administrator</u>. If this Court finds she did, she has no claim, even if reasonable people might find her judgment to be better than Little's.

Plaintiff cannot reasonably dispute, as a factual matter, that she: (a) sought to create an in-house recreation coordinator position and terminate the CCI contract; (b) wrote memos to Little and the Board; (c) appeared at the Board meeting; and (d) spoke to the newspaper, <u>in her capacity as Administrator</u>. She signed those memos "Administrator" and presented herself as the Administrator of PCSR, not a private citizen. Even afterwards in her deposition, Plaintiff defended her actions by emphasizing her obligations as the Administrator and the "person in charge" on the PSCR operating license.

Plaintiff's memos confirm she spoke as Administrator. In her April 26, 2000 memo to Mr. Little, Milde justified her speech by stating: "It is my responsibility both legally

3

and ethically as administrator of this licensed home to safeguard the rights and well being of the residents who entrust themselves to our care." (Milde Dep. Ex. 20). Her June 6, 2000 response to Mr. Little's Written Disciplinary Reprimand expressly characterized her actions as being pursuant to her job, stating, "**[y]ou appear to interpret my carrying out my responsibilities, as delineated in my job description, ... as insubordination and lack of communication. I believe I have carried out my job responsibilities within my job description conscientiously and competently.**" (Milde Dep. Ex. 35) (emphasis in original). Her June 26, 2000 memorandum to the Board explained her actions at the May 22nd Board meeting, stating:

- "I brought up a matter of vital concern for PCSR, which is my responsibility as the Administrator."
- "I had a right and a responsibility to see that the matter would be heard and addressed, with the consideration of **all the relevant facts**. That is why I had to raise it at the **open** Board meeting of the HATG commissioners."

(Milde Dep. Ex. 45) (emphasis in original).

In that same memo, Milde also refused to apologize for her actions at the May 22nd Board meeting stating she was, "**performing [her] responsibilities as the administrator of PCSR to the best of [her] abilities and knowledge, as charged to [her] under [the] license.**" (Milde Dep. Ex. 45) (emphasis in original).

While Plaintiff claims there are genuine issues of material fact relevant to this Court's determination of the narrow issue presented by Garcetti, she fails to address the above evidence or any of the other admissions Defendants cited in their moving papers. In reality, the parties' positions are separated entirely by argument – namely, Plaintiff's unsupported legal claim that her status was suddenly "transformed" by Defendants' rejection of her grievance

concerning the hiring of an in-house recreation coordinator. The Court can and should asses this argument without the need of a trial.

### B. This Court's Prior Ruling Did Not Address The Issue Raised By Garcetti.

Plaintiff insists the law of this case controls Defendants' renewed motion for summary judgment: "This Court's initial decision has already satisfied the first prong of the Garcetti analysis. The Court should deny Defendants' Motion based on the current law of this case." (Pl.'s Mem. Opp. at 5). The Court's earlier ruling speaks for itself. The ruling did not address whether Plaintiff spoke as a citizen. Instead, in relevant part, it analyzed whether Plaintiff's speech raised a matter of public concern, whether there were factual disputes concerning the disruption caused by Plaintiff's speech, and whether there were triable issues regarding causation.

### C. The Cases Plaintiff Cites Do Not Deal With Factual Circumstances Similar to This Case.

In her opposition papers, Plaintiff makes no attempt to distinguish the circuit and district court decisions Defendants cite in their principal brief. Those cases analyzed the new standard established by Garcetti under factual scenarios strikingly similar to this case. Significantly, the handful of cases Plaintiff does cite are clearly distinguishable from the instant matter because they lack the ample evidence and admissions of Plaintiff's responsibilities that the Court has before it here. Moreover, of the five post-Garcetti cases cited by Plaintiff in her opposition, three dealt with statements and/or comments made by plaintiffs in their capacity as *union representatives* - - not in their capacity as employees - - and cannot seriously be entertained as analogous to this case.

For example, in Fuerst v. Clarke, 2006 U.S. App. LEXIS 18792 (7th Cir. July 27, 2006), the plaintiff, a deputy sheriff and president of his union, claimed he was passed over for a

5

promotion for publicly criticizing the sheriff's political proposal to hire a civilian to perform the duties of a public relations officer - - a position traditionally performed by a union member. Id. at * 1. The plaintiff also had campaigned against the sheriff in a public election. Id. at *2. Finding the plaintiff was "*wearing his union president's hat*" at the time of the criticisms and the plaintiff's public criticism was "prima facie protected by the First Amendment as a contribution to political debate," the court held the Garcetti decision inapposite "[b]ecause [plaintiff's] comments that precipitated the adverse action taken against him *were made in his capacity as a union representative* rather than in the course of his employment as a deputy sheriff." Id. at ** 10 and 12 (emphasis added).

Similarly, in Smolicz v. Borough/Town of Naugatuck, 2006 U.S. Dist. LEXIS 50596 (D. Conn. July 25, 2006), the plaintiff-police officer was a union shop steward who published a newsletter on behalf of his union. Id. at *2. In the union newsletters, the plaintiff made claims of corruption throughout the police department. Id. at *8. The plaintiff also sent pornographic pictures to various public officials and their spouses." Id. at *4. While the Court found "the vulgarity inherent to these newsletters objectionable," it denied the defendants' motion for summary judgment (with respect to the union newsletters - - not the photographs) because the plaintiff was acting in his capacity as a union representative when publishing the newsletters. Id. at *9.

