UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URSULA MILDE : | |
|   Plaintiff, : | |
| : | |
| v. : | |
| : | |
| THE HOUSING AUTHORITY OF THE : | Civil No. 3:00CV2423(AVC) |
| TOWN OF GREENWICH; THE : | |
| HOUSING AUTHORITY OF THE : | |
| TOWN OF GREENWICH BOARD OF : | |
| COMMISSIONERS; and BENJAMIN : | |
| LITTLE, CEO, : | |
|   Defendants. : | |

**RULING ON THE DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**

This is an action for damages and injunctive relief brought pursuant to 42 U.S.C. § 1983.[1]  The plaintiff, Ursula Milde, alleges that her former employer, the Housing Authority of the Town of Greenwich ("Housing Authority"), the Board of Directors of the Housing Authority ("Board"), and her former supervisor, Housing Authority CEO Benjamin Little, subjected her to adverse employment actions in retaliation for her exercise of her First Amendment rights.

The defendants previously filed a motion for summary

---

[1] Title 42 of the United States Code, section 1983, states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

judgment, which this court granted in part and denied in part.[2] Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC), 2005 WL 1949781 at *1 (D. Conn. Aug. 12, 2005). The defendants have now filed a second summary judgment motion, arguing that, in light of the United States Supreme Court's recent decision in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), there are no genuine issues of material fact in dispute, and that they are entitled to judgment as a matter of law. The issue presented is whether there is a genuine issue of material fact as to whether Milde was acting only pursuant to her official duties when she made the statements that she now argues are protected by the First Amendment.

For the reasons set forth herein, the court concludes that there are some genuine issues of material fact, and accordingly, the renewed motion for summary judgment (document no. 161) is GRANTED in part and DENIED in part.

**FACTS:**

Examination of the complaint, pleadings, Local Rule 56(a) statements, and exhibits accompanying the motion for summary

---

[2] Specifically, the court previously granted the defendant's motion for summary judgment with respect to Milde's allegations that the defendants unlawfully discriminated against her on the basis of her sex and age. Milde, 2005 WL 1949781 at * 12-15. Further, the court granted the defendant's motion with respect to Milde's allegation that the defendant's media relations policies amounted to an unconstitutional prior restraint on her First Amendment rights. Id. at *20. The court denied the defendant's motion, however, with respect to Milde's allegation that the defendant subjected her to adverse employment actions in response to her exercise of her First Amendment rights. Id. at 19.

judgment, and the responses thereto, discloses the following undisputed, material facts.

The Housing Authority, Board, and Little, the defendants in this case, oversee the administration of public housing in the town of Greenwich. Such housing includes the Parsonage Cottage for Senior Residents ("Parsonage"), a residential facility for the elderly, licensed by the state of Connecticut.

On September 30, 1996, the Authority hired the plaintiff, Milde, as the administrator of the Parsonage. As administrator, Milde supervised the day-to-day operations of the Parsonage. Milde was also responsible for firing and hiring employees for existing positions at the Parsonage.

In 2000, a dispute arose between Milde and her supervisor, Little, regarding the necessity of hiring an in-house recreation director for the Parsonage, and discontinuing an arrangement in which recreation services were provided by an independent company, Community Centers Incorporated ("CCI"). In February, 2000, Milde raised the idea of hiring an in-house director with Little at a staff meeting. After Milde posted a notice that the Parsonage would be hiring a recreation director, and selected a candidate, Little and Milde exchanged a series of memoranda regarding this position. Little questioned need for an in-house recreation director, and stated that the Parsonage would not hire anyone until the personnel committee of the Board approved the

3

creation of the position, and Little had the opportunity to personally interview candidates. Milde argued that a recreation director was necessary, and that it was her responsibility, and within her authority to fill the position with a candidate of her choosing.

On April 24, 2000, when Milde sought the opportunity to speak at a meeting of the Board's personnel committee regarding this issue, Little telephoned and informed her that she would not be welcome at the meeting. In response, Milde filed a grievance with the Board, claiming that she was denied the opportunity to explain the necessity for hiring a recreation director, and requesting a formal hearing before the Board. The Board scheduled a hearing for May 18, 2000, but later cancelled it.

On May 22, 2000, Milde attended a public meeting of the Board in order to express her views regarding the importance of hiring an in-house recreation coordinator. She admits, however, that she attended all open Board meetings because state licensing requirements mandated that the Parsonage administrator be present. When she arrived at the meeting, Milde received a letter from one Barry Nova, the Board's Vice-Chair, stating that her grievance had been denied, and that she was not going to have a hearing.

