UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **URSULA MILDE**, : | |
| : | **CIV NO. 3:00CV2423 (AVC)** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **THE TOWN OF GREENWICH;** : | |
| **HOUSING AUTHORITY OF THE** : | |
| **TOWN OF GREENWICH;** : | **September 8, 2006** |
| **THE HOUSING AUTHORITY OF THE** : | |
| **TOWN OF GREENWICH BOARD OF** : | |
| **COMMISSIONERS; and** : | |
| **BENJAMIN LITTLE, CEO,** : | |
| : | |
| **Defendants.** : | |

## JOINT TRIAL MEMORANDUM

1. **TRIAL COUNSEL**

   Mark P. Carey (CT 17828)
   Carey & Associates P.C.
   71 Old Post Road, Suite One
   Southport, CT 06890
   (203) 255-4150 tel.
   (203) 255-0380 fax.
   mcarey@capclaw.com
   Attorney for Plaintiff

   Francis P. Alvarez (CT 10350)
   Susanne Kantor (CT 19556)
   JACKSON LEWIS
   One North Broadway
   White Plains, NY 10601
   (914)-328-0404 tel.
   (914) 328-1882 fax.
   alvarezf@jacksonlewis.com
   kantors@jacksonlewis.com
   Attorneys for Defendant

2.  **JURISDICTION**

Jurisdiction of the Court is invoked under 42 U.S.C. § 1983.

3.  **JURY/NON JURY**:

This case is a jury trial case.

4.  **NATURE OF THE CASE**:

This is a case for alleged deprivation of First Amendment rights pursuant to 42 U.S.C. § 1983.

5.  **STIPULATIONS OF FACT AND LAW**

The Defendant Housing Authority of the Town of Greenwich ("HATG") operates the Parsonage Cottage Senior Residence ("PCSR") in Greenwich, Connecticut. On September 30, 1996, Plaintiff Ursula Milde was hired as the Administrator of the PCSR. Plaintiff Milde was discharged as Administrator PCSR on September 8, 2000. At the time Milde was hired, individual Defendant Benjamin Little held the position of Deputy Director of Defendant HATG. Defendant Little was later promoted to the position of Executive Director..

6.  **PLAINTIFF'S CONTENTIONS**

The plaintiff claims she was retaliated against for exercising her First Amendment right to free speech when the defendants disciplined her on May 30, 2000, and terminated her from employment on September 8, 2000.

In February 2000, plaintiff made a request to Defendants to hire a recreation coordinator because CCI (Community Centers Incorporated) were not properly performing their obligations under contract. Plaintiff wanted to hire a full time in house recreation coordinator to solve the problem.

Plaintiff did not terminate the contract with CCI, the contract had expired by its own terms.

Plaintiff made a good faith attempt to resolve the issue, but Defendant Little escalated the dispute. She filed a grievance with Defendant Little, which was denied. She requested a hearing before the Defendant Board, which was denied.

Plaintiff appeared at an open public meeting of the Defendant Board and was shouted down. She was not permitted to discuss the recreation coordinator issue in public, but only in executive session.

Plaintiff claims the Defendants retaliation resulted from her statements to the Greenwich Times newspaper on May 22 and May 26, 2006, which were not made pursuant to her job duties.

Defendant Little renewed the CCI contract on May 26, 2000.

During all times mentioned in plaintiff's Complaint, the defendants were acting under color of state law, that is, under color of the constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of Connecticut and the Town of Greenwich.

The Defendants cannot demonstrate any factual disruption as a result of plaintiff's protected activities on May 22 and May 26, 2000.

The Defendants through Sue McClenachan has admitted that one of the reasons plaintiff was terminated because she protested about recreation services. Plaintiff contends her protected activity was a substantial motivating factor in her discipline on May 30, 2000, which continued thereafter, and termination on September 8, 2000.

7.  **DEFENDANTS CONTENTIONS**

As Administrator of Parsonage Cottage Senior Residence ("PCSR"), Milde performed her job under the direction of Defendant Benjamin Little. In early 2000, Milde took steps to create a new position at the PCSR -- Recreation Coordinator. Milde did not inform Mr. Little about her plan to create this position until after she posted the position in an area college and identified a candidate whom she intended to hire.

