UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **URSULA MILDE,** | : | |
| Plaintiff, | | |
| | : | |
| v. | | CIV.NO. 3:00CV2423(AVC) |
| | : | |
| **THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH;** | : | |
| **THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH BOARD OF COMISSIONERS; BENJAMIN LITTLE, CEO.** | : | OCTOBER 19, 2006 |
| Defendants. | : | |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION/ PETITION FOR FEES AND COSTS

Plaintiff Ursula Milde ("Milde") hereby files this memorandum of law in support of her Motion/Petition for fees and costs.

**I.   INTRODUCTION**

On September 18, 2006, following a four-day trial and after six years of intensive litigation, a jury returned a verdict for Ursula Milde on her claim of retaliation for engaging in free speech pursuant to the United States Constitution and 42 U.S.C. § 1983. The jury awarded Milde $325,000 in compensatory damages and $1,000 in punitive damages.

Milde submits this memorandum as well as the following exhibits in support of her motion for attorney's fees, costs: (1) an Affidavit by Attorney Mark Carey (Exhibit A); (2) an Affidavit by Plaintiff Ursula Milde (Exhibit B); (3) an Affidavit of Attorney Joseph Garrsion (Exhibit C); (4) an Affidavit of Attorney Gary Phelan (Exhibit D); (5) an

Affidavit of Attorney Kathleen Eldergill (Exhibit E); and (6) a Comprehensive Invoice of attorneys fees and costs, with columns for date, description of service/expense, hours and rate, and amount. (Exhibit F)

This memorandum and exhibits support a lodestar rate of $350.00 per hour. Milde claims a total of $453,075 in hourly fees and $18,148.71 in costs associated with this case.

## II. ARGUMENT

### A. Administrative Proceedings

Prior to filing a complaint in federal court, Milde exhausted her administrative remedies by filing a charge affidavit of illegal discriminatory practices based on age and gender discrimination and retaliation for engaging in a protected activity. At this stage of the case, Milde was not entitled to discovery and therefore had no way to determine whether her age, gender, protected activity or freedom of speech was the real reason for her wrongful termination. As the Supreme Court stated in <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 147-148 (June 12, 2000) "…the employer is in the best position to put forth the actual reason for its decision…"

Each claim involved the same core set of operative facts. Milde was the administrator of the Parsonage Cottage. She oversaw the recreation services provided to her residents by an outside contractor. She witnessed that the services were not being provided adequately and took the initiative to hire an in-house recreation coordinator. She raised her complaint to her supervisor Defendant Little, and later to the Defendant Board of Commissioners. The Defendants denied her permission to hire an in-house recreation coordinator. Milde went to the local newspaper and made her viewpoint

2

known to the public. She was immediately disciplined for taking such action, which included specific reference to her speaking to the press, and terminated from her employment.

In addition to the EEOC and CHRO administrative claims, Milde also filed a claim for unemployment insurance. The Defendants appealed the grant of benefits and a lengthy appeals hearing took place over approximately five days (January 30, 2001, April 17, 2001, June 7, 2001, July 10, 2001, August 14, 2001). The parties entered documents into the record, gave testimony (564 pages of transcript) and positioned their legal cases for the federal court proceeding. The Referee determined that Milde did not act willfully insubordinate in performing her job duties. This hearing was a crucial stage in this case because Milde extracted admissions and testimony to support her existing federal case, prior any court authorized discovery.[1]

Milde is entitled to claim fees and costs for activities prior to filing suit.

### B. Federal District Court Complaint

Milde filed her original complaint on December 20, 2000, shortly after receiving a Notice of Right to Sue from the EEOC. The Defendants filed various motions to dismiss and/or strike the complaint and subsequent amendments. Eventually, on February 5, 2003, nearly two years after the original complaint was filed, the Defendants filed their respective answers.

### C. Discovery

The parties engaged in extensive discovery over a three year period. The docket reflects various motions for Orders of Protection, Motions to Compel discovery and testimony. The parties participated in approximately twelve days of deposition

---

[1] The Court entered a Scheduling Order on August 3, 2001 [Doc.#25]

testimony. During the later stages of discovery, the relations between the parties became so heated that Milde sought and was granted permission to continue depositions in the courthouse. On or about the final day of Milde's testimony, Defendants counsel asked her how she was affording all the attorney's fees and costs associated with the prolonged litigation. Aside from the questionable relevancy, Milde responded by stating she was paying such fees and costs out of her own funds. The question really reflected Defendants frustration with the fact she had not given up the fight, and as they later learned she never would.

