UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **URSULA MILDE,** : | |
| Plaintiff, | |
| : | |
| v. | CIV.NO. 3:00CV2423(AVC) |
| : | |
| **THE HOUSING AUTHORITY OF THE** : | |
| **TOWN OF GREENWICH;** | |
| **THE HOUSING AUTHORITY OF THE** : | NOVEMBER 7, 2006 |
| **TOWN OF GREENWICH BOARD OF** | |
| **COMISSIONERS; BENJAMIN LITTLE,** : | |
| **CEO.** | |
| Defendants. : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS RULE 59(e) MOTION FOR REMITTITUR OR, IN THE
ALTERNATIVE, FOR A NEW TRIAL ON COMPENSATORY ECONOMIC
DAMAGES PURSUANT TO FED.R.CIV.P. 59(a)**

Plaintiff Ursula Milde ("Milde") hereby files the instant memorandum of law in opposition to Defendants Rule 59(a) and Rule 59(e) motions. Defendants' motions respectfully must be denied because the jury's verdict was not excessive. A cursory review of Defendants argument reveals that the Defendants intentionally failed to calculate annual pay increases Milde would have received each year if she had not been terminated. In addition, the Defendants failed to calculate Milde's lost pay in 2006. Finally, the Defendants blame the jury for using an interest rate to account for the time value of money. As the following discussion reveals, the jury's verdict was reasonable based on the evidence presented and the instructions provided in the jury charge. The simplicity of the intentional error is shocking, given that Milde, as the prevailing party, is incurring attorneys fees and costs which the Defendants are obligated to pay. The

Defendants actions are nonsensical and only intended to harass Milde and delay the inevitable resolution of this case.

I. **ARGUMENT**

The Court has "discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence…This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996)(internal citations omitted). The Court has authority to enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial, in at least two distinct kinds of cases:

> (1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken,…(2) more generally, where the award is 'intrinsically excessive' in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error.

Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d 326, 337 (2d Cir.1993). In the instant case, the Defendants are unable to establish either one of the above kinds of cases, the verdict was not made in error and was not excessive. The Defendants have also not established any prejudicial error that infected the jury's entire consideration of Milde's compensatory loss. See, Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 50 (2d Cir.1984).

"When determining how much of a jury award to remit, the court should use the method that least intrudes on the jury's verdict. In the Second Circuit, courts must 'remit the jury's award only to the maximum amount that would be upheld by the district court

2

as not excessive.'" (internal citation omitted) Schutts v. Feldman, 1997 U.S. Dist. LEXIS 3428 *12 (D.Conn. Feb.18, 1997).

"Where the is no particular discernable error, we have generally held that a jury's damage award may not be set aside as excessive unless the award is so high as to shock the judicial conscience and constitute a denial of justice." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 165 (2d Cir.1998)(internal citation omitted). "Absent a showing of clear error or manifest injustice, it will generally be appropriate to deny relief pursuant to Rule 59 since litigants should neither be required nor without good cause permitted to relitigate already-decided matters." Bergstein v. Jordache Enterprises, Inc., 1996 WL 271910, *2 (S.D.N.Y May 21, 1996)(internal quotation marks omitted). In short, "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir.1998); accord, Svege v. Mercedes-Benz Credit Corp., 2004 WL 2377485, *3 (D.Conn. Sept. 28, 2004).

The Court's September 18, 2006 Charge to the Jury instructed the jury on how to deliberate compensatory damages:

> The purpose of compensatory damages is to make a plaintiff whole for losses she proved that she has suffered as a result of any violations of section 1983. The purpose of compensatory damages is to compensate the plaintiff by putting her in the same position she would have been in if the wrongful conduct had not occurred. The law places the burden on the plaintiff to prove facts that will enable you to arrive at the amount of damages with reasonable certainty. While it is not necessary that the plaintiff prove the amount of damages with mathematical precision, she is required to present such evidence as might reasonably be expected to be available under the circumstances.
>
> The elements of injury and harm which you should consider in determining compensatory damages are monetary losses such as lost wages. There is no exact standard for fixing any compensatory to be awarded for these of damages. Any award you make should be fair and reasonable in light of the evidence presented

3

at trial. However, you may not award damages based on sympathy, speculation or guesswork.

(Charge to the Jury, p.11, J.Covello, Sept. 18, 2006)

On September 18, 2006, the jury rendered a verdict in favor of the Milde in the amount of $325,000 in compensatory damages (with an additional award of $1,000.00 in punitive damages against Defendant Benjamin Little only)[Doc.#188]. The Defendants now take issue with the compensatory verdict amount by claiming it is excessive. However, the Defendants argument leaves out crucial factual details that the jury did hear.

On or about September 1996, Milde began working for the Defendants at a starting annual salary of $$55,000.00. (See Carey Affidavit at ¶ 4).

Milde testified about her receipt of performance raises up to the year 2000, but she did not receive a performance raise in the year 2000 as she was fired in September.

In 1999 Milde reported employment income of $56,339, not including pension contribution to MERF. (Carey Affidavit Exhibit C).

In 2000, she reported employment income of $53,214, not including pension contribution to MERF. (Carey Affidavit Exhibit D). Based on the evidence presented to the jury, Milde's last pay check indicated her last annual salary was $65,101.40.(Carey Affidavit Exhibit A). The difference in pay between the year 2000 and 1996 is $10,101.40. Milde received an average of $2,525.35 in salary increases per year over four years or 4.6 percent per year.

