UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **URSULA MILDE,** : | |
| Plaintiff, | |
| : | |
| v. | CIV.NO. 3:00CV2423(AVC) |
| : | |
| **THE HOUSING AUTHORITY OF THE** : | |
| **TOWN OF GREENWICH;** | |
| **THE HOUSING AUTHORITY OF THE** : | NOVEMBER 7, 2006 |
| **TOWN OF GREENWICH BOARD OF** | |
| **COMISSIONERS; BENJAMIN LITTLE,** : | |
| **CEO.** | |
| Defendants. : | |

**AFFIRMATION OF MARK P. CAREY, ESQ. IN SUPPORT OF PLAINTIFF'S MEMORANDUM IN OPPOSITIONTO DEFENDANTS RULE 59(e) MOTION FOR REMITTITUR OR, IN THE ALTERNATIVE, FOR A NEW TRIAL ON COMPENSATORY ECONOMIC DAMAGES PURSUANT TO FED.R.CIV.P. 59(a)**

**MARK P. CAREY**, an attorney duly admitted to practice before this Court and the courts of the State of Connecticut, hereby affirms under penalty of perjury that the following statements are true:

1. I am the principal of Carey & Associates, P.C. and the attorney for the Plaintiff Ursula Milde ("Milde").

2. I am familiar with the facts and circumstances contained herein as trial counsel of record in this matter.

3. On September 18, 2006, a jury rendered a verdict in favor of Milde in the amount of $326,000.00, inclusive of $1000 in punitive damages.

4. In September 1996, Milde was hired as the Administrator of the Parsonage Cottage Senior Residence. At trial, Milde testified during examination by the undersigned that her starting gross annual rate of pay was $55,000.

5. In 1999 Milde reported employment income of $56,339, not including pension contribution to MERF. (Plaintiff's Trial Ex. 77, Exhibit C).

6. In 2000, she reported employment income of $53,214, not including pension contribution to MERF. (Plaintiff's Trial Ex. 60, Exhibit D). Based on the evidence presented to the jury, Milde's last pay check indicated her last annual salary was $65,101.40.(Plaintiff's Trial Ex. 58, Exhibit A). The difference in pay between the year 2000 and 1996 is $10,101.40. Milde received an average of $2,525.35 in salary increases per year over four years or 4.6 percent per year.

7. The jury did in fact conclude that Milde should have been entitled to receive the same average pay increases from the year 2000 to the year 2006, which would have been the actual date of her retirement had she not been fired. The Defendants calculations do not take this evidentiary fact into consideration. The 4.6% annual pay increase is simply what the evidence reveals the Defendants as having previously awarded Milde each year, based on her performance. The percentage increases were not the same as a cost of living increase or time value of money increase, but were in fact a form of bonus compensation.

8. From September 8, 2000 through December 31, 2000, Milde lost pay in the amount of **$11,887.00** ($65,101 less income received of $53,214). (Plaintiff's Trial Ex. 60, Exhibit D) She was unable to find new employment during this period of time.

9. From January 1, 2001 through December 31, 2001, Milde lost pay in the amount of **$29,551** ($65,101 x .046 ($2,995)= $68,096 less mitigation income of $38,545)(Plaintiff's Trial Ex.61, Exhibit E). She testified that she only found new employment at Putnam Ridge starting in February 2001.

10. From January 1, 2002 through December 31, 2002, Milde lost pay in the amount of **$17,845** ($68,096 x .046 ($3,132)= $71,228 less mitigation income of $53,383)(Plaintiff's Trial Ex.73, Exhibit F).

11. From January 1, 2003 through December 31, 2003, Milde lost pay in the amount of **$20,835** ($71,228 x .046 ($3,276)= $74,504 less mitigation income of $53,669)(Plaintiff's Trial Ex.74, Exhibit G).

12. From January 1, 2004 through December 31, 2004, Milde lost pay in the amount of **$20,604** ($74,504 x .046 ($3,427)=$77,931 less mitigation income of $57,327)(Plaintiff's Trial Ex.75, Exhibit H).

13. From January 1, 2005 through December 31, 2005, Milde lost pay in the amount of **$24,558** ($77,931 x .046 ($3,585)=$81,516 less mitigation income of $56,958)(Plaintiff's Trial Ex.76, Exhibit I).

14. From January 1, 2006 through September 30, 2006, Milde was entitled to annual pay rate of $85,266 ($81,516 x .046 ($3,750)=$85,266). Milde testified she would have retired on September 30, 2006 and that she received $12,112 in Social Security Income. We need to prorate her annual salary in 2006 to take into account the September 30, 2006 expected retirement from the Housing Authority: $85,266/52 weeks = a weekly salary of $1,640 x 39 weeks = $63,960 less mitigation income of $12,112 in Social

Security Income. Milde's lost pay during the aforementioned period is **$51,848**. Milde's total back pay less mitigation is **$177,128**.

15. The jury also heard testimony from Milde and received evidence regarding her unpaid compensatory time. She testified she was owed compensatory pay for 1326 hours. (Plaintiff's Trial Ex.59, Exhibit B). The jury reasonably calculated Milde's compensatory pay to equal to **$47,431** (1326 hours x 35.77 per hour).

16. The jury also heard testimony from Milde and received evidence regarding unpaid pension contributions in the amount of **$26,777**, which is based on a 4.5% contribution rate over a 10 year period.(Plaintiff's Trial Ex.58, Exhibit A(which shows MERF contribution/rate)).

17. The Defendants blame the jury for using a reasonable time value of money approach to making Milde "whole", which they were instructed to do in the charge to the jury. The jury complied with the following charge instruction:

> The purpose of compensatory damages is to make a plaintiff whole for losses she proved that she has suffered as a result of any violations of section 1983. . .While it is not necessary that the plaintiff prove the amount of damages with mathematical precision, she is required to present such evidence as might reasonably be expected to be available under the circumstances. . . There is no exact standard for fixing any compensatory to be awarded for these of damages. Any award you make should be fair and reasonable in light of the evidence presented at trial.

Based on the evidence presented, the total compensatory amount equals $251,334. The jury multiplied some percentage rate, for purposes of the time value of money, on the $251,334 to arrive at $325,000. Obviously, the jury was unable to view interest rate tables from the Federal Reserve and nor was it expected to comply with such rate tables. It appears the jury used a percentage rate in the range of 4.7% to 5%. Again, the jury was

4

told there was "no exact standard" for computing compensatory damages, so long as the calculation was reasonable.

By:/S/ Mark P. Carey  
Mark P. Carey (CT17828)  
Carey & Associates, P.C.  
71 Old Post Road, Suite One  
Southport, CT 06890  
(203) 255-4150 tel.  
(203) 255-0380 fax  
Mcarey@capclaw.com  
Her Attorney

## CERTIFICATION OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was filed electronically with the court via ECF and by first class mail, fee prepaid, on this the 7th day of November, 2006 to:

Francis P. Alvarez  
JACKSON LEWIS  
One North Broadway  
White Plains, NY 10601  
Attorneys for Defendant

/S/ Mark P. Carey  
Mark P. Carey