# EXHIBIT H-1

LEXSEE 2000 U.S. DIST. LEXIS 18378

**AGNES DE LEON, Plaintiff, v. SANDRA E. LITTLE and CITY OF HARTFORD, Defendants.**

**CASE NO. 3:94CV902 (RNC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2000 U.S. Dist. LEXIS 18378*

**March 2, 2000, Decided**
**March 2, 2000, Filed**

**DISPOSITION:** [*1] Plaintiff's renewed motion for an award of attorneys' fees and costs [doc. # 177] granted in part and denied in part

**COUNSEL:** For AGNES DELEON, plaintiff: C. Thomas Furniss, John J. Quinn, James M. Quinn, Joseph P. Quinn, Jr., Furniss & Quinn, Hartford, CT.

For US COURT OF APPEALS, notice only: US Court of Appeals, Office of the Clerk, New York, NY.

For CITY OF HARTFORD, intervenor-plaintiff: Michael Jay McAuliffe, Anne Kelly Zovas, Pomeranz, Drayton & Stabnick, Glastonbury, CT.

For CITY OF HARTFORD, defendant: Linda L. Yoder, John W. Mahoney, Charles L. Howard, Shipman & Goodwin, Hartford, CT.

For CITY OF HARTFORD, defendant: Margaret E. Corrigan, Lucas D. Strunk, Anne Kelly Zovas, Stephen G. Ekern, Pomeranz, Drayton & Stabnick, Glastonbury, CT.

For HENRY C. WINIARSKI, JR., defendant: Regina A. Long, U.S. Attorney's Office, Marquis D. Jones, Jr., Day, Berry & Howard, Joseph A. Moniz, Moniz, Cooper & McCann, Hartford, CT.

**JUDGES:** Robert N. Chatigny, United States District Judge.

**OPINION BY:** Robert N. Chatigny

**OPINION:**

RULING AND ORDER ON PLAINTIFF'S RENEWED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

Plaintiff's renewed motion for an award of attorneys' fees and costs [*2] [doc. # 177] is granted in part and denied in part.

I. Background

From late 1989 until mid-1992, plaintiff Agnes DeLeon was employed by the City of Hartford as an administrative assistant assigned to the City Council office of the political party known as People for Change ("PFC"). In that capacity, she served under the direction of City Council members who had been elected on the PFC slate, including Sandra Little. On June 5, 1992, the plaintiff suffered a nervous breakdown at work, was hospitalized, and remained out of work for six months. Two years later, she commenced this action against Little and the City seeking money damages n1. The complaint alleged that for a period of approximately two and a half years before the breakdown in June 1992, the plaintiff, who is Hispanic, was subjected to continuous harassment and discrimination by Little, who was African-American. The alleged mistreatment, as summarized in the plaintiff's complaint, included

> orders to purchase illegal drugs under duress, orders to perform personal errands for Defendant Little, orders to perform tasks for Defendant Little's private employer, orders to stand guard while Defendant Little ingested [*3] illegal drugs, repeated telephone calls to the Plaintiff at her home during non-work hours, threats to terminate the Plaintiff's employment as a result of her racial and ethnic status and political affiliation, implementation of discriminatory sick time policies, monitoring of attendance at work, and repeated

2000 U S Dist LEXIS 18378, *

degrading and humiliating criticisms of the plaintiff in the presence of others

Compl at 8 The complaint alleged that "as a result of the cruel and abusive treatment and harassment against her, the Plaintiff suffered a severe psychiatric illness which required her hospitalization and which has caused her to remain under the care of a psychiatrist, including the use of prescription medications, until the present time " Id at 5

n1 Before bringing this action, plaintiff pursued a worker's compensation claim against the City

The complaint purported to state claims for relief under *42 U S C § 1983* on the ground that the alleged mistreatment

deprived the Plaintiff [*4] of her rights to be free from emotional and criminal harassment in the workplace, to be free from racial discrimination in the workplace, and to be free from interference to her personal liberties, all of these rights secured by the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution

Id at 6 In addition, the complaint included pendent state law claims for damages for intentional infliction of emotional distress See id at 10-18

In the first six months after the complaint was filed, the parties engaged in some written discovery In February 1995, before deposition discovery began in earnest, the parties agreed to try to settle the case through alternative dispute resolution The parties subsequently prepared for and engaged in mediation Two mediation sessions were held in 1995, one in May, the other in September The case did not settle

In January 1996, the litigation resumed Over the next few months, depositions were taken of the plaintiff, Little, and eight witnesses Then, in May 1996, the defendants moved for summary judgment on all counts of the complaint The motions for summary judgment entailed extensive briefing by [*5] all parties, which was completed in the fall of 1996 In March 1997, Magistrate Judge Smith issued a ruling in which he recommended that Little's motion for summary judgment be granted as to all claims except a claim based on the First Amend-

ment and that the City's motion for summary judgment be granted in full In June 1997, the ruling was approved and adopted over the plaintiff's objection See *DeLeon v Little, 981 F Supp 728 (D Conn 1997)* n2

n2 The plaintiff began to pursue an appeal but the appeal was withdrawn

The case sat in that posture until the parties were ordered to appear for a pretrial conference in April 1998 By then Little had died A motion to substitute her executor as the named defendant was subsequently filed and granted, and the case was set for trial

Jury selection took place in October 1998 The trial lasted four days At the trial, the plaintiff claimed that the defendant had violated her First Amendment rights in two ways: (1) by infringing on her right to freedom [*6] of association by prohibiting her from spending time during the business day in the office of the Democratic members of the City Council; and (2) by infringing on her right to political neutrality by impliedly threatening at a meeting at a Burger King restaurant that her job was in jeopardy because she was not attending meetings of the PFC The plaintiff was not permitted to go to the jury on the first of these theories but was permitted to go to the jury on the second one The jury found that Little's conduct at the Burger King meeting violated the plaintiff's First Amendment right to political neutrality The jury awarded no compensatory damages for the violation, which occurred approximately eight months before the plaintiff's nervous breakdown However, the jury did award nominal damages in the amount of $ 10 and punitive damages in the amount of $ 150,000

The defendant filed post-trial motions for judgment as a matter of law and for a new trial or, in the alternative, remittitur The plaintiff opposed those motions and filed a motion for an award of attorneys' fees and costs The plaintiff requested an award of $ 259,850 in fees based on 866.5 hours at $ 200 per hour plus a [*7] 50% bonus, and $ 17,589 55 in costs The motion for judgment as a matter of law was denied, but the motion for remittitur was granted and a new trial was ordered unless the plaintiff accepted a reduced award of punitive damages in the amount of $ 7,500 See Rulings on Post-Trial Motions [doc # 176](filed Sept 29, 1999)

Plaintiff has accepted the remittitur and renewed her motion for an award of attorneys' fees and costs In her renewed motion, plaintiff insists that she should receive a fully compensatory fee for all the time her attorneys spent on the case from its inception, plus a bonus for unusual success In support of this position, she asserts that the Burger King meeting occurred as part of an "on-

going course of conduct during a thirty month period"; that the defendant's conduct at the meeting was "intermingled" with her other conduct toward the plaintiff; that all the claims were "inherently interrelated"; and that she has won a "great victory " Pl 's Mem Supp (Renewed) Mot For Att'ys' Fees & Costs [doc # 178] at 2, 4 (unnumbered)

Without waiving her claim to a fully compensatory fee and bonus, plaintiff also contends that, at a bare minimum, she should be [*8] awarded $ 144,549 in fees. This sum would compensate her for: (1) all hours her counsel spent on the case after June 1997 (i e , after the rulings on the motions for summary judgment); (2) all hours Attorney C Thomas Furniss spent on the case before June 1997 on the ground that all he ever worked on was the First Amendment claim; and (3) 25 per cent of the hours spent by other attorneys on the case before June 1997 on the ground that this is the best estimate plaintiff's counsel can provide regarding the amount of time they spent on the First Amendment claim during that phase of the litigation. Plaintiff continues to maintain that $ 200 per hour is a reasonable rate for each of the hours for which she seeks compensation and renews her claim for costs in the amount of $ 17,589.55

Defendant does not deny that plaintiff is a prevailing party presumptively entitled to an award of reasonable attorneys' fees. However, defendant urges the court to award significantly less than the plaintiff's reduced figure of $ 144,549 Defendant suggests that the most the court should award is $ 58,662.50, which it views as a "generous" figure for obtaining a recovery of $ 7,510 in nominal and punitive [*9] damages. Def 's Opp'n to Renewed Mot For Att'ys' Fees & Costs [doc # 180] at 4, 7 This sum is arrived at by: (1) compensating plaintiff for virtually all the hours spent on the case by her lead counsel, James M Quinn, and Attorney Furniss after the summary judgment rulings; (2) compensating her for almost all the hours Attorney Furniss expended on the case before then; (3) reducing the hours spent by Attorney Quinn before the summary judgment rulings to 15% of their value (after excluding billing entries that on their face relate to matters other than the First Amendment claim against Little); (4) excluding all time spent by other lawyers on the plaintiff's team (i e , all lawyers except James M Quinn and C Thomas Furniss); (5) compensating Attorney Quinn at a rate of $ 175 per hour; and (6) compensating Attorney Furniss at a rate of $ 150 per hour. Defendant opposes plaintiff's request for reimbursement of costs on the ground that she has failed to provide sufficient information regarding the nature or purpose of the costs to permit the court to make a reasonable award

