UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URSULA MILDE, | : |
|                Plaintiff, | :   CIV NO. 3:00CV2423 (AVC) |
| v. | : |
| THE TOWN OF GREENWICH; HOUSING AUTHORITY OF THE TOWN OF GREENWICH; THE HOUSING AUTHORITY OF THE TOWN OF GREENWICH BOARD OF COMMISSIONERS; and BENJAMIN LITTLE, CEO, | :   November 21, 2006 |
|                Defendants. | : |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR REMITTITUR OR, IN THE ALTERNATIVE, FOR A NEW TRIAL ON COMPENSATORY ECONOMIC DAMAGES AND OPPOSITION TO PLAINTIFF'S POST TRIAL MOTION FOR PRE-JUDGMENT INTEREST**

PRELIMINARY STATEMENT

In her November 7, 2006 Opposition, Plaintiff admits that: (1) her own damage calculations do not add up to the damages argued by her attorney during closing statements; and (2) the jury "*multiplied* [the compensatory award by] *some percentage rate*" to "*arrive at $325,000.*" See Pl. Mem. Opp. at p. 7. Even accepting Plaintiff's speculative and unsupported calculation of her economic damages, there is still no support for a jury award of $325,000. Moreover, Plaintiff cannot be awarded interest **twice**. Based on the foregoing, Defendants motion for remittitur or, in the alternative, for a new trial on compensatory economic damages should be granted and Plaintiff's motion for pre-judgment interest should be denied.

## ARGUMENT

### POINT I

### THE AMOUNT OF DAMAGES AWARDED TO PLAINTIFF BY THE JURY MUST BE REDUCED BECAUSE THE AWARD DOES NOT COMPORT WITH PLAINTIFF'S PRESENTATION OF EVIDENCE AT TRIAL

Plaintiff's opposition brief further confirms that the jury could have only based its award of $325,000 in compensatory damages on Plaintiff's counsel's closing argument and not on the evidence presented at trial. Plaintiff admits in her opposition papers that the economic damages requested by her counsel during closing did not comport with the evidence presented at trial. Even crediting the calculation of Milde's backpay damages in her opposition papers as totaling **$177,128** (see Pl. Mem. Opp. at p. 7; and Carey Aff. ¶ 14), her counsel specifically asked the jury to award **$188,460** in backpay during his closing. (See Partial Transcript of Jury Trial at p. 15). Therefore, Plaintiff admits the amount of damages requested by her counsel during closing was *not* supported by the evidence.

As set forth in Defendants' principal moving papers, Plaintiff's evidence of economic damages was based on her tax returns for the years 2000 through 2005 and her final pay stubs from HATG, which add up to $151,718. This amount *includes* the unpaid compensatory time ($47,431) and pension benefits ($ 26,775) requested by Plaintiff. Defendants did *not include* a wage calculation for the year **2006,** and Plaintiff offers no evidence of wages in 2006, because Plaintiff testified at trial that she *retired at the end of 2005* due to her husband's ill health and that it was "time to retire." When Plaintiff retired in December 2005, she took herself out of the workforce. It is completely speculative for Plaintiff to state that, had she not been terminated by HATG in September 2000, she would have retired on September 30, 2006 rather

2

than in December 2005 when her husband became ill. As the Court's instruction to the jury made clear, Plaintiff's damages could not be based on speculation or guesswork. See Pl. Mem. Opp. at p. 4. The best evidence of what Plaintiff *would have done* is what she *actually did at the time*. The evidence adduced at trial was that Plaintiff *voluntarily retired in December 2005*. Regardless of Plaintiff's claim that she was planning to retire in September 2006, the unrelated and intervening factor of her husband's health caused her to retire in December 2005. Her claim that she is entitled to damages for the year 2006 is, therefore, inappropriate. Based on the foregoing, it is error to award Plaintiff $51,848 in damages she has calculated for the year 2006. See Pl. Mem. Opp. at p.6.

Defendants did not include in its calculations the alleged 4.6% annual pay increase suggested by Plaintiff because there was no evidence concerning the wage increases HATG offered during the years 2000, 2001, 2002, 2003, 2004, and 2005. There also is no evidence that Plaintiff would have continued to receive pay increases each year, and if she did, what percentage those increase would be. Plaintiff's request to be awarded some unspecified amount in wage increases would require an award based on speculation or guesswork, not evidence.

Even crediting Plaintiff's speculative calculations of annual pay increases in the amount of 4.6% for the years 2001 through 2005, the award of $325,000 far exceeds Plaintiff's actual damages. As set forth in Plaintiff's opposition, Plaintiff has calculated the following economic damages: (a) $11,887 for the year 2000; (b) $29,551 for the year 2001; (c) $17,845 for the year 2002; (d) $20,835 for the year 2003; (e) $20,604 for the year 2004; and (f) $24,558 for the year 2005. See Pl. Mem. Opp. at p.7-8. Those damages, for the years 2000 though 2005, amount to $125,280. Adding the $ 47,431 in unpaid compensatory time and $ 26,775 in pension

3

benefits, Plaintiff's damages up to the time of her retirement are, at most, **$199,488**.

Even if the Court were to accept Plaintiff's *post hoc* claim that she would have continued working until September 2006 - - notwithstanding her stated reason that she retired because of her husband's health - - Plaintiff's damages through September 2006 totaled $251,336. Therefore, even using Plaintiff's speculative calculation of damages, there is still *no* evidence to support a compensatory economic damages award of $325,000.

