## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| URSULA MILDE | : |
|   Plaintiff, | : |
| | : |
| v. | : |
| | : |
| THE HOUSING AUTHORITY OF THE | :    Civil No. 3:00CV2423(AVC) |
| TOWN OF GREENWICH; THE | : |
| HOUSING AUTHORITY OF THE | : |
| TOWN OF GREENWICH BOARD OF | : |
| COMMISSIONERS; and BENJAMIN | : |
| LITTLE, CEO, | : |
|   Defendants. | : |

## RULING ON THE DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW, TO ALTER JUDGMENT, AND FOR A NEW TRIAL, AND THE PLAINTIFF'S MOTIONS FOR PRE-JUDGMENT INTEREST, POST-JUDGMENT INTEREST, AND ATTORNEY'S FEES AND COSTS

This is an action for damages and injunctive relief brought pursuant to 42 U.S.C. § 1983.[1]  The plaintiff, Ursula Milde, alleges that her former employer, the Housing Authority of the Town of Greenwich ("Housing Authority"), the Board of Directors of the Housing Authority ("Board"), and her former supervisor, Housing Authority CEO Benjamin Little, subjected her to adverse employment actions in retaliation for her exercise of her First Amendment rights.  On September 18, 2006, after nearly six years

---

[1] Title 42 of the United States Code, section 1983, states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

of litigation and a four day trial, a jury returned a verdict for Milde, and found the defendants liable for $325,000.00 in compensatory damages, and Little liable for an additional $1,000.00 in punitive damages.

At trial, the defendants moved orally for judgment as a matter of law. Subsequently, they moved to amend the amount of damages awarded, or in the alterative, for a new trial to determine damages. Milde has moved for an award of attorney's fees, costs, and pre-judgment and post-judgment interest. The issues presented are: 1) whether the defendants are entitled to judgment as a matter of law; 2) whether the jury's award of damages was excessive; 3) whether Milde is entitled to prejudgment interest; 4) whether Milde is entitled to post-judgment interest; and 5) whether Milde's demands for attorney's fees and costs are reasonable.

For the reasons set forth herein, the defendants' oral motion for judgment as a matter of law, and motion to amend judgment or for a new trial (document no. 198) are DENIED, and Milde's motion for pre-judgment and post-judgment interest (document no. 194), and motion for attorney's fees and costs (document no. 204) are GRANTED in part, and DENIED in part.

## FACTS:

The court presumes knowledge of the facts of the underlying case. See <u>Milde v. Housing Authority</u>, No. Civ. 3:00CV2423(AVC),

2005 WL 1949781, at *1 (D. Conn. Aug. 12, 2005) (court's ruling on cross-motions for summary judgment); Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC), 2006 WL 2583086, at *1 (D. Conn. Sept. 5, 2006) (court's ruling on the defendants' renewed motion for summary judgment). Nevertheless, a review of the record, including the pleadings, supporting affidavits, exhibits, and trial transcript, reveals the following pertinent undisputed facts.

The Housing Authority, Board, and Little oversee the administration of public housing in the Town of Greenwich. Such housing includes the Parsonage Cottage for Senior Residents ("Parsonage"), a residential facility for the elderly. From September 30, 1996, until September 8, 2000, Milde was the administrator of the Parsonage.

Throughout the spring and summer of 2000, Milde and Little, Milde's supervisor, had a disagreement as to the propriety of hiring an in-house recreation director for the Parsonage. Little and the other defendants ultimately concluded that such a position was unnecessary. On May 22, 2000, Milde spoke with a reporter for the Greenwich Time, a local newspaper, and subsequently, the newspaper published articles quoting Milde criticizing the defendants regarding their decision not to hire a recreation director.

On June 2, 2000, Little sent Milde a performance review, and

two memoranda entitled "Corrective Directives" and "Disciplinary Reprimand and 90 Day Opportunity to Improve."  In the three documents, Little was critical of Milde for her failure to keep him apprised of her activities, her inability to recognize that he was her supervisor, and her reluctance to change.  Further, Little established a timetable calling for improvements in Milde's performance.

On July 25, 2000, Milde filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging age and gender discrimination on the part of the defendants.

On August 21, 2000, Little sent Milde a letter informing her that because her performance had not improved, he would hold a hearing to determine what further action would be required.  On September 6, 2000, Little held the hearing, and on September 8, 2000, he fired Milde.  Milde subsequently requested, and was granted unemployment benefits.

On December 20, 2000, after receiving a notice of her right to sue from the EEOC, Milde filed suit in this court against the defendants, as well as the Town of Greenwich.

Shortly thereafter, the defendants appealed the grant of unemployment benefits.  After five days of hearings in 2001, an administrative referee concluded that Milde was entitled to the benefits.

On August 3, 2001, formal discovery in the present case

began, but would not conclude until March 31, 2004, due to the parties' numerous disputes, and requests for extensions.  One such dispute arose when Milde made some 255 requests for admissions before taking any depositions.  The court resolved this dispute in favor of the defendants.