Likewise, in Day v. Borough of Carlisle, 2006 U.S. Dist. LEXIS 46434 (M.D. Pa. July 10, 2006), the plaintiff was a police corporal, but also a union steward and treasurer. The plaintiff claimed he was terminated "because of his union activities, in violation of his right to free speech and freedom of association." Id. at *2. The court explained that it could not find, as a matter of law that the plaintiff's statements regarding alleged misconduct of other officers were

made pursuant to his duties as a police officer because the statements "were made by plaintiff in order to secure financial assistance from fellow union members in defending a disciplinary action." Id. at *18-19. The court granted the defendants' motion for summary judgment, however, finding the police department's need to enforce compliance with police regulations outweighed the plaintiff's interest in discussing these matters openly with fellow officers. Id. *24.

The other two cases cited by Plaintiff, Batt v. City of Oakland Police Dept., 2006 U.S. Dist. LEXIS 47889 (N.D. Ca. July 13, 2006), and Hare v. Zitek, 2006 WL 2088427 (N.D. Ill. July 24, 2006) fail to advance Plaintiff's claim. In Batt, the plaintiff, a police officer trainee, claimed he was constructively discharged because he would not participate in the acts of police brutality he witnessed by his supervising officers. Id. at *2. After tendering his resignation, the plaintiff discussed these issues with the office of internal affairs. Id. at *4. The plaintiff identified "a number of pieces of evidence in support of his contentions that he feared retaliation in the event of speaking out, and that the [police department] had a general culture of punishing officers who reported misconduct." Id. at *4. In response, the police department claimed that the plaintiff had a duty to report misconduct. Id. at *9. The court found that "a fact issue remain[ed] as to whether the plaintiff's speech was protected under the First Amendment" because "the central premise of plaintiff's case is that notwithstanding any official policy of the [police department], the culture of the [police department] and the express commands of his direct supervisor established that the plaintiff had a duty not to report misconduct." Id. at *12. In contrast, there are no questions of fact in this case. As noted above, Defendants' motion is based entirely on Plaintiff's admissions.

In Hare v. Zitek, 2006 WL 2088427 (N.D. Ill. July 24, 2006), the plaintiff police

7

officer claimed retaliation for uncovering and exposing corruption within the police department. Id. at *1. The defendants argued that because the plaintiff "was working so closely with the State's Attorney's Office . . . he 'spoke' as an employee of that office and in furtherance of the job he was 'hired' to do." Id. at *3. The court found the defendant's argument "absurd" because there was "simply no evidence that [the plaintiff] was an employee of the State's Attorney's Office, and the recent cases cannot be read to allow the inference that an employment relationship is created by a few emails." Id.

In complete contrast to above cases, Plaintiff was never "wearing a union hat" or any other "hat" other than as Administrator of PCSR when writing her numerous memos and/or speaking about the in-house recreation coordinator position. Plaintiff admittedly was (a) speaking pursuant to her "*responsibility both legally and ethically as administrator of this licensed home* to safeguard the rights and well being of the residents," (Milde Dep. Ex. 20); (b) "*carrying out [her] responsibilities,* as delineated in [her] job description;" (Milde Dep. Ex. 35); (c) "[bringing] up a matter of vital concern for PCSR, *which is [her] responsibility as the administrator*; (Milde Dep. Ex. 45); and (d) refusing to apologize "**for performing [her] responsibilities as the administrator of PCSR to the best of [her] abilities and knowledge, as charged to [her] under [the] license.**" (Milde Dep. Ex. 45) (emphasis in original).

Finally, none of the cases Plaintiff cites suggest an employee's speech is suddenly "transformed" into legally protected status by virtue of their superiors' disagreement with their position. Following Plaintiff's logic, had Little or the Board changed its mind and granted Plaintiff's request to hire an in-house recreation coordinator, the status of her speech would suddenly be "transformed" back to being legally unprotected. Moreover, if Plaintiff's argument were accepted, any speech by her or other public officials concerning budgets, employee

8

performance evaluations, staffing, construction, or other operational issues would be legally protected if their views were rejected by their superiors. Plaintiff's interpretation of Garcetti is illogical and unworkable.

Based on the undisputed evidence and analogous case law, Plaintiff *never* spoke as a "citizen" when she advocated for the hiring of an in-house coordinator. As such, her First Amendment claim fails as a matter of law.

### CONCLUSION

The overwhelming undisputed evidence and case law establish that Milde did not speak as a "citizen" for First Amendment protection. Milde's remaining First Amendment claim should be dismissed as a matter of law.

Respectfully submitted,

DEFENDANTS HOUSING AUTHORITY OF THE TOWN OF GREENWICH; THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH BOARD OF COMMISSIONERS; AND BENJAMIN LITTLE, CEO

By: _____
Francis P. Alvarez (CT 10350)
alvarezf@jacksonlewis.com

Susanne Kantor (CT 19556)
kantors@jacksonlewis.com

JACKSON LEWIS LLP
One North Broadway
White Plains, NY 10601
Phone: (914) 328-0404
Fax: (914) 328-1882
Their Attorneys

9

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URSULA MILDE, | : |
| Plaintiff, | : CIV NO. 3:00CV2423 (AVC) |
| v. | : |
| THE TOWN OF GREENWICH; HOUSING AUTHORITY OF THE TOWN OF GREENWICH; THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH BOARD OF COMMISSIONERS; and BENJAMIN LITTLE, CEO, | : |
| Defendants. | : |

### CERTIFICATE OF SERVICE

A copy of the foregoing Reply Memorandum of Law in Support of Defendants' Renewed Motion for Summary Judgment was served via Federal Express, this 30th day of August 2006, on counsel for Plaintiff at the address listed below:

Mark P. Carey, Esq.
Carey & Associates P.C.
71 Old Post Rd.
Southport, CT 06490

Susanne Kantor