During the meeting, Milde stood up and began addressing the Board about these issues. The Board's Chair, one Sue

McClenachan, told Milde that she was out of order pursuant to rules governing the hearing, because nobody had recognized her, and she was not on the agenda.  McClenachan then told Milde that she could address the Board privately in executive session, after the public meeting concluded.  In the executive session, Milde expressed her concern that Little and the Board were not honoring her right to be heard by the Board, and were treating her unprofessionally.

On May 23 and May 26, 2000, the Greenwich Time, a local newspaper, published articles concerning the May 22 Board meeting and the recreation services at the Parsonage.  The May 23 article, entitled "Official decries lack of recreation planner", identified Milde as the Parsonage Cottage Administrator.  Further, the article directly quoted Milde: "If you don't provide [recreation services], that's a form of abuse. . . .  I don't know what [the Board's] hang-up is. . . .  We need a recreation person at Parsonage and that's all there is to it."  Additionally, the May 26 article again quoted Milde: "My concern is that some of these people can't get out. . . .  What we really should do here is have an individualized program for each person."

At the time of this dispute the Housing Authority maintained a "Media/Public Relations Policy."  The objective of the policy was to "enhance the image and public perception" of the Housing

Authority, its programs and residents, and as such "before any contact is made with the media on information, data and/or. . . policies that affect the above strategies, there must be communication with Commissioners and appropriate Staff."

On June 2, 2000, Little sent Milde a performance review, and two memoranda entitled "Corrective Directives" and "Disciplinary Reprimand and 90 Day Opportunity to Improve." In her review, Little gave Milde an overall rating of 3.81 out of 7. In the "Corrective Directives", he criticized her for her failure to keep him apprised of her activities, her inability to recognize that he was her supervisor, and her reluctance to change. Additionally, Little instructed her that all press releases were to be reviewed by him, and released by the Housing Authority.

Further, in the "Disciplinary Reprimand", Little rebuked Milde for: 1) deceptive actions; 2) acts of insubordination; 3) failure to follow the policies and procedures of the Housing Authority; 4) failure to communicate issues and problems relating to the Parsonage in a timely manner to the CEO; 5) failure to follow the recognized and mandated hiring procedures of the Housing Authority; 6) "short-circuiting" the administrative chain of authority; and 7) improper influence of the hiring procedures. He supported this rebuke by citing specific incidents of misconduct, including an assertion that Milde's statements to the Greenwich Time were false.

On June 6, 2000, Milde responded with a memorandum in which she sought to justify her actions, stating that Little "appear[ed] to interpret my carrying out my responsibilities, as delineated in my job description,. . . as insubordination and lack of communication.  I believe that I have carried out my responsibilities within my job description. . . ."

On June 7, 2000, and again on June 21, 2000, Little sent Milde memoranda in which he directed her to apologize to the Board in writing for her conduct at the May 22 meeting.  On June 26, 2000, in a memorandum to Little and individual Board members, Milde refused to apologize, explaining that she did not "engage in any behavior which warrants an apology. . . when I brought up a matter of vital concern for the [Parsonage], which is my responsibility as administrator."  She went on to note that "[i]t is alarming that the CEO has attempted to. . . curtail the free flow of information and communication between the [Housing Authority] and myself as an employee of the organization. . . .".

In the months that followed, new disputes arose between Milde and Little.  Specifically, they had a disagreement as to whether Milde could permit Little to see the contract of a Parsonage employee.  Further, there was an incident in which Little objected to Milde notifying the state of Connecticut of her concerns regarding the recreation services that CCI was providing to the Parsonage.  Additionally, Milde accused Little

of being "unprofessional" by scheduling a meeting without first consulting her, and only providing her with five days notice.

On July 25, 2000, Milde filed a charge of age and sex discrimination against the defendants with the United States Equal Employment Opportunity Commission ("EEOC"). On July 26, 2000, Milde's attorney notified Little that Milde had retained counsel and filed a complaint with the EEOC.

On August 21, 2000, Little sent Milde a letter in which he stated that she had failed to comply with the May 30 "Corrective Directives" memoranda, and further that additional performance issues had arisen. As such, he notified her that she was to attend a disciplinary hearing, at which she could "answer the charges brought against her." Further, he stated that, as a result of the hearing, he could take "disciplinary action, up to and including termination. . . ."

On September 6, 2000, Little held the hearing, and on September 8, 2000, he notified Milde that she was terminated, effective at the end of that business day. He stated that he took this action due to Milde's "inadequate and poor work performance and failure to comply with the policies, procedures, and regulations" of the Housing Authority.