After Milde told Little she wanted to create this position, Little asked Milde for additional information justifying the hire. Only after Mr. Little asked these questions, did he learn Milde had already taken steps to hire a candidate and had changed the education requirements for the position. Little decided it was best not to create this additional position. Instead, Little decided to continue using a vendor to provide recreation services. Milde refused to accept Little's decision. Milde filed a request for a grievance hearing with the Defendant Board of Commissioners. The Board denied Milde's request on May 19, 2000.

On May 22, 2000, Milde attended a public Board of Commissioner's meeting pursuant to her job duties as Administrator. During that meeting, Milde again requested that Little's decision not to hire a Recreation Coordinator be reversed. In an Executive Session, the Board again denied Milde's request.

On May 23rd and May 26th, the Greenwich Time Newspaper published articles reporting statements by Milde concerning the need to hire a full-time Recreation Coordinator.

On May 30, 2000, Little issued Milde a formal, written disciplinary reprimand and a "Corrective Directives" memorandum. Little was specific in his criticisms and

directives. Among other things, Little stated: "You have failed to keep lines of communication open between you and me and therefore I have been unaware of your activities. You have evidenced a willful and intentional position of not recognizing that I am your supervisor." Little gave Milde 90 days to improve, essentially telling her she must follow his directives or face further disciplinary action.

Milde took issue with each of Little's points and suggested their relationship was so damaged they needed a mediator to resolve their problems. Three months later, and following a series of additional documented disputes and a disciplinary hearing at which Milde's counsel appeared, Little decided to terminate Milde's employment.

Milde's "speech" to the Greenwich Time was not legally protected because Milde's "speech" was made in her capacity as the Administrator for PCSR and pursuant to her job responsibilities. Milde was not discharged for her statements to the Greenwich Time in violation of her First Amendment rights. Rather, she was terminated for poor performance in that she refused to recognize Little's authority and failed to follow Little's directives. Finally, Defendants are not liable because Plaintiff would have been discharged regardless of her statements to the Greenwich Time.

8. **LEGAL ISSUES**

   **Plaintiff's Statement of Legal Issues**

   A. Was the plaintiff retaliated against for exercising her First Amendment right to speak on matters of public concern?

   B. Is defendant Little entitled to qualified immunity for his actions in this case?

**Defendants' Statement of Legal Issues**

A.  Whether Plaintiff's speech to the Greenwich Time was legally protected in that she made her comments in her capacity as a citizen rather than in her capacity as the Administrator for PCSR and pursuant to her job responsibilities?

B.  Even if Milde's speech to the Greenwich Time was protected by the First Amendment, whether Milde's speech was a substantial or motivating factor in the decision to terminate her employment?

C.  Even if Milde was terminated for making statements to the Greenwich Time, whether Defendants would have taken the same action against Plaintiff regardless of her statements to the Greenwich Time?

D.  Whether individual Defendant Benjamin Little is entitled to qualified immunity?

9. **VOIR DIRE QUESTIONS**

Both parties filed their Proposed Voir Dire Questions on September 6, 2006.

10. **LIST OF WITNESSES**

**For the Plaintiff**:

1.  **Ursula Milde**. The plaintiff will testify regarding her education and prior work experience, history of service as the Administrator of the Parsonage Cottage, her work record, her reputation, the factual circumstances regarding the recreation services issue at the Parsonage Cottage which led to the dispute which is the subject of this action, her interactions with the

    Defendant Little and the Defendants, the adverse actions taken against her, and her economic and non-economic damages.

2. **Benjamin Little**. The defendant will be called to testify regarding his duties and authority as the Chief Executive Officer of the Town of Greenwich Housing Authority, his involvement in the events complained of, his disciplinary and adverse actions against the plaintiff, his defense of qualified immunity and the Defendants defense of same action.

3. **Sue McClenachan**. The former chairperson of the Defendant Board of Commissioners will be called to testify regarding the powers and duties of her position as Chairperson, her supervision of Defendant Little, her role in the operations of the Defendant Housing Authority, her role and involvement in the events complained of, her disciplinary and adverse actions against the plaintiff, her defense based on same action.

4. **Nancy Wisecup**. Will be called to testify regarding her personal knowledge of the events complained of, what she witnessed at the May 22, 2000 open board meeting of the Board of Commissioners, what she witnessed regarding the plaintiff's comments to the Greenwich Times on May 22, 2000, what she witnessed with regard to recreation services provided at the Parsonage Cottage during all relevant time periods, what role and employment she performed at the Parsonage Cottage.