      **D.**      **Summary Judgment No 1.**

At the conclusion of discovery, both parties moved for summary judgment on May 14, 2004. On August 12, 2005, the Court granted in part and denied in part the cross motions for summary judgment. [Doc.## 147 & 148]. The Court granted summary judgment to Defendants on Milde's age and gender discrimination claims, both state and federal. The Court cited "the defendants' legitimate reasons for Milde's discharge are overwhelming and there is no evidence that the reasons are false." Milde v. Housing Authority et.al. 2005 WL 1949781 *14 (D.Conn.). However, the jury in this case heard Defendants identical "legitimate reasons" and found in favor of Milde on her Section 1983 First Amendment retaliation claim. Arguably, the jury may have decided against Defendants on Milde's other claims as well.

In denying Milde's Title VII, ADEA and FEPA Retaliation claims, the Court based its decision on the same core set of operative facts that underlay Milde's First Amendment retaliation claim. Specifically, Milde could not establish causation because Defendant "Little subjected her to a series of reprimands months before she filed her

4

complaint with the EEOC." Milde v. Housing Authority et.al. 2005 WL 1949781 *15 (D.Conn.).[2]

The Court denied both parties motions for summary judgment on Milde's First Amendment Retaliation claim, holding there were issues of material facts in dispute. The case was to be tried to a jury on this single claim.

### E.      Second Circuit Interlocutory Appeal

The Defendants immediately filed an interlocutory appeal to the Second Circuit on Defendant Little's qualified immunity defense.  On April 26, 2006, the Second Circuit issued a Summary Order dismissing Defendants Appeal, holding: "There being no dispositive question that is purely one of law, and the district court having found that there is a genuine issue of fact to be tried as to the immunity defense, we lack jurisdiction to review the challenged denial of summary judgment." Milde v. The Housing Authority of the Town of Greenwich, et.al., No.05-4950-cv (2nd Cir.April 26, 2006)(J.Wallace). Milde then moved to have the case transferred back to this court for a trial on the merits.

### F.      Summary Judgment No. 2

Defendants moved again for summary judgment pursuant to Garcetti v. Ceballos, 126 S.Ct. 1951 (2006).  Milde still survived this second challenge by demonstrating her comments to the local newspaper were made pursuant to her expected job duties. [Doc.#169].  Milde was now entitled to have her case heard by a jury.

### G.      Trial on the Merits

The parties participated in a four day trial.  After six years of intensive litigation, and after hearing all the testimony, the jury rendered a "fair" verdict in favor of Milde. The jury heard the same evidence that supported Milde's age, gender and retaliation

---

[2] The Court also denied Milde's Section 1983 Unlawful Prior Restrain claim.

claims, and it did not find Defendants allegedly legitimate "same action" defense persuasive. Milde was awarded $326,000 in compensatory and punitive damages.

### H. Attorney's Fees Award Standard

Congress enacted fee-shifting statutes to encourage lawyers to represent civil rights plaintiffs in the public interest. Because actual damages in civil rights litigation are often limited and civil rights litigants rarely are able to afford competent counsel at market rates, the Supreme Court has recognized:

> The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.

City of Riverside v. Rivera, 477 U.S. 561, 578 (1986)(internal quotations and citation omitted).

Under 42 U.S.C. § 1988(b) a plaintiff who has prevailed in vindicating her rights under the federal civil rights statutes is entitled to reasonable attorney's fees. After the jury returned a verdict in her favor, Milde became the prevailing party. The starting point for determining the fee that should be awarded is the calculation of the lodestar amount, which is arrived at by multiplying "the number of hours reasonably expended on the litigation…by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); See, Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir.1999)(there is a strong presumption that the lodestar figure represents a reasonable rate). Reasonable attorney's fees also include reasonable out-of-pocket expenses ordinarily charged to clients. See, LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir.1998). The party requesting fees bears the burden of proving reasonableness by way of an affidavit detailing the time

spent working on the case and the fees charged.  Lieberman v. Dudley, 3:95CV2437 (AHN), 1998 U.S.Dist. LEXIS 16809, at *17 (D.Conn.July 27, 1998).