The jury did in fact conclude that Milde should have been entitled to receive the same average pay increases from the year 2000 to the year 2006, which would have been the actual date of her retirement had she not been fired. The Defendants calculations do

4

not take this evidentiary fact into consideration. The 4.6% annual pay increase is simply what the evidence reveals the Defendants as having previously awarded Milde each year, based on her performance. The percentage increases were not the same as a cost of living increase or time value of money increase, but were in fact a form of incentive bonus compensation.

From September 8, 2000 through December 31, 2000, Milde lost pay in the amount of **$11,887.00** ($65,101 less income received of $53,214). (Carey Affidavit Exhibit D) She was unable to find new employment during this period of time.

From January 1, 2001 through December 31, 2001, Milde lost pay in the amount of **$29,551** ($65,101 x .046 ($2,995)= $68,096 less mitigation income of $38,545)(Carey Affidavit Exhibit E). She testified that she only found new employment at Putnam Ridge starting in February 2001.

From January 1, 2002 through December 31, 2002, Milde lost pay in the amount of **$17,845** ($68,096 x .046 ($3,132)= $71,228 less mitigation income of $53,383)(Carey Affidavit Exhibit F).

From January 1, 2003 through December 31, 2003, Milde lost pay in the amount of **$20,835** ($71,228 x .046 ($3,276)= $74,504 less mitigation income of $53,669)(Carey Affidavit Exhibit G).

From January 1, 2004 through December 31, 2004, Milde lost pay in the amount of **$20,604** ($74,504 x .046 ($3,427)=$77,931 less mitigation income of $57,327)(Carey Affidavit Exhibit H).

From January 1, 2005 through December 31, 2005, Milde lost pay in the amount of **$24,558** ($77,931 x .046 ($3,585)=$81,516 less mitigation income of $56,958)(Carey Affidavit Exhibit I).

From January 1, 2006 through September 30, 2006, Milde was entitled to annual pay rate of $85,266 ($81,516 x .046 ($3,750)=$85,266). Milde testified she would have retired on September 30, 2006 and that she received $12,112 in Social Security Income. (Carey Affidavit ¶ 14).  We need to prorate her annual salary in 2006 to take into account the September 30, 2006 expected retirement from the Housing Authority: $85,266/52 weeks = a weekly salary of $1,640 x 39 weeks = $63,960 less mitigation income of $12,112 in Social Security Income. Milde's lost pay during the aforementioned period is **$51,848**. Milde's total back pay less mitigation is **$177,128**. (Carey Affidavit ¶ 14).

The jury also heard testimony from Milde and received evidence regarding her unpaid compensatory time. She testified she was owed compensatory pay for 1326 hours. (Carey Affidavit ¶ 15 and Exhibit B).   The jury reasonably calculated Milde's compensatory pay to equal to **$47,431** (1326 hours x 35.77 per hour).

The jury also heard testimony from Milde and received evidence regarding unpaid pension contributions in the amount of $26,777, which is based on a 4.5% contribution rate over a 10 year period.(Carey Affidavit ¶ 16 and Exhibit A(which shows MERF contribution/rate)).

The Defendants blame the jury for using a reasonable time value of money approach to making Milde "whole", which they were instructed to do in the charge to the jury.  The jury complied with the following charge instruction:

> The purpose of compensatory damages is to make a plaintiff whole for losses she proved that she has suffered as a result of any violations of section 1983. . .While

6

> it is not necessary that the plaintiff prove the amount of damages with mathematical precision, she is required to present such evidence as might reasonably be expected to be available under the circumstances. . . There is no exact standard for fixing any compensatory to be awarded for these of damages. Any award you make should be fair and reasonable in light of the evidence presented at trial.

Based on the evidence presented, the total compensatory amount equals $251,334. The jury multiplied some percentage rate, for purposes of the time value of money, on the $251,334 to arrive at $325,000. Obviously, the jury was unable to view interest rate tables from the Federal Reserve and nor was it expected to comply with such rate tables. It appears the jury used a percentage rate in the range of 4.7% to 5%. Again, the jury was told there was "no exact standard" for computing compensatory damages, so long as the calculation was reasonable.

The compensatory damages verdict was reasonable and not excessive, it was just that the Defendants were not truthful in their method of calculating the damage award based on the evidence presented. Milde agrees with the Court's statement after reading the verdict form, that the verdict was a "fair verdict."

## II.     CONCLUSION

Based on the foregoing argument, Milde respectfully requests that the Court deny Defendants instant motions. The verdict was reasonable, not made in error and not excessive.

**PLAINTIFF,
URSULA MILDE**

By:/S/ Mark P. Carey
Mark P. Carey (CT17828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel.
(203) 255-0380 fax
Mcarey@capclaw.com
Her Attorney

**CERTIFICATION OF SERVICE**

THIS IS TO CERTIFY that a copy of the foregoing was filed electronically with the court via ECF and by first class mail, fee prepaid, on this the 7th day of November, 2006 to:

Francis P. Alvarez
JACKSON LEWIS
One North Broadway
White Plains, NY 10601
Attorneys for Defendant

/S/ Mark P. Carey
Mark P. Carey