II Discussion

The prevailing party in a federal civil rights case is entitled to an award of reasonable [*10] attorneys' fees See 42 U S C § 1988 The starting point for determining the fee that should be awarded is the calculation of the lodestar amount, which is arrived at by multiplying "the number of hours reasonably expended on the litigation by a reasonable hourly rate " Hensley v Eckerhart, 461 U S 424, 433, 76 L Ed 2d 40, 103 S Ct 1933 (1983) See Quaratino v Tiffany & Co , 166 F 3d 422 425 (2d Cir 1999) Reasonable attorneys' fees also include reasonable out-of-pocket expenses ordinarily charged to clients See LeBlanc-Sternberg v Fletcher, 143 F 3d 748, 763 (2d Cir 1998)

To enable a court to calculate the lodestar amount, fee applications should be supported by contemporaneous time records specifying the date, hours expended, and nature of work done See Hensley, 461 U S at 437 & n 12 Hours that are excessive, redundant, or otherwise unnecessary should be excluded See id at 434

A prevailing party is not entitled to a fee for hours dedicated to prosecuting unsuccessful claims if those claims were unrelated to the claim on which the party prevailed [*11] See id at 434-35 However, "if the plaintiff won substantial relief, and all of his claims for relief 'involved a common core of facts' or were 'based on related legal theories,' so that 'much of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis,' there should be a fee award for all time reasonably expended " LeBlanc-Sternberg, 143 F 3d at 762 (quoting Hensley, 461 U S at 435) See Carroll v Blinken, 105 F 3d 79, 81 (2d Cir 1997)

The lodestar should be based on prevailing market rates for attorneys of comparable skill, experience, and reputation in the district See Blum v Stenson, 465 U S 886, 896 n 11, 79 L Ed 2d 891, 104 S Ct 1541 (1984), Kirsch v Fleet Street, Ltd , 148 F 3d 149, 172 (2d Cir 1998), Luciano v Olsten Corp , 109 F 3d 111, 115-16 (2d Cir 1997) When services are provided over many years, the objective of providing adequate compensation may call for use of current rather than historic hourly rates to compensate for delay in payment See Gierlinger v Gleason, 160 F 3d 858 882 (2d Cir 1998) [*12]

There is a strong presumption that the lodestar figure represents a reasonable fee See Quaratino, 166 F 3d at 425 However, the lodestar may be adjusted on the basis of several factors, including the "'results obtained '" Id (quoting Hensley, 461 U S at 434) "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained '" Farrar v Hobby, 506 U S 103, 114, 121 L Ed 2d 494, 113 S Ct 566 (1992) (quoting Hensley, 461 U S at 436) "This factor is particularly crucial where a plaintiff is deemed

2000 U S  Dist  LEXIS 18378, *

'prevailing' even though he succeeded on only some of his claims for relief " *Hensley, 461 U S  at 434*

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee " *Id  at 435* When a plaintiff recovers less than all the relief sought but the relief obtained is nevertheless substantial, a fee award based on all hours reasonably expended may still be appropriate if the relief obtained justifies the expenditure of attorney time See id  at n  11 However, if a plaintiff recovers [*13]  only minimal damages that fall well short of the relief sought, a reduction in the lodestar amount may be necessary and appropriate See *Farrar, 506 U S  at 114, Hensley, 461 U S  at 434,* see also *Hyde v  Small, 123 F 3d 583. 585 (7th Cir  1997)* (Posner, C J ) (district court must determine whether "the plaintiff was aiming high and fell far short, in the process inflicting heavy costs on his opponent and wasting the time of the court, or whether .    the case was simply a small claim and was tried accordingly") (citations omitted); cf *Pino v  Locascio, 101 F 3d 235, 237-38 (2d Cir  1996)*

A  The Lodestar Calculation

1  Partial Success

The first issue that must be decided is whether the time spent on plaintiff's unsuccessful claims should be included in the fee calculation Under Hensley, this requires a two-step analysis Step one asks whether the unsuccessful claims were related to the successful claim in fact or law If the answer is yes, step two asks whether the plaintiff achieved a level of success that warrants full compensation for the hours spent on the unsuccessful claims If the results obtained [*14] are "excellent," no reduction is warranted *Hensley, 461 U S  at 435* However, if the plaintiff obtained "only partial or limited success," a reduction may be necessary because the time expended might not be "reasonable in relation to the success achieved " *Id  at 436-37*

In Hensley, the Supreme Court recognized that "there is no certain method of determining when claims are 'related' or 'unrelated' " *id  at 437 n 12* In this case, reasonable people could disagree about whether the claims should be deemed related under Hensley All the claims in the complaint were at least marginally related because the First Amendment claim against Little based on the Burger King meeting could not be tried without some consideration of the history of the parties' relationship, which provided the factual underpinnings for the other claims n3 Moreover, it is conceivable that some of the work on the unsuccessful claims contributed to the plaintiff's success on the First Amendment claim n4 On the other hand, the successful First Amendment claim based on the Burger King meeting rested on a core of facts concerning the events of one evening,    [*15] whereas the unsuccessful claims rested on a slew of alle-

gations concerning a course of conduct encompassing all the cruel and abusive treatment, harassment, and discrimination the plaintiff allegedly suffered throughout a period of thirty months  n5 Severing the unsuccessful claims from the case was therefore possible and subtracting them from the case would have substantially reduced the amount of time plaintiff's counsel needed to spend on the case before the rulings on the motions for summary judgment n6

n3 At the trial, plaintiff was allowed to introduce evidence that she suffered a nervous breakdown, that she was required to run personal errands for Little, that Little was abusive, and that Little was known to be mean and vindictive This evidence was admitted to place the Burger King meeting in context and enable the jury to assess the plaintiff's credibility concerning her perception of what occurred at the meeting and the impact it had on her health

n4 For example, it is conceivable that work on the unsuccessful Fourteenth Amendment claims against Little and the City might have contributed to the plaintiff's success in persuading the jury that the plaintiff reasonably perceived Little as having the power to transfer her to a dead-end job

[*16]

n5 The theory of the unsuccessful claims, as described by plaintiff's counsel in opposing summary judgment on those claims, was that Little had "conducted a well-orchestrated and relentless campaign to control and direct Plaintiff's professional life and to oppress and destroy Plaintiff's personal life In this orchestration effort, Little had the cooperation -- at least by virtue of their inaction -- of colleagues on the City Council, of the City Clerk and of the Office of the Corporation Counsel, none of whom would act to protect Plaintiff's job, even when told of Little's orders to buy drugs The campaign of terror finally achieved its goal, ousting DeLeon from her job so that Little could replace her with a black employee. Her life, liberty and property interests were constantly assaulted, infringed on and partially stolen -- never to be fully regained and Sandra Little got her way "

Pl 's Resp  to Def  Little's Reply to Opp'n to Def Little's Mot  for Summ  J  [doc  # 78] at 7-8.

n6 Plaintiff has not shown that the work her counsel performed to develop the successful First Amendment claim and the unsuccessful claims was so intertwined that the claims should be deemed related on that basis alone. Such a claim would be difficult to sustain in any event because the time sheets submitted by plaintiff's counsel show that before the rulings on the summary judgment motions (which is the only time period at issue here), Attorney Furniss had primary responsibility for the First Amendment claim and did not work on any other claims. This tends to confirm that the First Amendment claim could be pursued independently.

[*17]

Assuming without deciding that all the claims in this case were sufficiently related to satisfy the Hensley standard of relatedness, n7 the hours expended on the unsuccessful claims must be excluded at step two of the Hensley analysis because the plaintiff obtained only limited success. n8 Plaintiff's loss on the unsuccessful claims was not a minor defeat. The First Amendment claim against Little based on the Burger King meeting was clearly secondary to the other claims in the complaint, n9 which provided a vehicle for seeking compensatory damages for all the harms alleged in the complaint, plus punitive damages for Little's alleged cruelty, harassment, and discrimination. n10 Without those claims, plaintiff failed to obtain compensatory damages. n11 Moreover, because of the limited nature of the First Amendment violation found by the jury, the punitive damages awarded to the plaintiff had to be capped at $ 7,500 as a matter of law. n12

n7 In Hensley, the Court stated that in civil rights cases, "unrelated claims are unlikely to arise with great frequency." *Hensley, 461 U.S. at 435.*

[*18]

n8 When the success achieved is limited compared to the relief sought, the court may either identify specific hours to be eliminated or simply reduce the award to make it reasonable in light of the limited nature of the relief obtained on the merits. See *Hensley, 461 U.S. at 436-37.*

n9 The First Amendment claim based on the Burger King meeting is only alluded to in the

complaint and only briefly discussed in the papers opposing the motions for summary judgment.

n10 At the final pretrial conference on October 6, 1998, plaintiff's lead counsel stated that, as a result of the summary judgment rulings, the plaintiff felt she had been denied her day in court on "all the actions that led to her illness." Tr. of Pretrial Conference at 28.

n11 The jurors were instructed that if they found a violation of the plaintiff's First Amendment rights based on the Burger King meeting, they could not award compensatory damages for the plaintiff's nervous breakdown in June 1992 because her psychiatric expert, Dr. Selig, could not attribute the breakdown to the Burger King meeting.

n12 See Rulings on Post-Trial Motions [doc # 176] at 16-19.

[*19]

I have no doubt that the modest relief plaintiff has obtained falls well short of the relief she sought to obtain in bringing the action, and that a fully compensatory fee award would be unreasonable in light of the limited nature of her success. The plaintiff can be adequately compensated in accordance with the law and policy of statutory fee awards by awarding a reasonable fee based on the hours her counsel devoted to the successful First Amendment claim.

2. Hours For Work Done By Attorney James M. Quinn

The next issue is the number of hours that should be included in the lodestar calculation for work done by plaintiff's lead counsel, James M. Quinn. It is undisputed that almost all the time he spent on the case after the rulings on the motions for summary judgment may be included. Based on independent review of each item in the billing records, this figure is 207.3 hours. n13

n13 This figure excludes 4.75 hours for services rendered in connection with an "appeal" on June 26 and 29, 1998.