Based on the foregoing, Defendants' respectfully request that their motion for remittitur be granted. Given the evidence Plaintiff presented at trial, the Court should award Plaintiff no more then $151,718 in compensatory economic damages.

## POINT II

**PLAINTIFF'S MOTION FOR PRE-JUDGMENT INTEREST SHOULD BE DENIED BECAUSE PLAINTIFF ADMITS THE JURY ALREADY AWARDED PLAINTIFF PRE-JUDGMENT INTEREST ON HER COMPENSATORY ECONOMIC DAMAGE AWARD.**

Notwithstanding Plaintiff's use of the phrase: "*time value of money*," to describe what was added to her damage award by the jury, Plaintiff admits the jury awarded *interest* in its calculation of her damages. Specifically, Plaintiff admits the jury "*multiplied* [the compensatory award by] *some percentage rate*" to "*arrive at $325,000*." See Pl. Mem. Opp. at p. 7.

Plaintiff claims the jury was entitled to award this "time value of money" - - or interest - - based on the Court's instruction to the jury to "make plaintiff whole;" although she admits that: [o]bviously, the jury was unable to view interest rate tables from the Federal Reserve." See Pl. Mem. Opp. at p. 6-7. Id. at pp.6-7. The Court's instruction to the jury, however, explicitly told the jury that it could not award damages based on speculation or

4

guesswork. See Pl. Mem. Opp. at p. 4. The jury was "*unable* to view interest rate tables of the Federal Reserve" specifically because the question of whether or not to award prejudgment interest is left to the "*sound discretion of the district court.*" Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998) (emphasis added).

Plaintiff's claim that the Court's jury charge instructed the jury to add interest to Plaintiff's economic damages also is unsupportable. "The natural reading of the [jury instruction] language does not require the jury to engage in complicated computations of interest, but merely asks it to find the amount of the 'income' that [Plaintiff] lost as a result of her termination." See Gierlinger, 160 F.3d at 874 (citing Bank of New York v. Amoco Oil Co., 35 F. 3d 643, 662 (2d Cir. 1994) (stating that "under the reasonable expectations of the ordinary businessperson, use of the word 'damages' . . . was not intended to include prejudgment interest.")).

An award of prejudgment interest is *discretionary with the Court* and should not be awarded where: (1) there is evidence that the jury's award included pre-judgment interest; and (2) "given the trial evidence as to [the plaintiff's] loss of back wages," the size of the award is "so great as to suggest that the jury on its own sought to award interest on lost past wages." See Gierlinger, 160 F.3d at 874 (finding it was an abuse of discretion for the district court to deny prejudgment interest where there was no evidence that the jury award included interest and the award of backpay corresponded to the evidence of the plaintiff's damages).

Here, Plaintiff's counsel: (1) specifically asked the jury in closing argument to award Plaintiff 4% interest over the approximate 6 years between her discharge and trial; and (2) admits in Plaintiff's opposition papers that the jury did just that. Additionally, as set forth above, the size of the award in this case more than just "suggests" that the jury awarded Plaintiff

5

prejudgment interest even though such an award is within the discretionary province of the Court. The jury's economic award of $325,000 is clearly excessive and against the weight of the evidence of economic damages presented by Plaintiff at trial. Because an award of prejudgment interest "must not result in overcompensation"[1] to the plaintiff, Plaintiff's request for prejudgment interest must be denied. Granting Plaintiff pre-judgment interest under these circumstances would in effect grant Plaintiff interest **twice**. Such a result would be unfair, unjust, and inequitable. If the Court were inclined to award pre-judgment interest, it should calculate interest on the damages proved at trial (see Point I, supra) in accordance with the standard set forth in 28 U.S.C. § 1961(a). Using this method, the average annual interest rate the Court should use 3.32 %. (See October 3, 2006 Alvarez Affirmation at ¶ 21-40 and accompanying Exhibits I & J).

## CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant their motion for remittitur. Defendants further request the Court deny Plaintiff's request for Pre-Judgment Interest in its entirety.

_____
Francis P. Alvarez (CT 10350)
alvarezf@jacksonlewis.com
Susanne Kantor (CT 19556)
kantors@jacksonlewis.com

JACKSON LEWIS LLP
One North Broadway
White Plains, NY 10601
Phone: (914) 514-6149
Fax: (914) 328-1882

---

[1] See Conner v. Ulrich, 153 F. Supp. 2d 199, 204 (E.D.N.Y. 2004) (citing Wickham Contracting Co., Inc. v. Local Union No.3 Int'l Bhd. Of Elec. Workers, 955 F. 2d 831, 834 (2d Cir. 1992).

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URSULA MILDE,<br><br>          Plaintiff,<br><br>v.<br><br>THE TOWN OF GREENWICH;<br>HOUSING AUTHORITY OF THE<br>TOWN OF GREENWICH;<br>THE HOUSING AUTHORITY OF THE<br>TOWN OF GREENWICH BOARD OF<br>COMMISSIONERS; and<br>BENJAMIN LITTLE, CEO,<br><br>          Defendants. | CIV NO. 3:00CV2423 (AVC) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Memorandum of Law was filed via ECF and served via First Class U.S. Mail, postage prepaid, this 21st day of November, 2006, on counsel for Plaintiff at the address listed below:

Mark P. Carey, Esq.
Carey & Associates P.C.
71 Old Post Rd.
Southport, CT 06490

Susanne Kantor