In the midst of discovery, Milde filed a sixth amended complaint, the operative pleading in this case.  The sixth amended complaint, in addition to alleging age and gender discrimination, alleged retaliation in response to Milde's filing discrimination complaints, and retaliation in response to her exercise of free speech.  Further, unlike the previous complaints, it did not include as a defendant the Town of Greenwich, whom Milde had stipulated should be dismissed from the case.

Following discovery, the parties eventually filed cross-motions for summary judgment.  On August 12, 2005, the court denied Milde's motion for summary judgment outright.  Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC), 2005 WL 1949781, at *1 (D. Conn. Aug. 12, 2005).  In the same ruling, the court granted in part, and denied in part the defendants' motion.  Id. Specifically, the court concluded that the defendants were entitled to summary judgment with respect to Milde's age discrimination, gender discrimination, and age and gender retaliation causes of action.  Id.  The court also held, however,

5

that there were unresolved factual disputes that foreclose a ruling as a matter of law that Little was entitled to qualified immunity, and that the defendants were justified in firing Milde under a Pickering analysis. Id.; see Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).

On September 9, 2005, the defendants appealed the court's ruling with respect to Little's qualified immunity defense, and on May 18, 2006, the Second Circuit dismissed the appeal because there was "a genuine issue of fact to be tried. . . ." Milde v. Housing Authority, No. 05-4950cv (2d Cir. May 18, 2006).

On July 24, 2006, the defendants renewed their motion for summary judgment in light of the Supreme Court's recent holding in Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006). On September 5, 2006, guided by that decision, the court granted the motion in part, but denied it in part, as factual questions remained in dispute as to Milde's First Amendment cause of action. Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC), 2006 WL 2583086, at *1 (D. Conn. Sept. 5, 2006).

On September 12, 2006, the trial began. After four days of testimony, the jury found the defendants liable to Milde for $325,000 in compensatory damages, and Little liable for an additional $1,000 in punitive damages. On September 19, 2006, the court rendered a judgment against the defendants that reflected the jury's verdict.

## **DISCUSSION:**

### I.  Renewed Motion for Judgment as a Matter of Law

At the close of the evidentiary portion of the trial, the defendants moved for judgment as a matter of law, pursuant to Fed. R. Civ. Pro. 50(a).  The court did not grant the motion, but rather submitted the action to the jury.  After the jury found for Milde, the defendants orally renewed their motion, pursuant to Fed. R. Civ. Pro. 50(b).  Subsequently, the court granted a motion for an extension of time, permitting the defendants to file memoranda in support of their Rule 50(b) motion no later than October 16, 2006.  The defendants, however, never filed such a memoranda.  With no memoranda to respond to, Milde similarly never filed a memoranda in opposition to the motion.

A district court may enter judgment as a matter of law against a party only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Fed. R. Civ. Pro. 50(a); see Nadel v. Isaksson, 321 F.3d 266, 271-72 (2d Cir. 2003).  "A movant's burden in securing Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict."  Cross v. N.Y. City Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005).

The court is not convinced that the defendants have satisfied their heavy burden under Rule 50.  Presumably, by bringing this motion, the defendants intended to press the arguably unresolved questions of whether Little is entitled to qualified immunity, and whether the defendants should prevail under a Pickering analysis.  See

Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968) (calling for the balancing of the value of speech against its potential for disruption).  Assuming that the defendants have not abandoned this motion, the court resolves these questions against the defendants, in light of the jury's findings at trial.

Specifically, answering a special interrogatory, the jury explicitly found that the defendants were not just motivated to action by Milde's speech, but rather intentionally retaliated against Milde because of her speech.  Further, the jury awarded Milde punitive damages after being instructed by the court that they only could do so if Little "acted with malice or reckless indifference to Mrs. Milde's rights."

In light of these findings and applicable Second Circuit case law, it is unclear how the court could resolve a Pickering analysis in the defendants favor.  See Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir. 1996) ("[I]t matters not that the potential disruption outweighs the value of the speech if the employer subjectively makes the speech the basis of his termination decision: such 'retaliatory' discharge is always unconstitutional."); Reuland v. Hynes, 460 F.3d 409, 415 (2d Cir. 2006) ("[E]ven if the government prevails in the Pickering balance, 'the employee may still carry the day if he can show that the employer's motivation for the discipline was retaliation for the speech itself, rather than for any resulting disruption.'") (quoting Melzer v. Bd. of Ed., 336 F.3d 185, 193 (2d Cir.2003)).

Likewise, in light of the jury's finding that Little intentionally retaliated against Milde, and did so with malice or

reckless indifference to her rights, it is unclear how Little could possibly be entitled to qualified immunity. See Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001)("[I]t can never be objectively reasonable for a government official to act with the intent that is prohibited by law.").