## **STANDARD:**

Reconsideration of a previous ruling is appropriate where there has been an intervening change in controlling law, new

evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice. United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994).  Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991).  A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims... [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

## DISCUSSION:

The United States Supreme Court's recently held that "when

public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006).  In light of this holding, the defendants bring this renewed motion and argue that they are entitled to judgment as a matter of law with respect to Milde's First Amendment cause of action brought pursuant to 42 U.S.C. § 1983.  Specifically, they maintain that because this court did not have the benefit of the Supreme Court's Garcetti decision and subsequent case law when considering their previous motion for summary judgement, the court "never addressed whether Milde actually spoke as a 'citizen' for First Amendment protection," and that the "overwhelming undisputed evidence clearly established that she did not."[3]

In response, Milde contends that the defendants are not entitled to summary judgment as a matter of law.  Specifically, "Milde asserts that her speech was not made pursuant to an expected job duty, but were actions of a citizen protesting about a matter of public concern. . . ."

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."

---

[3] Defendants also argue that "[r]enewing a previously denied motion for summary judgment is proper where new controlling case law establishes that plaintiffs cannot, as a matter of law, sustain their claims."  The plaintiff does not contest this argument.

Garcetti v. Ceballos, 126 S. Ct. 1951, 1958 (2006). Nevertheless, the United States Supreme Court "has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Id. at 1957; see, e.g., Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); Connick v. Myers, 461 U.S. 138, 147 (1983); Rankin v. McPherson, 483 U.S. 378, 384 (1987); United States v. National Treasury Emples. Union, 513 U.S. 454, 466 (1995).

The Supreme Court recently held, however, that where a deputy district attorney wrote memoranda to his supervisors in order to challenge the legitimacy of a search warrant and subsequently endured retaliatory employment actions, the deputy district attorney's acts of speech were not protected by the First Amendment, because drafting memos was what he was employed to do. Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006). Specifically, the Court held that where public employees assert that their government employer has denied them their constitutionally protected right to speak, courts must make two inquiries. Id. at 1958. "The first requires determining whether the employee spoke as a citizen on a matter of public concern." Id. "If the answer is no, the employee has no First Amendment

11

cause of action. . . ." <u>Garcetti v. Ceballos</u>, 126 S. Ct. 1951, 1958 (2006).

If the employee did speak as a citizen on a matter of public concern, the court must then make a second inquiry and determine whether the government employer "had an adequate justification for treating the employee differently from any other member of the general public." <u>Id.</u> (citing <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568 (1968) ("The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.")).

Ultimately, the Supreme Court concluded under the first inquiry that because the deputy district attorney was acting not as a citizen, but rather pursuant to his official duties by writing the memoranda in question, he was not shielded by the First Amendment. <u>Garcetti v. Ceballos</u>, 126 S. Ct. 1951, 1958 (2006). In so holding, the Court specifically disregarded the deputy district attorney's subjective state of mind, noting "[i]t is immaterial whether he experienced some personal gratification from writing the memo. . . ." <u>Id.</u> at 1960. To the contrary, the Court characterized this first inquiry as "a practical one," and emphasized the importance of determining "the duties an employee actually is expected to perform. . . ." <u>Id.</u> at 1961-62; <u>see</u> <u>Batt</u>

12

v. City of Oakland, No. C 02-04975 MHP, 2006 WL 1980401 at *4 (N.D. Cal. July 12, 2006) (Citing Garcetti v. Ceballos, 126 S. Ct. 1951, 1961-62 (2006), and holding "a court must determine whether the employee is 'actually expected to perform' the potentially protected act".)

In the present case, this court has previously held that Milde spoke on matters of public concern. Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC), 2005 WL 1949781 at *17 (D. Conn. Aug. 12, 2005). Further, this court has held that there is evidence from which a jury could find that Milde's speech, i.e., her speech at the Board meeting and her comments to the Greenwich Times, was a substantial or motivating factor behind her discharge. Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC), 2005 WL 1949781 at *18 (D. Conn. Aug. 12, 2005). Likewise, this court has held that there are unresolved factual disputes that foreclose a ruling as a matter of law that the defendants were justified in firing Milde, in light of both Milde's interest in commenting upon matters of public concern, and the defendants' interest in promoting the efficiency of the public services they provide. Id. at *19. As the defendants rightly note, however, this court has yet to squarely address whether Milde was speaking as a citizen, or rather was speaking pursuant to her official

13

duties as a government employee.[4]

Viewing the record in a light most favorable to the non-moving party, the court concludes that there are no genuine issues of material fact in dispute as to whether Milde spoke exclusively pursuant to her official duties at the May 22 Board meeting, or previous to that meeting, in any instance that bears on this case.  Milde has admitted that she attended the May 22 meeting for the same reason that she attended all open Board meetings, namely, because state licensing requirements mandated that the Parsonage administrator be present, presumably to address the Board when necessary.  At the conclusion of the May 22 meeting, unlike the generally citizenry, she spoke before the Board in its executive session, which was not open to the public.