5. **Russell Kemp**. Will be called to testify regarding his personal knowledge of the events complained of, his knowledge of Defendants business

        operations, including but not limited policies and procedures with regard to financial expenditures and budgets.

The plaintiff reserves the right to call any of the defendants witnesses.

**<u>For the Defendants</u>**:

1.    **Benjamin Little.** Defendant Little is the former Deputy Director and Chief Executive Officer of the HATG. He will testify about his background and experience, the responsibilities he held while working for the HATG, his discussions and communications with Plaintiff and the Board of Commissioners concerning the factual circumstances addressed by Plaintiff's complaint allegations, including the legitimate and non-discriminatory reasons for employment actions against Plaintiff.

2.    **Sue McClenachan.** Ms. McClenachan is the former Chairperson of the Defendant Board of Commissioners. She will testify regarding her involvement and role on the Board, the role of the Board concerning the operations of the HATG, the events of the May 22, 2000 Board meeting, and decisions made by the Board regarding Plaintiff.

3.    **Barbara Nolan.** Ms. Nolan runs Community Centers, Inc., the agency that provides recreation care services to PSCR. She will testify concerning issues raised during Plaintiff's case in chief including the recreational services provided to PSCR, her discussions with Plaintiff and Defendant Little about such services.

4. **Louis Pittoco.** Mr. Pittoco is an attorney to the HATG who was present at the August 2000 disciplinary meeting with Plaintiff and her counsel. Mr. Pittoco will testify as to the events of that meeting.

5. **Agata Wilinski.** Ms. Wilinski is the individual who Plaintiff interviewed and preliminarily offered a position as in-house recreation care coordinator before speaking with or obtaining approval from Mr. Little. She will testify about her discussions with Plaintiff about the in-house recreation care coordinator position.

6. **Penny Lore.** Ms. Lore is the Administrator of Parsonage Cottage Senior Residence since April 2001. She will testify concerning issues raised during Plaintiff's case in chief including the operations of PCSR, the recreation services provided, her dealings with Mr. Little, and the policies and procedures governing the relationship between PCSR and the defendants.

11. **EXHIBITS**

Both parties will file separate Exhibit lists on this date. Prior to trial, both parties will create joint exhibits and stipulate to their admission. The parties will prepare a joint exhibit book for the court and jury. To the extent the parties do not agree to the admissibility of certain exhibits, each party will prepare supplemental exhibit lists.

12. **DEPOSITION TESTIMONY**

None:

13. **PROPOSED FOR JURY INSTRUCTIONS**

The plaintiff's Proposed Jury Instructions are being filed separately with this Memorandum. Plaintiff's proposed verdict form is attached hereto.

Defendants' proposed jury instructions will be filed as a separate document. Defendants reserve their rights to amend and/or modify their proposed instructions and submit a proposed special verdict sheet and/or proposed jury interrogatories based on the evidence adduced at trial.

Plaintiff objects to Defendants reservation to submit a proposed verdict sheet prior to the start of trial.

14. **ANTICIPATED EVIDENTIARY PROBLEMS**

**Plaintiffs:**

In order to demonstrate Plaintiff's damages, she will introduce documents containing financial income information. In each document, plaintiff's social security number will removed for privacy reasons. Any other personal/confidential information will be removed.

Plaintiff will introduce Defendant Little's employment contracts and severance agreements. The employment contracts are relevant to his stated job duties and authority. The severance agreement is relevant to Defendant Little's veracity. Both sets of documents are not prejudicial to Defendants. See Fed.R.Evid. 401, 402, 403. The severance agreement is admissible because it was not an official compromise involving a real and present legal dispute. Defendant Little admitted in deposition the payment was an award of service and for retirement, not as consideration for release of any legal claims. See Fed.R.Evid. 408.

Plaintiff objects to Defendants introduction of the May 14, 2000 report prepared by Dee Sacente. Mr. Sacente is deceased and unavailable. His report is hearsay and should be excluded. See Fed.R.Evid. 801. The report cannot be introduced into evidence and nor can Ben Little testify about what Mr. Sacente stated to him verbally or in his written report. Such report is irrelevant, unfairly prejudicial to Plaintiff. See Fed.R.Evid. 402, 402 and 403.

Plaintiff reserves her right to offer objections to documents based on a review of Defendants proposed exhibits.

**Defendants:**

Defendants anticipate Plaintiff may seek to proffer evidence concerning Little's or other individual's religious beliefs and their alleged impact on Little's decisions as Chief Executive Officer of the Housing Authority. Such evidence would be irrelevant or, if relevant, unfairly prejudicial to Defendants. See Fed. R. Evid. 401, 402, and 403.