Where a particular case involves several legal theories relating to a common core of underlying facts, a court need not analyze fees on a claim-by-claim basis, but instead "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435.  When a plaintiff obtains "excellent results" his attorney should recover a fully compensatory fee and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id.  "The extent of a plaintiff's success is a crucial factor in determining the amount of an award of attorney's fees under 42 U.S.C. Section 1988." Id at 433.  Nevertheless, "[w]hile the degree of success is the most crucial factor in determining the reasonableness of a fee award, …[the Second Circuit] consistently [has] resisted a strict proportionality requirement in civil rights cases." Lunday v. City of Albany, 42 F.3d 131, 134-135 (2d Cir.1994)(per curiam)(citations and internal quotations omitted).  In the instant case, Milde received a jury verdict in the amount of $325,000 in compensatory damages for back wages and pension benefits. She also received $1000.00 in punitive damages against Defendant Little.  Clearly, she received an excellent result.

"Where the issues are intertwined factually, a fully compensatory fee award is justified even where a plaintiff does not prevail on all his claims or obtain all the relief requested in his complaint." Dague v. City of Burlington, 935 F.2d 1343, 1358-59 (2d Cir.1991), rev'd in part on other grounds, 505 U.S. 557, 112 S.Ct. 2638 (1992).  Time spent on Milde's Title VII gender discrimination claim, her ADEA age discrimination

claim, Title VII and ADEA retaliation claims, her First Amendment unconstitutional prior restraint claim and her Connecticut FEPA retaliation claims, are factually intertwined with her Section 1983 Freedom of Speech Retaliation claim, a claim which she prevailed at trial.[3] Her ADEA, Title VII and FEPA claims, although not successful before trial, were worthy claims and are factually intertwined with her Section 1983 claim. No reduction in the hours billed is warranted.

To enable the Court to calculate the lodestar amount, the fee applicant must support her application with contemporaneous time records specifying the date, hours expended, and nature of work performed. See Hensley, 461 U.S. at 437 & n.12. The lodestar should be based on prevailing market rates for attorneys of comparable skill, experience, and reputation. See Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir.1998). When services are provided over many years, the objective of providing adequate compensation may call for use of current rather than historic hourly rates to compensate for delay in payment. See Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir.1998).

The following factors also may be considered in evaluating the lodestar amount: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

---

[3] Milde file a motion to amend her complaint to include a Religious Discrimination claim based on Scientology. The motion and reconsideration motion were denied. Although Milde has included billing entries for work on the Religious Discrimination claim, she is not seeking fees for such claim.

professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430, n. 3.

### 1.     Hours Reasonably Expended

Milde bases her fee request on **1,294.5** hours of time billed by Attorney Carey for services rendered over a six (6) year period.

Attorney Carey's representation of Milde began on July 4, 2000. He was the only attorney who represented Milde in connection with this matter and he alone provided all of the legal services for which Milde now seeks fees and costs. Attorney Carey represented Milde before the Equal Employment Opportunity Commission (EEOC) and Connecticut Commission on Human Rights & Opportunities (CCHRO), the Connecticut Department of Labor Unemployment Appeals Division, and then filed a complaint in federal court on her behalf on December 20, 2000. As attested to by Attorney Carey, and as reflected in the court file and docket sheet, this case involved a considerable number of pretrial matters, including a motions to dismiss/stike, several amended complaints, substantial discovery, two motions for summary judgment, one interlocutory appeal, followed by jury selection, a four day trial and three post trial motions. The docket sheet currently lists roughly 200 documents filed by the parties. The total number of hours billed over a six year period, from July 2000 to the present date is 1294.5.

Milde also seeks permission for all additional hours and costs associated with Defendants response to the fee petition and other post trial motions.

After a thorough review of Attorney Carey's time records, the Court will conclude the hours billed were reasonable. Attorney Carey has carefully documented the services rendered, and has recorded his time in one tenth of an hour increments. Without

9

exception, his billing entries reflect a reasonable amount of time for the legal services provided over a six year period.

> **2.   This Case Presented a Difficult Question Regarding Freedom of Speech in the Workplace**

A retrospective look back in this case reveals how difficult Milde's First Amendment retaliation claim really was.  Initially, Milde survived the defendants' first motion for summary judgment.  She was able to demonstrate her speech at the May 22, 2000 open Board Meeting and her comments in the local newspaper, "was perhaps one of the reasons for her termination." <u>Milde v. The Housing Authority of the Town of Greenwich et.al</u>., 2005 WL 1949781 *17-18(D.Conn.2005).  However, while Milde was awaiting the return of this case from the Second Circuit after defeating an interlocutory appeal, the United Supreme Court decided <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951 (2006).  This single case diminished First Amendment rights in the workplace across the country.  The undersigned researched many post-<u>Garcetti</u> decisions, finding many if not all were dismissed after application of the new two pronged analysis.