As noted earlier, [*20] the parties disagree regarding the number of hours that should be included in the lodestar calculation for work performed by Attorney Quinn before the summary judgment rulings. Plaintiff

contends that she should be compensated for 25 per cent of all the hours he spent on the case through that point in the litigation. The defendant, on the other hand, urges the court to compensate the plaintiff for 15 per cent of those hours, after excluding certain billing entries that on their face appear to be unrelated to the First Amendment claim.

Plaintiff has not taken issue with defendant's argument that the billing entries listed at page 5 of defendant's memorandum in opposition should be excluded from the lodestar. After reviewing each of the billing entries on that list, it appears that the listed entries for the years 1992 through 1996 are unrelated to the First Amendment claim against Little. Accordingly, those hours are excluded. The number of hours excluded on this basis is 56.75, leaving a balance of 360.30 for the period through June 1997. n14

> n14 The defendant's list of challenged billing entries include three entries for 1998. Of these, the first two are properly excluded from the lodestar because they relate to an "appeal" and the last is properly excluded because, although the entry plainly relates to the trial, the billing person "CC" is not identified.

[*21]

The next issue is how many of those 360.30 hours should be included in the lodestar. If plaintiff's estimate of 25 per cent is used, one would include 90.08 hours; if defendant's estimate of 15 per cent is used, only 54.05 hours would be included. Recognizing that this is not an exact science, the higher figure will be used because Attorney Quinn is in the best position to estimate how much time he actually spent on the First Amendment claim. n15

> n15 The papers submitted by plaintiff's counsel state that identifying the number of hours spent on the First Amendment claim is "an impossible and unrealistic assignment, given the fluid nature of the allegations contained in this Complaint." Pl.'s Mem. Supp. (Renewed) Mot. [doc. # 178] at 1-2 (unnumbered). That said, plaintiff's counsel proceeds to provide the estimate of 25 per cent, which the court is willing to credit.

Ninety hours for Attorney Quinn might appear to be somewhat excessive especially when viewed in light of the number of hours billed by Attorney [*22] Furniss. However, much of the time Attorney Quinn expended on the case through June 1997 was devoted to mediation, and it cannot be said that the amount of time he spent trying to resolve the case through mediation was unreasonable. He also devoted substantial time to deposition discovery, which was not clearly excessive (many of the deponents testified at trial). In addition, he spent substantial time opposing the defendant's motion for summary judgment, which challenged the First Amendment claim as well as the other claims.

In this context, the court includes 90.8 hours in the lodestar as time reasonably expended by Attorney Quinn on this case through June 1997. Adding the 207.3 hours he spent thereafter yields a total of 298.10 hours.

3. Hours for Work Done By Attorney C. Thomas Furniss

It is undisputed that virtually all the hours Attorney Furniss spent on the case should be included in the lodestar because from the outset of the case he focused on the First Amendment claim against Little. The only billing entry for him that the defendant would exclude from the lodestar is an entry for .60 hours on 5/16/95; defendant would exclude that entry on the ground that it relates to [*23] plaintiff's claim against the City. See Def.'s Opp. [doc. # 180] at 6. Plaintiff has not taken issue with defendant's argument that this entry should be excluded. Other billing entries for Attorney Furniss also appear to relate to the claim against the City, namely: the other entry for 5/16/95 ( .80 hours), and entries for 6/10/96 (1.2 hours), 6/20/96 (1.5 hours), and 6/22/96 (1 hour). Excluding those entries, the number of hours that should be included in the lodestar for Attorney Furniss is 83.10.

4. Other Attorneys

Plaintiff seeks compensation for time spent by other attorneys. Defendant would exclude any and all such hours on the grounds that plaintiff has offered no justification for seeking compensation for more than two attorneys and the billing entries for the other attorneys are "woefully non-descriptive and provide little assistance in assessing the reasonableness of the work done." Def.'s Opp. [doc. # 180] at 4. Plaintiff has not replied to these objections.

The plaintiff has the burden of demonstrating that it was reasonably necessary to involve additional lawyers in the prosecution of this case and that the time for which they seek compensation was reasonably [*24] expended. In the absence of such an explanation, their time must be excluded unless the court's firsthand knowledge of their involvement in the matter (or some other source of information) provides a sufficient basis for including their hours in the lodestar calculation.

In this case, the plaintiff claims a right to be compensated for services rendered by Attorneys Joseph P.

Quinn, Jr. (91.40 hours), John J. Quinn (27 hours) and James F. Aspell (8 hours). Plaintiff's papers make no attempt to explain why their services were reasonably needed to prosecute this case. This is not fatal to the plaintiff's claim with regard to Attorney Joseph P. Quinn because he participated in a lengthy pretrial conference in the courthouse on October 6, 1998, and then participated in the trial itself, and as a result I have a basis for assessing the nature and extent of his involvement in the case. However, this is not true with regard to the other two attorneys. Attorney Aspell did not file an appearance in the case and, although Attorney John J. Quinn did file an appearance on the eve of trial, I do not recall him participating in the pretrial conferences or the trial. n16

n16 As the defendant correctly notes in its opposition memorandum, Attorney John J. Quinn has not submitted an affidavit. See Def.'s Opp. [doc. # 180] at 4. Plaintiff has not attempted to correct this oversight.

[*25]

Accordingly, I agree with the defendant that the hours billed by Attorneys Aspell and John J. Quinn should be excluded. With regard to Attorney Joseph P. Quinn, Jr., I find that the hours he billed beginning in October 1998 (i.e. in connection with his appearances in court) should be included in the lodestar. The total number of hours that will be included on this basis is 55.9.

5. Reasonable Hourly Rates

The parties' disagreement as to the hourly rates that should be used to calculate the lodestar requires me to make certain findings. Based on my knowledge of the market for legal services in the Hartford area, and the affidavits of plaintiff's counsel, I find as follows:

In the past 6 years in the Hartford area, trial lawyers with experience in litigation under *42 U.S.C. § 1983* alleging official misconduct have been compensated for their services in such cases in the range of $125 to $225 per hour.

During that time, the regular hourly rate charged by Attorneys Furniss and Joseph P. Quinn, Jr. has been $175, although on occasion each one has charged $200 per hour. Attorney James M. Quinn specializes in workers' compensation cases and usually does not [*26] bill by the hour but has charged fees that would yield an effective hourly rate in excess of $200.

None of these three attorneys claims to have been involved in any other actions under § 1983.

This appears to be the first case that Attorney James M. Quinn has tried in federal court, but he has tried civil

cases in state court. Attorney Furniss frequently appears before this court in criminal cases, and he has tried civil cases in state court. Attorney Joseph P. Quinn, Jr. has tried civil cases in this court and state court.

Because compensation is sought for services rendered beginning in 1994, the hourly rate that is used in the lodestar calculation should take into account the need to provide compensation for delay in payment.

Based on these findings, I conclude that for the services they rendered in connection with litigating the successful First Amendment claim each of these three attorneys should be compensated at the same rate and that the rate should be $175 per hour.

Accordingly, the lodestar calculation is as follows: 387.1 hours multiplied by $175 per hour for a total of $67,742.50.

B. Adjustments to the Lodestar

For reasons that should be apparent, I am not persuaded [*27] that the lodestar figure should be adjusted upward as a bonus for success, as plaintiff has requested. In my opinion, given the limited nature of the plaintiff's success, a fee award of $67,742.50 is reasonable, if not generous. n17

n17 My award of $67,742.50 is disproportionate to the recovery of $7,510 but only slightly more so than the fee of $58,662.50 suggested by the defendant, and disparity in itself does not provide a basis for reducing an award in a civil rights case. See *Quarantino, 166 F.3d at 425-26, Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997)*

C. Disbursements

Plaintiff is entitled to be reimbursed for reasonable out-of-pocket expenses. The defendant's memorandum in opposition criticizes plaintiff's request for $17,589.55 on the ground that not enough information has been provided to justify an award. Plaintiff has not responded to this objection.

Most of the items that appear on plaintiff's list of disbursements are self-explanatory [*28] as to the nature or purpose of the expense (e.g., mediation fees for Sta-Fed ADR, Inc., service of process fees, deposition expenses, expert witness fees, and fees for trial witnesses) and the total amount of those expenses appears to be within the range of reasonableness. n18 Other items on the list do not provide a basis for reimbursement without more information as to the nature and purpose of the expense and its connection to the First Amendment claim

against Little (viz , disbursements before 6/14/94, disbursements for Pat Vontell for 3/19/96 and James M Quinn for 4/4/96, disbursement to Russell Huk, disbursements to clerk for $ 105)  As to these, I agree with the defendant that the plaintiff has failed to provide sufficient information to support an award  Accordingly, the plaintiff will be awarded an additional amount of $ 16,056 70

> n18 The deposition fees are on the high side  However, defendant has not contended that the deposition fees are excessive, many of the witnesses who were deposed wound up testifying at trial, and it would be difficult to allocate the time spent in depositions to one claim or another, see *Hensley. 461 U S  at 448* (Brennan, J , concurring in part and dissenting in part)  The fees paid to Dr  Selig also appear to be on the high side but

defendant has not challenged those fees as excessive either

[*29]

III. Conclusion

For the foregoing reasons, the plaintiff's motion for an award of fees and costs is granted in part and denied in part  Plaintiff is awarded fees and expenses in the total amount of $ 83,799 20

So ordered

Dated at Hartford, Connecticut this 2nd day of March 2000

Robert N  Chatigny

United States District Judge

LEXSEE 2006 U.S. DIST. LEXIS 62906

**JOHN J. FABBRICANTE, Plaintiff, -against- THE CITY OF NEW YORK, ROY KATZ, AND JOSEPH MASTROPIETRO, JOHN SCUPELLITI, ANTHONY BI-ANCHIO, BERNARD GELMAN, JAMES CAMPBELL, DANNIEL WALLEN, JAMES NICKOL, ALBERT SOMMA individually and in their official capacity and all those acting in concert with them, Defendants.**

**01 CV 5575 (CPS) (RML)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 62906*

**September 5, 2006, Decided**
**September 5, 2006, Filed**

**PRIOR HISTORY:** *Fabbricante v. City of New York, 2002 U.S. Dist. LEXIS 27815 (E.D.N.Y., Nov. 12, 2002)*

**COUNSEL:** [*1] For John J. Fabbricante, Plaintiff: Lawrence Solotoff, Solotoff & Solotoff, Esqs., Great Neck, NY.

For City of New York, Defendant: Jane R. Goldberg, Corporation Counsel of the City of NY, New York, NY.