Moreover, never having submitted any memoranda in support of this motion, the defendants have failed to establish that there was no legally sufficient basis for the verdict returned by the jury, and as such, are not entitled to judgment as a matter of law. See Fed. R. Civ. Pro. 50(a); D. Conn. L. Civ. R. 7(a) ("Failure to submit a memoranda may be deemed sufficient cause to deny the motion."). Therefore, the motion is denied.

## II.  Motion to Amend Judgment

The defendants have also moved for the court to reduce the compensatory damages awarded to Milde by the jury.  They argue that "the jury's economic award of $325,000 is clearly excessive and against the weight of the evidence of economic damages presented" at trial, which, by their arithmetic, amounts to only $151,718.00 in possible damages.  Further, they speculate that, in its damage award, the jury included pre-judgment interest at a rate of four percent, the very rate that Milde's counsel alluded to during closing arguments.  From this supposition, the defendants conclude that the jury made its damage calculation based on argument rather than the facts in evidence, and accordingly contend that the award must be reduced.

9

Milde responds that the defendants have failed to consider her lost income from the year 2006, as well as the merit-based pay raises that she would have received annually, had she not been unlawfully termination.  Further, Milde joins the defendants' speculation that the jury likely took into account the time value of money when calculating damages.  But rather than characterizing this action as error, Milde argues that the jury was following the court's instruction that damages are intended "to make a plaintiff whole for losses. . . ."

"A jury verdict is excessive if it is so high as to 'shock judicial conscience.'" Schneider v. National R.R. Passenger Corp., 987 F.2d 132, 137 (2d Cir. 1993)(quoting Nairn v. Nat'l R.R. Passenger Corp., 837 F.2d 565, 567 (2d Cir. 1988)).  When considering whether an award is excessive, the court must make a "detailed appraisal of the evidence bearing on the damages." Schneider, 987 F.2d at 137; see Grunenthal v. Long Island R.R., 393 U.S. 156, 159 (1968).  In making this appraisal, the court "must accord substantial deference to the jury's findings of fact." Schneider, 987 F.2d at 137 (citing Smith v. Nat'l R.R. Passenger Corp., 856 F.2d 467 (2d Cir. 1988)).  In light of this deference, "[e]ven were the Court to disagree with the amount of the award, it would not be justified in substituting its judgment for that of the combined experience of twelve jurors unless it conscientiously believed that the jury has exceeded the bounds of

propriety." Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1330 (2d Cir. 1990).

In this case, the jury heard evidence from which it could have reasonably concluded that, in the years 2000 through and including 2006, the defendants caused Milde to lose wages, merit-based bonuses, reimbursable compensation time, and retirement benefits. Both Milde and the defendants have concluded, however, that based on this particular evidence alone, the jury could not have reached the amount awarded in this case, $325,000.00. Rather, since the court did not specifically instruct the jury regarding pre-judgment interest, it appears possible that the jury took the time value of money into account when awarding damages to Milde. The court is inclined to agree with this speculation.

Nevertheless, the inclusion of interest in a jury award does not render that award excessive. Jurors are not required to abandon the common sense notion that "today's dollar is not the same thing as yesterday's. . . ." Locklin v. Day-Glo Color Corp., 429 F.2d 873, 876 n. 7 (7th Cir. 1970). As such, the jury could have properly considered the time value of money when calculating an award of damages. See Feel the Heat, Inc. v. Centurion Agency, Inc., 622 F. Supp. 273, 275 (S.D.N.Y. 1985). Moreover, in support of such an award of interest, the jury heard evidence that Milde's losses began to accrue upon her discharge,

11

some six years before the jury rendered its verdict.  Therefore, there was evidentiary support for this aspect of the award.

Viewing all of the evidence that was before the jury, and taking into consideration the distinct possibility that the jurors accounted for the time value of money when calculating damages, the court concludes that the award in this case is not excessive.  While reasonable minds could certainly disagree with the jury's findings as to damages, they neither are so high as to 'shock judicial conscience," Schneider v. National R.R. Passenger Corp., 987 F.2d 132, 137 (2d Cir. 1993), nor "exceed[] the bounds of propriety." Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1330 (2d Cir. 1990).  As such, the motion to amend judgment is denied.

### III.  Motion for a New Trial

Similarly, the defendants aver that, "at a minimum," the court should convene a new trial to determine an appropriate measure of Milde's damages.  The defendants assert no new arguments to support this motion, but rather bring it as an alternative to its motion to amend the judgment.  For the foregoing reasons set forth with respect to the motion to amend judgment, the motion is denied.

### IV.  Motion for Pre-judgment Interest

Milde moves for an award of pre-judgment interest.  She argues that such an award is necessary in order for her to be

"meaningfully made whole as the jury intended in this case."
Moreover, she contends that if the court failed to make such an
award, the defendants would have enjoyed "an interest-free loan"
at Milde's expense.