After the meeting, when Little rebuked Milde for, among other things, her conduct at the meeting, she replied that he "appear[ed] to interpret my carrying out my responsibilities, as delineated in my job description,. . . as insubordination and lack of communication.  I believe that I have carried out my

---

[4] Milde asserts that the Court also resolved in her favor the question of whether Milde was speaking as a citizen, when it held that "[t]hese incidents involved issues of public concern to the community and as a matter of law are not merely internal personnel matters." Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC), 2005 WL 1949781 at *17 (D. Conn. Aug. 12, 2005).  Milde argues that if these incidents were not personnel matters, then when Milde spoke about them she could not have been acting pursuant to her job duties.  The court cannot agree, however.  In its previous ruling, the court did not address this issue, and cannot agree with the supposition that when one speaks on matters of public concern that one necessarily speaks as a citizen, and not pursuant to one's official duties.

14

responsibilities within my job description. . . ."

Further, when Little ordered Milde to apologize for her conduct at the May 22 meeting, she refused, explaining that she did not "engage in any behavior which warrants an apology. . . when I brought up a matter of vital concern for the [Parsonage], which is my responsibility as administrator." She went on to note that "[i]t is alarming that the CEO has attempted to. . . curtail the free flow of information and communication between the [Housing Authority] and myself as an employee of the organization. . . ."

Milde contends that because the defendants disciplined her for conduct at the May 22 meeting, she could not have been acting pursuant to her official duties. This argument simply does not take into account the reality that one can perform one's official duties inadequately or in an insubordinate manner, and still be subject to lawful disciplinary action. Applying Milde's logic, the First Amendment would be implicated in every instance in which a government employee spoke and was disciplined. This argument can not be reconciled with the Supreme Court's holding that "when public employees make statements pursuant to their official duties. . . the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006).

Milde further contends that the First Amendment protects her

15

conduct, beginning February 1, 2000, "when she first began to internally discuss" the recreation services at the Parsonage, until the May 22 Board meeting, because during this time period "she was not performing expected job duties."  Although it is not clear, Milde appears to suggest that she was acting as a citizen when she raised this issue for the first time at a staff meeting and later in the exchange of memoranda with Little.  In support of this notion, Milde again simply points to the evidence that the defendants disciplined her for some of her actions during this period, and concludes that she therefore must have been acting as a citizen, and not pursuant to her official duties.  For the reasons asserted above, the court rejects this argument.  Further, the evidence to the contrary overwhelmingly establishes that, as administrator of the Parsonage, it was Milde's duty to attend staff meetings and communicate her concerns regarding the Parsonage to Little, her supervisor.

To the contrary, however, with respect to the Greenwich Time interview and subsequent articles, the court concludes that there are genuine issues of material fact as to whether Milde was acting pursuant to her official duties when she spoke to the local media.  Further, if Milde was not speaking pursuant to those duties, the court is still precluded from applying the Pickering test, Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968), in order to determine whether the First Amendment

protects Milde's speech, because there remain genuine issues of material fact as to whether Milde's comments to the Greenwich Time and the resultant articles caused disruption in the workplace. Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC), 2005 WL 1949781 at *19 (D. Conn. Aug. 12, 2005).

In sum, the court concludes that summary judgment for the defendants is warranted with respect to all of Milde's causes of action save that brought pursuant to 42 U.S.C. § 1983, specifically alleging that the defendants subjected Milde to adverse employment actions in retaliation for speaking to the media after the May 22 Board meeting in violation of the First Amendment.[5]

### CONCLUSION:

For the foregoing reasons, the motion for summary judgment (document no. 161) is GRANTED in part, and DENIED in part.

It is so ordered this 5th day of September, 2006 at Hartford, Connecticut.

                                                _____/s/_____
                                                Alfred V. Covello
                                                United States District Judge

---

[5] With respect to Milde's remaining arguments, the court has considered them, and concludes that they are without merit.