The Court ruled during discovery that the May 14, 2000 report prepared by Dee Saccente was inadmissible unless Plaintiff was given an opportunity to depose Mr. Saccente. Mr. Saccente was unavailable to be deposed due to poor health and defense counsel has been informed that he is now deceased. Given the Court's ruling, Defendants seek to clarify that Ben Little is still free to testify about his understanding of Mr. Saccente's report and its impact on his decisions concerning Plaintiff.

Defendants reserve their rights to offer objections to documents based on a review of Plaintiff's proposed exhibits, including but not limited to Little's employment contracts and severance agreement (See Plaintiff's Anticipated Evidentiary Problems).

15.    (Not Applicable)

16. **TRIAL TIME**.

    Four days, September 12, through September 15, 2006.

17. **FURTHER PROCEEDINGS**

    None

18. **ELECTION FOR TRIAL BY MAGISTRATE**

    Not applicable.

        **PLAINTIFF,**
        **URSULA MILDE**

        By:/S/ Mark P. Carey
        Mark P. Carey (CT17828)
        Carey & Associates, P.C.
        71 Old Post Road, Suite One
        Southport, CT 06890
        (203) 255-4150 tel.
        (203) 255-0380 fax
        Mcarey@capclaw.com
        Her Attorney

        **DEFENDANTS,**
        **DEFENDANT HOUSING AUTHORITY OF**
        **THE TOWN OF GREENWICH; THE**
        **HOUSING AUTHORITY OF THE TOWN OF**
        **GREENWICH BOARD OF**
        **COMMISSIONERS; AND BENJAMIN**
        **LITTLE, CEO**

        By: /S/ Francis P. Alvarez
        Francis P. Alvarez (CT 10350)
        alvarezf@jacksonlewis.com
        Susanne Kantor (CT 19556)
        kantors@jacksonlewis.com
        JACKSON LEWIS LLP
        One North Broadway
        White Plains, NY 10601
        Phone: (914) 514-6149
        Fax: (914) 328-1882
        Their Attorneys

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **URSULA MILDE,** | : | |
| **Plaintiff,** | : | |
| v. | | CIV.NO. 3:00CV2423(AVC) |
| | : | |
| **THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH;** | : | |
| **THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH BOARD OF COMISSIONERS; BENJAMIN LITTLE, CEO.** | : | SEPTEMBER 8, 2006 |
| **Defendants.** | : | |

**PLAINTIFF'S PROPOSED VERDICT FORM**

**A.    LIABILITY**

1.    Do you find that one or more of the plaintiff's First Amendment-protected statements were a substantial motivating factor in the defendants decision to discipline the plaintiff?

**Answer**:    Yes_____    No_____

2.    Do you find that one or more of the plaintiff's First Amendment-protected statements were a substantial motivating factor in the defendants decision to terminate the plaintiff?

**Answer:**    Yes_____    No_____

13

If you answered "yes" to either or both Question 1.A and/or A.2, proceed to Section B below (damages).

**B.    COMPENSATORY DAMAGES**

    1.    **Economic Damages**.

        What amount of economic damages do you award to the plaintiff? $_____.

    2.    **Non-Economic Damages**.

        What amount of non-economic damages do you award the plaintiff for such injuries as humiliation, embarrassment, harm to her reputation, inconvenience, annoyance and emotional distress?

        $_____.

**C.    PUNITIVE DAMAGES**

    1.    Do you find, by a preponderance of the evidence, that the defendants acted either willfully, intentionally **OR** in reckless disregard of the plaintiff's civil rights?

**Answer:**    Yes_____    No_____

    2.    If your answer to question C1 above is "Yes," do you assess punitive damages?

**Answer:**    Yes_____    No_____

    3.    If you answered "yes" to question C2, what amount do you find is necessary, and thus assess, in order to punish the misconduct and/or deter the defendants

and others similarly situated from engaging in such conduct in the future?

$\$$_____.

_____

Foreperson

Dated at Hartford, Connecticut this \_\_\_\_\_ day of September, 2006.

**PLAINTIFF,
URSULA MILDE**

By:/S/ Mark P. Carey
Mark P. Carey (CT17828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel.
(203) 255-0380 fax
Mcarey@capclaw.com
Her Attorney

15