Once this Court retained jurisdiction of the case, the Defendants proceeded to file their second motion for summary judgment.  Roughly four weeks before trial, Milde had to convince this Court that her speech at the open Board Meeting and her comments to the newspaper were not made pursuant to her expected job duties.  Fortunately, Milde's comments that appeared in the May 22 and May 26, 2000 newspaper articles were found by the Court not to be made pursuant to her expected job duties as the Parsonage Cottage Administrator.  <u>Milde v. Housing Authority et.al</u>., 2006 WL 2583086, *6 (D.Conn.).  Milde was able to go before a jury, which also believed her comments to the press were

not made pursuant to her expected job duties. The facts of this case stand it apart from other post-Garcetti cases. Milde's case stands for the following proposition: if you are a public employee and your job does not involve speaking to the press, then you must speak to the press in order to receive first amendment protection.

### 3.     Reasonable Hourly Rates

The rates to be used in calculating the § 1988 lodestar are the market rates "prevailing in the community for similar service by lawyers of reasonable comparable skill, experience, and reputation." Blum, 465 U.S. at 896 n.11; see e.g. Kirsch, 148 F.3d at 172. Further, in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be "current rather than historic hourly rates." Missouri v. Jenkins, 491 U.S. 274, 284, 109 S.Ct. 2463.

Attorney Carey has always operated as a small one attorney law firm and performs both administrative functions and attorney functions for his firm Carey & Associates, P.C. However, his status as a solo attorney is not a basis to reduce fees in this case. If anything, Attorney Carey has perfected the efficiency of his practice through the use of computers, organization and skill. The Second Circuit included the following footnote in McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 98 (2d Cir.2006):

> We want to caution, however, that district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate. Cases suggest that in determining the relevant 'market', a court may look to rates charged by those similarly situated, including looking to the rates charged by large or medium-sized law firms, based on the widely held premise that a client represented by a medium-sized law firm pays less than a client represented by a large firm with higher overhead costs. But whether or not the aforementioned premise—that the bigger the firm the higher the attorneys'

11

> hourly rates charged—is correct, and even assuming it may be that solo practitioners of equal skill, expertise and reputation, charge less than those at large or medium sized firms, courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner. Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate. Rather, overhead merely helps account for why some attorneys charge more for their services. Indeed, it may be that in certain niche practice areas, attorneys of the highest 'skill, expertise, and reputation' have decided to maintain a solo practice instead of affiliating themselves with a firm. The reasons for doing so may be numerous, including the inherent problems of higher overhead, fee-sharing, and imputed conflicts of interest. The focus of the inquiry into the reasonable hourly rate must instead be determined by reference to 'prevailing rates in the community for similar services by lawyers of reasonable comparable skill, expertise, and reputation.' Working as a solo practitioner may be relevant to defining the market, but it would be error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate. (internal citations omitted).

Attorney Carey should not be penalized because he is a solo practice attorney.

Milde was charged an hourly rate throughout her case and no contingency fee agreement exists. (Exhibit A: Carey Affidavit). In order for Milde to afford what amounted to a six year litigation, Attorney Carey had to substantially lower (discount) is hourly rate. Milde would not have been able to participate in this litigation if Attorney Carey had not lowered his hourly rate. Initially, Milde was charge fees at a rate of $200.00 for the period from July 2000 through August 2005. This rate allowed Milde to afford extensive discovery and motion practice. In August 2005, Milde was charged fees at a rate of $300.00 per hour, because Attorney Carey could no longer afford to discount his fee. Attorney Carey currently maintains an hourly rate of $350.00 per hour to federal court employment law litigation clients. He also charges $400.00 per hour to executive compensation clients.

The of $350.00 per hour is reasonable in Fairfield County, Connecticut, where Attorney Carey has an office. Milde now submits affidavits of three similarly well

12

known and well respected "employment law litigators", all admitted in the District of Connecticut.

>Attorney Joseph Garrison states in his affidavit,
>
>I understand that Mark Carey's current billing rate is $350.00 per hour. Based on my knowledge of the market and of comparable trial attorneys, this rate is reasonable. If he were a partner in my office (and he would be a partner based on his experience), we would be billing his time at somewhere between $350 and $400 per hour. My own billing rate is $500 per hour now, since 2005. I was recently awarded $450 per hour, which was my rate in 2004, as the appropriate rate in a class-action settlement. Most defense counsel, in larger firms in the New Haven area, bill partners' time at least at $350 per hour for litigation, and many of them have far less trial experience that attorney Carey.