For Joseph Mastropietro, John Scupelliti, Anthony Bian-chino, Bernard Gelman, James Campbell, Danniel Wallen, Albert Somma individually and in their official capacity and all those acting in concert with them, Defendants: Jane R. Goldberg, Corporation Counsel of the City of NY, New York, NY; Jeffrey S. Dantowitz, The City of New York, Law Department, New York, NY

**JUDGES:** ROBERT M. LEVY, United States Magistrate Judge

**OPINION BY:** ROBERT M. LEVY

**OPINION:**

MEMORANDUM AND ORDER

LEVY, United States Magistrate Judge:

On December 19, 2005, the parties stipulated to a settlement in this case. In the stipulation, they agreed that the court would retain jurisdiction over the matter for purposes of ruling on plaintiff's attorney's fee application. On March 1, 2006, the parties consented to have me decide plaintiff's application for attorney's fees and costs. n1 For the reasons stated below, plaintiff's motion for attorney's fees is granted and plaintiff is awarded $ 150,389.77 in attorney's [*2] fees and $ 6,414.23 in costs.

> n1 The Honorable Charles P. Sifton, United States District Judge, signed the consent order on March 15, 2006.

**BACKGROUND**

The facts of this case were described in detail in Judge Sifton's Memorandum and Order dated November 12, 2002, familiarity with which is assumed. Briefly, plaintiff has been employed as a civil servant for the City of New York since 1981. (See Memorandum and Order, dated Nov. 12, 2002 ("Order"), at 2.) n2 From 1986 through 1990, plaintiff was an electrician in the Bureau of Fire Communications of the New York City Fire Department ("Fire Department") (Id. at 2-3; see also Third Amended Complaint, dated Nov. 7, 2003 ("Amended Compl."), P 40.) From 1990 to the present, plaintiff has worked as an electrician for the Buildings Maintenance Division of the Fire Department (Order at 3.) In 1994, the Buildings Maintenance Division took on all electrical responsibility for the Fire Department. (Id.)

> n2 In the Order, Judge Sifton assumed all facts alleged in the complaint to be true. (Order at 2.)

[*3]

Plaintiff has been a licensed master electrician since 1991 (Id.) In the event of a power failure, "brown out," "black out" or equipment malfunction, plaintiff has been responsible for ensuring that the loss of power does not disrupt communication within the Fire Department and will not impede the dispatch of fire equipment to the scene of an emergency (Id.) Plaintiff has worked on light, heat and power in the communications offices. (Id.) He has also worked with diesel generators and battery back-up systems, which were designed to maintain power in the intervals between power failures and emergency electrical power generation (Id.) Further, plaintiff has been responsible for testing and maintaining the "computer assisted dispatch system" and related equipment, such as voice alarms and alert tones (Id. at 4.) He has maintained and tested the light and power for the tele-printer, voice alarms, still alarm bells, firehouse speakers, and intercom systems. He has also relocated and installed various wires, panels and communications equipment (Id.) According to Judge Sifton's Memorandum and Order, plaintiff "is considered by his peers to be a dedicated and [*4] hard worker and a valuable employee." (Id. at 3.)

Beginning in the mid-1990's, plaintiff began reporting problems with the Fire Department's back-up power system that is used to communicate with Fire Department dispatchers in the event of an emergency power failure (Id. at 7-8; see also Plaintiff's Application and Declaration For Attorney's Fees, Costs and Expenses and Memorandum of Law in Support, dated Jan. 20, 2006 ("Solotoff Decl."), P 5.) As a result of his whistleblowing activity, defendants allegedly treated plaintiff with malice, animosity, discrimination, harassment and retaliation, and created a hostile and offensive work environment (Solotoff Decl. P 7.)

In 1996, plaintiff filed six Office of Collective Bargaining ("OCB") petitions concerning, among other things, whistleblower claims; the safety of the back-up power system; the denial of overtime, assignments and promotions; and harassment related to his whistleblowing activity (Order at 9.) More specifically, the OCB proceedings related to plaintiff's rights under the New York City Collective Bargaining Law ("NYCCBL"). Some of his petitions were directed at the International Brotherhood of Electrical [*5] Workers, Local 3 (the "Union"), and some were directed at the Fire Department. With respect to the Fire Department, plaintiff alleged that the Fire Department's agents: (1) interfered with his efforts to pursue grievances relating to overtime, including a refusal to accept his grievances; (2) leaked plaintiff's overtime complaints to other employees who might be adversely affected by plaintiff's grievances; (3) belittled plaintiff; and (4) discriminated and retaliated against plaintiff because of his grievance activity and his

filing of improper practice petitions challenging FDNY's actions (See OCB Decision and Order, attached as Ex. C to Solotoff Decl. ("OCB Order"), at 17.) Further, Fire Department supervisors allegedly: (1) threatened disciplinary procedures; (2) docked plaintiff's pay for time he spent related to filing grievances and improper practice claims; (3) failed to consider his applications for supervisory positions; and (4) rejected plaintiff's continuing demand for equalization of overtime assignments (Id. at 17-18.)

In 1998, plaintiff retained the law firm of Solotoff & Solotoff (Solotoff Decl. P 19.) Plaintiff filed the Complaint in this case on August 17, 2001; [*6] an Amended Complaint on September 18, 2001; a Second Amended Complaint on December 17, 2002; and a Third Amended Complaint on November 23, 2003 (Id.) In the initial complaint, plaintiff alleged that, because of his whistleblowing activity, he was (1) passed over for desirable positions, (2) physically threatened, (3) denied desirable assignments, (4) required to work with defective equipment, (5) denied transfers, and (6) falsely accused of wrongs he did not commit (Order at 10-12.) Defendants filed a motion for partial dismissal on January 4, 2002. Judge Sifton dismissed all claims against the Fire Department on consent, and dismissed plaintiff's due process claim under *42 U.S.C. § 1983*; his conspiracy claim under *42 U.S.C. § 1985*; his conspiracy claim under *42 U.S.C. § 1986*; his New York City whistleblower claim; and his claim of negligence. (Id. at 50-51.) Judge Sifton allowed all other claims to proceed. Plaintiff's Third Amended Complaint alleged violations of *42 U.S.C. § 1983* (discrimination, retaliation, free speech, due process, and equal protection violations); *42 U.S.C. § 1985*; [*7] *42 U.S.C. § 1986*; and the New York State whistleblower statute; as well as tortious interference with employment; intentional infliction of emotional distress; and retaliation in response to the filing of this lawsuit, beginning in August 2001 (Amended Compl. PP 166-262.) Roy Katz was the Assistant Commissioner of the Fire Department and Joseph Mastropietro has been the Director of the Fire Department's Buildings Maintenance Division since the inception of this case. (Id. PP 15, 21.) John Scupelliti, Anthony Bianchino, Bernard Gelman, James Campbell, Danniel Wallen and Albert Somma were and are officers, managers, supervisors, stewards and personnel with the Fire Department.

According to plaintiff, defendants violated his civil rights throughout the OCB proceedings; thus, the basis for his allegations in the complaint stem from occurrences before and particularly during those proceedings (Solotoff Decl. P 11; see also Order at 10.) On October 30, 2003, the OCB found that the Fire Department and the Union illegally discriminated and retaliated against plaintiff and issued a Cease and Desist Order. After the

parties settled this case in 2005, they [*8] stipulated that plaintiff is a "prevailing party" and is entitled to a fee award (Solotoff Decl P 33 )

Plaintiff seeks attorney's fees for representation of his interests during all the proceedings had herein, which, according to plaintiff, include the administrative proceedings and the federal lawsuit Plaintiff seeks $ 394,368 75 in attorney's fees, and $ 15,788 42 for costs, as well as a fee enhancement and post-settlement interest at the rate of 9% per annum (Id at 37 ) n3

> n3 Plaintiff modified this request on March 9, 2006 to include time spent on the response to defendants' opposition However, plaintiff's attorneys did not provide contemporaneous time records for those hours

Defendants object to plaintiff's application on a number of grounds, arguing: (1) plaintiff's attorneys have not demonstrated the reasonableness of their proposed hourly rates; (2) the hours billed by plaintiff's attorneys are excessive; (3) the costs billed by plaintiff's attorneys are excessive; (4) plaintiff is not entitled [*9] to recover fees incurred in connection with his administrative claims; and (5) plaintiff is not entitled to the requested fee enhancement or post-settlement interest (See Defendants' Memorandum of Law In Opposition to Plaintiff's Application for Attorney's Fees and Expenses, dated Feb 24, 2006 ("Defs ' Mem ") )

## DISCUSSION

"The calculation of reasonable attorney's fees is a factual issue whose resolution is committed to the discretion of the district court " *Saulpaugh v Monroe Community Hosp , 4 F 3d 134, 145 (2d Cir 1993)* The rationale is that "[t]he trial judge is in a better position than an appellate court to appraise the need for and potential benefits derived from the attorney's services " *Rosario v Almagamated Garment Cutters' Union, 749 F 2d 1000, 1004 (2d Cir 1984)*