The defendants object to Milde's motion for pre-judgment
interest.  They argue that "[g]iven the already inflated
compensatory damages award, the Court should exercise its
discretion and deny [the] Plaintiff's motion. . . ."
Specifically, they contend that because "the jury appears to have
awarded the 4% interest Plaintiff's counsel argued for during his
closing[,]. . .[g]ranting [the] Plaintiff pre-judgment interest
twice would be unfair and inequitable."

"In a suit to enforce a federal right, the question of
whether or not to award prejudgment interest is ordinarily left
to the discretion of the district court. . . ."  Gierlinger v.
Gleason, 160 F.3d 858, 873 (2d Cir. 1998).  When resolving this
question, the relevant factors to be considered are: "(i) the
need to fully compensate the wronged party for actual damages
suffered, (ii) considerations of fairness and the relative
equities of the award, (iii) the remedial purpose of the statute
involved, and/or (iv) such other general principles as are deemed
relevant by the court," Securities & Exchange Commission v. First
Jersey Securities, Inc., 101 F.3d 1450, 1476 (2d Cir. 1996)
(internal quotation marks omitted).

"To the extent, however, that the damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion not to include pre-judgment interest." Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998) (citations omitted, internal quotation marks omitted).  There are exceptions, however, to this general rule.  Namely, a "jury verdict that already compensates the plaintiff for the lost time value of money would. . . be an appropriate exception." Gorenstein Enters. v. Quality Care-USA, 874 F.2d 431, 439 (7th Cir. 1989) (Ripple, J., concurring); Williamson v. Handy Button Mach. Co., 817 F.2d 1290, 1298 (7th Cir. 1987) (suggesting that pre-judgment interest is not appropriate where, based on "the size of the jury's verdict[,]. . . only the supposition that the jury has compensated plaintiff for the time value of money can explain the result."); see also Gierlinger, 160 F.3d at 874 (reversing a denial of pre-judgment interest where "given the trial evidence as to [the plaintiff's] loss of back wages,. . . the size of the award [was not] so great as to suggest that the jury on its own sought to award interest on lost past wages.").

The court declines to award pre-judgment interest.  Because even Milde agrees that the jury appears already to have awarded interest to her, the court concludes that she has been fully compensated for her losses.  As such, an award of pre-judgment interest to Milde would result in a double recovery, an unfair

and inequitable result.  As the Supreme Court has recently noted, "it goes without saying that the courts can and should preclude double recovery by an individual."  EEOC v. Waffle House, Inc., 534 U.S. 279, 297 (U.S. 2002).

Moreover, although courts routinely award pre-judgment interest to prevailing parties in Section 1983 cases, the underlying statute does not explicitly authorize such awards.  See 42 U.S.C. § 1983.  Without any statutory support, the court would be remiss to make such an award in circumstances that would result in a double recovery.  To do so would be to impose punishment upon the defendants, rather than a remedy upon Milde.  See Amnesty America v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004) (characterizing the purpose of 42 U.S.C. § 1983 as "remedial").  Therefore, the motion for prejudgment interest is denied.

### V.  Motion for Post-Judgment Interest

Milde also moves for an award of post-judgment interest. The defendants does not expressly object to such an award.

The United States Code provides that post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Such interest shall be calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, . . . for the calendar week preceding the date of

the judgment."

The defendants alert the court that the applicable treasury yield for the calendar week preceding the date of the judgment in this case was 5.02 percent. Accordingly, the court awards Milde post-judgment interest at a rate of 5.02 percent calculated from September 19, 2006.

### VI. Motion for Attorney's Fees and Costs

Milde moves for an award of $453,075.00 in attorney's fees, and $18,148.71 in costs. She asserts that such an award would be just in the light of her attorney's experience and expertise, and the complexity and duration of this action. Milde documents some 1,294.5 hours that her attorney labored in this case, and contends that a reasonable rate for such efforts is $350.00 per hour.

The defendants respond that "a more appropriate award would be $192,652.00 in fees and $8,301.88 in costs." They argue that the "requested hourly rate of $350.00 is unreasonable[,]" and recommend a rate of $200.00 for work done prior to the court's ruling on the parties' cross-motions for summary judgment, and $250.00 for work done after that ruling. Further, they contend that hundreds of the hours that Milde documents were spend pursuing "unsuccessful claims," "unrelated matters," and "unnecessary work."

    A.  Attorneys's Fees

    The United States Code provides that in "any action or
proceeding to enforce a provision of . . . [42 U.S.C. § 1983],
the court, in its discretion, may allow the prevailing party, . .
. a reasonable attorney's fee. . . ."  42 U.S.C. 1988(b).

    The United States Supreme Court has noted that the "most
useful starting point for determining the amount of a reasonable
fee is the number of hours reasonably expended on the litigation
multiplied by a reasonable hourly rate.  This calculation
provides an objective basis on which to make an initial estimate
of the value of a lawyer's services." Hensley v. Eckerhart, 461
U.S. 424, 433 (1986).  Courts refer to this calculation as "the
lodestar method." See McDonald v. Pension Plan of the NYSA-ILA
Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006).  "After
calculating the lodestar, the district court may consider other
factors, 'that may lead [it] to adjust the fee upward or
downward, including the important factor of 'results obtained.'"
Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir.
1997) (quoting Hensley, 461 U.S. at 434).