(Exhibit C: Affidavit Attorney Garrison).

>Attorney Gary Phelan states in his affidavit,
>
>I reviewed the Affidavit submitted by Mark Carey in support of his fee petition in this case. His current billing rate is $350.00 per hour. Based on my knowledge of the market and of his level of skill and experience, I believe that this rate is reasonable. My present hourly rate is $425 per hour. . .The hourly rates of attorneys in Fairfield County, Connecticut are much higher than the hourly rates in the New Haven and Hartford regions because the cost of living is considerably higher…Most defense counsel in larger firms in the Fairfield County area bill partners' time at least $400-450 per hour.

(Exhibit D: Affidavit Attorney Phelan).

>Attorney Kathy Eldergill states in her affidavit,
>
>Based on my work in the area of employment law, I am familiar with the rates charged by other employment lawyers in the state of Connecticut. I have had an opportunity to review the Affidavit by Attorney Mark P. Carey in support of his fee petition in this case. Based on the above facts, my review of Attorney Carey's affidavit and my knowledge of rates generally charged by other attorneys in the field of employment law, it is my view that the requested hourly rate of $350.00 per hour is reasonable for an attorney of Mark Carey's skill and experience.

(Exhibit E: Affidavit Attorney Eldergill).

13

Milde respectfully requests that the Court find $350 per hour a reasonable rate for an employment law litigator/trial attorney in Fairfield County, Connecticut.

The lodestar calculation involves **1294.5** hours multiplied by the hourly rate of $350.00 per hour, for a total amount in fees of **$453,075**. Milde asserts this fee is reasonable after six years of battling the Defendants.

### 4. After Six Years of Litigation Excellent Results Were Achieved

Milde began working with Attorney Carey on July 4, 2000, soon after she was disciplined by the defendants on May 30, 2000. The original complaint was filed on December 20, 2000. The parties have been litigating this case for over six years. Each side has expended enormous sums of money to eventually arrive at the September 18, 2006 plaintiff's verdict. The parties have engaged in several settlement negotiations throughout the course of the litigation, at least twice appearing before Magistrate Thomas Smith. Each time, the Defendants always offered a settlement lower than the combined total of her compensatory damages and legal fees and costs. Milde had no choice but to continue with litigation.

On September 18, 2006, after deliberating for less than three hours, the jury returned a fair verdict in the amount of $326,000. An excellent result was achieved. The amount was nearly identical to what she may have received under her age, gender and retaliation claims. Although a jury may have awarded a much higher punitive damage value, it was a "fair" verdict.

### I. Costs to be Recovered

As the prevailing party, Milde is also entitled to seek reimbursement for her reasonable expenses. The Second Circuit has held that awards of attorney's fees in civil

rights suits under fee-shifting statutes "includes those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg, 143 F.3d at 763 (internal quotations and citation omitted); See also, Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir.1987). Recoverable expenses under fee-shifting statutes include filing fees, deposition transcripts, service of process fees, photocopying, telephone and fax charges, postage and express mail charges, messenger service, transportation, and computerized legal research.

Milde has incurred expenses in the amount of $14,279.36 (Paid by Milde) + $3,869.35 (Paid by Attorney Carey) =$18,148.71.  These costs are specifically detailed in Exhibit A (Carey Affidavit) and Exhibit B (Milde Affidavit). Milde asserts the aforementioned costs are reasonable and respectfully requests recovery from the Court.

## I1.     CONCLUSION

The Plaintiff respectfully requests that the Court grant her fee application/petition for fees of **$453,075** and costs of **$18,148.71** based on the foregoing arguments and exhibits.

**PLAINTIFF,
URSULA MILDE**

By:/S/ Mark P. Carey
Mark P. Carey (CT17828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel.
(203) 255-0380 fax

Her Attorney

**CERTIFICATION OF SERVICE**

THIS IS TO CERTIFY that a copy of the foregoing was filed electronically with the court and by first class mail, fee prepaid, on this the 19th day of October, 2006 to:

Francis P. Alvarez
JACKSON LEWIS
One North Broadway
White Plains, NY 10601
Attorneys for Defendant

/S/ Mark P. Carey
Mark P. Carey