In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent and work done. See *Cruz v Local Union No 3 of the IBEW, 34 F 3d 1148, 1160 (2d Cir 1994)*; *Lewis v Coughlin, 801 F 2d 570, 577 (2d Cir 1986)*; *New York State Ass'n for Retarded Children, Inc v Carey, 711 F 2d 1136, 1148 (2d Cir 1983)* [*10] In determining reasonable attorney's fees, the court calculates a "lodestar" figure "by multiplying 'all reasonable hours expended by the prevailing party's attorney by a reasonable hourly rate'" *Bourgal v Atlas Transit Mix Corp , 1996 U S Dist LEXIS 20310, 93 CV 0569, 1996 WL 75290, at *6 (E D N Y Feb 7, 1996)*

(quoting *Clarke v Frank, 960 F 2d 1146, 1153 (2d Cir 1992)*; *DiFilippo v Morizio, 759 F 2d 231, 234 (2d Cir 1985)*)

The United States Supreme Court has noted that courts may consider the following factors in making a fee determination: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases [*11] " *Hensley v Eckerhart, 461 U S 424, 430 n 3, 103 S Ct 1933, 76 L Ed 2d 40 (1983)* (citation omitted)

A. Hourly Rate

Courts determine the reasonable hourly rate by looking to the hourly rate "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation '" *Bourgal v Atlas Transit Mix Corp , 1996 U S Dist LEXIS 20310, No 93-CV-569,1996 WL 75290, at *6 (E D N Y Feb 7, 1996)* (quoting *Miele v New York State Teamsters Conf Pension & Ret Fund, 831 F 2d 407, 409 (2d Cir 1987)*) Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. *Chambless v Masters, Mates & Pilots Pension Plan, 885 F 2d 1053, 1058-59 (2d Cir 1989)*

Plaintiff's counsel maintains an office in Great Neck, New York, which is in this judicial district According to one recent case, "prevailing rates [in the Eastern District of New York] have ranged from $ 200-$ 300 for partners, $ 200-$ 250 for senior associates and $ 100-$ 150 for junior associates." *Morin v Nu-Way Plastering, Inc , 2005 U S Dist LEXIS 37867, No CV 03-405 (LDW)(ARL), 2005 WL 3470371, [*12] at *2 (E D N Y Dec 19, 2005)* See also *LaBarbera v J E T Resources, Inc , 396 F Supp 2d 346, 353 (E D N Y 2005)* ("the reasonable rate for legal services in the Eastern District in 2005 would appear to be approximately $ 250 for partners, $ 150 for associates, and $ 60 for paralegals per hour "); *Atlantic Recording Corp v Elizabeth Records, Inc , 2006 U S Dist LEXIS 19677, 05 CV 2309 (SLT), 2006 WL 1027151, at *1 (E D N Y Apr 14, 2006)* (awarding $ 250 for a partner and $ 150 for an associate, and noting that "courts in this district have not been as generous as courts in the Southern District of New York ") n4

n4 The "prevailing community" that a district court should consider is usually "'the district in which the court sits,' unless there has been a showing that 'special expertise of counsel from a . . . [different] district was required.'" *Cruz*, 34 F.3d at 1159 (quoting *Polk v. New York State Dep't of Correctional Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)). In this district, however, where lawyers from the Southern District frequently appear, the higher rates charged by Southern District attorneys have been awarded in Eastern District litigation. See, e.g., *Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 63 (E.D.N.Y. 2003); *New Leadership Comm. v. Davidson*, 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998). Since plaintiff's counsel's place of business is in Nassau County, it is not necessary or appropriate to consider typical Manhattan rates in this case.

[*13]

Even in the Southern District of New York, courts are reluctant to award over $ 400 per hour for experienced partners. See *Trs. of the E. States Health & Welfare Fund v. Crystal Art Corp.*, 2004 U.S. Dist. LEXIS 8932, No. 00 Civ. 0887, 2004 WL 1118245, at *6 (S.D.N.Y. May 19, 2004) (approving $ 350 per hour for named partner with approximately thirty years of litigation experience); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 2004 U.S. Dist. LEXIS 6834, No. 02 Civ. 4200, 2004 WL 856329, at *4 (S.D.N.Y. Apr. 20, 2004) (approving hourly rate of $ 325); *I.L.G.W.U. Nat'l Retirement Fund v. ESI Group, Inc.*, 2003 U.S. Dist. LEXIS 626, No. 92 Civ. 0597, 2003 WL 135797, at *3 (S.D.N.Y. Jan. 17, 2003) (approving rate of $ 350 per hour for partner with over twenty years of experience, where work was first rate).

Plaintiff retained Solotoff & Solotoff in 1998 on an agreed hourly rate of $ 325 for partners, and $ 250 for associates, subject to annual rate adjustments (Id. P 31.) Lawrence Solotoff's rate ranged from $ 325 per hour in 1998 to $ 450 per hour in 2005. (Id., Ex. D.) Cheryl Solotoff's rate has remained at $ 375 per hour since 2001, while associate Darryn Solotoff's rate is $ 150 per hour. The [*14] plaintiff is, and always remains, obligated to pay attorney's fees for services rendered on his behalf. (Id. P 32.) I find Lawrence and Cheryl Solotoff's hourly rates excessive in light of the prevailing hourly rates in the Eastern District of New York. n5

n5 "[T]he presumption that the attorney's customary billing rate constitutes the market rate

for his services under § 1988 may be rebutted by evidence that this rate exceeds the prevailing community rates . . ." Martin A. Schwartz and John E. Kirklin, Section *1983 Litigation* 261-64 (3d ed. 1997). In this case, attorney's fees must be reasonable and comparable to hourly rates prevailing in the Eastern District of New York.

Lawrence Solotoff is a partner with the law firm of Solotoff & Solotoff and has been in practice for over 32 years. (Solotoff Decl. P 72.) He is an adjunct professor of law at Touro Law School and has published a treatise on sex discrimination in the workplace as well as a number of other employment law articles. [*15] (Id. P 75.) He has extensive experience in employment litigation and has chaired or co-chaired a number of labor and employment law committees over the past twelve years. (Id. PP 76-77.) Considering that Mr. Solotoff has worked diligently on this case for over seven years, I find that he is entitled to be compensated at a rate of $ 325 per hour for work beginning in 1998. See *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (finding that where the services are performed many years before the award is made, the rates used by the court to calculate the lodestar should be current rather than historic hourly rates).

Cheryl Solotoff is a partner in the law firm of Solotoff & Solotoff and has been in practice for over 18 years. (Solotoff Decl. P 71.) She has represented a variety of clients that include "corporations, partnerships, developers and individuals in business transactions." (Id.) Although she acted as co-counsel in some of the firms' labor and employment cases, it is unclear from plaintiff's submission whether Ms. Solotoff has a background in labor and employment law. Additionally, she did not act as lead counsel in the numerous proceedings [*16] before this court. I find that she is entitled to be compensated at a rate of $ 225 per hour for work beginning in 2001. Darryn Solotoff is an associate of counsel to the law firm of Solotoff & Solotoff and has been in practice for approximately one year. (Id.) He was admitted to practice law in the State of New York in 2005. Considering that he was admitted to the bar only a few months prior to performing research in this case, I find that he is entitled to be compensated at a rate of $ 100 per hour. See *Morin*, 2005 U.S. Dist. LEXIS 37867, 2005 WL 3470371, at *2 (finding $ 100 to $ 150 a reasonable amount for junior associates).

B. Excessive Hours

According to the Supreme Court, the district court should exclude from the initial fee calculation hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that

are excessive, redundant or otherwise unnecessary . " Id.

I. Block Billing, Duplicative and Unnecessary Attorney Work

Defendants contend that attorney time records should not include entries that lump together more than one activity (Defs. [*17] ' Mem at 14.) Defendants allege that 334 hours are block-billed, "including every court appearance in which travel time and other items for non-legal work are incorporated and billed without any reduction." (Id at 15.)

Courts have rejected "lumped billing entries where attorneys either combined items which should have been compensated at different hourly rates (such as time for travel to and attendance at meetings, where travel time was compensated at a lower rate), or mixed legitimate requests with requests for work which may not have been compensable at all." *Hutchinson v. McCabee, 2001 U.S. Dist. LEXIS 11927, 95 Civ 5449 (JFK), 2001 WL 930842, at \*4 (S.D.N.Y. Aug. 15, 2001).* At the same time, the Supreme Court has cautioned that a "request for attorney's fees should not result in a second major litigation" and "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended." *Hensley, 461 U.S. at 437, 437 n. 12.* Although the Second Circuit does not prohibit the practice of block billing, detailed fee applications are preferable.

In general, I find plaintiff's attorneys' time entries sufficiently specific and detailed. [*18] (See Solotoff Decl., Ex. D.) Although the time records contain some instances of block billing, I do not find those instances so extensive as to impede the court's assessment of the reasonableness of the hours spent on the litigation (See Declaration of Jane R. Goldberg, Esq., dated Feb. 24, 2006 ("Goldberg Decl"), Ex. 5.) Therefore, I will not reduce the requested attorney's fees on that account. See *Irish v. City of New York, 98 Civ. 713, Civ 9614 (BSJ) (RLE), 2004 WL 444544, at \*8 (S.D.N.Y. June 14, 2005).* Undisclosed travel time and blocks of time spent on the administrative proceedings will be discussed below.