1. Reasonable Hourly Rate

    Milde contends that a rate of $350 per hour is a reasonable
hourly rate.  In support of this notion, she submits the
affidavits of three employment law litigators who practice in the
district of Connecticut.  These individuals uniformly contend

that attorneys equipped with the experience and skill of Milde's
counsel can reasonably charge $350.00 per hour.  Similarly,
Milde's own attorney, one Mark Carey, asserts in his affidavit
that the rate he presently charges clients for employment
litigation in federal court is $350.00 per hour.

The defendants respond that courts "have recently set hourly
rates of less than $350 to compensate counsel with far greater
experience in employment-related civil rights actions" than
Carey.  For example, the U.S. District Court for the Eastern
District of New York recently set a rate of $325.00 per hour for
an attorney with thirty-two years of experience who, in
additional to being partner at his firm, serves as an adjunct
professor of law and has published an employment law treatise and
several scholarly articles.  Fabbricante v. City of New York,
01CV5575(CPS)(RML), 2006 U.S. Dist. LEXIS 62906, at *14-15
(E.D.N.Y. Sept. 5, 2006).

The defendant's citation of this case fails to consider,
however, that "a reasonable hourly rate is not itself a matter of
binding precedent."  Farbotko v. Clinton County, 433 F.3d 204,
208 (2d Cir. 2005).  Rather, the Second Circuit has held that "a
reasonable hourly rate is the 'prevailing market rate,' i.e., the
rate 'prevailing in the relevant community for similar services
by lawyers of reasonably comparable skill, experience, and
reputation.'"  Id. (quoting  Blum v. Stenson, 465 U.S. 886, 896

18

(1984); see also Cohen v. W. Haven Bd. of Police Comm'rs, 638
F.2d 496, 506 (2d Cir. 1980) ("Fees that would be charged for
similar work by attorneys of like skill in the area" are the
"starting point for determination of a reasonable award.").  "The
relevant community, in turn, is the district in which the court
sits."  Farbotko v. Clinton County, 433 F.3d 204, 208 (2d Cir.
2005) (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d
23, 25 (2d Cir. 1983)).  "Further, in order to provide adequate
compensation where the services were performed many years before
the award is made, the rates used by the court to calculate the
lodestar should be current rather than historic hourly rates."
Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)(internal
quotations omitted).

     Nevertheless, the defendant's citation of Fabbricante v.
City of New York, 01CV5575(CPS)(RML), 2006 U.S. Dist. LEXIS
62906, at *14-15 (E.D.N.Y. Sept. 5, 2006), is instructive in that
it demonstrates what the market rate might be for highly
experienced employment law litigators in a neighboring district.

     Further, the defendants make several other telling
assertions.  First, Carey, by his own admission, had only been
practicing law for three years when this litigation began.
Second, he admits that he is "self-taught in negotiation,
mediation, litigation and trial practice."  Third, during this
case, Carey engaged in some unusual practices that resulted in

19

admonition from the court.  Specifically, during discovery, he
served some 255 requests for admissions before having taken a
single deposition.  Fourth, the rate requested by Milde exceeds
the rate actually paid by Milde.  Specifically, from July, 2000,
until August, 2005, Milde paid Carey $200.00 per hour, and from
August, 2005, until today, she has paid him $300.00 per hour.

    The court concludes that Milde has failed in her burden to
show that $350.00 per hour is the prevailing market rate in the
district of Connecticut for similar services by lawyers of
reasonably comparable skill, experience, and reputation.  See
Farbotko v. Clinton County, 433 F.3d 204, 208-09 (2d Cir. 2005)
(establishing that it is the fee applicant's burden to show the
reasonableness of the requested rate).  While not controlling,
the fact that Milde presently pays Carey far less than the
requested rate is particularly noteworthy.  See Blanchard v.
Bergeron, 489 U.S. 87, 93 (U.S. 1989) ("The presence of a
pre-existing fee agreement may aid in determining
reasonableness.").

    As a solo practitioner, Carey is well acquainted with the
market in which he operates, and the cost structure of his firm.
Commensurate with this knowledge, he undoubtedly charges his
clients accordingly.  In the court's view, that Carey presently
charges Milde $300.00 hour is powerful evidence of that current
market rate for attorneys of comparable skill and experience is

not $350.00 per hour.  Milde's contention that Carey has adjusted

his rates to permit her to afford his services only bolsters the

court's conclusion Carey charges a market rate, that is, what the

market will bear.