Defendants also argue that plaintiff's attorneys should have billed clerical tasks, such as filing, at a lower hourly rate (Defs' Mem. at 14-16, 21.) Generally, clerical and secretarial services are considered part of overhead and are not charged to clients. *Williams v. New York City Housing Auth., 975 F. Supp 317, 324 (S.D.N.Y. 1997).* However, courts disagree as to whether administrative tasks such as filing and service of papers can be included in a fee application. See *Sulkowska v. City of New York, 170 F. Supp. 2d 359, 369 (S.D.N.Y. 2001)* [*19] (excluding filing, photocopying, mailing, faxing and service of papers from the fee application); *Society*

*for Good Will to Retarded Children v. Cuomo, 574 F. Supp. 994, 999 (E.D.N.Y. 1983)* (finding that filing, delivery, and service of papers are "normally subsumed within an attorney's overhead"), vacated on other grounds, *737 F.2d 1253 (2d Cir. 1984).* But see *Pascuiti v. New York Yankees. 108 F. Supp 2d 258, 267 (S.D.N.Y. 2000)* (ordering that "faxing, filing, photocopying, and drafting affidavits of service" be compensated at $ 50 per hour) (citing *Luciano v. Olsten Corp., 925 F. Supp. 956, 966 (E.D.N.Y. 1996)* (finding that certain non-legal work, such as file organization, should be compensated at $ 50 an hour))

On the other hand, it is clear that paralegal work is properly compensated, but at a lower hourly rate. *United States Football League v. National Football League, 887 F.2d 408, 416 (2d Cir. 1989).* Paralegal work generally includes preparation of trial exhibits, factual investigation, assistance with depositions, researching and cite checking. *Missouri v. Jenkins, 491 U.S. 274, 288, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989);* [*20] *Sulkowska, 170 F. Supp. 2d at 366-69.* "Paralegal and law clerk billing rates ranging from $ 70 to $ 85 per hour are acknowledged to be well within reason." *Williams, 975 F. Supp at 324.* See also *McKay v. Barnhart, 327 F. Supp. 2d 263, 270-71 (S.D.N.Y. 2004)* (finding that $ 75 per hour is the prevailing rate for paralegal work).

The court notes that plaintiff's counsel devoted approximately five hours to clerical and paralegal work. (Goldberg Decl., Ex. 7.) For the five hours involving faxing, filing, and drafting affidavits of service, the reasonable fee is $ 50 per hour. See *Pascuiti, 108 F. Supp. 2d at 267.* Courts have acknowledged that if an attorney representing the prevailing plaintiff is from a small law office and litigation support services, such as research and motion preparation, are performed by a partner out of necessity, then that attorney should not be penalized for time reasonably expended on such tasks. *Id. at 267-68.* Therefore, a further reduction in fees for these tasks is not warranted.

It appears defendants' primary complaint is that plaintiff's attorneys seeks $ 410,157.17 for [*21] fees and expenses for a case that defendants characterize as "routine," and that settled "with virtually no discovery and no depositions." (Defs' Mem. at 16.) According to the Second Circuit, a fee application should specify not only the hours expended, but also the "nature of the work done." *Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998).* "Hours that are excessive, redundant or otherwise unnecessary, are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id. at 173* (internal citations and quotations omitted). I agree to a certain extent with defendants on

this point  For example, an inordinate number of time entries involve an attorney's "review of the file" or "review of the documents " n6 Further, it appears that travel time was incorporated and billed without reduction (Goldberg Decl , Ex  6 ) Counsel also billed an excessive amount of time for "meetings with client" and "teleconferences with client " (Goldberg Decl , Exs  12-13 ) A twenty percent reduction in plaintiff's [*22] attorneys' billing records is necessary to account for work that was duplicative and excessive  See *Kirsch, 148 F 3d at 173*; *Bridges v  Eastman Kodak Co , 1996 U S  Dist  LEXIS 809, 91 Civ  7985 (RLC), 1996 WL  32325, at *6 (S D N Y  Jan  26, 1996)*  Similar to Bridges, "[b]esides trimming the fat off of the fee application, this reduction will account for any minor contested issues between the parties " *1996 U S  Dist  LEXIS 809, 1996 WL  32325, at *6*  A further reduction would be unduly harsh; this court recognizes that civil rights plaintiffs occupy an important policy role and plaintiff's attorneys did a commendable job

> n6  See Solotoff Decl  Ex  D-1  Entries that relate to a review of files, letters, transcripts, and documents (excluding "research" and "preparation") are dated: 10/9/1998;  11/14/1998; 11/15/1998;  11/24/1998;  1/18/1999;  3/18/1999; 2/7/2000;    2/15/2000;    5/15/2000;    5/21/2000; 2/19/2001;  2/26/2001;  5/19/2001;  2/13/2002; 2/14/2002;   1/29/2003;   1/30/2003;   3/3/2003; 5/27/300;    9/3/2003;    9/9/2003;    9/10/2003; 9/30/2003;   10/1/2003;   3/1/2004;   9/20/2004; 9/21/2004;  11/3/2004;  2/16/2005;  5/24/2005; 5/26/2005; 11/1/2005; 12/4/2005; and 1/2/2006

[*23]

## II  Media Coverage

Plaintiff's attorneys billed for "attention" to press coverage, such as letters to the *New York Law Journal* and *The Chief*  Defendants argue that this time is not recoverable  (Defs ' Mem  at 22; see *Bridges, 1996 U S  Dist  LEXIS 809, 1996 WL  32325, at *7* ) The court finds that communication with the media is not recoverable, and accordingly, will deduct eight hours from the fee application  (See Goldberg Decl , Ex  14 )

## III  Claims Plaintiff Voluntarily Dismissed

Plaintiff seeks compensation for time spent on his claim against James Nickol, whom he voluntarily dismissed from the case on March 27, 2003  Plaintiff also seeks compensation for hours expended on "substituting the representative of Roy Katz's estate as a party defendant following Mr  Katz's untimely death " (Defs ' Mem  at 22 ) However, plaintiff never substituted the represen-

tative of Katz's estate and he withdrew the defamation claims against Katz in the Third Amended Complaint  Defendants allege that, pursuant to Hensley, the portions of time plaintiff's attorneys spent pursuing these claims are not recoverable  (Id  at 22-23 ) According to Hensley, "[w]here the plaintiff [*24]  has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee " *461 U S  at 440*  See also *id  at 434* ("[A] plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories ")

Defendant Nickol was represented by independent private counsel, and according to defendants, such work was not incurred on account of any claims against the City  Plaintiff has failed to show how he was a prevailing party on this claim; therefore, the court will deduct 10 hours from the fee application  (Goldberg Decl , Ex  15 ) Further, plaintiff has failed to show how research related to the substitution of Katz's estate is related to the overall claims on which plaintiff prevailed  Therefore, I will deduct 10 hours incurred with respect to the claim against Katz  (Goldberg Decl , Ex  16 )

## C  Administrative Proceedings

According to defendants, plaintiff seeks to recover $ 176,168 75 for attorney's fees and $ 11,101 50 in costs incurred in connection with the administrative [*25] proceedings  (Defs ' Mem  at 27 ) Defendants argue that plaintiff is not entitled to attorney's fees relating to the OCB administrative proceedings  They allege that the OCB proceedings "were intended to vindicate plaintiff's employment rights created by state law, and are not prerequisites to his raising any of his claims in this federal lawsuit  Indeed, the entire administrative proceeding before the OCB concerned whether plaintiff's rights under the New York City Collective Bargaining Law were violated, not whether his civil rights were violated " (Id  at 30 ) Additionally, defendants argue that plaintiff's attorneys have failed to identify the "discrete portions" of work in connection with plaintiff's administrative claims that were useful and necessary in advancing the federal litigation  (Id  at 31-38 )

Plaintiff's attorneys assert that the services and work performed for the administrative proceedings were "inextricably intertwined and interlinked" with the federal action  (Plaintiff's Memorandum of Law in Response to Defendant's Memorandum of Law in Opposition and in Further Support of the Application and Declaration for Attorney's Fees, Costs and Expenses, dated Mar  9, 2006 ("Pl  [*26]  's Reply Mem "), at 2 ) n7 Plaintiff's attorneys state that the "facts and evidence of discrimination by City officials [during the OCB proceedings] is inter-

twined with his right of free speech, equal protection, and due process, and to seek whistleblower protection " (Id. at 8 n  3 ) They also argue that the OCB work was useful and of the type necessary to advance plaintiff's federal constitutional and statutory claims. According to plaintiff, the "OCB proceedings became the relevant method of discovery of documents, testimony and cross-examination of the plaintiff and defendant and key corroborating witnesses before, during and after the       litigation that paralleled the OCB proceedings and [led] to the Third Amended Complaint and settlement of this case " (Solotoff Decl  P 18 )

> n7 In their reply, plaintiff's attorneys excluded 12 25 hours of time that they acknowledge was not transferable to the federal action

According to Judge Sifton, plaintiff filed six OCB petitions concerning, among other things, [*27] "whistleblower claims related to his participation in the DOI [City's Department of Investigation] of [Supervisor Anthony] Bianchio, the safety and efficiency of the Fire Department back-up power system, and the denial of overtime, assignments, promotions, and related harassment resulting from plaintiff's whistleblowing activity " (Order at 9 ) Judge Sifton found that the defendants named in the OCB proceedings "have each exhibited animosity towards plaintiff because he has pursued relief by these petitions " (Id. at 10; see also Amended Compl PP 166-180 )

*42 U S C  § 1988* provides:

> In any action or proceeding to enforce a provision of    *[§ 1983]*    the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs

In *Webb v  Board of Educ  of Dyer County, Tenn , 471 U S  234. 105 S  Ct  1923. 85 L  Ed  2d 233 (1985)*, the Supreme Court considered whether attorney's fees were recoverable for optional administrative proceedings in a *42 U S C  § 1983* action  In that case, an African-American elementary school teacher with tenure alleged that [*28]  he had been unlawfully terminated because the County Board of Education had not provided him with written charges or a pre-termination hearing, and because the Board's actions were racially motivated. *Id at 236-37*  After the case settled, the parties agreed that plaintiff was a "prevailing party" and plaintiff sought to

recover attorney's fees pursuant to *42 U S C  § 1988  Id at 237-38*

The plaintiff sought to recover a fee award for his counsel's services during the school board proceedings on two theories: (1) that the administrative hearings "were '[proceedings] to enforce a provision of *[§ 1983]*' within the meaning of *§ 1988*"; or (2) "that the time was 'reasonably expended' in preparation for the court action and therefore compensable under the rationale of *Hensley v  Eckerhart, 461 U S  424, 433, 103 S  Ct 1933, 76 L  Ed  2d 40 (1983).*" *Webb, 471 U S  at 239-40* The Court found that, unlike a Title VII plaintiff, the plaintiff in Webb was not "required" to pursue available state remedies before commencing proceedings in federal court; as a result, the plaintiff was not automatically entitled to attorney's [*29] fees because "[a]dministrative proceedings established to enforce tenure rights created by state law simply are not any part of the proceedings to enforce *§ 1983*     " *Id at 241* Therefore, the plaintiff was not entitled to recover on his first theory.