    Having witnessed Carey best the defendants' counsel at

trial, however, the court is also not convinced that the

prevailing market rate for litigators of Carey's caliber is the

$200.00 per hour that the defendants recommend.[2]  Rather, the

court concludes that a reasonable rate in this case is the

present rate Carey charges Milde, $300.00 per hour.  The court

reaches this conclusion in light of the parties' submissions, as

well as the court's knowledge of this case and the local legal

market.  See Ass'n for Retarded Citizens v. Thorne, 68 F.3d 547,

554 (2d Cir. 1995)("a judge may rely in part on his own knowledge

of private firm hourly rates in the community") (internal

citations and punctuation omitted); Gierlinger v. Gleason, 160

F.3d 858, 876 (2d Cir. 1998)(noting that when awarding attorneys'

---

[2] More specifically, the defendants recommended that the
court apply a rate a rate of $250.00 for work done after the
court's ruling on the parties' cross-motions for summary
judgment.  They further recommend that the court apply a rate of
$200.00 for work done prior to that ruling, apparently because
that is the rate the Milde actually paid her attorney during that
time period.  The court rejects this suggestion because it is in
stark contrast with the Second Circuit's holding that "the rates
used by the court to calculate the lodestar amount should be
'current rather than historic hourly rates.'"  Gierlinger v.
Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Missouri v.
Jenkins, 491 U.S. 274, 284, (1989)).

fees the court may "look to its own familiarity with the case and
its experience generally").

2.  Hours Expended

In addition to objecting to the rate requested by Milde, the
defendants seek the exclusion of a number of hours documented by
Milde.  Specifically, the defendants argue that the "time and
expenses submitted for unrelated administrative proceedings,
excessive and unnecessary work, and unrelated parties" should be
excluded as unreasonable.  They contend that the court should bar
some 275.9 hours from Milde's requested total.

Milde responds that the defendants are responsible for the
significant hours expended in this case, as they elected to "use
every conceivable tactic possible in order to financially bleed
the Plaintiff into submission."  Milde notes that this "tactic
failed but the fees resulting. . . remain."

When making a loadstar computation, before multiplying the
rate by the hours expended, the "district court. . . should
exclude from this initial fee calculation hours that were not
'reasonably expended.'"  Hensley v. Eckerhart, 461 U.S. 424, 434
(1983).  Specifically, the court must "exclude from a fee request
hours that are excessive, redundant, or otherwise unnecessary."
Id.

The court agrees in part with the defendants' proposed
reduction in hours.  The court concludes that 134.2 hours of the

requested sum should be excluded as "excessive, redundant, or otherwise unnecessary."  See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  Specifically, the court excludes the 18.1 hours that relate to the prosecution and dismissal of claims against a separate and former co-defendant, the Town of Greenwich.  Milde did not prevail against this party, and further, voluntarily stipulated that it should be dismissed from the case.  See Shorter v. Hartford Fin. Servs. Group, Inc., 3:03CV0149(WIG), 2005 U.S. Dist. LEXIS 19902, at *36 (D. Conn. May 31, 2005) (excluding hours devoted to prosecuting a party that was later dismissed by stipulation).

Further, the court excludes the 44.8 hours related to the defendants' appeal of a grant of unemployment benefits to Milde. While these hearings may have been useful to Milde as an alternative means of discovery, for the purpose of this motion, the court concludes that the hours expended during this proceeding were unnecessary.  The unemployment benefits appeal was only tangentially related to the present action, and did not concern the enforcement of a statute enumerate in 42 U.S.C. § 1988, which authorizes the recovery of attorney's fees in actions to enforce only specified statutes.  See North Carolina Dept. of Transp. v. Crest St. Community Council, Inc., 479 U.S. 6, 12 (1986) (authorizing an award of attorney's fees resulting from an administrative hearing, but noting "[o]n its face, § 1988 does

not authorize a court to award attorney's fees except in an action to enforce the listed civil rights laws."). Moreover, this administrative appeal was not a jurisdictional prerequisite to bringing suit in federal court, nor even a proceeding "ordinarily necessary to advance the civil rights litigation to the stage it reached. . . ." North Carolina Dept. of Transp. v. Crest St. Community Council, Inc., 479 U.S. 6, 15 (1986) (internal citations omitted); see Webb v. County Bd. of Educ., 471 U.S. 234, 241 (1985) (denying a prevailing plaintiff in an 42 U.S.C. § 1983 action those fees related to an unnecessary administrative hearing). Milde is therefore not entitled to reimbursement of the fees that pertain to that appeal.

Additionally, the court excludes the 67.2 hours related to the aforementioned 255 requests for admissions, as both excessive and unnecessary. As the court stated in its resolution of the discovery dispute that followed Milde's requests for admission,

> [T]he sheer number of requests here go far beyond the purpose behind this type of discovery tool. . . . [The court] reminds counsel that requests for admission cannot be a complete substitute for formal and informal discovery. . . . [A] party cannot put the burden of discovery on the other party by obtaining all factual details by means of requests for admission.

Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC), endorsement order (D. Conn. Sept. 20, 2001).

Likewise, the court excludes the 4.1 hours that were spent on November 29, 2005, drafting a letter to Milde. While

24

maintaining communications with one's clients is certainly an
important obligation of an attorney, see, e.g., Conn. R. of
Prof'l Conduct 1.4(a), taking over four hours to draft a letter
appears to be excessive.  With no explanation from Milde as to
the propriety of taking such care and diligence in carrying out
what would otherwise appear to be a rather routine task, the
court must conclude that this specific request is unreasonable.
See Farbotko v. Clinton County, 433 F.3d 204, 208-09 (2d Cir.
2005) (establishing that it is the fee applicant's burden to show
the reasonableness of the requested fees).  As such, these hours
are excluded.

     The defendants also seek to exclude: 1) the 33.0 hours that
appear to have been billed in a single day; 2) the 10.1 hours
spent, on May 6, May 14, and May 15, 2002, "typing applicable
sections of appeal hearing transcripts into [the] Summary
Judgment Motion"; and 3) the 102.7 hours related to Milde's
motion for summary judgment, which the court denied in all
respects.  Milde v. Housing Authority, No. Civ. 3:00CV2423(AVC),
2005 WL 1949781 at *1 (D. Conn. Aug. 12, 2005).  The court
excludes none of these hours.  With respect to the 33.0 hours
billed on one day, Milde asserts, and the court is convinced,
that this time was actually expended over the course of two days.
Similarly, when read in context, the billing records that
reference 10.1 hours of "typing" also reference work on Milde's

25

summary judgment motion and discovery plan.  As such, the court
credits Milde's assertions that this time was spent in the
practice of law, rather than simply typing.  Finally, with
respect to the time spent on Milde's unsuccessful summary
judgment motion, while it is surely rare in the employment law
arena for a plaintiff to prevail conclusively upon a summary
judgment motion, the court declines to characterize Milde's
pursuit of such a judgment in this case to be excessive,
redundant, or otherwise unnecessary.  As such, the court does not
exclude these hours.

In sum, of the 1,294.5 hours that Milde has documented, the
court excludes 134.2 hours expended by her attorney.

3.  Downward Adjustment to the Lodestar Calculation

The defendants also seek an adjustment to the loadstar
calculation to account for Milde's lack of success on a number of
her claims.  Specifically, they recommend that the court exclude
at least thirty percent of those fees that accrued prior to the
court's ruling on the parties' cross-motions for summary
judgment, which resolved all claims in the defendants' favor,
save one.  They argue that because Milde's free speech claim, her
only successful cause of action, "was based on different facts
and legal theories [than] her age and gender discrimination
claims[,]. . . her fee application from the entire six years
spent litigating her unsuccessful discrimination claims must be

reduced."

In response, Milde notes that ultimately, an "excellent result was achieved." Moreover, she notes that the issues in this case involved a "difficult question" of constitutional law. Further, Milde characterizes her various causes of action as involving "a common core of underlying facts."

The Supreme Court has held that, in awarding attorneys' fees, "the most critical factor is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983); see also Kassim v. City of Schenectady, 415 F.3d 246, 253 (2d Cir. 2005). In a suit involving,

> distinctly different claims for relief that are based on different facts and legal theories... [,] counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

Hensley, 461 U.S. at 434-35.

Further, the Second Circuit has held that "a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory." Kassim, 415 F.3d at 256. That is, even where successful and unsuccessful claims are not

completely factually or legal independent, a district court can nevertheless reduce fees to account for a plaintiff's lack of success on a given cause of action. See Kassim v. City of Schenectady, 415 F.3d 246, 256 (2d Cir. 2005).

The court concludes that Milde's First Amendment cause of action is legally and factually distinct from her gender and age discrimination causes of action. The doctrine of First Amendment retaliation by public employers implicates different constitutional concepts and arises out of a separate statutory scheme than the doctrines of age and gender discrimination. Likewise, these doctrines each require different legal analysis. Further, the facts proven at trial, that the defendants fired Milde in retaliation for her having spoken to a newspaper reporter, would appear to be inconsistent and even irreconcilable with those additional allegations Milde made in the complaint, namely, that she was fired instead because of her age, because of her gender, or because she filed complaints with the EEOC regarding age and gender discrimination.