As to his second theory of recovery, plaintiff contended that his work in the administrative proceedings "was analogous to discovery" and "reasonably expended" to enforce the rights protected by *§ 1983  Id at 242* Therefore, he argued that time spent on the administrative proceedings was compensable as though the work had been performed after the lawsuit was actually filed. Id  The Court also rejected the plaintiff's second theory, noting that there was no "difficulty identifying the dividing line between the administrative proceeding and the judicial proceeding" because the "five years of work before August 1979 [for the administrative proceeding] were easily separated from the two years of work thereafter [for the lawsuit]." *Id at 243*

Thus, attorney's fees are generally not available for work performed in administrative proceedings in *§ 1983* actions  Id. However, [*30] in a case after Webb, the Supreme Court held that "even if the prior [administrative] proceeding is not a 'proceeding to enforce' one of the *§ 1988* civil rights laws, the 'discrete portion of the work product from the administrative proceedings' that 'was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement' can be part of the attorney's fees awarded under *§ 1988.*" *North Carolina Dept of Transp v  Crest St  Community Council, Inc , 479 U S  6, 15, 107 S  Ct  336, 93 L  Ed  2d 188 (1986)* (quoting *Webb, 471 U S  at 243*) See also *Tsombanidis v  W  Haven Fire Dep't, 352 F 3d 565, 581 (2d Cir  2003)*; *Murray v  Commissioner of N Y Dep't of Educ , 354 F  Supp  2d 231, 239 (E D N Y  2005)* Therefore, it is counsel's duty to identify the "discrete portion" of work from the administrative proceeding that was "useful" and

"necessary" to advance his client's federal claims. *North Carolina Dept. of Transp.*, 479 U.S. at 15.

While it may be that the "central focus" of Fabbricante's administrative claims were against the City of New York and Fire Department officials [*31] (Pl.'s Reply Mem. at 8), I find that based on the OCB decision, a sizeable portion of the administrative hearings and petitions was devoted to petitioner's grievances with the Union, and not with the parties who are defendants in this federal litigation. n8 (See OCB Order at 2-8; 13; 16; 18-20; 22-30; 38.) According to the OCB decision, plaintiff alleged that the Union violated the duty of fair representation by refusing to file grievances concerning overtime and interfered with his pursuit of overtime grievances (Id. at 29-30.) In the OCB's Cease and Desist Order, half of the specific orders are directed towards the Union. (Id. at 38-39.) The allegations and rulings against the Union clearly are not related to this proceeding.

> n8 Some of the individuals mentioned in the OCB decision are the same individuals being sued in this litigation. However, the OCB allegations against those individuals relate to a violation of the duty of fair representation and other NYCCBL provisions.

[*32]

Further, as stated above, all of the OCB proceedings relate to plaintiff's rights under the NYCCBL. With respect to the Fire Department, those allegations included discrimination against plaintiff for his participation in the activities of a public employee organization and for his filing of grievances and improper practice petitions. (Id. at 17.) n9 At the hearing before the trial examiner, plaintiff's attorneys argued that "any information about [plaintiff's federal claim] was *irrelevant* to the improper practice claims in the [administrative proceedings] and might be prejudicial to [plaintiff's] federal claims." (Id. at 22.) (emphasis added). The OCB members agreed, noting that:

> Even if the claims in the federal case arose from the same factual circumstances as those in the instant proceedings, they are based on the assertion of legal rights that are entirely different from the claims asserted here. [Plaintiff] has consistently and clearly cited the improper practice provisions of the NYCCBL as the source of his rights in the proceedings before us. This Board has exclusive original jurisdiction over these claims         ; it does [*33]

not have jurisdiction over the statutory and constitutional claims raised in the federal court action. For this reason, *evidence and testimony about the federal claims was irrelevant.*

(Id. at 22-23) (emphasis added). See *Barrow v. Falck, 977 F.2d 1100, 1104 (7th Cir. 1992)* ("[R]ights under labor contracts and local civil service laws do not arise under the Constitution or federal statutes, and efforts to secure their benefits in state forums are not 'proceedings to enforce' § 1983."). See also Amended Compl. P 80 ("OCB determines      whether plaintiff was the victim of illegal anti-union discriminatory intent, retaliatory action, and motives, culminating in improper practices in violation of [the] NYCCBL.")

> n9 See Background section for the specific allegations.

At the same time, it is difficult to say that the OCB proceedings had no effect on the federal litigation, and that there were no related factual issues. As plaintiff states, "[t]he facts [*34] and evidence of discrimination by City officials [during the OCB proceedings] [are] intertwined with his right of free speech, equal protection, and due process, and to seek whistleblower protection." (Pl.'s Reply Mem. at 8 n. 3; see also Order at 9-10.) Unlike in Webb, it is difficult if not impossible to separate all the time spent on the OCB proceedings from the time spent on the federal litigation, as the two matters often proceeded concurrently, with some of the same issues and defendants. It does appear that the OCB proceedings may have obviated the need for certain discovery in the federal litigation. (See Solotoff Decl. PP 15-18, 27-29.) Therefore, while plaintiff is not entitled to a blanket award for time spent at the administrative level, he is "entitled to an award for the hours his attorney spent at the administrative level which substituted for work that would have been required for the federal litigation." *Van Kast v. Board of Education, 1988 U.S. Dist. LEXIS 14942, No. 87 C 2582, 1988 WL 142247, at *4 (N.D. Ill. Dec. 27, 1988)* (noting that the calculation of the fee "must focus on the reasonable time for work that would have been required of plaintiff [in the federal [*35] litigation] by other means, i.e., through deposition and affidavit testimony, and it must not exceed the time actually spent.")

Courts have held that "[a]ttorney's fees may be granted for investigative work that was used for and, in fact, gave rise to the pending *42 USC § 1983* action" to the extent it "'proved directly relevant to the successful prosecution of the later civil rights' action." *Schlimgen v*

*City of Rapid City, 83 F. Supp. 2d 1061, 1071 (D.S.D. 2000)* (quoting *McDonald v Armontrout, 860 F 2d 1456, 1461-62 (8th Cir 1988)*) However, as defendants note, plaintiff has not identified the "discrete portion" of work from the OCB proceedings that might be compensable, and it is his burden to do so (Defs' Mem at 32-33 ) See *Clark v Board of Educ , 907 F Supp 826. 830 (D N J 1995)* ("The burden is upon the prevailing party to establish that the services for which it seeks fees actually advanced the civil rights litigation ") In Clark, the court denied fees for attorney time spent on the administrative proceeding, noting that "plaintiff's counsel argue[d], in the most conclusory of [*36] terms, that every task which they performed while defending plaintiff during the administrative proceeding and the subsequent appeals was necessary to plaintiff's civil right litigation, and thus, is compensable " *907 F Supp at 830* The court emphasized plaintiff's "burden," stating that it "is incumbent upon the prevailing party to submit a request for legal fees which permits the court to determine which fees were incurred in pursuing the federal litigation " *Id at 829*

While it may be that the OCB proceedings were intertwined with the federal litigation, plaintiff has failed to satisfy this burden, as he has not identified the discrete portions of work that contributed to the federal litigation For example, in 2000, entries include: "teleconference with client;" "teleconference with ALJ;" "preparation of witness statement and testimony;" "[a]ttend second day of [administrative] trial;" "attend to [administrative] trial;" and "[p]reparation for subpoenas of witnesses." (Solotoff Decl , Ex. D-1 ) Without more information, this court is not in a position to know whether each time entry was "both useful and of a type ordinarily necessary to [*37] advance the civil rights litigation to the stage it reached before settlement " *Webb, 471 U S at 243*; see *Murray, 354 F Supp 2d at 239* See also *Clark, 907 F Supp at 831* ("the Court is unwilling to assume that every single phone call and every conference was inextricably linked to plaintiff's civil rights litigation ")

In the reply declaration, plaintiff's attorneys amended their fee application to "exclude from the request those fees incurred that were particular to the OCB proceeding and could not be transferred to the district court action " (Plaintiff's Response to Defendant's Opposition and In Further Support of Plaintiff's Application and Declaration for Attorneys Fees Costs and Expenses, dated Mar 9, 2006 ("Solotoff Reply Decl "), at 1 ) Yet, plaintiff's attorneys excluded only 12 25 hours from the amended application Although they also provided some details regarding claims against Roy Katz and Joseph Mastropietro, I find that they still have not satisfied their overall burden, as required by *Webb* and *Clark* Nonetheless, I am persuaded that it would be inequitable to exclude compensation for all of the time [*38] spent on the OCB proceedings