Because Milde's discrimination causes of action were both wholly unsuccessful, and factually and legally distinct from her First Amendment cause of action, a further reduction of thirty percent of the requested attorneys's fees is warranted. See, e.g., United States Football League v. National Football League, 887 F.2d 408, 414 (2d Cir. 1989) (affirming a twenty percent

reduction in fees to account for success on only one of numerous anti-trust and common law claims); Kim v. Dial Serv. Int'l, Inc., 96Civ.3327(DLC), 1997 U.S. Dist. LEXIS 12544, at *56-57 (S.D.N.Y. Aug. 7, 1997), aff'd without op., 159 F.3d 1347 (2d Cir. 1998) (reducing fees by thirty percent to account for success on only three of several claims); Skold v. American Int'l Group, Inc., 96Civ.7137(HB), 1999 U.S. Dist. LEXIS 9209, at *24 (S.D.N.Y. June 16, 1999) aff'd without op., 205 F.3d 1324 (2d. Cir. 2000) (reducing fees by thirty percent to account for success on only three of nine employment discrimination claims); compare Ragin v. Harry Macklowe Real Estate Co., 870 F. Supp. 510, 518 (S.D.N.Y. 1994) (reducing fees by fifty percent where a party prevailed, but where the injunctive relief and compensatory damages sought were not wholly obtained).

    Milde is therefore entitled to only seventy percent of those fees that the court has not already excluded that accrued before the court disposed of the age and gender discrimination causes of action in its first summary judgment ruling. Milde, however, is still entitled to all of those fees that accrued after the court's ruling, because those efforts were made in pursuit of her First Amendment cause of action, the claim upon which she ultimately prevailed at trial. As such, the within motion is granted in part and denied in part, and the court orders the defendants to pay Milde the amount of $271,446.00 in attorneys's

fees.[3]

### B.  Costs

Milde has requested $18,148.71 in costs.  The defendants object, and "respectfully submit that a more appropriate award would be. . . $8,301.88 in costs."  They argue that they need not reimburse Milde for those costs associated with the unemployment benefits appeal and her unsuccessful causes of action in this case.  Further, they contend that some of the costs documented are not taxable under the court's local rules.

The Federal Rules of Civil Procedure provide that "costs other than attorneys' fees shall be allowed as of course to the prevailing party. . . ."  Fed. R. Civ. Pro. 54(d).  The Second Circuit has held that "in general, a litigant who is a prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs."  Dattner v. Conagra Foods, Inc., 458 F.3d 98, 101 (2d Cir. 2006).  Moreover, with respect to Rule 54(d), courts generally hold that "when one party gets substantial relief it 'prevails' even if it doesn't win on every

---

[3] Milde documented some 981.7 hours expended before August 12, 2005, when the court ruled on the parties' cross-motions for summary judgment.  The court has excluded 130.1 hours from this time.  Supra VI.A.2.  Of the remaining 851.6 hours, the court is crediting only seventy percent, or 596.12 hours.  Milde documented an additional 312.8 expended after August 12, 2005. The court has excluded an additional 4.1 hours from this time. Id.  The resulting total throughout the case is 904.82 hours. Multiplying this sum by a rate of $300.00 per hour, the court concludes that Milde is entitled to $271,446.00 in attorneys's fees.

claim." E.g. Slane v. Mariah Boats, Inc., 164 F.3d 1065, 1068
(7th Cir. 1999); see Ross v. Saint Augustine's College, 103 F.3d
338, 344 (4th Cir. 1996) (awarding a plaintiff costs where the
defendants did succeed on many of the claims alleged against
them, but where the plaintiff succeeded on a significant portion
of her claim); 10 Moore's Federal Practice §10-54.101.  As such,
unlike attorney's fees, all taxable costs associated with a suit
are recoverable by the prevailing litigant, including those costs
that can be identified as relating solely to unsuccessful claims.
See Slane, 164 F.3d at 1068 (affirming an award of costs that did
not include a reduction for unsuccessful claims).

    Having concluded that Milde is a prevailing party for the
purposes of attorneys's fees, the court likewise concludes that
she is the prevailing party for the purposes of costs.  Further,
although she did not prevail on all of her claims, a jury did
provide her with substantial relief in the form of a sizable jury
award.  As such, the court concludes that she is entitled to all
of those taxable costs associated with the present case.

    Nevertheless, some of the costs that Milde has requested
must be excluded.  Specifically, the court excludes $3,869.35 in
costs associated with postage and express delivery, for copies of
pleadings retained by counsel or served on opposing counsel, and
for travel.  See D. Conn. L. Civ. R. 54(c)(7) (including such
expenses in a list of nontaxable costs).  Further, the court

excludes $3,001.46 in costs associated with the unemployment benefits appeal. Again, that proceeding was only tangentially related to the present action, and was not a prerequisite to bringing suit in federal court. As such, Milde is not entitled to her costs associated with that administrative appeal.

In sum, the motion for costs is granted in part and denied in part. The court orders the defendants to pay Milde $11,277.90 in costs.

### CONCLUSION:

For the foregoing reasons, the defendants' oral motion for judgment as a matter of law, and motion to amend judgment or for a new trial (document no. 198) are DENIED, and Milde's motion for attorney's fees and costs (document no. 204), and motion for pre-judgment and post-judgment interest (document no. 194) are GRANTED in part, and DENIED in part.

It is so ordered this 20th day of December, 2006 at Hartford, Connecticut.

/s/

_____
Alfred V. Covello
United States District Judge