Having thoroughly reviewed both parties' submissions and the relevant case law, I find that for time spent prior to 2001, 75% of Lawrence Solotoff's fees are not recoverable, either because they are completely unrelated to the federal litigation or they are not documented in a manner that allows the court to determine whether the OCB work substituted for work that would have been required for the federal litigation. However, counsel will be permitted to recover 25% of the fees incurred with respect to the OCB proceedings prior to 2001, as there is evidence that those tasks aided with the prosecution of the federal litigation. I also find that 30% of the work performed by Lawrence Solotoff in 2001 is not recoverable in this case, and that 30% of the work performed by Lawrence Solotoff in 2003 is not recoverable for the same reasons noted above

### D Costs

Plaintiff seeks $ 15,788.42 in costs (See Solotoff Decl, Ex. D-4.) Defendants argue that costs associated with attorney travel, the transcripts from the administrative proceedings, and Dr. Salvatore Ambrosino's expert witness fees should be denied because those expenses are "undocumented and [*39] excessive " (Defendants' Sur-Reply Memorandum of Law in Further Opposition to Plaintiff's Application for Attorney's Fees and Expenses, dated Apr 12, 2006 ("Defs' Sur-Reply"), at 6 ) Defendants also note that plaintiff does not "address or substantiate the $ 3,500 charged for 'photocopying, phone and fax fees and expenses from October 1998 to the present '" (Id. at 8 ) Further, defendants argue that costs associated with the administrative proceedings are not recoverable

With regard to Dr Ambrosino's expert witness fees, defendants correctly object to the inclusion of these fees in the reimbursement award In a *Section 1983* case, "the Court lacks the authority to reimburse for expert fees " *Duke v County of Nassau, 2003 U S Dist LEXIS 26536, 97 CV 1494, 2003 WL 23315463, at *7 (E D N Y Apr 14, 2003)* (quoting *Connor v Ulrich, 153 F Supp 2d 199, 203 (E D N Y 2001)*) Further, plaintiff has not provided adequate proof to substantiate this charge Therefore, costs for Dr Ambrosino's services will not be charged to the defendants.

Plaintiff's attorneys also request $ 40 for each time they "travel[ed] to/from Brooklyn, tolls and parking" for conferences with the [*40] court (Solotoff Decl , Ex. D-4 ) They allege that driving was the most expeditious and economical means of travel as it costs far less than round-trip tickets on the Long Island Rail Road ("LIRR") or subways The court disagrees. A package of ten trips off-peak from Great Neck to Penn Station on the LIRR

2006 U.S. Dist. LEXIS 62906, *

costs $ 48.45, and ten trips during peak time costs $ 78.38. (See http://lirr42.mta.info/Fares.asp (last visited 6/2/2006).) Thus, combined with subway fare, one round trip to Brooklyn costs, at most, approximately $ 20.00. Further, plaintiff's attorneys do not provide receipts or documentation verifying the cost of these trips. Therefore, the court will reduce the cost of every trip made to and from court by 50%.

Defendants argue that plaintiff should not recover for costs incurred during the administrative proceedings as "plaintiff has not demonstrated that such costs were . . . necessary or useful to the pursuit of the federal litigation." (Defs.' Mem. at 24.) I find that 25% of the costs incurred during 2000 are not recoverable, as they relate to the administrative proceedings and plaintiff's attorneys have not demonstrated that such costs were necessary or useful to the [*41] pursuit of the federal litigation. (See Goldberg Decl., Ex. 17.) n10

> n10 Entries in 2000 include court reporter transcript fees for witnesses who were not parties to this litigation. Further, although some of the witnesses were parties to this litigation, plaintiff has failed to demonstrate how specific testimony was "useful" and of a type "ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *North Carolina Dept. of Transp.* 479 U.S. at 15.

Plaintiff also seeks $ 3,500 for "[p]hotocopying, phone and fax fees and expenses from October 1998 to present." (Solotoff Decl., Ex. D-4.) "Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under *§ 1988* and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Kuzma v. I.R.S.,* *821 F.2d 930, 933-34 (2d Cir. 1987).* While this court [*42] recognizes that such costs are normally billable expenses, plaintiff has the burden of demonstrating the reasonableness of each charge. Plaintiff has not provided receipts or other documentation substantiating these charges. In light of plaintiff's attorneys' vagueness and lack of documentation, the above costs are reduced by 75%. See *E-Lead Elec. Co. v. Tecnozone Enters., LLC,* *2004 U.S. Dist. LEXIS 19472, No. 03 Civ. 4901, 2004*

*WL 2186539, at *3 (S.D.N.Y. Sept. 29, 2004)* (no expenses allowed when attorney seeking reimbursement did not provide any documentation supporting the expenses; there was no line-item breakdown or breakdown of the total expenditure amount).

The court finds the remaining costs reasonable and well-documented.

E. Interest and Fee Enhancement

Plaintiff also moves, pursuant to *Fed. R. Civ. P. 59(e)* to amend the judgment to include post-settlement interest and a fee enhancement. (Solotoff Decl. P 83.) Although *Section 1983* does not specifically provide for interest, "in a suit to enforce a federal right, the question of whether or not to award . . . interest is ordinarily left to the discretion of the district court." *Gierlinger, 160 F.3d at 873.* [*43] In determining whether a discretionary award of interest is warranted, the court must consider: "(1) the need to fully compensate the wronged party for actual damages suffered, (2) considerations of fairness and the relative equities of the award, (3) the remedial purpose of the statute involved, and/or (4) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3, Int'l Brotherhood of Elec. Workers, 955 F.2d 831, 833 (2d Cir. 1992).* The underlying purpose of post-settlement interest is to fully compensate the plaintiff, or make him whole, but it should not result in overcompensation. *Id. at 834.* Plaintiff has not provided any basis for recovery of the post-settlement interest that he seeks; accordingly, that request is denied.

Plaintiff's attorneys also seek a fee enhancement due to the risk in pursuing this matter and the extended delay in payment. (Solotoff Decl. P 83.) There is a strong presumption that the lodestar figure represents the reasonable fee. *Bridges, 1996 U.S. Dist. LEXIS 809, 1996 WL 32325, at *12.* In this case, a fee enhancement is not justified because an enhancement is already reflected [*44] in the hourly rate and the number of hours charged by plaintiff's attorneys. *Krieger v. Gold Bond Bldg. Prods., 863 F.2d 1091, 1099-1100 (2d Cir. 1988).* Accordingly, plaintiff's request is denied.

F. Summary

In sum, fees are hereby awarded as follows:

---

Lawrence Solotoff

1998    37.5 hours x $ 325 = $ 12,187.50
        n11- 75% = $ 3,046.87

2006 U.S. Dist. LEXIS 62906, *

1999    40 hours x $ 325 = $ 13,000
        - 75% = $ 3,250

2000    231.75 hours x $ 325 = $ 75,318.75
        - 75% = $ 18,829.69

2001    95.75 hours x $ 325 = $ 31,118.75
        - 30% = $ 21,783.12

2002    136.5 hours x $ 325 = $ 44,362.50

2003    173.50 hours x $ 325 = $ 56,387.50
        - 30% = $ 39,471.25

2004    81.25 hours x $ 325 = $ 26,406.25

2005    78.25 hours x $ 325 = 25,431.25

2006    30.25 hours x $ 325 = $ 9,831.25
$=P02
87

Other Deductions

n12-20 hours x 325 = - $ 6,500
n13- 8 hours x 325 = - $ 2,600
n14- 5 hours x 325 = $ 1,625 + 5 hours x $ 50 = $ 250 = - $ 1,375

Lawrence Solotoff Total = $ 181,937.18

Cheryl Solotoff

2001    25 hours x $ 225 = $ 56.25

2004    5 hours x $ 225 = $ 1,125

2005    12.75 hours x $ 225 = $ 2,868.75

2006    4 hours x $ 225 = $ 900

Cheryl Solotoff Total = $ 4,950

Darryn Solotoff

2005    11 hours x $ 100 = $ 1,100

Darryn Solotoff Total = $ 1,100

Attorney Fee Sub-Total = $ 187,987.17
- 20% for excessive and duplicative entries

Attorney Fee Grand Total = $ 150,389.77

Costs

| 1999 | n15$ 20 |
|------|---------|
| 2000 | $ 5,236 75<br>-25% = $ 3,927 56 |
| 2001 | $ 471 92 |
| 2002<br>$=P02<br>88 | $ 116 |
| 2003 | $ 613 75 |
| 2004 | n16$ 227 |
| 2005 | $ 163 |
| 2006 | n17$ 875 |
| Total Costs = $ 6,414 23 | |

[*45]

n11 75% of the hours billed by Lawrence Solotoff in 1998, 1999 and 2000 have been deducted for time spent on administrative proceedings either because those hours are noncompensable or because the entries and attorney's fee application lacked specificity. 30% of the hours billed in 2001 and 2003 have been deducted for the same reason

n12 Twenty hours billed by Lawrence Solotoff have been deducted for unrelated and unsuccessful claims

n13 Eights hours billed by Lawrence Solotoff have been deducted for media coverage.

n14 Five hours billed by Lawrence Solotoff have been charged at a paralegal rate.

n15 All travel costs to and from court have been reduced by 50%.

n16 Costs for Dr. Ambrosino's services are not compensable.

n17 75% of the photocopying, phone and fax fees are not recoverable, as plaintiff has not provided any documentation or receipts for these charges.

CONCLUSION

For the reasons stated above, plaintiff's motion for attorney's fees is granted, and plaintiff is awarded [*46] $ 150,389 77 in attorney's fees and $ 6,414 23 in costs

SO ORDERED

ROBERT M. LEVY

United States Magistrate Judge

Dated: Brooklyn, New York

September 5, 2006